Jahan C. Sagafi (SBN 224887)
Rachel W. Dempsey (SBN 310424)
OUTTEN & GOLDEN LLP
One Embarcadero Center, 38th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
E-mail: jsagafi@outtengolden.com
E-mail: rdempsey@outtengolden.com

Adam T. Klein (*pro hac vice* forthcoming)
Rachel M. Bien (SBN 315886)
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060
E-mail: atk@outtengolden.com
E-mail: rmb@outtengolden.com

*Attorneys for Plaintiff and Proposed Collective Action Members*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| ROXANA DEL TORO LOPEZ, on behalf of herself, and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC.<br><br>Defendant. | Case No. _____<br><br>**COLLECTIVE ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES FOR VIOLATIONS OF THE EQUAL PAY ACT, 29 U.S.C. § 206(c)**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Roxana del Toro Lopez, on behalf of herself and all others similarly situated, alleges as follows:

**SUMMARY OF CLAIMS**

1.      This is a collective action brought by Plaintiff against Uber Technologies, Inc. ("Uber") alleging violations of the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d), on behalf of herself and all similarly-situated employees nationwide.

2.      Uber is a global provider of on-demand transportation and food delivery services.  In 2015, Uber generated approximately $10.8 billion dollars in revenue.[1]  Uber is a major employer with approximately 12,000 employees, many of whom are engineers.[2]

3.      As a result of Uber's policies, patterns, and practices, female engineers receive less compensation and are promoted less frequently than their male counterparts.

4.      In addition to bringing this action on her own behalf, Plaintiff also brings this action on behalf of a collective of similarly situated current and former female engineers employed by Uber in the United States, in order to end Uber's discriminatory policies and make the class whole.

**JURISDICTION AND VENUE**

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as Plaintiffs assert federal claims under the EPA.

6.      This Court has personal jurisdiction over Uber.  There is general jurisdiction over Uber, as Uber's corporate headquarters are located in this District in San Francisco, California, Uber conducts substantial business throughout this District and in the State of California, and Uber employs thousands of workers in the State.

7.      Declaratory and injunctive relief is sought and authorized by 28 U.S.C. §§ 2201 and 2202.

---

[1] *See* "Uber Revenue and Usage Statistics 2017," http://www.businessofapps.com/uber-revenue-analysis/ (last visited Aug. 17, 2017)
[2] *See* "Uber just pissed off dozens of longtime employees; now they're gunning for management," https://techcrunch.com/2017/06/08/uber-just-pissed-off-dozens-of-longtime-employees-now-theyre-gunning-for-management/ (last visited Oct. 25, 2017)

8.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)-(c), because Uber maintains offices in this district, conducts business in this district, a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this district, and records relevant to those events and omissions are maintained and administered here.

9.     Intradistrict Assignment.  Per N.D. Cal. Civil L.R. 3-2(c) and 3-5(b), assignment to the San Francisco or Oakland Division is appropriate because a substantial part of the events or omissions that give rise to the claims asserted herein occurred in San Francisco County, where Uber is based and where Plaintiff worked for Uber.

## THE PARTIES

**Plaintiff Roxana del Toro Lopez**

10.     Plaintiff is a female Latina engineer who was employed by Uber as a Software Engineer II from May 2015 to August 2017 in San Francisco, California.

**Defendant**

11.     Defendant Uber is a corporation formed under the laws of the State of Delaware with its corporate headquarters in the city of San Francisco, California.

12.     Upon information and belief, Uber's California headquarters maintains control, oversight, and direction over the operation of its facilities, including its employment practices.

13.     During all relevant times, Uber was Plaintiffs' employer within the meaning of all applicable statutes.

14.     At all times pertinent hereto, Uber has employed more than five hundred people.

## FACTUAL ALLEGATIONS

15.     Upon information and belief, Uber maintains uniform employment, compensation, performance review, and promotion policies throughout the United States.

16.     Upon information and belief, Uber cultivates and promotes a common corporate culture. Its offices throughout California use a common organizational structure, organizing employees by common job titles.

COMPLAINT

17.     Uber's laboratories and offices throughout the U.S. use a common organizational structure, organizing employees by common job titles.

**Performance Evaluations**

18.     Uber uses a companywide "stack ranking" system for evaluating employee performance, which requires supervisors to rank employees from worst to best.

19.     This process is an invalid performance measurement system, as it sets arbitrary cutoffs among performers with similar performance.  The stack ranking process forces a distribution of performance ratings outcomes regardless of whether there are meaningful performance differences between individual employees within a particular peer group.

20.     An employee's rank is not based on valid and reliable performance measures.  The used criteria are not valid or reliable, and they do not properly measure performance.  Uber implements this performance measurement system in a way that disadvantages female employees.

21.     Supervisors are instructed to use these unreliable qualitative assessments of employees' performance, known as "perf," in assigning the employees in their review group a recommended ranking from worst to best.  A lower score makes it difficult for an employee to advance professionally.

22.     This forced ranking process takes place biannually, and performance review scores are used for compensation and promotion decisions.

23.     In this system, female employees are systematically undervalued compared to their male peers because female employees receive, on average, lower rankings despite equal or better performance.

24.     Performance management systems that include unreliable and invalid criteria create inaccurate and biased outcomes.  Upon information and belief, Uber's stack ranking system has had an adverse impact upon female employees.

**Compensation**

25.     Uber uses common, unvalidated, unreliable, and discriminatory procedures for

COMPLAINT

evaluating employee performance that systematically undervalue female employees relative to their similarly situated male peers.  This has been true throughout the class period.

26.   Upon information and belief, Uber pays female engineers less compensation (including but not limited to salary, bonus, other cash compensation, equity [e.g., stock, options, etc.], benefits, and other wages and/or other compensation) than it pays to their male counterparts.

27.   On information and belief, Uber sets initial compensation for aggrieved employees based on their past compensation.  To the extent it is the only variable responsible for a gap in compensation based on gender, it is discriminatory.  In particular, this practice disadvantages women, who are generally paid 18% less than men in the same occupation in the marketplace.

28.   In addition, inequity in compensation based on gender compounds over time because periodic compensation decisions, such as salary increases, are affected by current salary and salary band.

29.   Uber employees' cash compensation includes two components: salary and bonus.  Annually, employees are eligible for a merit increase to their base salary and a bonus.  Whether, and how much, an employee receives in any of these categories is determined by her performance rating, job title, and manager input.  Because female employees have been systematically disadvantaged by the stack ranking performance evaluation process, their outcomes in terms of raises and bonuses have suffered compared to their male peers.

30.   Additionally, Uber employees receive compensation in the form of equity, including but not limited to grants of Restricted Stock Units, Incentive Stock Options, and/or Non-Qualified Stock Options.  Upon information and belief, Uber awards equity compensation disproportionately to men over women.

31.   Furthermore, Uber employees receive compensation in the form of benefits, such as health care (e.g., medical, dental, vision) benefits, free or discounted Uber rides, retirement benefits (e.g., 401(k) plans), and more.  Upon information and belief, Uber awards benefits disproportionately to men over women.

COMPLAINT

32.     Uber's uniform employment practices have a disparate impact against female employees, in terms of compensation.

**Promotions**

33.     Uber also employs common, unvalidated, unreliable, and discriminatory procedures for selecting employees for promotion.  Because promotions are tied to the performance review process, female employees are adversely impacted in promotions as well.  Promotions are not determined by objective, valid, and/or reliable performance measures.  Additionally, because promotions often cause increases in compensation, Uber's promotion practices cause and compound compensation inequities that harm and have harmed Plaintiff and collective members.

34.     Upon information and belief, female employees were promoted at a slower rate than male employees.

## COLLECTIVE ACTION ALLEGATIONS

35.     Uber has engaged in systemic gender discrimination in pay against its female employees. Uber has caused, contributed to, and perpetuated gender-based pay disparities through common policies, practices, and procedures, including but not limited to common compensation and performance management policies, and centralized decision-making.

36.     Plaintiff seeks to be appointed as a representative of the collective.

37.     Plaintiff brings collective claims pursuant to 29 U.S.C. § 216(b) seeking liability-phase injunctive and declaratory relief, monetary damages and other make-whole relief on behalf of a collective of all female engineers[3] who were paid less than male employees doing the same or similar work for claims under the EPA.

38.     Plaintiff and the collective are similarly situated in that they are female engineers at Uber and have been affected by policies and practices that have the purpose and effect of denying them employment opportunities because of their gender.

---

[3] Uber's female engineers are employed in job titles including, but not limited to, Software Engineers level 1 and 2, Senior Software Engineers level 1 and 2, and Staff Software Engineers.

COMPLAINT

39.    There are many similarly situated collective members who would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit.  Notice should be sent to the collective pursuant to 29 U.S.C. § 216(b).

40.    Questions of law and fact common to Plaintiff and the collective include, but are not limited to, the following:

  a.  Whether members of the collective were subjected to an unlawful common policy that resulted in unequal pay for equal work;

  b.  Whether Uber unlawfully failed and continue to fail to compensate members of the collective at a level commensurate with similarly situated male employees;

  c.  Whether Uber's policy, practice, or procedure of failing to compensate members of the collective at levels commensurate with comparable male employees violates applicable provisions of the EPA; and

  d.  Whether Uber's failure to compensate members of the Collective at a level commensurate with comparable male employees was willful within the meaning of the EPA.

41.    Counts for violation of the EPA may be brought and maintained as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) for all claims asserted by the Plaintiff, because her claims are similar to the claims of the collective she seeks to represent.

42.    Plaintiff and the respective collective that she seeks to represent (a) are similarly situated and (b) are subjected to Defendants' common compensation policies, practices, and procedures and centralized decisionmaking resulting in unequal pay based on sex by failing to compensate members of the collective at a level commensurate with male employees who perform substantially equal work and/or hold equivalent levels, job titles, and positions

43.    Uber is aware or should have been aware that federal law requires it to pay its female employees at a rate commensurate to that of male employees performing substantially similar work.

**FACTUAL ALLEGATIONS**

44.     Plaintiff was treated differently than her male colleagues.  For example, she was initially brought on as an independent contractor as opposed to a full-time employee.  This contractor status meant that she received less compensation than full-time Uber employees and was impeded from effectively onboarding to her team because she had limited access to company tools and training sessions.  On information and belief, male engineers were not subject to similar treatment.

45.     In addition, Plaintiff's managers assigned her tasks and duties that were less meaningful, challenging, and important than those of her similarly situated male colleagues. Management also failed to provide her with adequately concrete professional goals or guideposts. On information and belief, her male counterparts were not subject to this treatment.

46.     Despite her strong work effort and performance, Plaintiff was promoted more slowly than her male colleagues.

**CAUSES OF ACTION**

**CLAIM FOR RELIEF**
**Equal Pay Act**
**(The Fair Labor Standards Act of 1938,**
**as amended by The Equal Pay Act, 29 U.S.C. §§ 206, *et seq*.)**
**(On Behalf of Plaintiff and the Collective)**

47.     Plaintiff re-alleges and incorporates the preceding paragraphs as alleged above.

48.     Uber has discriminated against Plaintiff and the collective in violation of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 206, *et seq*., as amended by the Equal Pay Act of 1963 ("EPA").  Uber has paid Plaintiff and the collective less than similarly-situated male colleagues performing equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.

COMPLAINT

49.     The differential in pay between male and female employees was not due to seniority, merit, quantity, or quality of production, but was due to gender.

50.     Uber did not act in good faith, and caused, attempted to cause, contributed to, or caused the continuation of, the wage rate discrimination based on sex in violation of the EPA. Moreover, the foregoing conduct constitutes a willful violation of the EPA within the meaning of 29 U.S.C. § 255(a). Because Uber has willfully violated the EPA, a three-year statute of limitations applies to such violations, pursuant to 29 U.S.C. § 255(a).

51.     As a direct result of Uber's discriminatory policies and/or practices as described above, female employees have suffered damages including, but not limited to, lost past and future income, compensation, and benefits.

52.     Plaintiff requests relief as hereinafter described.

## ALLEGATIONS REGARDING RELIEF

53.     Plaintiff and the collective members she seeks to represent have no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and the injunctive relief they seek in this action is the only means of securing complete and adequate relief. Plaintiff and the collective members she seeks to represent are now suffering, and will continue to suffer, irreparable injury from Uber's discriminatory acts and omissions.

54.     Uber's actions have caused and continue to cause female engineers substantial losses in employment opportunities, earnings, and other employment benefits.

55.     In addition, female engineers suffered and continue to suffer emotional distress, humiliation, embarrassment, and anguish, all to their damage in an amount according to proof.

56.     Uber performed the acts herein alleged with malice, oppression, or fraud. Plaintiff and collective members are thus entitled to recover punitive damages in an amount according to proof.

COMPLAINT

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the collective pray for relief as follows:

(a)     Certify this action as a collective action under the EPA on behalf of Plaintiff and the collective; designate Plaintiff as the representative of the collective; promptly issue notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the collective, which (1) apprises them of the pendency of this action and (2) permits them to assert timely EPA claims in this action by filing individual Consent to Join forms pursuant to 29 U.S.C. § 216(b); and toll the statute of limitations on the claims of all members of the collectives from the date the original Complaint was filed until the collective members are provided with reasonable notice of the pendency of this action and a fair opportunity to exercise their right to opt in as Collective Action Plaintiffs;

(b)     A declaratory judgment that the practices complained of herein are unlawful and violate 29 U.S.C. §§ 216(b);

(c)     A preliminary and permanent injunction against Uber and its Partners, officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in policies, patterns, and/or practices that discriminate against Plaintiff and collective members because of their gender;

(d)     An order that Uber institute and carry out policies, practices, and programs that provide equal employment opportunities for all employees regardless of gender, and that it eradicate the effects of their past and present unlawful employment practices;

(e)     An order requiring Uber to develop and institute accurate and validated standards for evaluating performance, determining pay, and making promotion decisions;

(f)     An order appointing a monitor to ensure that Uber complies with the injunction provisions of any decree that the Court orders;

(g)     An order retaining jurisdiction over this action to ensure that Uber complies with such a decree;

(h)     An order restoring Plaintiff and collective members to their rightful positions at Uber

COMPLAINT

1   (i.e., reinstatement), or in lieu of reinstatements, an order for front pay benefits;

2       (i)     Back pay (including interest and benefits) for Plaintiff and collective members;

3       (j)     All damages sustained as a result of Uber's conduct, including damages for

4   emotional distress, humiliation, embarrassment, and anguish, according to proof;

5       (k)     Liquidated damages;

6       (l)     Exemplary and punitive damages in an amount commensurate with Uber's ability to

7   pay and to deter future conduct;

8       (m)     Costs incurred herein, including reasonable attorneys' fees to the extent allowable by

9   law;

10      (n)     Pre-judgment and post-judgment interest, as provided by law; and

11      (o)     Such other and further legal and equitable relief as this Court deems necessary, just,

12  and proper.

13                          **<u>JURY DEMAND</u>**

14      Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and 29 U.S.C. § 216(b),

15  Plaintiff demands a trial by jury in this action.

16

17                                      Respectfully submitted,

18

19  Dated: October 27, 2017            By:   _/s/ Jahan C. Sagafi_
20                                           Jahan C. Sagafi

21                                     Jahan C. Sagafi (Cal. Bar No. 224887)
                                       Rachel W. Dempsey (SBN 310424)
22                                     OUTTEN & GOLDEN LLP
                                       One Embarcadero Center, 38th Floor
23                                     San Francisco, CA 94111
                                       Telephone: (415) 638-8800
24                                     Facsimile: (415) 638-8810
25                                     E-mail: jsagafi@outtengolden.com
                                       E-mail: rdempsey@outtengolden.com

26

27

28

COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Adam T. Klein (*pro hac vice* forthcoming)
Rachel M. Bien (SBN 315886)
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060
E-mail: atk@outtengolden.com
E-mail: rmb@outtengolden.com

*Attorneys for Plaintiff and Proposed Class and Collective Members*

COMPLAINT