Jahan C. Sagafi (SBN 224887)
Rachel W. Dempsey (SBN 310424)
Laura Iris Mattes (SBN 310594)
OUTTEN & GOLDEN LLP
One Embarcadero Center, 38th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
E-mail: jsagafi@outtengolden.com
E-mail: rdempsey@outtengolden.com
E-mail: imattes@outtengolden.com

Adam T. Klein (*pro hac vice* forthcoming)
Rachel M. Bien (SBN 315886)
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060
E-mail: atk@outtengolden.com
E-mail: rmb@outtengolden.com

*Attorneys for Plaintiffs and Proposed Class
and Collective Members*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| ROXANA DEL TORO LOPEZ and ANA MEDINA, on behalf of themselves, and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> UBER TECHNOLOGIES, INC. <br><br> Defendant. | Case No. 4:17-cv-06255 YGR <br><br> **FIRST AMENDED CLASS, COLLECTIVE ACTION AND PAGA COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiffs Roxana del Toro Lopez and Ana Medina, on behalf of themselves and all others similarly situated, allege as follows:

## SUMMARY OF CLAIMS

1.      This is a class and collective action brought by Plaintiffs against Uber Technologies, Inc. ("Uber") alleging violations of the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d); Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*; 42 U.S.C. § 1981 ("Section 1981"); the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12940; the California Private Attorneys General Act ("PAGA"), Cal. Lab. Code, § 2698 *et seq.*; Cal Lab. Code §§ 201, 202, 203, 204 and 558.1; the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*; and the California Equal Pay Act ("California EPA"), Cal. Lab. Code § 1197.5, on behalf of themselves and all similarly-situated employees nationwide.

2.      Uber is a global provider of on-demand transportation and food delivery services.  In 2017, Uber generated approximately $37 billion in revenue.[1]  Uber is a major employer with approximately 9,000 U.S. employees, many of whom are engineers.

3.      As a result of Uber's policies, patterns, and practices, female engineers and engineers of color employed as Software Engineers 1 and 2, Senior Software Engineers 1 and 2, and Staff Software Engineers receive less compensation and are promoted less frequently than their white and Asian[2] male counterparts.  Herein, "of color" is defined as Latino/Latina/Hispanic, African American/Black, Native American, Alaskan Native, and/or multiracial individuals (who are in part one of the foregoing races).

4.      In addition to bringing this action on their own behalf, Plaintiffs also bring this action on behalf of classes of similarly situated current and former female engineers and engineers of color employed by Uber in the United States and California, in order to end Uber's discriminatory policies and make the classes whole.

---

[1] *See* "Uber lost $4.5 billion in 2017, but its revenue jumped," http://www.latimes.com/business/technology/la-fi-uber-earnings-20180214-story.html (last visited February 28, 2018).

[2] For the purposes of this Complaint, "Asian" includes Asian nationals as well as Asian Americans.

FIRST AMENDED COMPLAINT
Case No. 4:17-cv-06255 YGR

**JURISDICTION AND VENUE**

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as Plaintiffs assert federal claims under the EPA, Title VII, and Section 1981.

6.      This Court has jurisdiction over the California EPA, UCL, and FEHA claims and claims under Cal Lab. Code §§ 201, 202, 203, 204 and 558.1 because this is a class action in which: (a) there are 100 or more members in the proposed class; (b) at least some members of the proposed class have a different citizenship from Defendant; and (c) the claims of the proposed class members exceed $5,000,000 in the aggregate.

7.      In addition, this Court has supplemental jurisdiction over the California EPA, UCL, FEHA, and PAGA claims and claims under Cal Lab. Code §§ 201, 202, 203, 204 and 558.1 because they arise from a common nucleus of operative facts with the federal claims and are so related to the federal claims as to form part of the same case or controversy under Article III of the United States Constitution.

8.      This Court has personal jurisdiction over Uber.  There is general jurisdiction over Uber, as Uber's corporate headquarters are located in this District in San Francisco, California, Uber conducts substantial business throughout this District and in the State of California, and Uber employs thousands of workers in the State.

9.      Declaratory and injunctive relief is sought and authorized by 28 U.S.C. §§ 2201 and 2202.

10.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)-(c), because Uber maintains offices in this District, conducts business in this District, a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this District, and records relevant to those events and omissions are maintained and administered here.

11.     Venue is also proper in this judicial district under 42 U.S.C. § 2000e–5(f)(3) because the employment practices alleged in this complaint were committed in this District and Uber administers the employment records relevant to such practices here.

12.     Intradistrict Assignment.  Per N.D. Cal. Civil L.R. 3-2(c) and 3-5(b), assignment to

FIRST AMENDED COMPLAINT
Case No. 4:17-cv-06255 YGR

the San Francisco or Oakland Division is appropriate because a substantial part of the events or omissions that give rise to the claims asserted herein occurred in San Francisco County, where Uber is based and where Plaintiffs worked for Uber.

13.     Plaintiff del Toro Lopez filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on November 20, 2017.  Pursuant to the EEOC's work-sharing agreement with the California Department of Fair Employment and Housing ("DFEH"), del Toro Lopez's charge is considered dually filed with the DFEH.

### THE PARTIES

**Plaintiffs**

14.     Plaintiff Roxana del Toro Lopez is a female Latina engineer who was employed by Uber as a Software Engineer 1 from May 2015 to March 2017, and as a Software Engineer 2 from March 2017 to August 2017 in San Francisco, California.

15.     Plaintiff Ana Medina is a female Latina engineer who has been employed by Uber as a Software Engineer 1 from March 2016 to the present in San Francisco, California.

**Defendant**

16.     Defendant Uber is a corporation formed under the laws of the State of Delaware with its corporate headquarters in the city of San Francisco, California.

17.     Upon information and belief, Uber's California headquarters maintain control, oversight, and direction over the operation of its facilities, including its employment practices.

18.     During all relevant times, Uber was Plaintiffs' employer within the meaning of all applicable statutes.

19.     At all times pertinent hereto, Uber has employed more than five hundred people.

### FACTUAL ALLEGATIONS

20.     Uber maintains uniform employment, compensation, performance review, and promotion policies throughout the United States.

21.     Upon information and belief, Uber cultivates and promotes a common corporate culture.  Its offices throughout California and the United States use a common organizational

structure, organizing employees by common job titles.

22.     Software engineers at Uber transfer regularly between projects and teams, and are assigned to projects and teams based on need rather than geography.

**Performance Evaluations**

23.     Uber has used a companywide "stack ranking" system for evaluating employee performance, which has required supervisors to rank employees from worst to best.

24.     This process is an invalid performance measurement system, as it sets arbitrary cutoffs among performers with similar performance.  The stack ranking process has forced a distribution of performance ratings outcomes regardless of whether there are meaningful performance differences between individual employees within a particular peer group.

25.     An employee's rank is not based on valid and reliable performance measures.  The criteria used are not valid or reliable, and they do not properly measure performance.  Uber has implemented this performance measurement system in a way that has disadvantaged female employees and employees of color.

26.     Supervisors have been instructed to use these unreliable qualitative assessments of employees' performance, known as "perf," in assigning the employees in their review group a recommended ranking from worst to best.  A lower score makes it difficult for an employee to advance professionally.

27.     This forced ranking process has taken place biannually, and performance review scores have been used for compensation and promotion decisions.

28.     In this system, female employees and employees of color have been systematically undervalued compared to their white and Asian male peers because female employees and employees of color received, on average, lower rankings despite equal or better performance.

29.     Performance management systems that include unreliable and invalid criteria create inaccurate and biased outcomes.  Upon information and belief, Uber's stack ranking system has had an adverse impact upon female employees and employees of color.

**Compensation**

30.    Uber has used common, unvalidated, unreliable, and discriminatory procedures for evaluating employee performance that systematically undervalued female employees and employees of color relative to their similarly situated white and Asian male peers.

31.    Upon information and belief, Uber has paid female engineers and engineers of color less compensation (including but not limited to salary, bonus, other cash compensation, equity [e.g., stock, options, etc.], benefits, and other wages and/or other compensation) than it paid to their white and Asian male counterparts.

32.    On information and belief, Uber has set initial compensation for female engineers and engineers of color based on their past compensation.  To the extent it is the only variable responsible for a gap in compensation based on gender, race, and/or ethnicity, it is discriminatory. In particular, this practice has disadvantaged women, who are generally paid 18% less than men in the same occupation in the marketplace.  It has also disadvantaged people of color, who are generally paid significantly less than white workers in the same occupation in the marketplace.

33.    In addition, inequity in compensation based on gender, race, and ethnicity compounds over time because periodic compensation decisions, such as salary increases, are affected by current salary and salary band.

34.    Uber employees' cash compensation includes two components: salary and bonus. Annually, employees are eligible for a merit increase to their base salary and a bonus.  Whether, and how much, an employee receives in any of these categories is determined by his or her performance rating, job title, and manager input.  Because female employees and employees of color have been systematically disadvantaged by the stack ranking performance evaluation process, their outcomes in terms of raises and bonuses have suffered compared to their white and Asian male peers.

35.    Additionally, Uber employees receive compensation in the form of equity, including but not limited to grants of Restricted Stock Units, Incentive Stock Options, and/or Non-Qualified Stock Options.  Upon information and belief, Uber has awarded equity compensation

disproportionately to white and Asian men over women and people of color.

36.      Furthermore, Uber employees receive compensation in the form of benefits, such as health care (e.g., medical, dental, vision) benefits, free or discounted Uber rides, retirement benefits (e.g., 401(k) plans), and more.  Upon information and belief, Uber has awarded benefits disproportionately to white and Asian men over women and people of color.

37.      Uber's uniform employment practices have had a disparate impact against female employees and employees of color, in terms of compensation.

**Promotions**

38.      Uber also employs common, unvalidated, unreliable, and discriminatory procedures for selecting employees for promotion.  Because promotions are tied to the performance review process, female employees and employees of color have been adversely impacted in promotions as well.  Promotions have not been determined by objective, valid, and/or reliable performance measures.  Additionally, because promotions often cause increases in compensation, Uber's promotion practices have caused and compounded compensation inequities that harm and have harmed Plaintiffs and class and collective members.

39.      Upon information and belief, female employees and employees of color were promoted at a slower rate than white and Asian male employees.

**Hostile Work Environment**

40.      During much of the relevant period, Uber was a hostile work environment for female engineers and engineers of color.  Its "unchecked, hyper-alpha culture" during this period was well-documented in the media and online.[3]  For example, in a detailed blog post on February 19, 2017, former Uber engineer Susan Fowler described inappropriate sexual advances by her manager against her and other female employees and the failure of Uber's HR department to address their

---

[3] *See* "Uber's Kalanick Faces Crisis Over 'Baller' Culture," https://www.usatoday.com/story/tech/news/2017/02/24/uber-travis-kalanick-/98328660/ (last visited January 14, 2018).

FIRST AMENDED COMPLAINT
Case No. 4:17-cv-06255 YGR

1  repeated complaints.[4]

2  41.    This hostile work environment was fostered, encouraged, and condoned by the

3  highest levels of management, including former CEO Travis Kalanick and the members of his so-

4  called "A-Team."  The A-Team was a group of higher-level executives sometimes called the "boys'

5  club at the top" of Uber.[5]

6  **Uber Paid Plaintiffs and Other Aggrieved Employees Less Than Their Male and/or White or**
7  **Asian Counterparts and Deprived Them of Opportunities to Advance**

8  42.    Plaintiffs were treated differently than their white and Asian male colleagues.  For

9  example, del Toro Lopez was initially brought on as an independent contractor as opposed to a full-

10  time employee.  This contractor status meant that she received less compensation than full-time

11  Uber employees and was impeded from effectively onboarding to her team because she had limited

12  access to company tools and training sessions.  On information and belief, white and Asian male

13  software engineers were not subject to similar treatment.

14  43.    In addition, Plaintiffs' managers assigned them tasks and duties that were less

15  meaningful, challenging, and important than those of similarly situated white and Asian male

16  colleagues.  Management also failed to provide them with adequately concrete professional goals or

17  guideposts.  On information and belief, their white and Asian male counterparts were not subject to

18  this treatment.

19  44.    Despite their strong work effort and performance, Plaintiffs were promoted more

20  slowly than their white and Asian male colleagues.

21  ### COLLECTIVE ACTION ALLEGATIONS

22  45.    Uber has engaged in systemic gender discrimination in pay against its female

23  employees.  Uber has caused, contributed to, and perpetuated gender-based pay disparities through

24  common policies, practices, and procedures, including but not limited to common compensation

25  ---
[4] *See* https://www.susanjfowler.com/blog/2017/2/19/reflecting-on-one-very-strange-year-at-uber
   (last visited June 15, 2017).
26  [5] "A Top Uber Executive Departs, Fraying the Company's 'A-Team,'"
27  https://www.nytimes.com/2017/06/12/technology/uber-travis-kalanick-emil-michael.html (last
   visited January 15, 2018).

28

FIRST AMENDED COMPLAINT
Case No. 4:17-cv-06255 YGR

and performance management policies, and centralized decision-making with respect to pay.

46.     Plaintiffs seek to be appointed as representatives of the collective.

47.     Plaintiffs bring collective EPA claims pursuant to 29 U.S.C. § 216(b) seeking liability-phase injunctive and declaratory relief, monetary damages and other make-whole relief on behalf of a collective of all female engineers in the Software Engineers 1 and 2, Senior Software Engineers 1 and 2, and Staff Software Engineers job titles who were paid less than male employees doing the same or similar work.

48.     Plaintiffs and the collective are similarly situated in that they are female engineers at Uber and have been affected by policies and practices that have the purpose and effect of denying them employment opportunities because of their gender.  These policies and practices result in unequal pay based on sex by failing to compensate members of the collective at a level commensurate with male employees who perform substantially equal work and/or hold equivalent levels, job titles, and positions.

49.     Plaintiffs and the collective have been paid less than male colleagues in the same establishment for work requiring equal skill, effort, and responsibility and performed under similar working conditions.  This unequal pay is not justified by seniority, a merit system, a system that measures earnings by quality or quantity of production, or any factor other than sex.

50.     There are many similarly situated collective members who would benefit from the issuance of a court-supervised notice and the opportunity to join the present lawsuit.  Notice should be sent to the collective pursuant to 29 U.S.C. § 216(b).

51.     Questions of law and fact common to Plaintiffs and the collective include, but are not limited to, the following:

a.     Whether members of the collective were subjected to an unlawful common policy that resulted in unequal pay for equal work;

b.     Whether Uber unlawfully failed and continues to fail to compensate members of the collective at a level commensurate with similarly situated male employees;

c.     Whether Uber's policy, practice, or procedure of failing to compensate members of

the collective at levels commensurate with comparable male employees violates applicable provisions of the EPA; and

    d.   Whether Uber's failure to compensate members of the collective at a level commensurate with comparable male employees was willful within the meaning of the EPA.

52.    Counts for violation of the EPA may be brought and maintained as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) for all claims asserted by the Plaintiffs, because their claims are similar to the claims of the collective they seek to represent.

53.    Uber is aware or should have been aware that federal law requires it to pay its female employees at a rate commensurate to that of male employees performing substantially similar work.

## CLASS ACTION ALLEGATIONS

54.    Plaintiffs bring this class action pursuant to Federal Rule of Civil Procedure 23 on behalf of a California class of all female engineers and engineers of color in the Software Engineers 1 and 2, Senior Software Engineers 1 and 2, and Staff Software Engineers job titles who were employed by Uber in California at any time from July 19, 2016 through the resolution of this action for claims under PAGA, for the period from July 31, 2016 through the resolution of this action for claims under FEHA, for the period from July 31, 2014 through the resolution of this action for claims under the California EPA and Cal. Lab. Code §§ 201, 202, 203, 204 and 558.1, and for the period from July 31, 2013 through resolution of this action for claims under the UCL ("California Class").

55.    Plaintiffs also bring this class action pursuant to Federal Rule of Civil Procedure 23 on behalf of a nationwide class of all female engineers and engineers of color in the Software Engineers 1 and 2, Senior Software Engineers 1 and 2, and Staff Software Engineers job titles who were employed by Uber in the United States at any time from October 5, 2016 through the resolution of this action for claims under Title VII, and for the period from July 31, 2013 through resolution of this action for claims under Section 1981 ("Nationwide Class").

56.    Plaintiffs are members of both the California and Nationwide Classes they seek to

1   represent.

2       57.     The members of each class identified herein are so numerous that joinder of all

3   members is impracticable.  Uber has employed approximately 385 female engineers and engineers

4   of color during the relevant time period.

5       58.     There are questions of law and fact common to each class, and these questions

6   predominate over any questions affecting only individual members.  Common questions include:

7           a.   whether Uber's policies and practices discriminate against female engineers and

8               engineers of color;

9           b.   whether Uber's policies and practices violate Title VII, Section 1981, the California

10              EPA, the California Labor Code, PAGA, the UCL, and FEHA;

11          c.   whether Uber's performance evaluation system discriminates against female

12              engineers and engineers of color;

13          d.   whether Uber's compensation system discriminates against female engineers and

14              engineers of color;

15          e.   whether Uber's promotion system discriminates against female engineers and

16              engineers of color;

17          f.   whether Uber's system for assigning jobs on hire discriminates against female

18              engineers and engineers of color;

19          g.   whether Uber's management created and cultivated a hostile work environment

20              throughout the company; and

21          h.   whether equitable remedies, injunctive relief, compensatory damages, and punitive

22              damages for the classes are warranted.

23      59.     Plaintiffs' claims are typical of the claims of the classes they seek to represent.

24      60.     Plaintiffs will fairly and adequately represent and protect the interests of the classes

25   they seek to represent.

26      61.     Plaintiffs have retained counsel competent and experienced in complex class actions

27   and employment discrimination litigation.

28

FIRST AMENDED COMPLAINT
Case No. 4:17-cv-06255 YGR

62.     Class certification is appropriate as to the California and Nationwide Classes pursuant to Federal Rule of Civil Procedure 23(b)(2) because Uber has acted and/or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiffs and the Class they seek to represent.  The California and Nationwide Class members are entitled to injunctive relief to end Uber's common, uniform, unfair, and discriminatory policies and practices.

63.     Class certification is also appropriate pursuant to Federal Rule of Civil Procedure 23(b)(3) because common questions of fact and law predominate over any questions affecting only individual members of the classes, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  The California and Nationwide Class members have been damaged and are entitled to recovery as a result of Uber's common, unfair, and discriminatory policies and practices.  Uber has computerized payroll data and personnel data that will make calculation of damages for specific class members relatively simple.  The propriety and amount of punitive damages are based on Uber's common conduct, making these issues common to the classes.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### Equal Pay Act (The Fair Labor Standards Act of 1938, as amended by The Equal Pay Act, 29 U.S.C. §§ 206, *et seq*.) (On Behalf of Plaintiffs and the Proposed Collective)

64.     Plaintiffs re-allege and incorporate the preceding paragraphs as alleged above.

65.     Uber has discriminated against Plaintiffs and the collective in violation of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 206, *et seq*., as amended by the Equal Pay Act of 1963 ("EPA").  Uber has paid Plaintiffs and the collective less than similarly-situated male colleagues performing equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.

66.     The differential in pay between male and female employees was not due to seniority, merit, quantity, or quality of production, but was due to gender.  Uber did not act in good faith, and

caused, attempted to cause, contributed to, or caused the continuation of, the wage rate discrimination based on sex in violation of the EPA.  Moreover, the foregoing conduct constitutes a willful violation of the EPA within the meaning of 29 U.S.C. § 255(a).  Because Uber has willfully violated the EPA, a three-year statute of limitations applies to such violations, pursuant to 29 U.S.C. § 255(a).

67.     As a direct result of Uber's discriminatory policies and/or practices as described above, female employees have suffered damages including, but not limited to, lost past and future income, compensation, and benefits.

68.     Plaintiffs request relief as hereinafter described.

**SECOND CLAIM FOR RELIEF**
**California Equal Pay Act**
**(Cal. Labor Code §§1197.5 *et seq*., 1194.5)**
**(On Behalf of Plaintiffs and the California Class)**

69.     Plaintiffs re-allege and incorporate the preceding paragraphs as alleged above.

70.     Uber has discriminated and continues to discriminate against female employees and employees of color in violation of California Labor Code § 1197.5 *et seq.* by paying them at wage rates less than the wage rates paid to its white and Asian male engineers for substantially equal or similar work, when viewed as a composite of skill, effort, and responsibility, and performed under similar working conditions.

71.     Uber's failure to pay female employees and employees of color equal wages for performing substantially equal or similar work is not justified by any lawful reason.

72.     Uber has willfully violated California Labor Code § 1197.5 by intentionally, knowingly, and/or deliberately paying female employees and employees of color less than white and Asian male engineers for substantially equal or similar work.

73.     As a result of Uber's ongoing conduct, violation of California Labor Code § 1197.5, and/or willful discrimination, female employees and employees of color have suffered and will continue to suffer harm, including but not limited to lost earnings, lost benefits, and other financial loss, as well as non-economic damages.

FIRST AMENDED COMPLAINT
Case No. 4:17-cv-06255 YGR

74.  Plaintiffs request relief as hereinafter described.

**THIRD CLAIM FOR RELIEF**
**Discrimination**
**(Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*,**
**as amended by the Lilly Ledbetter Fair Pay Act of 2009)**
**(On Behalf of Plaintiffs and the Nationwide Class)**

75.  Plaintiffs re-allege and incorporate the preceding paragraphs as alleged above.

76.  Uber has engaged in an intentional, company-wide, and systematic policy, pattern, and/or practice of discrimination against its female employees and employees of color.  Uber has intentionally discriminated against female employees and employees of color in violation of Title VII by, among other things:

a.  Utilizing a biased performance rating system;

b.  Utilizing a biased compensation system;

c.  Utilizing a biased promotion system; and

d.  Failing to take reasonable and adequate steps to prevent and correct the use of unreliable, unvalidated, and/or illegitimate criteria to determine the terms and conditions of employment.

77.  These company-wide policies are intended to and do have the effect of:

a.  Denying female employees and employees of color business opportunities because of their race, ethnicity, and/or gender;

b.  Compensating them less because of their race, ethnicity, and/or gender;

c.  Failing to promote them because of their race, ethnicity, and/or gender;

d.  Evaluating their performance more negatively because of their race, ethnicity, and/or gender; and

e.  Providing them with inferior terms and conditions of employment as a result of discriminatory performance measures that systematically disadvantaged them because of their race, ethnicity, and/or gender.

78.  Uber's reliance on illegitimate and unvalidated systems and criteria to evaluate employee performance, set compensation, select individuals for promotion, and determine other

terms and conditions of employment, also have an adverse impact on female employees and employees of color in violation of Title VII and are not, and cannot be, justified by business necessity. Even if such system and/or policies could be justified by business necessity, less discriminatory alternatives exist and would equally serve any alleged necessity.

79.     The discriminatory acts that constitute Uber's pattern and/or practice of discrimination have occurred both within and outside the liability period in this case.

80.     As a direct result of Uber's discriminatory policies and/or practices as described above, female employees and employees of color have suffered damages including, but not limited to, lost past and future income, compensation, and benefits.

81.     The foregoing conduct constitutes illegal, unjustified disparate treatment and disparate impact on female employees and employees of color in violation of 42 U.S.C. § 2000e *et seq*.

82.     Plaintiffs request relief as hereinafter described.

### FOURTH CLAIM FOR RELIEF
#### Hostile Work Environment
#### (Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended by the Lilly Ledbetter Fair Pay Act of 2009) (On Behalf of Plaintiffs and the Nationwide Class)

83.     Plaintiffs reallege and incorporate by reference all other paragraphs as alleged above.

84.     Uber subjected Plaintiffs and other female engineers and engineers of color to harassing and discriminatory behavior based upon their race, ethnicity, or gender as alleged herein and/or substantially assisted, encouraged, condoned and failed to remedy the continued harassment, creating a hostile work environment.

85.     Class members suffered severe and/or pervasive harassment. The behavior was unwanted, without consent, objected to, and offensive. The unlawful conduct was engaged in and/or ratified by the officers, directors, supervisors and/or managing agents of Uber, who were acting at all relevant times within the scope and course of their employment.

86.     The unlawful conduct alleged above, directly and proximately caused female engineers and engineers of color to suffer, and continue to suffer, general damages including but

not limited to shock, embarrassment, humiliation, emotional distress, stress, depression, anxiety, fear, uncertainty, loss of confidence, and other damages to be proven at trial.

87.     Uber committed the acts herein alleged maliciously, fraudulently, and oppressively in conscious disregard for class members' rights.

88.     Plaintiffs request relief as hereinafter described.

**FIFTH CLAIM FOR RELIEF**
**Discrimination (California Fair Employment and**
**Housing Act, Cal. Gov't Code § 12940(a))**
**(On Behalf of Plaintiffs and the California Class)**

89.     Plaintiffs re-allege and incorporate the preceding paragraphs as alleged above.

90.     Uber has engaged in an intentional, company-wide, and systematic policy, pattern, and/or practice of discrimination against its female employees and employees of color. Uber has intentionally discriminated against female employees and employees of color in violation of the FEHA by, among other things:

  a.  Utilizing a biased performance rating system;

  b.  Utilizing a biased compensation system;

  c.  Utilizing a biased promotion system; and

  d.  Failing to take reasonable and adequate steps to prevent and correct the use of unreliable, unvalidated, and/or illegitimate criteria to determine the terms and conditions of employment.

91.     These company-wide policies are intended to and do have the effect of:

  a.  Denying female employees and employees of color business opportunities because of their race, ethnicity, and/or gender;

  b.  Compensating them less because of their race, ethnicity, and/or gender;

  c.  Failing to promote them because of their race, ethnicity, and/or gender;

  d.  Evaluating their performance more negatively because of their race, ethnicity, and/or gender; and

  e.  Providing them with inferior terms and conditions of employment as a result of

discriminatory performance measures that systematically disadvantaged them because of their race, ethnicity, and/or gender.

92.     Uber's reliance on illegitimate and unvalidated systems and criteria to evaluate employee performance, set compensation, and select individuals for promotion, and determine other terms and conditions of employment, also have an adverse impact on female engineers and engineers of color in violation of FEHA and are not, and cannot be, justified by business necessity. Even if such systems and/or policies could be justified by business necessity, less discriminatory alternatives exist and would equally serve any alleged necessity.

93.     The discriminatory acts that constitute Uber's pattern and/or practice of discrimination have occurred both within and outside the liability period in this case.

94.     Uber has set and/or maintained these discriminatory policies, patterns, and/or practices during the liability period within the state of California.

95.     As a direct result of Uber's discriminatory policies and/or practices as described above, Plaintiffs and the California Class have suffered damages including, but not limited to, lost past and future income, compensation, and benefits.  The foregoing conduct constitutes illegal, intentional discrimination and unlawful disparate impact on female engineers and engineers of color in violation of California Government Code § 12940(a).

96.     Plaintiffs request relief as hereinafter described.

### SIXTH CLAIM FOR RELIEF
#### Hostile Work Environment
#### (California Fair Employment and Housing Act, Cal. Gov't Code § 12940(j))
#### (On Behalf of Plaintiffs and the California Class)

97.     Plaintiffs reallege and incorporate by reference all other paragraphs as alleged above.

98.     Uber subjected Plaintiffs and other female engineers and engineers of color to harassing and discriminatory behavior based upon their race, ethnicity, or gender as alleged herein and/or substantially assisted, encouraged, condoned and failed to remedy the continued harassment, creating a hostile work environment.

99.     California Class members suffered severe and/or pervasive harassment.  The

FIRST AMENDED COMPLAINT
Case No. 4:17-cv-06255 YGR

behavior was unwanted, without consent, objected to, and offensive.  The unlawful conduct was engaged in and/or ratified by the officers, directors, supervisors and/or managing agents of Uber, who were acting at all relevant times within the scope and course of their employment.

100.    The unlawful conduct alleged above, directly and proximately caused female engineers and engineers of color to suffer, and continue to suffer, general damages including but not limited to shock, embarrassment, humiliation, emotional distress, stress, depression, anxiety, fear, uncertainty, loss of confidence, and other damages to be proven at trial.

101.    Uber committed the acts herein alleged maliciously, fraudulently, and oppressively in conscious disregard for California Class members' rights.

102.    Plaintiffs request relief as hereinafter described.

**SEVENTH CLAIM FOR RELIEF**
**Race and/or Ethnicity Discrimination**
**(42 U.S.C § 1981)**
**(On Behalf of Plaintiffs and the Nationwide Class)**

103.    Plaintiffs reallege and incorporate by reference all other paragraphs as alleged above.

104.    Uber intentionally discriminated against engineers of color on the basis of race and/or ethnicity by rescinding or denying them contracts to work or deterring them from work opportunities by, among other things:

      a.  Utilizing a biased performance rating system;

      b.  Utilizing a biased compensation system;

      c.  Utilizing a biased promotion system; and

      d.  Failing to take reasonable and adequate steps to prevent and correct the use of unreliable, unvalidated, and/or illegitimate criteria to determine the terms and conditions of employment.

105.    Uber's intentional discrimination against engineers of color interfered with their right to make and enforce work contracts.

106.    Uber's policy and practice of denying work opportunities based on race and/or ethnicity harmed engineers of color and constitutes unlawful race and ethnicity discrimination in

the making and enforcing of contracts in violation of 42 U.S.C. § 1981.

107.    Defendant's conduct has caused, and continues to cause, Plaintiffs and the members of the Nationwide Class substantial losses in earnings and other work benefits.

108.    Plaintiffs request relief as hereinafter described.

### EIGHTH CLAIM FOR RELIEF
**Wage Violations**
**(California Labor Code §§ 201, 202, 203, 558.1)**
**(On Behalf of Plaintiffs and the California Class)**

109.    Plaintiffs reallege and incorporate by reference all other paragraphs as alleged above.

110.    California Labor Code sections 201, 202, 204, and 558.1 require Defendant to pay its employees all wages due within the time specified by law.  California Labor Code section 203 provides that if an employer willfully fails to timely pay such wages, the employer must continue to pay the subject employees' wages until the back wages are paid in full or an action is commenced, up to a maximum of thirty days of wages.

111.    As a consequence of Defendant's willful conduct in not timely paying full compensation for Plaintiffs and California Class members, Plaintiffs seek to recover all penalties allowed under California law together with interest thereon and attorneys' fees and costs.

### NINTH CLAIM FOR RELIEF
**PAGA**
**(California Private Attorneys General Act of 2004,**
**Cal Lab. Code §§ 2698-2699.5)**
**(On Behalf of Plaintiffs and All Aggrieved Employees)**

112.    Plaintiffs reallege and incorporate by reference all other paragraphs as alleged above.

113.    Under PAGA, an aggrieved employee, on behalf of herself and other current or former employees as well as the general public, may bring a representative action as a private attorney general to recover penalties for an employer's violations of the California Labor Code and IWC Wage Orders.  These civil penalties are in addition to any other relief available under the California Labor Code, and must be allocated 75% to California's Labor and Workforce Development Agency ("LWDA") and 25% to the aggrieved employee, pursuant to California Labor Code § 2699.

FIRST AMENDED COMPLAINT
Case No. 4:17-cv-06255 YGR

114.    Plaintiffs allege, on behalf of themselves and all aggrieved employees, as well as the general public, that Defendant has violated the Equal Pay Act, section 1197.5 of the California Labor Code, which is actionable through PAGA.

115.    In particular, as a result of Uber's common policies and practices, Uber has discriminated against Plaintiffs and aggrieved employees by paying them less than similarly-situated white and Asian male coworkers and failing to promote them at the same or similar rate as their white and Asian male coworkers.

116.    The differential in pay between female engineers and engineers of color and male and white or Asian engineers was not due to seniority, merit, the quantity or quality of production, or a bona fide factor other than sex and/or race or ethnicity, such as education, training, or experience, but was due to gender and/or race or ethnicity.  In the alternative, to the extent that Uber relied upon one or more of these factors, said factor(s) were not reasonably applied and did/do not account for the entire wage differential.

117.    Uber caused, attempted to cause, contributed to, or caused the continuation of wage rate discrimination based on sex and/or race or ethnicity.  The foregoing conduct constitutes a willful violation of the Equal Pay Act, Cal. Lab. Code §1197.5, *et seq*.

118.    As a result of Uber's willful, knowing, and intentional discrimination, Plaintiffs have suffered and will continue to suffer harm, including but not limited to lost earnings, lost benefits, and other financial loss, as well as non-economic damages.

119.    This violation entitles Plaintiffs, as private attorneys general, to recover the applicable civil penalties on their own behalf, on behalf of all aggrieved employees, and on behalf of the general public.

> California Labor Code § 2699(a), which is part of PAGA, provides in pertinent part: Notwithstanding any other provision of law, any provision of this code that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency or any of its departments, divisions, commissions, boards, agencies, or employees, for a violation of this code, may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of themselves or herself and other current or former employees pursuant to the procedures specified in § 2699.3.

California Labor Code § 2699(f), which is part of PAGA, provides in pertinent part:
For all provisions of this code except those for which a civil penalty is specifically provided, there is established a civil penalty for a violation of these provisions, as follows: . . . (2) If, at the time of the alleged violation, the person employs one or more employees, the civil penalty is one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation.

120.    Plaintiffs are entitled to civil penalties, to be paid by Defendant and allocated as PAGA requires, pursuant to California Labor Code § 2699(a) for Defendant's violations of the California Labor Code for which violations a civil penalty is already specifically provided by law.

121.    Plaintiffs are also entitled to civil penalties, to be paid by Defendant and allocated as PAGA requires, pursuant to California Labor Code § 2699(f) for Defendant's violations of the California Labor Code for which violations a civil penalty is not already specifically provided.

122.    On July 19, 2017, Plaintiff del Toro Lopez provided written notice by certified mail to the LWDA of the legal claims and theories of this case.  Plaintiff simultaneously provided a copy of that notice by certified mail to Defendant.  The LWDA did not provide notice "within 65 calendar days of the postmark date of" Plaintiff's notice, so Plaintiffs are entitled to assert this claim.  Cal. Labor Code § 2699.3(a)(2).

123.    Under PAGA, Plaintiffs and the California Class are entitled to recover the maximum civil penalties permitted by law for the violations of the California Labor Code that are alleged in this Complaint.

**TENTH CLAIM FOR RELIEF**
**Unlawful and Unfair Business Practices**
**(Cal. Bus. And Prof. Code § 17200)**
**(On Behalf of Plaintiffs and the California Class)**

124.    Plaintiffs reallege and incorporate by reference all other paragraphs as alleged above.

125.    Uber's policies and/or practices of paying female engineers and engineers of color less than white and Asian male engineers for substantially similar work and of discriminating against female engineers and engineers of color in compensation and the terms, conditions, and privileges of employment on the basis of their sex and race/ethnicity constitute business practices because Uber's acts and omissions as alleged herein have been done repeatedly over a significant period of time, and in a systematic manner, to the detriment of Plaintiffs and members of the class.

126.   Uber's acts and omissions, as alleged herein, violate the EPA, the California EPA, Title VII, Section 1981, the California Labor Code, PAGA, and FEHA, and therefore constitute unlawful business practices prohibited by Business & Professions Code § 17200 *et seq.*

127.   Uber's acts and omissions, as alleged herein, constitute unfair business practices prohibited by Business & Professions Code § 17200 *et seq.*  Uber's business practices of paying female engineers and engineers of color less than white and Asian male engineers for substantially similar work, of assigning and keeping female engineers and engineers of color in lower levels and less highly compensated job ladders than similarly-qualified white and Asian male engineers, and of failing to promote female engineers and engineers of color caused harm to Plaintiffs and members of the class that outweighs any reason Uber may have for doing so.  Uber's business practices as alleged herein are also immoral, unethical, oppressive, unscrupulous, and offensive to the established public policies of ensuring women and people of color are paid equally to white and Asian male individuals for performing substantially similar work.  As a result of its unlawful and/or unfair business practices, Uber has reaped and continues to reap unfair and illegal profits at the expense of Plaintiffs and the class.  Accordingly, Uber should be disgorged of its illegal profits, and Plaintiffs and the class are entitled to restitution with interest of such ill-gotten profits in an amount according to proof at the time of trial.

128.   Uber's unlawful and/or unfair business practices entitle Plaintiffs and aggrieved employees to preliminary and permanent injunctive relief and other equitable relief available under law.

129.   Plaintiffs request relief as hereinafter described.

## ALLEGATIONS REGARDING RELIEF

130.   Plaintiffs and the class and collective members they seek to represent have no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and the injunctive relief they seek in this action is the only means of securing complete and adequate relief.  Plaintiffs and the class and collective members they seek to represent are now suffering, and will continue to suffer, irreparable injury from Uber's discriminatory acts and omissions.

131.    Uber's actions have caused and continue to cause female engineers and engineers of color substantial losses in employment opportunities, earnings, and other employment benefits.

132.    In addition, female engineers and engineers of color suffered and continue to suffer emotional distress, humiliation, embarrassment, and anguish, all to their damage in an amount according to proof.

133.    Uber performed the acts herein alleged with malice, oppression, or fraud.  Plaintiffs and the class and collective members they seek to represent are thus entitled to recover punitive damages in an amount according to proof.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and the collective pray for relief as follows:

(a)    Certification of the case as a class action on behalf of the proposed Classes;

(b)    Designation of Plaintiffs del Toro Lopez and Medina as representatives of the Classes;

(c)    Designation of Plaintiffs' counsel of record as Class Counsel for the Classes;

(d)    Designation of Plaintiffs as representatives of the PAGA action;

(e)    Certification this action as a collective action under the EPA on behalf of Plaintiffs and the collective; designation of Plaintiffs as the representatives of the collective; prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the collective, which (1) apprises them of the pendency of this action and (2) permits them to assert timely EPA claims in this action by filing individual Consent to Join forms pursuant to 29 U.S.C. § 216(b); and tolling of the statute of limitations on the claims of all members of the collective from the date the original Complaint was filed until the collective members are provided with reasonable notice of the pendency of this action and a fair opportunity to exercise their right to opt in as Collective Action Plaintiffs;

(f)    A declaratory judgment that the practices complained of herein are unlawful;

(g)    A preliminary and permanent injunction against Uber and its partners, officers,

agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in policies, patterns, and/or practices that discriminate against Plaintiffs and class and collective members because of their gender and/or race or ethnicity;

(h)     An order that Uber institute and carry out policies, practices, and programs that provide equal employment opportunities for all employees regardless of gender, race, or ethnicity, and that it eradicate the effects of their past and present unlawful employment practices;

(i)     An order requiring Uber to develop and institute accurate and validated standards for evaluating performance, determining pay, and making promotion decisions;

(j)     An order appointing a monitor to ensure that Uber complies with the injunction provisions of any decree that the Court orders;

(k)     An order retaining jurisdiction over this action to ensure that Uber complies with such a decree;

(l)     An order restoring Plaintiffs and class and collective members to their rightful positions at Uber (i.e., reinstatement), or in lieu of reinstatements, an order for front pay benefits;

(m)    Back pay (including interest and benefits) for Plaintiffs and class and collective members;

(n)     All damages sustained as a result of Uber's conduct, including damages for emotional distress, humiliation, embarrassment, and anguish, according to proof;

(o)     Liquidated damages;

(p)     Exemplary and punitive damages in an amount commensurate with Uber's ability to pay and to deter future conduct;

(q)     All civil penalties recoverable under PAGA;

(r)     Restitution of all monies due to Plaintiffs and class members, as well as disgorgement of Uber's profits from its unlawful and/or unfair business practices;

(s)     Costs and expenses incurred herein, including reasonable attorneys' fees to the extent allowable by law;

(t)     Service awards for Plaintiffs in recognition of the time and risk incurred in asserting these claims on behalf of the class and collective, and the value they have created by doing so;

(u)     Pre-judgment and post-judgment interest, as provided by law; and

(v)     Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

## <u>JURY DEMAND</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and 29 U.S.C. § 216(b), Plaintiffs demand a trial by jury in this action.

Respectfully submitted,

Dated: March 26, 2018                    By:   */s/ Jahan C. Sagafi*
                                                    Jahan C. Sagafi

Jahan C. Sagafi (Cal. Bar No. 224887)
Rachel W. Dempsey (SBN 310424)
Laura Iris Mattes (SBN 310594)
OUTTEN & GOLDEN LLP
One Embarcadero Center, 38th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
E-mail: jsagafi@outtengolden.com
E-mail: rdempsey@outtengolden.com
E-mail: imattes@outtengolden.com

FIRST AMENDED COMPLAINT
Case No. 4:17-cv-06255 YGR

Adam T. Klein (*pro hac vice* forthcoming)
Rachel M. Bien (SBN 315886)
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060
E-mail: atk@outtengolden.com
E-mail: rmb@outtengolden.com

*Attorneys for Plaintiffs and Proposed Class
and Collective Members*

FIRST AMENDED COMPLAINT
Case No. 4:17-cv-06255 YGR