Jahan C. Sagafi (SB#  224887)
Rachel W. Dempsey (SB# 310424)
Laura Iris Mattes (SB# 310594)
OUTTEN & GOLDEN LLP
One Embarcadero Center, 38th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
E-mail: jsagafi@outtengolden.com
E-mail: rdempsey@outtengolden.com
E-mail: imattes@outtengolden.com

Adam T. Klein (*pro hac vice* forthcoming)
Rachel M. Bien (SB# 315886)
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060
E-mail: atk@outtengolden.com
E-mail: rmb@outtengolden.com

*Attorneys for Plaintiffs and Proposed Class and
Collective Members*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| ROXANA DEL TORO LOPEZ and ANA MEDINA, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UBER TECHNOLOGIES, INC.,<br><br>Defendant. | Case No. 4:17-cv-06255 (YGR)<br><br>**NOTICE OF MOTION AND UNOPPOSED MOTION FOR ORDER CONDITIONALLY CERTIFYING SETTLEMENT CLASS AND COLLECTIVE ACTION, AND GRANTING PRELIMINARY APPROVAL**<br><br>Judge:   Yvonne Gonzalez Rogers<br>Hearing Date:  May 1, 2018<br>Hearing Time:  2:00 pm<br>Courtroom:   Courtroom 1, 4th Floor |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on April 10, 2018, at 2 p.m., or as soon thereafter as the matter may be heard, in Courtroom 1 - 4th Floor of this Court's Oakland Courthouse, located at 1301 Clay Street, Oakland, California, Plaintiffs Roxana del Toro Lopez and Ana Medina, individually and on behalf of all others similarly situated ("Plaintiffs") will, and hereby do, move this Court for the following relief with respect to the Collective, Class Action and PAGA Representative Action Settlement Agreement (the "Settlement," attached as Exhibit A to the Declaration of Jahan C. Sagafi in Support of Unopposed Motion for Preliminary Approval of Settlement ("Sagafi Decl.")) with Defendant Uber Technologies, Inc. ("Uber"):

1.    that the Court certify, for settlement purposes only, a settlement class pursuant to Federal Rule of Civil Procedure 23(b)(3);

2.    that the Court designate, for settlement purposes only, a nationwide collective action pursuant to 29 U.S.C. § 216(b) for claims under the Equal Pay Act;

3.    that the Court approve prospective relief under Federal Rule of Civil Procedure 23(b)(2);

4.    that the Court appoint Plaintiffs as class representatives of the Class and as representative Plaintiffs for the nationwide collective action;

5.    that the Court appoint Plaintiffs' attorneys as Class Counsel;

6.    that the Court grant preliminary approval of the Settlement;

7.    that the Court approve mailing to the Class Members the proposed Class Notice;

8.    that the Court appoint JND Legal Administration as the Settlement Administrator; and

9.    that the Court schedule a hearing for final approval of the Settlement.

This motion is made on the grounds that the Settlement is the product of arms-length, good-faith negotiations; is fair, reasonable, and adequate to the Class; and should be preliminarily approved, as discussed in the attached memorandum.

- 1 -

1    The motion is based on this notice, the following memorandum in support of the motion,

2    the Sagafi Decl. (which annexes a copy of the Settlement); the Court's record of this action; all

3    matters of which the Court may take notice; and oral and documentary evidence presented at the

4    hearing on the motion.  This motion is unopposed by Uber.

5    Dated:  March 26, 2018                      Respectfully submitted,

6                                                By: /s/ Jahan C. Sagafi

7                                                Jahan C. Sagafi (SB#  224887)
                                                 Rachel W. Dempsey (SB# 310424)
8                                                Laura Iris Mattes (SB# 310594)
                                                 OUTTEN & GOLDEN LLP
9                                                One Embarcadero Center, 38th Floor
                                                 San Francisco, CA 94111
10                                               Telephone: (415) 638-8800
                                                 Facsimile: (415) 638-8810
11                                               E-mail: jsagafi@outtengolden.com
12                                               E-mail: rdempsey@outtengolden.com
                                                 E-mail: imattes@outtengolden.com
13

14                                               Adam T. Klein (pro hac vice forthcoming)
                                                 Rachel M. Bien (SB# 315886)
15                                               OUTTEN & GOLDEN LLP
                                                 685 Third Avenue, 25th Floor
16                                               New York, New York 10017
                                                 Telephone: (212) 245-1000
17                                               Facsimile: (646) 509-2060
                                                 E-mail: atk@outtengolden.com
18                                               E-mail: rmb@outtengolden.com

19
                                                 *Counsel for Plaintiffs and the Proposed Class and*
20                                               *Collective Members*

21

22

23

24

25

26

27

28
                                        - 2 -

1

## <u>TABLE OF CONTENTS</u>

2  I.    INTRODUCTION ............................................................................................. 1

3  II.   BACKGROUND .............................................................................................. 2

4        A.    Plaintiffs' Factual Allegations................................................................ 2

5        B.    Procedural Background ........................................................................... 3

6        C.    Informal Discovery And Mediation ....................................................... 4

7        D.    The Settlement Classes ........................................................................... 5

8  III.  THE PROPOSED SETTLEMENT ................................................................. 6

9        A.    Settlement Overview .............................................................................. 6

10       B.    Monetary Relief...................................................................................... 7

11       C.    Injunctive Relief ..................................................................................... 8

12       D.    Attorneys' Fees and Costs and Service Awards..................................... 9

13 IV.   ARGUMENT.................................................................................................. 10

14       A.    Certification of the Rule 23 Class Is Proper.........................................11

15             1.    Rule 23(a) Is Satisfied. ...............................................................11

16             2.    Certification Is Proper Under Rule 23(b)(3). ............................ 14

17             3.    Rule 23(b)(2) is Satisfied. ......................................................... 15

18             4.    Plaintiffs' Counsel Should Be Appointed as Class Counsel............. 16

19       B.    Certification of the Federal EPA Collective Is Proper. ....................... 16

20       C.    The Settlement Is Fair, Reasonable, And Adequate.............................16

21             1.    Plaintiffs' Case Faced Significant Hurdles on Liability,
                     Certification, And Damages. ..................................................... 17
22
                 2.    The Settlement Amount Is Appropriate. .................................... 18
23
                 3.    The Extent of Discovery Supports Settlement. ......................... 20
24
                 4.    Counsel's Experience And Views Support Approval. ............... 21
25
                 5.    The Parties Participated in Arms-Length Negotiations Before
26                    An Experienced Neutral Mediator. ........................................... 21

27       D.    The Proposed Notice Is Clear And Adequate. ....................................... 22

28

V.      A FINAL APPROVAL HEARING SHOULD BE SCHEDULED. ........................ 22

VI.     CONCLUSION ........................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdullah v. U.S. Sec. Associates*,
    731 F.3d 952 (9th Cir. 2013) ..................................................................................... 11

*Adams v. Pinole Point Steel Co.*,
    No. 92-cv-1962-MHP, 1994 WL 515347 (N.D. Cal. May 18, 1994) ........................... 12

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ........................................................................... 12, 14, 15

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
    568 U.S. 455 (2013) ................................................................................... 14

*Bates v. United Parcel Serv.*,
    204 F.R.D. 440 (N.D. Cal. 2001) ................................................................. 15

*Berndt v. California Dep't of Corrections*,
    No. 03-cv-3174-PJH, 2012 WL 950625 (N.D. Cal. Mar. 2, 2012) ............................. 18

*Betancourt v. Advantage Human Resourcing, Inc.*,
    No. 14-cv-01788-JST, 2016 WL 344532 (N.D. Cal. Jan. 28, 2016) ........................... 17

*Calibuso v. Bank of Am. Corp.*,
    299 F.R.D. 359 (E.D.N.Y. 2014) ................................................................. 19

*Civil Rights Educ. & Enf't Ctr. v. RLJ Lodging Tr.*,
    No. 15-cv-0224-YGR, 2016 WL 314400 (N.D. Cal. 2016) ...................................... 15

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ..................................................................... 10

*Coates v. Farmers Grp., Inc.*,
    No. 15-cv-01913-LHK, 2016 WL 8223347 (N.D. Cal. June 27, 2016) ........................ 11

*Cotter v. Lyft, Inc.*,
    176 F. Supp. 3d 930 (N.D. Cal. 2016) ......................................................... 19

*Curtis-Bauer v. Morgan Stanley & Co.*,
    No. 06-cv-3903-TEH, 2008 WL 4667090 (N.D. Cal. Oct. 22, 2008) .............. 12, 15, 19

- i -

*D.C. v. Cty. of San Diego,*
  No. 15 Civ. 1868, 2017 WL 5177028 (S.D. Cal. Nov. 7, 2017) ............................... 18

*Delagarza v. Tesoro Ref. & Mktg. Co.,*
  No. 09-cv-5803-EMC, 2011 WL 4017967 (N.D. Cal. Sept. 8, 2011) ......................... 14

*Donaldson v. Pillsbury Co.,*
  554 F.2d 825 (8th Cir. 1977) .................................................................................... 13

*Edmondson v. Simon,*
  86 F.R.D. 375 (N.D. Ill. 1980) ................................................................................. 12

*Ellis v. Costco Wholesale Corp.,*
  285 F.R.D. 492 (N.D. Cal. 2012) ............................................................................. 14

*Fernandez v. Victoria Secret Stores, LLC,*
  No. 06 Civ. 04149, 2008 WL 8150856 (C.D. Cal. July 21, 2008) ......................... 21

*Garcia v. Johnson,*
  No. 14-cv-01775-YGR, 2015 WL 13387594 (N.D. Cal. Oct. 27, 2015) ................. 15

*Garcia v. Johnson,*
  No. 14-cv-01775-YGR, 2015 WL 13439762 (N.D. Cal. Aug. 20, 2015) ................. 15

*Gonzalez v. Abercrombie*
  No. 03-cv-02817-SI (N.D. Cal.), ECF No. 125 ...................................................... 19

*Hanlon v. Chrysler Corp.,*
  150 F.3d 1011 (9th Cir. 1998) ............................................................ 10, 12, 16, 17

*Hopson v. Hanesbrands Inc.,*
  No. 08-cv-0844-EDL, 2009 WL 928133 (N.D. Cal. Apr. 3, 2009) ........................ 19

*I.M.A.G.E. v. Bailar,*
  78 F.R.D. 549 (N.D. Cal. 1978) ............................................................................... 12

*Jaffe v. Morgan Stanley & Co.,*
  No. 06-cv-3903-TEH, 2008 WL 346417 (N.D. Cal. Feb. 7, 2008) ........................ 13

*Lusby v. Gamestop Inc.,*
  297 F.R.D. 400 (N.D. Cal. 2013) ............................................................................. 19

*In re Mego Fin. Corp. Sec. Litig.,*
  213 F.3d 454 (9th Cir. 2000) .................................................................................... 20

- ii -

*Moore v. PetSmart, Inc.*,
No. 12-cv-03577-EJD, 2015 WL 5439000 (N.D. Cal. Aug. 4, 2015) .......................... 19

*Morris v. Ernst & Young, LLP*,
834 F.3d 975 (9th Cir. 2016) .......................................................................... 17

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) .................................................................. 10, 21

*Nitsch v. DreamWorks Animation SKG Inc.*,
No. 14-cv-4062-LHK, 2017 WL 399221 (N.D. Cal. Jan. 19, 2017) ............................ 22

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*,
688 F.2d 615 (9th Cir. 1982) .......................................................................... 13

*In re Pac. Enterprises Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) ............................................................................ 10

*Pan v. Qualcomm Inc.*,
No. 16 Civ. 1885, 2016 WL 9024896 (S.D. Cal. Dec. 5, 2016) .................................. 16

*Prudential Overall Supply v. Betancourt*,
138 S.Ct. 556 (2017) ..................................................................................... 17

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ...................................................................... 16, 21

*Ruch v. AM Retail Grp., Inc.*,
No. 14-cv-05352-MEJ, 2016 WL 1161453 (N.D. Cal. Mar. 24, 2016) ........................ 16

*Selks v. Pioneers Mem'l Healthcare Dist.*,
159 F. Supp. 3d 1164 (S.D. Cal. 2016) .............................................................. 11

*In re Tableware Antitrust Litig.*,
484 F. Supp. 2d 1078 (N.D. Cal. 2007) ............................................................. 16

*Tierno v. Rite Aid Corp.*,
No. 05-cv-02520-TEH, 2006 WL 2535056 (N.D. Cal. Aug. 31, 2006) ........................ 14

*Tijero v. Aaron Bros., Inc.*,
301 F.R.D. 314 (N.D. Cal. 2013) ..................................................................... 21

*Viceral v. Mistras Grp., Inc.*,
No. 15-cv-02198-EMC, 2016 WL 5907869 (N.D. Cal. Oct. 11, 2016) ........................ 19

*Vinole v. Countrywide Home Loans, Inc.*,
    571 F.3d 935 (9th Cir. 2009) ........................................................................... 14

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ......................................................................................... 15

*Walsh v. CorePower Yoga LLC*,
    No. 16-cv-05610-MEJ, 2017 WL 589199 (N.D. Cal. Feb. 14, 2017) .............. 13

*Walters v. Reno*,
    145 F.3d 1032 (9th Cir. 1998) ......................................................................... 15

*Wellens v. Daiichi Sankyo, Inc.*,
    No. 13-cv-00581-WHO, 2015 WL 10090564 (N.D. Cal. Oct. 16, 2015) ........... 18

*Whiteway v. FedEx Kinko's Office and Print Servs.*,
    No. 05-cv-2320-SBA, 2006 WL 2642528 (N.D. Cal. Sept. 14, 2006).......... 12, 15

*Wren v. RGIS Inventory Specialists*,
    No. 06-cv-05778-JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ............... 21

**Statutes**

29 U.S.C. § 206(d) .............................................................................. 2, 3, 8, 16

29 U.S.C. § 216(b) ...................................................................................... 2, 23

42 U.S.C. § 1981 ...................................................................................... 3, 4, 11

42 U.S.C. §§ 2000e *et seq.* ...................................................................... 3, 4, 19

Cal. Bus. & Prof. Code § 17200 *et seq.* .......................................................... 3, 4

Cal. Gov't Code § 12940 ........................................................................ 3, 4, 11

Cal. Lab. Code §§ 201, 202, 203, 204 and 558.1 ............................................ 3, 4

Cal. Lab. Code § 1197.5 ........................................................................ 3, 4, 11

Cal. Lab. Code, § 2698 *et seq.* ................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 23 ..................................................................................... *passim*

Alba Conte & Herbert B. Newberg, *Newberg on Class Actions*, (4th ed.
    2006) ......................................................................... 11, 13, 14, 16

- iv -

Economic Policy Institute, http://www.epi.org/publication/the-arbitration-
    epidemic/#epi-toc-10 ................................................................................................ 17

1      <u>**MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION**</u>

2   **I.      INTRODUCTION**

3          Plaintiffs Roxana del Toro Lopez and Ana Medina ("Plaintiffs"), on behalf of themselves

4   and the proposed Class and Collective Members,[1] and Defendant Uber Technologies, Inc.

5   ("Uber") (collectively, the "Parties"), have negotiated a Settlement of their gender, race, and

6   national origin discrimination and harassment/hostile work environment claims on behalf of 420[2]

7   female software engineers and software engineers of color[3] who work or worked for Uber during

8   the relevant time period.  Declaration of Jahan C. Sagafi in Support of Unopposed Motion for

9   Preliminary Approval of Settlement ("Sagafi Decl.") ¶ 42, Ex. 1 (Settlement Agreement).  This

10  Settlement provides both (a) a common fund of $10,000,000 for the Class Members' benefit

11  (including payment of administration costs, a PAGA award, attorneys' fees and costs, and Class

12  Representative service award payments),[4] and (b) significant injunctive relief comprising reforms

13  to Uber's employment practices, which will be overseen by Class Counsel during a three-year

14  monitoring period.

15         As part of the injunctive relief, Uber has committed to implementing and enhancing

16  initiatives pertaining to its compensation and promotion practices.  For example, Uber has agreed

17  to develop minimum standards for each class position and implement a validated promotion

18  assessment process.  It has also agreed to provide mentorship and skill development for class

19  members, to consider work done to advance diversity and inclusion in cash bonus calculations,

20  and to monitor compensation for adverse impact based upon race (including Hispanic origin) and

21

22  _____

23  [1] For ease of reference, Class and Collective Members will be referred to as "Class Members."
    [2] This number is subject to minor modification as (i) the race and gender of recent hires is
24  collected, and (ii) individuals who are two or more races currently included in this number are
    determined to be ineligible to participate because they are not in any part Latino, African
25  American, American Indian or Alaskan Native.
    [3] Herein, "of color" is defined as Latino, African American, American Indian, Alaskan Native or
26  multiracial (who are in part one of the foregoing races).
    [4] The Monitor's fees, as well as the employer's share of payroll taxes, will be borne by Uber
27  separately, and not paid out of the common fund.

28                                              - 1 -

gender at the conclusion of each performance cycle.  The specific terms of the proposed settlement are set forth in the Settlement Agreement.

The Settlement meets the requirements of Federal Rule of Civil Procedure 23(a), 23(b)(2) and (b)(3), which are applicable to class settlements, and section 16(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), which authorizes collective actions for claims under the federal Equal Pay Act ("Federal EPA").  It is the product of arms-length negotiations between the Parties and falls within the range of reasonableness.  The proposed Notice provides Class Members with the best notice practicable under the circumstances and will allow each Class Member a full and fair opportunity to evaluate the Settlement before deciding whether to participate.

## II.   **BACKGROUND**

### A.   **Plaintiffs' Factual Allegations**

Plaintiffs are both Latina software engineers. Ex. A to ECF No. 30 (First Amended Complaint ("FAC")) ¶¶ 14-15.  Plaintiff del Toro Lopez was employed at Uber as a Software Engineer 1 from May 2015 to March 2017, and as a Software Engineer 2 from March 2017 to August 2017.  *Id.* ¶ 14.  Plaintiff Medina has been employed at Uber as a Software Engineer 1 from March 2016 through the negotiation of the Settlement.  *Id.* ¶ 15.

Plaintiffs allege that Uber discriminated against them and other female software engineers and software engineers of color in the Software Engineer 1, Software Engineer 2, Senior Software Engineer 1, Senior Software Engineer 2, and Staff Software Engineer job positions ("Class Positions") by providing them with less compensation for equal work, under-leveling them at hire, promoting them at a slower rate, and providing them with systematically biased performance evaluations, as compared with their white and Asian male counterparts.  *Id.* ¶¶ 23-44.  For example, Plaintiffs allege that Uber's systems of "stack ranking" and calibration systematically disadvantaged female engineers and engineers of color, because they resulted in their receiving lower performance evaluations than their peers despite equal or better performance.  *Id.* ¶¶ 23-29. In turn, lower performance evaluations dragged down employee compensation and made it more

- 2 -

1    difficult for employees to receive the promotions they need to develop.  *Id.* ¶¶ 30-39.  Plaintiffs

2    allege that these practices violate the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d); Title VII of the

3    Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*; 42 U.S.C. § 1981 ("Section

4    1981"); the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12940;

5    42 U.S.C. § 1981 ("Section 1981"); the California Private Attorneys General Act ("PAGA"), Cal.

6    Lab. Code, § 2698 *et seq.*; the California Unfair Competition Law, Cal. Bus. & Prof. Code §

7    17200 *et seq.* ("Section 17200"); California Labor Code §§ 201, 202, 203, 204, 558.1; and the

8    California Equal Pay Act ("California EPA"), Cal. Lab. Code § 1197.5.  *Id.* ¶¶ 64-129.

9        Plaintiffs also allege that Uber allowed a hostile work environment for female software

10   engineers and software engineers of color in the Class Positions, condoned and even encouraged

11   by the highest levels of executive leadership, in violation of Title VII and FEHA.  *Id.* ¶¶ 83-88;

12   97-102.

13       **B.  <u>Procedural Background</u>**

14       This settlement arises out of two actions, one filed in this Court and another in California

15   Superior Court.  Prior to and after filing these actions, Plaintiffs' counsel conducted an in-depth

16   investigation into Plaintiffs' claims.  Sagafi Decl. ¶¶ 20, 24-26.  This investigation included an

17   exchange of data and other information with Uber, interviews with Class Members and other

18   witnesses, and extensive legal research into the applicable liability, certification, damages, and

19   other issues.  *Id.*

20       On June 22, 2017, Class Member Ingrid Avendaño provided notice to the California Labor

21   and Workforce Development Agency ("LWDA") of her intent to pursue claims against Uber

22   under the California EPA and PAGA for gender and race discrimination on behalf of all Uber

23   software engineers.  *Id.* ¶ 16.  On July 19, 2017, Plaintiff del Toro Lopez filed a similar PAGA

24   letter with the LWDA.  *Id.*

25       On October 24, 2017, Plaintiffs del Toro Lopez and Medina filed an action in the San

26   Francisco Superior Court (Case No. GCG-17-52663) alleging that Uber violated the California

27   EPA and Section 17200 and seeking injunctive and declaratory relief and PAGA penalties.  Three

28                                       - 3 -

1   days later, on October 27, 2017, Plaintiff del Toro Lopez filed this action alleging classwide

2   gender and race discrimination.

3        On November 20, 2017, Plaintiff del Toro Lopez filed a Charge of Discrimination with the

4   Equal Employment Opportunity Commission ("EEOC") on behalf of herself and other similarly

5   situated female employees and employees of color.  *Id*. ¶ 19.

6        On December 20, 2017, Uber filed a Motion to Compel Arbitration ("Arbitration

7   Motion").  ECF No. 15.  The parties stipulated to defer further briefing until after the Supreme

8   Court issued a decision in *Ernst & Young LLP v. Morris*, No. 16-300 (U.S., argued Oct. 2, 2017).

9   ECF No. 16.

10        On March 23, 2018, consistent with the parties' settlement negotiations, Plaintiffs filed a

11   proposed First Amended Complaint in this action, which added Ana Medina as a Plaintiff and

12   clarified the scope of Plaintiffs' lawsuit by adding claims for violation of the California EPA;

13   Section 17200; PAGA; Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e

14   *et seq*.; 42 U.S.C. § 1981 ("Section 1981"); the California Fair Employment and Housing Act

15   ("FEHA"), Cal. Gov't Code § 12940, and the California Labor Code §§ 201, 202, 203, 204 and

16   558.1.  FAC.

17        The state court action is stayed pending approval of this proposed Settlement and will be

18   dismissed following final approval of this proposed Settlement.  Sagafi Decl. ¶ 17.

19        **C.   Informal Discovery And Mediation**

20        After Plaintiff del Toro Lopez filed her PAGA notice, Plaintiffs and Uber began exploring

21   resolution of the claims on a classwide basis.  Sagafi Decl. ¶ 22.  The Parties entered into a tolling

22   agreement and discussed an exchange of information and mediation process.  *Id.* at ¶ 23.

23        In the months leading up to mediation, the Parties exchanged class discovery, including (1)

24   Uber's policies and procedures regarding compensation, performance reviews and promotions; (2)

25   Uber's practices regarding hiring of female engineers and engineers of color; (3) Uber's process

26   for handling complaints of harassment and discrimination, and harassment complaints received by

27   Uber from Class Members during the Title VII and FEHA limitations period; (4) Uber's

28                                         - 4 -

disciplinary process for employees accused of harassment and discrimination; and (5) diversity, fair pay, training, investigations, and other personnel process initiatives and enhancements implemented by Uber during calendar year 2017 and the first quarter of 2018 under new executive leadership. *Id.* ¶ 24.  In all, Uber produced and Plaintiffs reviewed several thousand pages of documents. *Id.*  Plaintiffs also contacted and interviewed many Class Members and potential witnesses to gather evidence to support the merits of their claims and class certification. *Id.* ¶ 20.

In addition, Uber produced data for every employee in the Class Positions (i.e., both Class Members and possible comparators) and predecessor titles, including race, gender, education, seniority, pay, performance reviews, and promotion timeline, among other data points. *Id.* ¶ 25. Plaintiffs retained an expert consultant, EconOne, to analyze the data.  Plaintiffs posed questions of Uber and its expert directly and through EconOne, to understand the data and to probe Uber's analysis of the data. *Id.* ¶ 26.  The Parties also exchanged several iterations of data analyses. *Id.*

On January 25, 2018, the Parties attended mediation with private mediator David A. Rotman. *Id.* ¶ 27.  Mr. Rotman is a highly respected mediator with a wealth of experience mediating complex employment class actions. *Id.*  Before the mediation, the parties exchanged detailed mediation statements supported by multiple pages of rigorous data analyses, along with multiple supplements. *Id.* ¶ 28.  After a full day of negotiation, the parties agreed to a settlement in principle. *Id.* ¶ 29.  The parties continued to negotiate the terms of the settlement and the scope of programmatic relief for the class over the next two months. *Id.*

**D.  <u>The Settlement Classes</u>**

For settlement purposes only, Uber agrees to certification of the following classes (collectively, the "Settlement Class"), defined as:

> (1) all women and people of color in the Software Engineer 1 or 2, Senior Software Engineer 1 or 2, or Staff Software Engineer job titles (the "Covered Software Engineer Positions") who work or worked for Uber in the United States between July 31, 2013 and entry of the preliminary approval order ("PAO") (the "Nationwide Rule 23 Class");

(2) all women and people of color in the Covered Software Engineer Positions who work or worked for Uber in California between July 31, 2013 and entry of the PAO (the "California Rule 23 Class");

(3) all women who work or worked for Uber in a Covered Software Engineer Position in the United States between July 31, 2014 and entry of the PAO who opt in (the "Federal EPA Collective"); and

(4) all women and people of color who work or worked for Uber in a Covered Software Engineer Position in California between June 22, 2016 and entry of the PAO (the "PAGA Representative Group").

Settlement Agreement, §§ 5.3-5.4.  Based on Uber's records, there are approximately 285 women and 135 men of color within the Settlement Class definition, totaling 420 Class Members.  Sagafi Decl. ¶ 30.

## III.   THE PROPOSED SETTLEMENT

### A.   Settlement Overview

The Settlement provides not only $10,000,000 in compensation for the financial and emotional harms Class Members suffered from discrimination, harassment, and hostile work environment, but also programmatic relief to ensure that Uber implements or maintains long-term, systemic change to prevent these harms in the future.  Uber has agreed to a series of reforms that change or enhance its systems for compensation, reviews, and promotions and build on diversity, fair pay, training, investigations, and other personnel process initiatives and enhancements it implemented during calendar year 2017 and the first quarter of 2018.  The reforms will also ensure that Class Members will receive the institutional support and internal resources they need to thrive in the world of computer engineering.  Moreover, the terms of the settlement provide for accountability both to Uber's workforce and to the Court, in the form of the regular reporting of demographic data and a semiannual report to Class Counsel for two years, followed by a third-anniversary report, along with the appointment of experienced Special Master Fred Alvarez.

- 6 -

1    **B.    Monetary Relief**

2    The Settlement requires Uber to pay $10,000,000 (the "Settlement Amount").  That

3    amount will cover: (a) Class Member payments; (b) a $50,000 PAGA allocation, 75% of which

4    will be paid to the California Labor and Workforce Development Agency (the "LWDA"), and

5    25% of which will be paid to the PAGA Representative Group; (c) Class Representative Service

6    Awards of $50,000 for Plaintiff del Toro Lopez and $30,000 for Plaintiff Medina; (d) Class

7    Counsel's fees up to 30% of the Settlement Amount and actual costs up to $170,000; and (e)

8    settlement administration costs, expected to be approximately $110,000.  Settlement Agreement, §

9    5.2.

10   The plan of allocation devotes the bulk of the settlement amount for Fund A (to be paid out

11   formulaically based on weeks worked, job title, time period, geography, and whether the Class

12   Member has previously signed a release of claims), with $1,900,000 set aside for Fund B (to be

13   paid out based on Claim Forms submitted by Class Members to capture non-monetary harms such

14   as harassment and emotional distress).  Specifically, Fund A will be paid out automatically to all

15   Class Members who do not opt out (with no need to submit a Claim Form), in proportion to the

16   weeks they worked during the Covered Time Periods, adjusted as follows:  (a) 1 point for

17   workweeks during the earliest one year of the liability period (to reflect the weaker claims with

18   four-year statutes of limitations), 2 points for workweeks outside of California during the three-

19   year limitations period, and 2.5 points for workweeks in California during the three-year

20   limitations period (to reflect the California EPA's stronger liability standard relative to other

21   claims), and (b) job code multipliers ranging from 1.0 to 1.8 for the five job codes at issue (to

22   reflect the higher total compensation for higher job levels).  Settlement Agreement, §§ 5.3-5.5.

23   Fund B will be paid out only to Class Members who file valid Claim Forms.  The

24   Settlement Administrator, in consultation with the parties' counsel, will score each Claim Form

25   based on objective criteria.[5]  The Claim Form makes clear that Class Counsel are available to

26   ───────────────

27   [5] The parties are not publishing the scoring criteria, to prevent gaming of the system; however, the

28                                                    - 7 -

1   assist Class Members in completing Claim Forms.  Claim Forms can be submitted on paper, by

2   email, or via a secure website maintained by the Settlement Administrator.

3         As part of the Settlement Class, Class Members who do not opt out will release the claims

4   alleged in the Complaint under applicable state and federal law and those that are based on the

5   same facts and circumstances as the claims brought in the Complaint (the "Released Claims").

6   Settlement Agreement, § 12.1.  Each member of the Federal EPA Collective who cashes her

7   settlement check will also release federal EPA claims by virtue of endorsing the check.  *Id.*, §

8   12.2.  The Class Representatives, in exchange for their Service Award payments, will execute a

9   general release of all claims.

10        The Notice Packet includes the Notice, the Claim Form, and a stamped envelope for

11  returning the Claim Form.  Notice will be sent by mail and email.  Additionally, the Settlement

12  Administrator and Class Counsel are authorized and intend to engage in supplemental efforts to

13  ensure that Class Members receive and understand the Notice.  Reminder postcards and emails

14  will be sent 30 days after the Notice is distributed to anyone who has not submitted a Claim Form

15  or opted out.  *Id.*, § 10.2.8.  Class Members will have 45 days to object and/or opt out, and 60 days

16  to submit Claim Forms.

17        **C.  Injunctive Relief**

18        In addition to monetary relief, Uber agrees to injunctive relief for a period of three years.

19  Settlement Agreement, § 3.1.  This relief includes regular reporting of diversity metrics; retaining

20  an independent consultant to work with Uber on validation of job classifications and selection

21  mechanisms; and evaluating compensation and promotions for class positions.  *Id.* at §§ 3.2-3.7.

22  Some of the key features of the injunctive relief provided for in the Settlement Agreement include:

23        a)  **Diversity Objectives and Reporting**:  Every member of Uber's executive leadership
            team will participate in a twice-annual business review with Uber's CEO relating to the
24          organization's diversity representation, pipeline, diversity growth process, and actions
            taken to increase the representation of women and of persons of color.
25

26  _____

27  parties are happy to describe the scoring criteria with the Court for *in camera* review.

28

b) **Classification and Selection Processes**:  Uber will retain an Independent Consultant to develop appropriate standards for each Class Position, including minimum standards and preferred qualifications for applicants and standards for setting new hire compensation.

c) **Evaluations, Promotions, and Compensation**:  With the help of the Independent Consultant, Uber will develop a validated promotion assessment process as well as forms and instructions to use during the performance review process.  Managers involved in the performance evaluation and promotions process will be required to participate in diversity and bias training before being permitted to participate in the evaluation and promotion process.

d) **Internal Monitoring**:  Uber will monitor base salary, bonuses, and promotions for adverse impact based upon race, Hispanic status, and gender at the conclusion of each performance cycle.

e) **Support and Mentoring**:  A mentor will be made available to every interested class member, and all new Software Engineer 1 hires will receive a check-in approximately three months after hire, including an outline of steps the employee can take to address any skill gaps that have been identified.

*Id*.

The Settlement Agreement also provides for a three-year external monitoring period by Class Counsel.  *Id*. at § 3.9.  During that time, Uber will provide written reports to Class Counsel describing progress in implementing the programmatic relief (semiannually for the first two years, and then on the third anniversary).  *Id*.  In addition, the parties have agreed that Fred Alvarez of Jones Day shall serve as Special Master, to whom Class Counsel may raise concerns about the implementation of the programmatic relief.  *Id*. at § 4.1.  The Court will maintain continuing jurisdiction during the monitoring period.  *Id*. at § 14.8.

### D.  Attorneys' Fees and Costs and Service Awards

The Settlement provides that Plaintiffs del Toro Lopez and Medina will receive Service Award payments of $50,000 and $30,000, respectively.  Settlement Agreement § 7.1.  These amounts will be separate and apart from any other recovery to which they will be entitled under the Settlement as Class Members.  *Id*. at § 7.2.  These payments are intended to compensate them for (a) the significant time and effort that Plaintiffs have spent on behalf of the Class with the prosecution of the claims, with the resulting value they have conferred to Class Members, (b) the exposure and risk they incurred by taking a leadership role in a lawsuit that has garnered broad

- 9 -

1    media coverage, along with the risk of retaliation in the employment marketplace by employers

2    that do not wish to employ someone associated with a class action, and (c) the releases they are

3    agreeing to in the Settlement, which are broader than those of other Class Members.

4        Class Counsel will also request attorneys' fees up to 30% of the settlement fund, and actual

5    costs reasonably incurred up to $170,000.  Settlement Agreement, §§ 5.2.5-5.2.6.  In litigating this

6    matter, Class Counsel interviewed many potential witnesses, reviewed thousands of pages of

7    documents produced by Uber, undertook a careful analysis of detailed pay and promotion data,

8    conducted extensive legal and factual research of the claims at issue, zealously represented

9    Plaintiffs during the mediation and post-mediation settlement discussions, and otherwise

10   aggressively pursued the case to achieve an excellent result for Class Members.  Class Counsel

11   will submit their fee and cost request, along with the request for service payments, 14 days before

12   the objection deadline.  *Id.* at § 6.1.

13   **IV.    <u>ARGUMENT</u>**

14       Courts in the Ninth Circuit recognize a "strong judicial policy that favors settlements,

15   particularly where complex class action litigation is concerned."  *Class Plaintiffs v. City of Seattle*,

16   955 F.2d 1268, 1276 (9th Cir. 1992).  This policy recognizes that "[p]arties represented by

17   competent counsel are better positioned than courts to produce a settlement that fairly reflects each

18   party's expected outcome in litigation."  *In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 378 (9th

19   Cir. 1995).

20       Settlement approval "involves a two-step process in which the Court first determines

21   whether a proposed class action settlement deserves preliminary approval and then, after notice is

22   given to class members, whether final approval is warranted."  *Nat'l Rural Telecomm. Coop. v.

23   DirecTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004); *see also* Manual for Complex Litigation §§

24   21.632-634 (4th ed. 2004).  Preliminary approval requires two elements: <u>First</u>, the court must

25   determine that the settlement class meets the requirements for class certification if it has not yet

26   been certified (Fed. R. Civ. P. 23(a) and (b)); and <u>second</u>, the court must determine that the

27   settlement is fair, reasonable, and adequate (Fed. R. Civ. P. 23(e)(2)).  *Hanlon v. Chrysler Corp.*,

28                                              - 10 -

1    150 F.3d 1011, 1025-26 (9th Cir. 1998).  Similarly, approval of a federal EPA settlement requires

2    the Court to determine whether "the settlement represents a fair and reasonable resolution of a

3    bona fide dispute."  *Selks v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D.

4    Cal. 2016); *see also Coates v. Farmers Grp., Inc.*, No. 15-cv-01913-LHK, 2016 WL 8223347, at

5    *3 (N.D. Cal. June 27, 2016) (granting preliminary approval of a proposed settlement that

6    included federal EPA claims).

7        A.    <u>Certification of the Rule 23 Class Is Proper.</u>

8        For settlement purposes, the Parties agree to conditional certification of the class.  "The

9    validity of use of a temporary settlement class is not usually questioned."  Alba Conte & Herbert

10   B. Newberg, 4 Newberg on Class Actions § 11:22 (4th ed. 2002).

11       Here, the relevant factors weigh in favor of conditional certification.

12           1.    **Rule 23(a) Is Satisfied.**

13       <u>First</u>, numerosity is met because joinder of Class Members would be impractical.  Fed. R.

14   Civ. P. 23(a)(1).  The class of 420 individuals readily meets this standard.

15       <u>Second</u>, commonality is met because "there are questions of law or fact common to the

16   class." Fed. R. Civ. P. 23(a)(2).  In examining the commonality factor, the Supreme Court has

17   stated that the focus is on whether there are common issues of fact among class members and

18   whether class treatment will "generate common answers apt to drive the resolution of

19   the litigation."  *Abdullah v. U.S. Sec. Associates,* 731 F.3d 952, 957 (9th Cir. 2013) (citing *Wal-*

20   *Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). Here, there are numerous common

21   questions, such as whether Uber's policies and practices discriminate against Class Members,

22   whether they violate Title VII, Section 1981, the California EPA, the California Labor Code, the

23   UCL, and FEHA, whether Uber's performance evaluation, compensation, promotion, and job

24   assignment systems are discriminatory, whether harassment and a hostile work environment

25   existed, and what remedies are warranted.

26       <u>Third</u>, typicality is satisfied.  Rule 23 typicality requires a finding that the "claims or

27   defenses of the representative parties [be] typical of the claims or defenses of the class."  Fed. R.

28                                          - 11 -

Civ. P. 23(a)(3).  Typicality "focuses on the similarity between the lead plaintiff's legal theories and those of the people he or she purports to represent." *Whiteway v. FedEx Kinko's Office and Print Servs.*, No. 05-cv-2320-SBA, 2006 WL 2642528, at *6 (N.D. Cal. Sept. 14, 2006); *Hanlon*, 150 F.3d at 1020.  Here, Plaintiffs' claims are typical because they challenge the same policies and practices as the Class Members' claims.

Fourth, Plaintiffs have fairly and adequately protected the interests of the class, and will continue to do so.  Fed. R. Civ. P. 23(a)(4).  The adequacy requirement is met where the class representative: (1) has common, and not antagonistic, interests with unnamed class members, and (2) will vigorously prosecute the interests of the class through qualified counsel.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997); *Hanlon*, 150 F.3d at 1020.  Here, Plaintiffs, like the Class Members they seek to represent, share an interest in vigorous prosecution of the claims and in seeing Uber overhaul its pay and promotion practices.

As Latina women, Plaintiffs del Toro Lopez and Medina are adequate representatives of the race and gender classes and are dedicated to aggressively prosecuting those claims in equal measure.  *See I.M.A.G.E. v. Bailar*, 78 F.R.D. 549, 558 (N.D. Cal. 1978) (Wollenberg, J.) (holding female Latina plaintiff was adequate class representative of both gender and race classes).  Plaintiffs' alleged harms, that female engineers and engineers of color were paid less and promoted at lower rates than their white or Asian male counterparts and subject to harassment because of their gender, race, and national origin, come from the same source—*i.e.*, Uber's alleged culture of bias against engineers who are not white or Asian males, and its biased performance measures that systematically disadvantaged these groups. *Curtis-Bauer v. Morgan Stanley & Co.*, No. 06-cv-3903-TEH, 2008 WL 4667090, at *7 (N.D. Cal. Oct. 22, 2008) (rejecting argument that a single class was inappropriate where "the central discriminatory practice at issue (account distribution) affected both groups in the same way, and there was no obvious conflict between the two"); *Adams v. Pinole Point Steel Co.*, No. 92-cv-1962-MHP, 1994 WL 515347, at *8 (N.D. Cal. May 18, 1994) (holding African American female was an adequate representative of a race and gender class absent actual evidence of conflict); *Edmondson v. Simon*, 86 F.R.D. 375, 382 (N.D.

- 12 -

1   Ill. 1980) (same); *see also*, 1 *Newberg on Class Actions* § 3:58 (5th ed.) ("Conflicts that are

2   merely speculative or hypothetical will not affect the adequacy inquiry"); *Donaldson v. Pillsbury*

3   *Co.,* 554 F.2d 825, 830-31 (8th Cir. 1977) (holding class of women and African Americans was

4   appropriate where the class representative's allegations of discrimination, "while factually

5   differing in detail from those of other employees . . . [were] plainly rooted in the same bias

6   asserted as the source of the discrimination").[6]

7          The interests of Plaintiffs and Class Members in seeking compensation for and overhaul of

8   Uber's compensation, promotions, and job assignment systems is the same.  There is no inherent,

9   and indeed Defendant has not raised, a potential or actual conflict between the gender and race

10  classes.

11         In addition, Plaintiffs are represented by adequate counsel.  Class Counsel are highly

12  experienced in prosecuting employment discrimination class actions.  As detailed further in the

13  Sagafi Decl., Class Counsel specialize in representing employees in complex employment class

14  actions, with a track record of obtaining superior results for their clients.  *See, e.g.*, *Walsh v.*

15  *CorePower Yoga LLC*, No. 16-cv-05610-MEJ, 2017 WL 589199, at *8 (N.D. Cal. Feb. 14, 2017)

16  ("Plaintiff's counsel have a proven track record in the prosecution of class actions as they have

17  successfully litigated and tried many major class action cases."); *Jaffe v. Morgan Stanley & Co.*,

18  No. 06-cv-3903-TEH, 2008 WL 346417, at *8 (N.D. Cal. Feb. 7, 2008) (Class Counsel have

19  "extensive experience and expertise in prosecuting employment discrimination class action

20  cases"); *see also* Sagafi Decl. ¶¶ 4-15.  There is no inherent or actual conflict in proposed Class

21  Counsel representing the entire class, since no one sub-group recovers at the expense of another.  1

22

---

23  [6] In the event conflicts should arise between the race and gender classes, measures can be taken to

24  protect their relative interests, such as dividing the Class into subclasses. *See I.M.A.G.E.*, 78 F.R.D
    at 558 (holding that conflicts were speculative in the present, and should any arise, "the class can

25  be subdivided"); *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*, 688 F.2d 615,
    621 (9th Cir. 1982) (dividing race and sex class case into two subclasses but determining that

26  "[n]o adversity between subclasses or between the various racial minority groups was perceived . .
    . that would necessitate representation by separate legal counsel"); 1 *Newberg on Class Actions* §

27  3:58 (5th ed.).

28                                                    - 13 -

1   Newberg on Class Actions § 3:75 (5th ed.) ("[i]n general, class counsel may represent multiple

2   sets of litigants—whether in the same action or in a related proceeding—so long as the litigants'

3   interests are not inherently opposed").

4          For these reasons, Class Counsel satisfy the adequacy requirement of Rule 23(a).

5                  **2.       Certification Is Proper Under Rule 23(b)(3).**

6          Rule 23(b)(3) requires that common questions "predominate over any questions affecting

7   only individual members, and that a class action is superior to other available methods for fairly

8   and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Both of these

9   requirements are met here.

10          The proposed Rule 23 Class is sufficiently cohesive to satisfy predominance.  *Amchem*,

11   521 U.S. at 623.  Predominance does not require "that each element of [a plaintiff's] claim [is]

12   susceptible to classwide proof."  *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469

13   (2013) (internal quotation marks and citation omitted).  Common questions may predominate

14   "even though certain class members' circumstances var[y] and some of the defendant's practices

15   would have to be proven by anecdotal testimony."  *Delagarza v. Tesoro Ref. & Mktg. Co.*, No. 09-

16   cv-5803-EMC, 2011 WL 4017967, at *12 (N.D. Cal. Sept. 8, 2011).  Here, common issues

17   predominate because Plaintiffs and the Class Members shared one of five related software

18   engineer positions and were subject to common policies and practices regarding pay, performance

19   reviews, and promotions.  *See Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 946 (9th

20   Cir. 2009) (citing cases) (focusing on "centralized control in the form of standardized hierarchy"

21   and "standardized corporate policies and procedures governing employees"); *Ellis v. Costco*

22   *Wholesale Corp.*, 285 F.R.D. 492, 538 (N.D. Cal. 2012) (Chen, J.) (noting "specific employment

23   practices that have caused a disparity in promotions").  Superiority rests on factors like individual

24   class members' desire to bring individual actions and the utility of concentrating the litigation in

25   one forum.  Fed. R. Civ. P. 23(b)(3).  Here, "there is no indication, that class members seek to

26   individually control their cases, that individual litigation is already pending in other forums, or

27   that this particular forum is undesirable for any reason."  *Tierno v. Rite Aid Corp.*, No. 05-cv-

28                                          - 14 -

02520-TEH, 2006 WL 2535056, at *11 (N.D. Cal. Aug. 31, 2006); *Amchem*, 521 U.S. at 615.

The Class Members likely lack the resources and certainly lack the incentives to secure experienced, qualified counsel, or to see litigation (or arbitration) through to completion on their own.  It is generally not rational to invest hundreds of thousands of dollars in expert and other costs plus scores or hundreds of hours of time and the stress inherent in litigation for a chance to possibly recover money against a powerful corporation.  In addition, hundreds of individual lawsuits or arbitrations would be wasteful and inefficient.  *See, e.g.*, *Whiteway*, 2006 WL 2642528, at *11.  Because the class mechanism will achieve economies of scale for Class Members, conserve judicial resources, and preserve public confidence in the system by avoiding repetitive proceedings and preventing inconsistent adjudications, superiority is met.

### 3.      Rule 23(b)(2) is Satisfied.

Under Rule 23(b)(2) class certification, "it is sufficient if class members complain of a pattern or practice that is generally applicable to the class," even if not all class members have been injured by the challenged practice.  *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998); *Civil Rights Educ. & Enf't Ctr. v. RLJ Lodging Tr.*, No. 15-cv-0224-YGR, 2016 WL 314400, at *9 (N.D. Cal. 2016) (Rule 23(b)(2) settlement class certified); *Garcia v. Johnson*, No. 14-cv-01775-YGR, 2015 WL 13439762, at *1 (N.D. Cal. Aug. 20, 2015) (same); *Bates v. United Parcel Serv.*, 204 F.R.D. 440, 447-48 (N.D. Cal. 2001) (Henderson, J.).

Here, Plaintiffs seek classic 23(b)(2) injunctive relief to modify Uber's employment practices and eradicate discrimination.  *See Civil Rights Educ. & Enf't Ctr*, 2016 WL 314400, at *9 ("The Supreme Court in *Wal-Mart* recognized that "'[c]ivil rights cases against parties charged with unlawful, class-based discrimination are prime examples' of what (b)(2) is meant to capture.") (internal quotations omitted); *see also Garcia v. Johnson*, No. 14-cv-01775-YGR, 2015 WL 13387594, at *1 (N.D. Cal. Oct. 27, 2015) (approving prospective relief including defendant modifying practices, producing periodic implementation reports to class counsel and incorporating changes into training guides for employees); *Curtis-Bauer*, 2008 WL 4667090, at *5 (programmatic relief in race and gender disparate impact case approved).

- 15 -

**4.      Plaintiffs' Counsel Should Be Appointed as Class Counsel.**

Adequacy of class counsel depends on (1) work performed on the matter, (2) experience, (3) knowledge of the law, and (4) resources counsel can commit.  Fed. R. Civ. P. 23(g)(1)(A). Class Counsel readily satisfy these criteria, as set forth above.  *Supra*, § IV.A.1; *see also* Sagafi Decl. ¶¶ 4-15.

**B.      Certification of the Federal EPA Collective Is Proper.**

Certification of the Federal EPA Collective is appropriate for the same reasons that Rule 23 certification is appropriate.  *See supra*, § IV(A); *see also Pan v. Qualcomm Inc.*, No. 16 Civ. 1885, 2016 WL 9024896, at *7 (S.D. Cal. Dec. 5, 2016) (EPA collective conditionally certified where "Plaintiffs' requested EPA collective action arose from the same factual circumstances [] i.e., the allegedly discriminatory [employer] policies and practices").

**C.      The Settlement Is Fair, Reasonable, And Adequate.**

Once the Court has found class and collective certification proper, the next step of the preliminary approval process is to assess whether the settlement is "fundamentally fair, adequate, and reasonable."  *Hanlon*, 150 F.3d at1026.  Typically, the first-stage analysis inquires into "obvious deficiencies," with preliminary approval granted if the settlement is non-collusive and within the range of possible final approval.  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (Walker, J.); *see also Ruch v. AM Retail Grp., Inc*., No. 14-cv-05352-MEJ, 2016 WL 1161453, at *11 (N.D. Cal. Mar. 24, 2016) (focusing preliminary approval analysis on "non-collusive negotiations," the lack of "obvious deficiencies," and "preferential treatment," and being "within the range of possible approval"); Alba Conte & Herbert B. Newberg, 4 *Newberg on Class Actions*, § 11.41 (4th ed. 2006).

When considering whether to grant approval, courts often "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."  *Rodriguez v. W. Publ'g Corp*., 563 F.3d 948, 965 (9th Cir. 2009).  Courts may also assess the following factors, which are assessed in greater detail at final approval.  These factors are addressed below: (1) "the strength of the plaintiffs' case," "the risk, expense, complexity, and likely duration of further litigation," and

- 16 -

1    "the risk of maintaining class action status throughout the trial," (2) "the amount offered in

2    settlement," (3) "the extent of discovery completed and the stage of the proceedings," and (4) "the

3    experience and views of counsel." *Hanlon*, 150 F.3d at 1026.  In addition, courts review "the

4    presence of a governmental participant" and "the reaction of the class members to the proposed

5    settlement." *Id.*  The former is not relevant, and the latter cannot be gauged at this stage.

6              **1.      Plaintiffs' Case Faced Significant Hurdles on Liability, Certification, And Damages.**

7

8              "Approval of a class settlement is appropriate when 'there are significant barriers plaintiffs

9    must overcome in making their case.'"  *Betancourt v. Advantage Human Resourcing, Inc.*, No. 14-

10   cv-01788-JST, 2016 WL 344532, at *4 (N.D. Cal. Jan. 28, 2016).  Plaintiffs face substantial

11   obstacles to full recovery.

12             <u>First</u>, forced individual arbitration of all non-PAGA claims would have been likely.

13   Experts believe that *Morris v. Ernst & Young, LLP*, 834 F.3d 975 (9th Cir. 2016), *cert. granted*,

14   137 S. Ct. 809 (2017) will be overturned, allowing companies like Uber to require employees to

15   "consent" to individual arbitration as a condition of employment.[7]  A recent study reports that

16   arbitration leads to substantively worse outcomes for plaintiffs, especially in employment law

17   cases.[8]  This slanted playing field is in part due to employers' repeat-player advantage when they

18   regularly appear before the same arbitrators,[9] as the employer generally pays the arbitrator's

19   earnings and is able to make use of the information asymmetry (different plaintiffs represented by

20   different counsel cannot collaborate due to confidentiality restrictions, but the single defendant

21   knows about all of its own arbitrations).  Uber would benefit from these advantages in a series of

22   individual arbitrations.

23   _____

24   [7] In addition, the Supreme Court's denials of certiorari regarding PAGA arbitrability create
     uncertainty.  *See, e.g.*, *Prudential Overall Supply v. Betancourt*, 138 S.Ct. 556 (2017).

25   [8] "The arbitration epidemic," Economic Policy Institute, http://www.epi.org/publication/the-
     arbitration-epidemic/#epi-toc-10, *last visited* March 13, 2018 (quantifying lower chances of

26   prevailing (21% vs. 36% vs. 57%) and lower average damages ($23,548 vs. $143,497 vs.

27   $328,008) between arbitration, federal court, and state court, respectively, in employment cases).
     [9] *Id.*

28                                            - 17 -

<u>Second</u>, liability is far from guaranteed, because any statistical analysis would suffer from a small sample size (approximately 420 Class Members in five job titles in many locations across the country), making a showing of statistical significance difficult, and Uber could point to differences in education, training, and performance to attempt to explain away any differences. Relatedly, much of Plaintiffs' strongest evidence is further in the past, as Uber has taken substantial steps over the past year to reform its employment practices to eliminate discrimination and harassment and remove from the work force those whose conduct is not in line with its policies. In addition, Class Members' non-California claims and older California claims would not benefit from California's one-year PAGA statute or from California's recently amended EPA, which has a more plaintiff-friendly liability standard.

<u>Third</u>, Plaintiffs faced obstacles in winning class certification, because of the multiple job titles, project teams, geographic locations, management practices and individual performance differences at issue. Emotional distress class actions, while certifiable, *see, e.g., Wellens v. Daiichi Sankyo, Inc.*, No. 13-cv-00581-WHO, 2015 WL 10090564, at *5 (N.D. Cal. Oct. 16, 2015) ($8.2m common fund for gender discrimination case approved, including opt-in process for emotional distress claims), face obstacles in litigation because the details of each person's circumstances may require individualized inquiries, *see, e.g.*, *Berndt v. California Dep't of Corrections*, No. 03-cv-3174-PJH, 2012 WL 950625, at * 13 (N.D. Cal. Mar. 2, 2012) ("emotional distress damages to every class member will depend on the individual incidents" so "potential for multiple mini-trials, even solely as to damages, further weakens the case for a finding of superiority"); *D.C. v. Cty. of San Diego*, No. 15 Civ. 1868, 2017 WL 5177028, at *15 (S.D. Cal. Nov. 7, 2017) ("injury to human dignity and emotional distress with respect to these claims will vary from person to person").

### 2.    The Settlement Amount Is Appropriate.

"[P]erhaps the most important factor" courts consider in determining whether to grant preliminary approval is "plaintiffs' expected recovery balanced against the value of the settlement

- 18 -

1   offer." *Cotter v. Lyft, Inc.*, 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016) (Chhabria, J.) (internal

2   quotation marks omitted).

3   　　　Here, the $10 million settlement equates to approximately $23,800 per class member,

4   which is greater than comparable discrimination class action settlements.  *See, e.g.*, *Calibuso v.*

5   *Bank of Am. Corp.*, 299 F.R.D. 359, 368 (E.D.N.Y. 2014) ($7,800 per class member for female

6   financial advisors); *Curtis-Bauer v. Morgan Stanley & Co.*, No. 06-cv-3903-TEH, 2008 WL

7   4667090, at *4 (N.D. Cal. Oct. 22, 2008) ($12,000 per class member for female financial

8   advisors); *Gonzalez v. Abercrombie* No. 03-cv-02817-SI (N.D. Cal.) ECF No. 125 ($2,000 per

9   class member for store salespeople and applicants).

10   　　　Looked at another way, Plaintiffs calculated approximately $2,100,000 in total possible

11   PAGA penalties (only 25%, or $525,000, of which would have gone to the individual Class

12   Members), assuming the Court were to exercise its discretion to award maximum penalties.  *See*

13   Cal. Lab. Code § 2699(e)(2) (affording courts discretion to "award a lesser amount than the

14   maximum"); Sagafi Decl. ¶ 34.  The Settlement provides 19 times as much relief as would be

15   recoverable via a PAGA-only action because it compensates Class Members for additional claims

16   (e.g., Title VII, EPA, etc.).  Therefore, the $50,000 PAGA allocation represents 2.4% of the

17   potential PAGA recovery and 0.5% of the total settlement amount, in line with applicable

18   precedent.  *See Viceral v. Mistras Grp., Inc.*, No. 15-cv-02198-EMC, 2016 WL 5907869, at *8

19   (N.D. Cal. Oct. 11, 2016) (PAGA allocation of 0.15% of $12,952,000 settlement); *Hopson v.*

20   *Hanesbrands Inc.*, No. 08-cv-0844-EDL, 2009 WL 928133, *9 (N.D. Cal. Apr. 3, 2009) (0.49% of

21   $408,420 settlement); *Moore v. PetSmart, Inc.*, No. 12-cv-03577-EJD, 2015 WL 5439000, *8

22   (N.D. Cal. Aug. 4, 2015) (0.5% of $10,000,000 settlement); *Lusby v. Gamestop Inc.*, 297 F.R.D.

23   400, 407 (N.D. Cal. 2013) (Lloyd, J.) (0.67% of $750,000 settlement).

24   　　　The $10,000,000 settlement is a reasonable value in light of total potential damages,

25   calculated by Plaintiffs to be $46.9 million, excluding liquidated damages and compensatory and

26   punitive damages for potential sexual harassment and hostile work environment claims.  (This

27   amount exceeds, by well over an order of magnitude, Uber's estimate of potential exposure.

28

- 19 -

1   Sagafi Decl. ¶ 37.)  The total amount comprised:  approximately (1) $6.7 million for

2   discrimination in on-hire compensation, (2) $3.9 million for discrimination in compensation on an

3   ongoing basis, (3) $1.4 million for discrimination in delayed promotions, and (4) $34.9 million in

4   discrimination in job title assignment at hire. *Id*. ¶ 34.  Uber vigorously challenged each of these

5   components, arguing in particular that on-hire compensation often takes into account highly

6   individualized circumstances of new hires who have founded a startup, developed new technology,

7   possess specialized skills that are difficult to recruit to Uber, and that job assignment discrepancies

8   could be explained by individual educational and employment backgrounds as well as differences

9   in performance.

10          Importantly, the extensive injunctive relief, while difficult to value with precision, is

11  extremely valuable.  Assuming that the injunctive relief prevents $20,000 in harm per Class

12  Member for the next five years, it is worth an additional $39,600,000 to the Class Members.

13          Thus, the $10,000,000 common fund, plus the injunctive relief, constitutes appropriate

14  compensation for the 420 Class Members, in light of the total amount they could have recovered

15  in a class action and individual arbitrations.

16                          **3.        The Extent of Discovery Supports Settlement.**

17          A settlement requires adequate discovery.  The touchstone of the analysis is whether "the

18  parties have sufficient information to make an informed decision about settlement," including

19  formal and informal discovery.  *In re Mego Fin. Corp. Sec. Litig*., 213 F.3d 454, 459 (9th Cir.

20  2000).

21          Here, Plaintiffs have thoroughly probed the factual basis for Class Members' claims.  Both

22  before and during settlement negotiations, Class Counsel interviewed Class Members and other

23  witnesses, who provided extensive information regarding Uber's compensation structure, policies

24  regarding performance reviews and promotions, processes for handling complaints of harassment

25  and discrimination, and disciplinary policy, as well as describing their own individual experiences

26  with harassment.  Sagafi Decl. ¶ 20.  In informal discovery, Class Counsel reviewed and analyzed

27  personnel files, corporate policy documents, training for employees and managers, annual

28                                                    - 20 -

1  information on the performance and compensation review processes, emails, and internal

2  complaints. *Id*. ¶ 24. They also worked closely with their experts to accurately calculate various

3  types of potential discrimination in compensation and promotions. *Id*. ¶¶ 25-26. Class Counsel

4  also probed Uber's expert's analyses through discussions involving counsel and both sets of

5  experts. *Id*. ¶ 26. Thus, Plaintiffs adequately investigated the facts.

6          **4.**        **Counsel's Experience And Views Support Approval.**

7        "Great weight is accorded to the recommendation of counsel, who are most closely

8  acquainted with the facts of the underlying litigation." *Nat'l Rural Telecomms. Coop. v.*

9  *DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (internal quotations omitted). "Parties

10  represented by competent counsel are better positioned than courts to produce a settlement that

11  fairly reflects each party's expected outcome in litigation." *Rodriguez v. W. Publ'g Corp.*, 563

12  F.3d 948, 967 (9th Cir. 2009) (internal quotations and modifications omitted).

13        Based on their extensive experience, Class Counsel believe that the Settlement is fair,

14  reasonable, and adequate. Class Counsel specialize in prosecuting nationwide employment class

15  actions, and over the past many years have successfully—and unsuccessfully—litigated many

16  such cases, putting them in a strong position to weigh the strengths and weaknesses of Plaintiffs'

17  claims. Sagafi Decl. ¶¶ 4-15.

18          **5.**        **The Parties Participated in Arms-Length Negotiations Before An**
19                  **Experienced Neutral Mediator.**

20        A settlement reached "in good faith after a well-informed arms-length negotiation" is

21  presumed to be fair. *Fernandez v. Victoria Secret Stores, LLC*, No. 06 Civ. 04149, 2008 WL

22  8150856, at *4 (C.D. Cal. July 21, 2008); *Wren v. RGIS Inventory Specialists*, No. 06-cv-05778-

23  JCS, 2011 WL 1230826, at *6 (N.D. Cal. Apr. 1, 2011) ; *see also Tijero v. Aaron Bros., Inc.*, 301

24  F.R.D. 314, 325 (N.D. Cal. 2013) (Armstrong, J.) (participation in private mediation "support[s]

25  the conclusion that the settlement process was not collusive"). Here, Mr. Rotman's oversight of

26  the mediation is extremely telling; Class Counsel are aware of no mediator in the country with a

27

28                                              - 21 -

1   stronger reputation for excellence, diligence, and care in settling complex employment class

2   actions.  Sagafi Decl. ¶ 27.

3   **D.     The Proposed Notice Is Clear And Adequate.**

4          The proposed Notice is the "best notice that is practicable under the circumstances."  Fed.

5   R. Civ. P. 23(c)(2)(B), and is "reasonable," Fed. R. Civ. P. 23(e)(1).  The Notice and Claim Form

6   are consistent with modern best practices set forth by the Federal Judicial Center (based on

7   examples at www.fjc.gov).  The Notice and Claim Form make clear that both the Settlement

8   Administrator and Class Counsel are available to assist Class Members.  The Notice explains that

9   Class Members have 45 days to object or opt out, and 60 days to submit a Claim Form.

10  Settlement Agreement, Ex. A; s*ee also Nitsch v. DreamWorks Animation SKG Inc*., No. 14-cv-

11  4062-LHK, 2017 WL 399221, at *3 (N.D. Cal. Jan. 19, 2017) (approving 45-day opt-out period).

12  **V.     A FINAL APPROVAL HEARING SHOULD BE SCHEDULED.**

13         Plaintiffs, in consultation with Uber, propose the following schedule for finalizing and

14  implementing the Settlement:

| Event | Proposed Date |
|---|---|
| Preliminary Approval Hearing | April 10, 2018[10] |
| Entry of Preliminary Approval Order (assumed for purposes of calculating subsequent dates) | April 17, 2018 |
| Uber to provide class list data to Administrator | May 2, 2018 |
| Notice disseminated by Settlement Administrator | May 22, 2018 |
| Reminder notices | June 21, 2018 |
| Fee and Service Award motions due | June 22, 2018 |
| Deadline for Class Members to submit requests for exclusion and/or objections | July 6, 2018 |
| Deadline for Class Members to submit Claim Forms | July 23, 2018 |
| Settlement Administrator submits final report to Parties | July 30, 2018 |
| Final Approval motion due | July 31, 2018 |

[10] The parties are filing a stipulation today requesting that the Court hear this Motion on 15 days'
notice (as opposed to the alternative of 36 days' notice), on the logic that there is no reason to
expect opposition, and the sooner the Motion is heard, the sooner the monetary relief can be paid
out.

- 22 -

| Event | Proposed Date |
|---|---|
| Uber decides whether to rescind the Settlement | August 9, 2018 |
| Final approval, Service Award fee reply briefs | August 21, 2018 |
| Final Approval Hearing | September 4, 2018 |
| Effective Date (assuming no appeals) (assumed for purposes of calculating subsequent dates) | September 11, 2018 |
| Funding of Settlement | September 21, 2018 |
| Checks mailed to Class Members | October 21, 2018 |
| Approximate deadlines for Class Counsel to report to the Court regarding implementation of the Settlement (to be formally set at the Final Approval Hearing) | Approx. December 21, 2018 and approx. June 2019. |

## VI. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court: (1) conditionally certify the settlement classes; (2) preliminarily approve the Settlement pursuant to Fed. R. Civ. P. 23(c) and (e) and section 216(b) of the FLSA; (3) appoint Plaintiffs as the Class Representatives, their counsel as Class Counsel, and JND Legal Administration as Settlement Administrator; (4) set the deadlines for filing claims, written exclusions, or objections to the Settlement; (5) approve the forms of notice to the class of the settlement and the Claim Form; and (6) schedule a hearing on the final approval of the Settlement.

DATED: March 26, 2018                    Respectfully submitted,

By: */s/ Jahan C. Sagafi*

Jahan C. Sagafi (SB#  224887)
Rachel W. Dempsey (SB# 310424)
Laura Iris Mattes (SB# 310594)
OUTTEN & GOLDEN LLP
One Embarcadero Center, 38th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
E-mail: jsagafi@outtengolden.com
E-mail: rdempsey@outtengolden.com
E-mail: imattes@outtengolden.com

Adam T. Klein (*pro hac vice* forthcoming)

- 23 -

Rachel M. Bien (SB# 315886)
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060
E-mail: atk@outtengolden.com
E-mail: rmb@outtengolden.com

*Counsel for Plaintiffs and the Proposed Class and*
*Collective Members*

- 24 -