# Exhibit 1

Jahan C. Sagafi (SB# 224887)
Rachel W. Dempsey (SB# 310424)
Laura Iris Mattes (SB# 310594)
OUTTEN & GOLDEN LLP
One Embarcadero Center
Thirty-Eighth Floor
San Francisco, California  94111
Telephone:  (415) 638-8800
Facsimile:  (415) 638-8810
jsagafi@outtengolden.com
rdempsey@outtengolden.com
imattes@outtengolden.com

Adam T. Klein (*pro hac vice* forthcoming)
Rachel M. Bien (SB# 315886))
OUTTEN & GOLDEN LLP
685 Third Avenue
Twenty-Fifth Floor
New York, New York  10017
Telephone:  (212) 245-1000
Facsimile:  (646) 509-2060
atk@outtengolden.com
rmb@outtengolden.com

*Attorneys for Plaintiffs and Proposed Class and
Collective Members*

Nancy L. Abell (SB# 088785)
PAUL HASTINGS LLP
515 South Flower Street
Twenty-Fifth Floor
Los Angeles, California  90071-2228
Telephone:  (213) 683-6000
Facsimile:  (213) 627-0705
nancyabell@paulhastings.com

Paul W. Cane, Jr. (SB# 100458)
Jullie Z. Lal (SB# 279067)
PAUL HASTINGS LLP
101 California Street
Forty-Eighth Floor
San Francisco, California  94111
Telephone:  (415) 856-7000
Facsimile:  (415) 856-7100
paulcane@paulhastings.com
jullielal@paulhastings.com

*Attorneys for Defendant
UBER TECHNOLOGIES, INC.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| ROXANA DEL TORO LOPEZ and ANA MEDINA, on behalf of themselves, and all others similarly situated,<br><br>Plaintiffs,<br>vs.<br><br>UBER TECHNOLOGIES, INC.,<br><br>Defendant. | Case No. 4:17-cv-06255-YGR<br><br>**COLLECTIVE, CLASS ACTION AND PAGA REPRESENTATIVE ACTION SETTLEMENT AGREEMENT**<br><br>Room:   1, 4th Floor<br>Judge:   Hon. Yvonne Gonzalez Rogers<br><br>Trial Date:   None Set<br>Date Action Filed:   October 27, 2017 |

Subject to approval by the United States District Court for the Northern District of California, this Collective, Class Action and PAGA Representative Action Settlement Agreement sets forth the full and final terms by which Defendant Uber Technologies, Inc. ("Uber") and the Named Plaintiffs and Class Representatives, Roxana del Toro Lopez and Ana Medina, on behalf of themselves, the State of California, and the Rule 23 Class and the Collective Action Plaintiffs as defined below, have settled and resolved all claims that have been raised in the Litigation.

## **RECITALS**

WHEREAS, an amended collective, class and representative action Complaint ("Complaint") was filed on March 22, 2018, alleging (i) gender, race and national origin discrimination in compensation, raises, job assignments, job code placement, evaluations and ratings, promotions, demotions and other terms and conditions of employment; (ii) unequal pay; (iii) failure to timely pay all wages due; (iv) unfair competition; and (v) gender, race and national origin harassment;

WHEREAS, Uber, under new executive-level leadership, implemented many new diversity and inclusion initiatives in 2017, implemented a new pay structure, made compensation adjustments, and implemented other new employment practices that are consistent with the objectives of this Agreement;

WHEREAS, Uber denies and continues to deny all of the allegations made and has denied and continues to deny that it is liable or owes damages to anyone with respect to the alleged facts or causes of action asserted.  Nonetheless, without admitting or conceding any liability or damages, the Parties have agreed to settle the lawsuit on the terms and conditions set forth herein to avoid the burden and expense of continuing litigation;

WHEREAS, the Parties engaged in a substantial pre-litigation and post-litigation exchange of documents, data and analyses, had joint meetings with experts, and had a series of meetings to explore their respective factual positions and arguments;

WHEREAS, the Parties engaged in settlement negotiations in January 2018 before David Rotman, Esq., of Rotman Mediation Services, an experienced mediator who is skilled in the resolution of complex class actions, including discrimination and fair pay class and collection action lawsuits;

WHEREAS, the Parties and their counsel recognize that, in the absence of an approved settlement, they would face a long litigation course, including extensive, costly and time consuming discovery, a motion for class certification under Federal Rule of Civil Procedure 23, a motion for certification and if certified, decertification, of the collective action, motions for summary judgment, and trial and appellate proceedings that would consume time and resources and present each of them with ongoing litigation risks and uncertainties;

WHEREAS, the Parties wish to avoid these risks and uncertainties, as well as the consumption of time and resources, through settlement pursuant to the terms and conditions set forth herein;

WHEREAS, based upon their analysis and evaluation of a number of factors, and recognizing the substantial risks of continued litigation, including the possibility that the litigation, if not settled now, might result in no recovery or a recovery that is less favorable to the Plaintiffs, counsel for Plaintiffs is satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of Plaintiffs, Rule 23 Class Members, and the Collective Action Plaintiffs;

WHEREAS, the class representatives believe that the settlement set forth herein serves the best interests of Class Members based on all the facts and circumstances, including the risk of significant delay and the uncertainty of class certification, as it provides prompt relief for class Members;

WHEREAS, it is the desire of the Parties to fully, finally, and forever settle, compromise, and discharge all disputes and claims arising from or related to the litigation which exist between them and between the named Plaintiffs, the Rule 23 Class Members, the Collective Action Plaintiffs, and the released parties;

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth herein, as well as the good and valuable consideration provided for herein, the Parties agree to a full and complete settlement of the litigation on the following terms and conditions:

## 1.    DEFINITIONS

The following terms shall have the meanings defined in this Section, wherever used in this Agreement, and in all of its exhibits:

1.1    **Agreement.**  "Agreement" means this settlement agreement and all exhibits attached to it.

1.2    **CAFA Notice.**  "CAFA Notice" means the notice required pursuant to 28 U.S.C. § 1715(b).

1.3    **California Class.**  "California Class" means all female, Latino/Latina/Hispanic, African American/Black, Native American, Alaskan Native, and/or multiracial individuals (who are in part one of the foregoing races) who are or were employed in a Covered Position in the State of California by Uber Technologies, Inc., or any of its predecessors or current and former subsidiaries and affiliated entities, at any time from July 31, 2013 through the date of the Order Granting Preliminary Approval.

1.4    **Class Counsel.**  "Class Counsel" means the law firm of Outten & Golden LLP.

1.5 **Collective Action Plaintiffs.** "Collective Action Plaintiffs" means all women who are or were employed in a Covered Position in any of the 50 United States by Uber Technologies, Inc., or any of its predecessors or current and former subsidiaries and affiliated entities, at any time from July 31, 2014 through the date of the Order Granting Preliminary Approval who do not opt out of the monetary relief provisions of the Settlement and who affirmatively cash a settlement check that bears the legend: "I have received and read the Class Notice in *del Toro Lopez, et al. v. Uber Technologies, Inc.* By negotiating this check and accepting payment, I (i) consent to join in this lawsuit and the Equal Pay Act collective action, (ii) elect to participate in the Settlement, and (iii) agree that I have waived and released the Released Parties from all Released Claims as defined in the Settlement Agreement and in the Notice in this lawsuit. This Release shall become effective on the Effective Date."

1.6 **Court.** "Court" means the Court having jurisdiction over this Litigation, at any stage (presently the United States District Court for the Northern District of California).

1.7 **Covered Position.** A "Covered Position" means Software Engineer I (10397), Software Engineer II (10407), Senior Software Engineer (10415), Senior Software Engineer II (20132) and Staff Software Engineer (10426) or their predecessor job codes. "Covered Position" <u>does not include</u> individuals currently or formerly employed as interns, temporary workers, independent contractors or contract workers by Uber or by any contractor of Uber.

1.8 **Defendant or Uber.** "Defendant" or "Uber" means Uber Technologies, Inc.

1.9 **Defendant's Counsel.** "Defendant's Counsel" means the law firm of Paul Hastings LLP.

1.10 **Effective Date.** "Effective Date" means the date on which the Court has entered the Order Granting Final Approval, provided that no timely objection has been made or that all timely objections have been resolved or withdrawn, thus triggering the appeal waiver in Section 10.4.7. If an objection to the Settlement is timely filed and has not been resolved or withdrawn by the date on which the Court has entered the Order Granting Final Approval, the Effective Date shall be the date on which the deadline for taking an appeal has passed, or, if there is an appeal of the Court's Order Granting Final Approval, the day after all appeals are fully and finally resolved in favor of final approval of the Agreement.

1.11 **EPA.** "EPA" means the Equal Pay Act of 1963, as amended, 29 U.S.C. 206(d).

1.12 **Fairness Hearing.** "Fairness Hearing" means the hearing during which the Court shall finally approve the Agreement and make such other rulings as are

-4-

contemplated by this Agreement or as modified by any subsequent mutual agreement of the Parties in writing and approved by the Court.

1.13 **Gross Fund.** The "Gross Fund" means the common settlement fund account in the sum of Ten Million Dollars ($10,000,000) that is established by the Settlement Administrator and shall be used to pay all settlement payments to the Rule 23 Class and the Collective Action Plaintiffs; all Service Award(s); the LWDA Payment; Class Counsel's attorneys' fees (including fees for monitoring the settlement), costs, and expenses; and the fees and expenses of the settlement administrator. It shall not be used to pay the employer's share of payroll taxes, which shall be paid by Uber separate and apart from (*i.e.*, in addition to) the Gross Fund. There shall be no reversion of any monies from the Gross Fund to Uber. Uber shall not be responsible for any additional payment not expressly set forth in this Agreement.

1.14 **Litigation.** "Litigation" means the First Amended Complaint filed in the United States District Court for the Northern District of California Case No. 4:17-cv-06255-YGR, on behalf of Named Plaintiffs, and the allegations and claims made therein.

1.15 **Named Plaintiffs and Class Representatives.** "Named Plaintiffs" and "Class Representatives" means Roxana del Toro Lopez and Ana Medina.

1.16 **Nationwide Class.** "Nationwide Class" means all female, Latino/Latina/Hispanic, African American/Black, Native American, Alaskan Native, and/or multiracial individuals (who are in part one of the foregoing races) who are or were employed in a Covered Position by Uber Technologies, Inc., or any of its predecessors or current and former subsidiaries and affiliated entities, in the United States at any time from July 31, 2013 through the date of the Order Granting Preliminary Approval.

1.17 **Net Fund.** The "Net Fund" is defined as the Gross Fund minus court-approved Class Counsel's attorneys' fees (including fees for monitoring the settlement), costs, and expenses (*see* Sections 5.2.5 – 5.2.6); class representative Service Awards (*see* Section 5.2.3); the fees and expenses of the Settlement Administrator (*see* Section 5.2.4); and the PAGA Payments (*see* Sections 5.2.1 – 5.2.2). The Net Fund shall be divided into Fund A and Fund B.

  1.17.1 Fund A shall be distributed to Class Members without the need for the submission of a Claim Form, based on the plan of allocation set forth in Section 5.4.

  1.17.2 Fund B shall be distributed to Class Members who timely file Claim Forms, pursuant to, and are deemed by the Settlement Administrator to be eligible for

an award under, Section 5.5.  Any remainder not claimed and awarded from Fund B shall be redistributed to Fund A.  No amount shall revert to Uber.

1.18 **Notice.**  "Notice" means the Notice of Collective, Class Action and PAGA Representative Action Settlement, substantially in the form attached hereto as Exhibit A, and as approved by the Court.

1.19 **Order Granting Final Approval.**  "Order Granting Final Approval" means the final order entered by the Court after the Fairness Hearing.

1.20 **Order Granting Preliminary Approval.**  "Order Granting Preliminary Approval" means the Order entered by the Court preliminarily approving, *inter alia*, the terms and conditions of this Agreement, the manner and timing of providing Notice, and the time period for, and the manner of, opt-outs and objections.

1.21 **PAGA.**  The California Private Attorneys General Act ("PAGA"), Cal. Lab. Code §§2698-2699.

1.22 **PAGA Penalty.**  "PAGA Penalty" refers to the Fifty Thousand Dollar ($50,000) civil penalty, allocated and distributed as provided by Sections 5.2.1 and 5.2.2.

1.23 **Parties.**  "Parties" means the Plaintiffs and Defendant Uber Technologies, Inc.

1.24 **Plaintiffs.**  "Plaintiffs" means, collectively, "Named Plaintiffs," "Rule 23 Class Members," and "Collective Action Plaintiffs."

1.25 **Qualified Settlement Fund.**  The Gross Fund shall be paid to a "Qualified Settlement Fund" established by the Settlement Administrator within ten (10) calendar days of the date on which the Court grants final approval of the settlement.

1.26 **Released Parties.**  "Released Parties" means (i) Uber Technologies, Inc.; (ii) its current and former subsidiaries and affiliated entities of the entities; and (iii) the respective predecessors and successors, as well as all of their incumbent and former officers, directors, owners, members, managers, shareholders, investors, agents, insurers, attorneys, employees, fiduciaries, successors, assigns, and representatives, in their individual and/or representative capacities of each entity referenced in (i) and (ii).

1.27 **Rule 23 Class.**  "Rule 23 Class" means, collectively, the "Nationwide Class" and the "California Class."

1.28 **Rule 23 Class Members.**  "Rule 23 Class Member" or "Class Member" means all individuals in the Rule 23 Class, as approved by the Court, who did not opt out of the monetary relief provisions of the Settlement.

1.29   **Service Award(s).**  "Service Award" means the additional amounts paid to the Named Plaintiffs listed in Section 7.1, subject to Court approval, for their service in this Litigation.

1.30   **Settlement Administrator.**  The "Settlement Administrator" means the entity selected by Class Counsel subject to Uber's approval.  JND Legal Administration has been selected as the Settlement Administrator.

## 2.   GENERAL TERMS

2.1   It is the desire of the Parties to fully, finally, and forever settle, compromise, and discharge all disputes and claims arising from or related to the Litigation which exist between them, and between the Released Parties and the Rule 23 Class Action, Collective Action and PAGA Representative Plaintiffs.

2.2   It is the intention of the Parties that this Agreement shall constitute a full and complete settlement and release of all Released Claims against all Released Parties and a dismissal of all pending actions covered by the Released Claims.

2.3   Uber denies all claims as to liability, wrongdoing, damages, penalties, interest, fees, injunctive relief and all other forms of relief, as well as the class and collective allegations asserted in the Litigation.  Uber has agreed to resolve the Litigation via this Agreement, but to the extent this Agreement is deemed void or the Effective Date does not occur, Uber does not waive, but rather expressly reserves, all rights to challenge any and all claims and allegations asserted by the Class Representatives in the Litigation upon all procedural and substantive grounds, including without limitation the ability to challenge class or collective action treatment on any grounds and to assert any and all other potential defenses or privileges.  The Class Representatives and Class Counsel agree that Uber retains and reserves these rights, and they agree not to take a position to the contrary.  Specifically, and the Class Representatives and Class Counsel agree that, if the Litigation were to proceed, they shall not argue or present any argument that Uber should be barred from contesting class action certification pursuant to Federal Rule of Civil Procedure 23 on any grounds relating to this Agreement, pursuing decertification of the conditionally certified Equal Pay Act collective action, or asserting any and all other potential defenses and privileges.  The Class Representatives and Class Counsel hereby waive any such argument, including any argument based on this settlement or this Agreement or any exhibit and attachment hereto, or any act performed or document executed pursuant to or in furtherance of this settlement or this Agreement.  This Agreement shall not be deemed an admission by, or a basis for estoppel against, Uber that class action treatment pursuant to Federal Rule of Civil Procedure 23 or conditional certification of the Equal Pay Act collective action pursuant to 29 U.S.C. §216(b) is proper or cannot be contested on any grounds.  Additionally, neither the Agreement nor the settlement, nor any act performed or document executed

pursuant to, or in furtherance of, the Agreement or the settlement:  (a) is or may be deemed to be or may be used as an admission or evidence of the validity of any Released Claim, or of any wrongdoing or liability of the Released Parties, or any of them; or (b) is or may be deemed to be or may be used as an admission or evidence of any fault or omission of the Released Parties, or any of them, in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal.

2.4   Class Members shall release the class claims pled in the First Amended Complaint in *del Toro Lopez v. Uber*, a copy of which is appended as Exhibit E.  The release shall not cover claims for disability discrimination, retaliation or wrongful termination.

2.5   Neither this Agreement nor anything in it, nor any part of the negotiations that occurred in connection with the creation of this Settlement, shall constitute evidence with respect to any issue or dispute in any lawsuit, legal proceeding, or administrative proceeding, except for legal proceedings concerning the enforcement or interpretation of this Agreement.

2.6   The Parties agree to cooperate fully with each other, and shall aim to effectuate and implement all terms and conditions of this Agreement and to obtain the Court's approval of this Agreement and all of its terms.  Each of the Parties, upon the request of any other, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

## 3.   BUSINESS PRACTICES PROGRAMMATIC RELIEF AND REPORTING

Uber shall implement the business practices described in subsections 3.1 through 3.7 of this Section for its operations in the 50 United States and the District of Columbia.

3.1   **Duration of Changes in Business Practices.**  The actions in this Section shall be implemented with respect to the Covered Positions, commencing immediately upon the Effective Date, and shall remain binding on the Parties and their agents and successors for a three- (3-) year period following the Effective Date, unless a different timeframe is provided for a particular component of the changes in business practices described herein.

3.2   **Diversity Objectives and Reporting.**

3.2.1   Uber shall continue to monitor progress toward its diversity objectives (including but not limited to those in the Covington recommendations) and report progress at least quarterly to its executive leadership team and members of its Board of Directors.  Highlights shall be shared with Uber employees quarterly by the Chief People Officer.

3.2.2    Uber shall continue to publicize its diversity representation to its work force at least twice annually.

3.2.3    Every member of Uber's executive leadership team shall participate in a semi-annual business review with Uber's CEO, which includes the organization's diversity representation, pipeline, diversity growth progress, and actions taken to increase the representation of women and under-represented minority groups.

3.2.4    Uber shall require all new hires and current employees to complete diversity and inclusion training.

## 3.3    Independent Consultant to Work with Uber on Validated Classification and Selection Practices for Class Positions.

3.3.1    Uber shall retain APT Metrics or a similar expert who specializes in industrial organizational psychology (the "Independent Consultant") to consult with Uber in reviewing and modifying, if appropriate, the following for the Engineer I and II, Senior Engineer I and II, and Staff Engineer positions. The Independent Consultant shall work directly with the Engineering and People representatives who have been designated by Uber and are responsible for this work internally:

(1)    Minimum standards for applicants for each job code;

(2)    Preferred qualifications for applicants for each job code (recognizing that additional preferred qualifications may be added for specific openings);

(3)    Core selection inquiries and documentation forms;

(4)    Leveling guides and guidance for leveling new hires in the proper job code;

(5)    A process and standards for setting a new hire's starting compensation within the job code's pay range established by Uber after its consideration of market surveys and market supply and demand;

(6)    A new-hire compensation offer work-up form to document new hire compensation decisions;

(7)    Performance/contribution assessment standards/criteria, including the inclusion of an EEO compliance measurement in the performance/contribution assessment for managers of people and members of the Human Resources organization; and

(8)     A validated promotion assessment process.

3.4     **Evaluations, Promotions, and Compensation Rewards for Class Positions.**

3.4.1   At the beginning of a PERF cycle, Uber shall notify employees of the PERF steps, timeline, performance/contribution assessment standards/criteria, and deliverables each employee is entitled to receive.

3.4.2   Uber shall use PERF assessment forms and instructions that have been created with input by the Independent Consultant.

3.4.3   Employees shall have an opportunity to submit written input in an online tool on their performance and qualifications, by a specified date in each PERF cycle.  An employee's submission of this information is not a prerequisite for rewards or promotion.

3.4.4   Uber's Human Resources team shall organize calibration groups that facilitate comparison of individuals who are performing similar work in the same Vice President organization (or a combination of such organizations if Uber deems it appropriate).

3.4.5   Uber shall make its best efforts to have each calibration group led by an individual who has received training on leading calibration groups.  The leader shall read or have sub-group leaders read the timely submissions of every employee in the calibration group.  The training, which may be online, shall include the leader's role in ensuring a review of every employee's performance/contributions and competencies, in looking for bias and discrimination in the review process, and in ensuring that responsibility (favorable and unfavorable) is properly attributed.  If Uber uses a separate promotion assessment process, the process leaders shall receive analogous training.

3.4.6   Managers who participate in the calibration, PERF and promotion assessment processes must first complete training on the job-related PERF practices, preparation required by them, and implicit bias, which can be online or in person, before participating in the calibration or other assessment process.

3.4.7   Uber shall require managers to complete specified preparation on each employee they manage before participating in a calibration or assessment meeting, including a review of timely employee submissions about their own performance as provided in Section 3.4.3, and to conduct any follow-up prescribed by the calibration team leader before finalizing the employee's written performance/contribution and promotion assessment.

-10-                    COLLECTIVE, CLASS ACTION AND PAGA
                                                                              SETTLEMENT AGREEMENT

3.4.8   Uber shall consider significant leadership contributions to its employee resource groups and diversity and inclusion programs in awarding annual cash bonuses.

3.4.9   Uber shall monitor the base salary, all bonuses and promotions for adverse impact based upon race/Hispanic status (for any group that comprises at least 2% of the work force) and gender at the conclusion of each PERF cycle.  Any promotions that were made off cycle shall be included in the analysis for the subsequent cycle.

3.5   **Flexible Work Arrangements, Maternity and Parental Leave, and Other Policies.**

3.5.1   Uber shall maintain and make available to all employees written policies on maternity, paternity, and parental leave; accommodation for breastfeeding and the location of lactation rooms; flexible work hours; and the procedure for requesting a reduced schedule with reduced pay.

3.5.2   Uber shall appoint a Flexible Work Liaison in Human Resources to receive and work with employees and their managers on requests for flexible work schedules, reduced hours for reduced pay, and maternity/parental leaves.

3.5.3   The employee's manager shall make the ultimate decision whether to approve a flexible work schedule or reduced hours for reduced pay as well as the duration of the schedule based on agreed criteria (with the caveat that employees on flexible work schedules or reduced hours must be available as needed to fulfill business requirements that arise), and shall document and communicate to the employee and the Flexible Work Liaison the decision reached and reasons for denying a request, if the request is not granted.

3.6   **Access to Management and Executive Leadership.**

3.6.1   Uber shall offer a mentor to every Class Member.  All mentors shall be trained on their roles, Uber's expectations and techniques for success. Uber shall invite feedback from mentees on the engagement and effectiveness of their mentors and shall use that feedback to guide further training, mentor feedback and mentee assignments.

3.6.2   All executive leadership team members shall meet at least annually with the following employee resource groups:  LadyEng, LosUbers, and UberHue (or their successors).

3.7   **Support to Address Skill Gaps.**  All Software Engineer I new hires shall receive a check-in approximately three months after their date of hire.  At that time, Uber shall outline in writing any technical and non-technical skill or competency gaps detected as of that date, the resources Uber shall make available to address them,

-11-

the steps the employee should take to address them (including self-study), and a date for a follow-up assessment of progress.

3.8    **Structure Changes.**  If Uber changes the Covered Positions (*e.g.*, consolidates or divides them into different job codes), the provisions of Section 3 shall apply to the successor job codes during the term of this Agreement.

3.9    **Monitoring and Reporting.**  Uber shall provide written reports to Class Counsel setting forth its progress in implementing its commitments under Section 3 of this Agreement ("Compliance Reports") and shall meet with Class Counsel to discuss such progress in accordance with the following schedule following the Effective Date:

3.9.1    For the first two years following the Effective Date, such reporting and meetings shall occur twice yearly, as close as feasible to the 6-month anniversaries of the Effective Date.

3.9.2    At the end of the third, final year following the Effective Date, Uber shall provide a final written report and the parties shall meet for a final time, as close as feasible to the three-year anniversary of the Effective Date.

**4.    COMPLIANCE DISPUTE RESOLUTION PROCEDURE FOR BUSINESS PRACTICE CHANGES**

4.1    **Special Master.**  No later than thirty (30) calendar days after the Effective Date, the Parties shall jointly request that the Court appoint, pursuant to Federal Rule of Civil Procedure 53, a Special Master.  The Parties have selected Fred Alvarez, Esq., as the Special Master.  In the event that the appointee becomes unavailable, the Parties shall meet and confer on a replacement and jointly request that the Court appoint a replacement.

4.2    **Good Faith Review.**  No later than thirty (30) calendar days after service of Uber's Compliance Reports (*see* Section 3.9), or, if at any time during the course of this programmatic relief, Class Counsel identifies other grounds that they believe constitute non-compliance with the terms of this Agreement, Defendant's Counsel and Class Counsel shall confer on whether Uber has complied with the obligations under the terms of this Agreement.  If the Parties disagree, then Class Counsel shall, within fourteen (14) calendar days, submit to the Special Master a statement of position contending that Uber failed to comply with the obligations under the terms of this Agreement.  Uber may, within fourteen (14) calendar days of receiving that statement of position, submit a response/opposition to the Special Master.

4.3    **Review by Special Master.**  Upon receiving the Parties' submissions, the Special Master may request additional written submissions, or require the Parties to appear

for a hearing, if appropriate.  In any event, within thirty (30) calendar days of receiving the Parties' submission(s), the Special Master shall issue a written decision regarding whether Uber has met its obligations or is non-compliant with the Agreement in any respect.  If Uber has not met its obligations or is non-compliant with the Agreement, it shall have thirty (30) calendar days following receipt of the Special Master's decision to meet the obligations or otherwise cure any non-compliance.  If Uber fails to cure within this time period, Plaintiffs or their representatives may seek to enforce compliance through the Court.

4.4     **Objections to Special Master's Decision.**  Should either Party disagree with the Special Master's ruling, such Party may file an objection before the assigned district court judge pursuant to Federal Rule of Civil Procedure 53 after first conferring in good faith with the other Party in an effort to resolve the dispute.

4.5     **Special Master Fees.**  Uber shall pay the Special Master's fees and expenses, if any, separate and apart from the Settlement Fund.

## 5.     MONETARY RELIEF

5.1     **Gross Fund Payment.**  No later than ten (10) calendar days after the date on which the Court grants final approval of the settlement, Uber shall wire Ten Million Dollars ($10,000,000) to the Settlement Administrator for the Gross Fund.

5.2     **Gross Fund.**  The Gross Fund shall be deposited into a common fund and allocated as follows, as of the Effective Date:

5.2.1   Thirty-Seven Thousand Five Hundred Dollars ($37,500) for the PAGA Penalty payment to the California Labor and Workforce Development Agency ("LWDA") (*i.e.*, 75% of the total PAGA Penalty);

5.2.2   Twelve Thousand Five Hundred Dollars ($12,500) (*i.e.*, 25% of the total PAGA Penalty), for distribution in accordance with Section 5.3 among the California Class Members for pay periods worked in California from June 22, 2016 through the date of Order Granting Preliminary Approval;

5.2.3   Service Awards as awarded by the Court, in an aggregate amount not to exceed Eighty Thousand Dollars ($80,000) as described in Section 7.1 and as approved by the Court.  Should the Court award less, the remainder shall be added in proportionate shares to Funds A and B;

5.2.4   The fees and costs of the Settlement Administrator, estimated to be One Hundred Ten Thousand Dollars ($110,000), including but not limited to the cost of Notice and processing of Claim Forms;

5.2.5   Class Counsel's costs as awarded by the Court, not to exceed One-Hundred Seventy Thousand Dollars ($170,000).  Should the Court award less, the remainder shall be added in proportionate shares to Funds A and B;

5.2.6   Class Counsel's attorneys' fees as awarded by the Court, not to exceed Three Million Dollars ($3,000,000), which includes but is not limited to their continuing obligations under this Agreement.  Should the Court award less, the remainder shall be added in proportionate shares to Funds A and B;

5.2.7   One Million Nine Hundred Thousand Dollars ($1,900,000) to Fund B, defined in Section 1.17.2, which shall be distributed to Class Members who timely file Claim Forms, based on the plan of allocation set forth in Section 5.5.  Any remainder not claimed and awarded from Fund B shall be redistributed to Fund A.  No amount shall revert to Uber; and

5.2.8   The Gross Fund minus the amounts set forth in Sections 5.2.1 through 5.2.7 to Fund A, defined in Section 1.17.1, which shall be distributed to Class Members without the need for the submission of a Claim Form, based on the plan of allocation set forth in Section 5.4.

5.3   **Allocation of the PAGA Penalty Payment to California Class Members Who Worked During Pay Periods from June 22, 2016 through Date of Order Granting Preliminary Approval ("PAGA Period").**

The total sum of Twelve Thousand Five Hundred Dollars ($12,500) shall be divided among California Class Members for pay periods worked in California during the PAGA Period for their claims for penalties under PAGA (liability commences on June 22, 2016).  Each California Class Member's share shall be calculated by (i) dividing the number of pay periods the Class Member worked during the PAGA Period by the total number of pay periods worked by all California Class Members during the PAGA Period, and then (ii) multiplying the member's fractional percentage by $12,500.

5.4   **Allocation of Individual Monetary Awards from Fund A.**

5.4.1   **Category 1:  All Work Weeks Nationwide – July 31, 2013 through July 30, 2014.**   For each work week they were paid for work from July 31, 2013 through July 30, 2014, all Rule 23 Class Members shall receive **one point**, adjusted by the appropriate Job Title Multiplier, as set forth in Table 1. These points account for the following claims:  claims under California Business and Professions Code Section 17200 *et seq.* and Section 1981 of the 1866 Civil Rights Act for the period from July 31, 2013 through July 30, 2014.

However, if any Class Member had previously signed a release encompassing claims covered by Section 5.4.1, the Class Member shall receive zero points under Section 5.4.1.

**Table 1:  Job Title Multipliers**

| Job Code Group | Job Title Multiplier |
|---|---|
| 10397 (Software Engineer I) | 1.0 |
| 10407 (Software Engineer II) | 1.2 |
| 10415 (Senior Software Engineer) | 1.4 |
| 20132 (Senior Software Engineer II) | 1.6 |
| 10426 (Staff Software Engineer) | 1.8 |

5.4.2 **Category 2:  All Work Weeks in California from July 31, 2014 through Date of Order Granting Preliminary Approval.**

For each work week they were paid for work in California from July 31, 2014 through the date of Order Granting Preliminary Approval, the Rule 23 Class Members and the Collective Action Plaintiffs shall receive the **two and a half (2.5) points**, adjusted by the appropriate Job Title Multiplier, as set forth in Table 1.  These points account for the following claims:  claims under the Equal Pay Act of 1963, as amended, 29 U.S.C. 206(d) (liability period commences on July 31, 2014), Title VII of the Civil Rights Act of 1964 (liability period commences on October 5, 2016), and Section 1981 of the 1866 Civil Rights Act, and their claims under the California Fair Employment and Housing Act, Cal. Gov't Code §12940, *et seq.* (liability period commences on July 31, 2016), the California Equal Pay Act, Cal. Lab. Code §1197.5 (liability commences on July 31, 2014), the California Fair Pay Act, Cal. Lab. Code §1197.5 (liability commences on January 1, 2016), the California Business & Professions Code §17200, *et seq.* (liability commences on July 31, 2014)*,* and the California Labor Code §§201, 202, 203, 204, and 558.1 (liability commences on July 31, 2014).

However, if the Class Member had previously signed a release encompassing claims covered by Section 5.4.2, the Class Member shall receive fifty (50) percent of the points otherwise due for the time period covered by the release.

5.4.3 **Category 3:  All Work Weeks Outside of California from July 31, 2014 through Date of Order Granting Preliminary Approval.**

For each work week they were paid for work in the United States but *outside of* the State of California from July 31, 2014 through the date of Order Granting Preliminary Approval, the Nationwide Class Members and the Collective Action Plaintiffs (Excluding those in California) shall receive **two (2) points**, adjusted by the appropriate Job Title Multiplier, as set forth in Table 1.  These points account for the following claims:  claims under the Equal Pay Act of 1963, as amended, 29 U.S.C. 206(d) (liability period commences on July 31, 2014), Title VII of the Civil Rights Act of 1964 (liability period commences on October 5, 2016), Section 1981 of the 1866 Civil Rights Act, and the other state and local claims they are releasing under this Agreement.

However, if the Class Member had previously signed a release encompassing claims covered by Section 5.4.3, the Class Member shall receive fifty (50) percent of the points otherwise due for the time period covered by the release.

5.4.4 **Part-time Employees.**  The points of any Rule 23 Class Member and Collective Action Plaintiff who works or has worked on a part-time basis shall be pro-rated consistent with the individual's base salary proration for each work week for each point calculation in Sections 5.4.1 through 5.4.3.

5.4.5 **Calculating the Value of Each Collective Action Plaintiff's and Class Member's Award from Fund A.**

**Step 1:**  The Settlement Administrator shall sum each individual's total points from Sections 5.3.1 through 5.3.3, to the extent any section is applicable to the individual, applying the relevant multipliers.

**Step 2:**  The Settlement Administrator shall calculate each individual's percentage of the Settlement Awards Fund by dividing the individual's total points as determined in Step 1 by the total points in Fund A of all Collective Action Plaintiffs and Class Members who did not file Opt-Out Statements.

**Step 3:**  The Settlement Administrator shall then multiply the individual's percentage as determined in Step 2 by the amount of Fund A to determine each individual's award.

5.4.6 **Uber to Provide Information.**  No later than fifteen (15) calendar days after the date of the Order Granting Preliminary Approval, Uber shall provide the Settlement Administrator with the information required by the Settlement Administrator to issue the Notice and finalize the initial

-16-

COLLECTIVE, CLASS ACTION AND PAGA
SETTLEMENT AGREEMENT

calculations required for Fund A, including the dates worked in each Covered Position through that Preliminary Approval date for all Collective Action Plaintiffs and Class Members.

### 5.5 Allocation of Individual Monetary Awards from Fund B for Effects of Harassment and Discrimination (Beyond Compensation Loss).

5.5.1 Rule 23 Class Members who, were subjected, based on their gender, race or ethnicity, (i) to any harassment in the workplace or a work environment that was hostile, or (ii) to discrimination in compensation, raises, job assignments, job code placement, evaluations, ratings, promotions, demotions, or other terms and conditions of employment that had an emotional, psychological, professional, physical, medical and/or financial impact (*i.e.*, an impact beyond earning less compensation than other Uber employees) on them, in either case while employed by Uber on or after July 31, 2013, may submit a Claim Form to the Settlement Administrator for an award from Fund B no later than the deadline set forth in the Notice and Claim Form.

5.5.2 The Settlement Administrator shall evaluate Claim Forms for Fund B based on objective criteria, in light of the claims being released and the factual showing made in each Claim Form. Class Counsel and Defendant's Counsel together shall assist the Settlement Administrator in its evaluations. Each question in the Claim Form will be worth a designated number of points, with a total of 100 possible points available per Claim Form. The dollar value per point will be equal to the value of Fund B divided by the aggregate total of all points awarded by the Settlement Administrator, except that the maximum possible value per point shall be $1,000, such that the maximum possible value per Claim Form shall be One Hundred Thousand Dollars ($100,000), unless the Parties agree that there are special circumstances warranting an upward adjustment. Any such upward adjustment will be disclosed to the Court in the Motion for Order Granting Final Approval.

5.5.3 The Settlement Administrator shall make the final determination on the dollar awards from Fund B for each Rule 23 Class Member, subject to approval of the Court at the Final Approval Hearing.

5.5.4 Any amount remaining unallocated from Fund B shall be allocated to Fund A.

### 5.6 Distribution of Monetary Awards. The Settlement Administrator shall distribute the individual monetary awards accordingly on the time schedule described herein and pursuant to the orders of the Court.

-17-

COLLECTIVE, CLASS ACTION AND PAGA
SETTLEMENT AGREEMENT

5.7    **Payroll Taxes.**  Separate and apart from the Gross Fund, the Settlement Administrator shall calculate and Uber shall pay to the Settlement Administrator the employer's share of any statutory FICA, FUTA, and other payroll taxes arising from any payments to Collective Action Plaintiffs and Class Members for wages. The Settlement Administrator shall be responsible for remitting those taxes to the appropriate state and federal taxing authorities, filing the required tax returns and issuing the required IRS forms to the Class Members and Collective Action Plaintiffs.

5.8    **Control of the Gross Fund.**  The Gross Fund shall be controlled by the Settlement Administrator subject to the terms of this Agreement and any orders of the Court.  Interest earned on the Gross Fund, if any, shall derive from interest earned on uncashed checks, if any, and may be retained by the Settlement Administrator to cover the cost of administering the resolution of those uncashed checks.

5.9    **Common Fund.**  The Gross Fund shall constitute a "common fund."  Upon opening this account, Uber shall execute an election statement provided by the Settlement Administrator which shall be affixed to the initial tax return of the Gross Fund in order to establish the start date of the Gross Fund.  The Gross Fund shall be created, managed and disbursed by the Settlement Administrator under the supervision of Class Counsel and Defendant's Counsel.  The Settlement Administrator shall be the only entity authorized to make withdrawals or payments from the Gross Fund.

5.10   **Return of Gross Fund.**  The Settlement Administrator shall have the obligation to return to Uber the entire Gross Fund (excluding the costs incurred by the Settlement Administrator) within seven (7) calendar days in the event that this Agreement is rendered null and void.

## 6.    ATTORNEYS' FEES AND COSTS

6.1    At least fourteen (14) calendar days in advance of the deadline to object to the Settlement and to opt out of the Settlement, Class Counsel shall petition the Court for an award of attorneys' fees in a sum not to exceed Three Million Dollars ($3,000,000) and costs not to exceed One Hundred Seventy Thousand Dollars ($170,000) that shall fully compensate Class Counsel for the attorneys' fees and litigation costs incurred at any time in connection with the Action, including any applicable multiplier.  Should the Court award a lesser amount of fees or costs, the difference between this amount and the amount awarded for fees and costs shall be added in proportionate shares to Funds A and B.

6.2    Uber agrees that Plaintiffs are entitled to an award of reasonable attorneys' fees and costs in the Action.  The Parties agree that the full amount of the attorneys' fees and costs awarded in this action shall be paid from the Gross Fund.

6.3   The outcome of any proceeding related to Class Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's Final Approval ruling.

6.4   Payment of Class Counsel's attorneys' fees and costs approved by the Court shall be made from the Gross Fund within fifteen (15) calendar days after the Effective Date.

## 7.   SERVICE AWARDS

7.1   At least fourteen (14) calendar days in advance of the deadline to object to the Settlement and to opt out of the Settlement, Plaintiffs shall apply to the Court to receive the following Service Awards:  Up to Fifty Thousand Dollars ($50,000) for Plaintiff Roxana del Toro Lopez and up to Thirty Thousand Dollars ($30,000) for Plaintiff Ana Medina in recognition of their services to the Class and in exchange for signing a general release of all claims in a form acceptable to Uber. Should the Court award a lesser amount of Service Awards, the difference between these amounts and the amounts awarded for Service Awards shall be added in proportionate shares to Funds A and B.

7.2   Uber shall not oppose and agrees to pay the Court-approved Service Awards up to the above-listed amounts.  The Service Awards and the requirements for obtaining such payments are separate and apart from, and in addition to, the Named Plaintiffs' recovery from the Net Fund.

7.3   The outcome of the Court's ruling on the application for Service Awards shall not terminate this Agreement or otherwise affect the Court's Final Approval ruling.

7.4   Payment of Service Awards approved by the Court shall be made from the Gross Fund within fifteen (15) calendar days after the Effective Date.

## 8.   DISTRIBUTION OF INDIVIDUAL MONETARY AWARDS

8.1   **Settlement Checks.**  The Settlement Administrator shall mail all individual monetary awards no later than thirty (30) calendar days after it receives the Gross Fund Payment set forth in Section 5.1.  The face of each check shall clearly state that it must be cashed within one hundred eighty (180) calendar days.

8.2   **Reminder Postcards.**  The Settlement Administrator shall, thirty (30) calendar days prior to the check expiration date, send a reminder postcard to those Named Plaintiffs, Collective Action Plaintiffs, and Class Members who have not yet cashed their settlement award checks and shall provide Class Counsel and Defense Counsel with copies of those postcards.  The Settlement Administrator shall also attempt to contact those Named Plaintiffs, Collective Action Plaintiffs, and Class Members via telephone (and may also use email if the Settlement Administrator has an email address for the individual).

-19-

8.3 **Returned Settlement Award Checks.**  The Settlement Administrator shall perform an address trace for any undeliverable checks, and re-send the checks if a different address is found, within three (3) business days of receipt of any undeliverable check.

8.4 **Uncashed Checks and Unused Funds.**  If any Named Plaintiff, Collective Action Plaintiff, or Class Member fails to cash his/her award check within one hundred eighty (180) calendar days, the funds shall be distributed in equal shares to the *cy pres* recipients:  Girls Who Code, the Mexican American Legal Defense and Educational Fund ("MALDEF") and the NAACP Legal Defense and Educational Fund.

8.5 **Final Report by Settlement Administrator.**  No later than ten (10) calendar days after the check void date, the Settlement Administrator shall provide Class Counsel and Defendant's Counsel with a declaration providing a final report on the disbursements of all funds.

8.6 **Taxability of Settlement Payments.**

8.6.1 For tax purposes:

(1) Payments to California Class Members for PAGA penalties pursuant to Section 5.3 shall be treated as 1099 non-wage income.

(2) 50% of payments to Collective Action Plaintiffs and Rule 23 Class Members pursuant to Section 5.4 shall be treated as W-2 wage payments and 50% of such payments shall be treated as 1099 non-wage income as compensatory or liquidated damages/non-wage damages and interest.

(3) Payments to Rule 23 Class Members pursuant to Section 5.5 shall be designated by the Settlement Administrator as 1099 emotional distress damages or other non-wage income, except that any payments for lost compensation from Fund B shall be designated as W-2 wage payments.

8.6.2 Payments treated as W-2 wages pursuant to Section 5.4 and 5.5 shall be made net of all applicable employment taxes, including, without limitation, federal, state, and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and social security number on an IRS Form W-2.  Payments treated as compensatory or liquidated damages/non-wage damages and interest pursuant to Section 5.3 and 5.4 shall be made without withholding and shall be reported to the IRS and the payee, to the extent required by law, under the payee's name and social security number

-20-

on an IRS Form 1099, as shall penalties for the California Class only.  Any Service Awards made pursuant to Section 7.1 shall be made without withholding and reported to the IRS under the payee's name and social security number on an IRS Form 1099.

8.6.3   In the event that it is subsequently determined by a tax authority that any Plaintiff, Collective Action Plaintiff, or Rule 23 Class Member owes any additional taxes with respect to any money distributed under this Agreement, it is expressly agreed that the determination of any tax liability is between the payment recipient and the tax authorities, and that Uber shall not be responsible for the payment of such taxes, including any interest and penalties.

## 9.    FORM OF NOTICE AND CLAIM FORM

9.1   All Collective Action Plaintiffs and Rule 23 Class Members shall receive a Notice substantially in the form evidenced by Exhibit A and a Claim Form substantially in the form evidenced by Exhibit B, each attached hereto.  The Notice shall be tailored for each individual and have pre-printed information regarding that individual's name, contact information, and information pertinent to the estimated allocation under Fund A for the Named Plaintiff, Collective Action Plaintiff, and/or Class Member.  The Notice and Claim Form shall be enclosed in an envelope substantially in the form evidenced by Exhibit C, attached hereto.

## 10.    ADMINISTRATION OF SETTLEMENT

10.1   **Settlement Administrator's Duties.**

10.1.1 The Settlement Administrator shall (1) mail the Notice to the Collective Action Plaintiffs and Class Members after performing any address checks required by Section 10.2.4; (2) respond to questions from Collective Action Plaintiffs and Class Members; (3) distribute individual monetary awards to Collective Action Plaintiffs and Class Members; (4) maintain a toll-free number for communicating with Collective Action Plaintiffs and Class Members; (5) no later than fifteen (15) calendar days after the Effective Date, distribute Service Awards to Named Plaintiffs; (6) no later than fifteen (15) calendar days after the Effective Date, distribute amounts approved by the Court as Attorneys' Fees and Incurred Costs to Class Counsel; (7) no later than fifteen (15) calendar days after the Effective Date, place in escrow all other amounts transmitted by Uber; (8) no later than fifteen (15) calendar days after the Effective Date, forward payment to the LWDA; (9) determine the employer's share of taxes owed and remit them to the taxing authorities, file required state and federal tax returns, and take all other actions required by Sections 5.3 through 5.10; (10) distribute funds to the *cy pres* recipients;

and (11) perform any other duties necessary to carry out its responsibilities described in this Agreement.

10.1.2 The Parties agree to cooperate with the Settlement Administrator and assist it in any way possible in administering the terms of this Agreement.  The Parties agree to cooperate in the settlement administration process and work with the Settlement Administrator in making all reasonable efforts to control and minimize the costs and expenses incurred in the administration of the Settlement.

10.1.3 At least five (5) business days prior to the Final Approval Hearing, the Settlement Administrator shall provide Class Counsel and Defendant's Counsel with a statement detailing its costs of administration, which Class Counsel shall file with the Court.

10.2    **Notice and Claim Form Procedures.**

10.2.1 No later than fifteen (15) calendar days after the date of entry of the order granting Preliminary Approval, Uber shall provide to the Settlement Administrator a list of all Collective Action Plaintiffs and Rule 23 Class Members, including full name (maiden and married names, where applicable), last known home address, email (if known), telephone numbers(s), employee identification number, social security number, and number of work weeks worked during each relevant period in each job code including whether those work weeks were full-time versus part-time weeks, in a format reasonably acceptable to the Settlement Administrator ("Settlement Class List").  The Settlement Administrator shall maintain this list in the strictest confidence and shall not disclose it to anyone except Class Counsel, who may receive the employee identification number and number of work weeks worked during each relevant period in each job code, including whether those work weeks were full-time versus part-time weeks, for use only for purposes of administering this Settlement.

10.2.2 No later than twenty (20) calendar days after Uber provides the Settlement Class List, the Settlement Administrator shall mail the Notice and Claim Form in substantively the form attached hereto as Exhibits A and B, respectively, and as approved by the Court, to the Collective Action Plaintiffs and Rule 23 Class Members, by United States first class mail, postage prepaid, and will transmit a copy by email to those Collective Action Plaintiffs and Rule 23 Class Members who have provided a personal email address to Uber.  The Parties intend to provide actual notice to each Collective Action Plaintiff and Rule 23 Class Member, to the extent practicable.

-22-

COLLECTIVE, CLASS ACTION AND PAGA
SETTLEMENT AGREEMENT

10.2.3 The Settlement Administrator shall also create a secure website to enable Rule 23 Class Members to review the Notice and submit a Claim Form for Fund B online.

10.2.4 In order to provide the best notice practicable, the Settlement Administrator shall run the list of Collective Action Plaintiffs and Rule 23 Class Members through the United States Postal Service's National Change of Address database before mailing the Notice.

10.2.5 In the event that Notices are returned to the Settlement Administrator by the United States Postal Service because the address of the recipient is no longer valid, *i.e.*, the envelope is marked "Return to Sender," the Settlement Administrator shall perform a standard skip trace up to two (2) times in an effort to attempt to ascertain the current address of the particular individual in question and, if such an address is ascertained, the Settlement Administrator shall re-send the Notice by First Class U.S. Mail to the new address within three (3) business days of receiving the newly ascertained address.

10.2.6 With respect to envelopes marked "Return to Sender," the Settlement Administrator may also call any identified last-known telephone numbers (and telephone numbers updated through public and proprietary databases) of Collective Action Plaintiffs and/or Rule 23 Class Members to obtain current addresses, and may request from Defendant's Counsel updated contact information for those currently employed by Uber.  Defendant's Counsel shall provide updated contact information for those currently employed by Uber in response to requests from the Settlement Administrator.

10.2.7 Class Members shall have sixty (60) calendar days from the date of mailing to submit their Claim Forms for Fund B ("Claims Period").  Rule 23 Class Members and Collective Action Plaintiffs are not required to file a Claim Form to receive their shares from Fund A.

10.2.8 The Settlement Administrator shall also send out a reminder email and reminder postcard thirty (30) calendar days after the initial mailing of the Notice to those who have not submitted a Claim Form for Fund B or opted out of the settlement.

10.2.9 During the sixty (60) calendar-day Notice Period, the Settlement Administrator shall provide the Parties with weekly summaries as to the status of Notice mailings, including the number of Notices that were re-mailed, the number of successful and unsuccessful mailings, the number of Claim Forms submitted, and the number of individuals who have opted out and/or objected.

10.2.10 The Settlement Administrator shall provide to the Parties, at least ten (10) calendar days prior to the close of the Notice Period, a list of persons potentially eligible to be Collective Action Plaintiffs and Class Members to whom notices were returned as undeliverable and for whom efforts to obtain an alternative address failed.

10.2.11 Class Counsel shall provide the Court, at least five (5) calendar days prior to the Final Approval Hearing, a declaration by the Settlement Administrator of due diligence and proof of mailing with regard to the mailing of the Notice.

10.3    **Opt-Outs.**

10.3.1 Individuals in the Rule 23 Class may request exclusion from the monetary relief provisions of the Settlement by "opting out" no later than forty-five (45) calendar days after Notice is first mailed.  Any individual who chooses to do so must mail a written, signed statement to the Settlement Administrator that s/he is opting out ("Opt-Out Statement").  The Opt-Out Statement must contain the name, address, and telephone number of the individual to be valid.  It must also contain the following words in order to be valid:  "I decline to provide a release of claims and instead elect to exclude myself from the monetary relief provisions in the Settlement in *del Toro Lopez, et al. v. Uber Technologies, Inc.*  That means I will not be entitled to any of the monetary proceeds of the Settlement.  I will, however, be covered by the injunctive relief provided by the Settlement, by which I am bound and from which I may not exclude myself."  To be effective, such Opt-Out Statement must be sent via mail and postmarked by a date certain to be specified on the Notice.  The postmark date of the mailing envelope shall be the exclusive means used to determine whether a request for exclusion (opt-out) has been timely submitted.  The Opt-Out Statement must be personally signed in ink by the Rule 23 Class Member who seeks to opt out.  No request to opt out may be made on behalf of a group of Class Members.

10.3.2 To the extent that any mailed Notice is returned as undeliverable within twenty (20) calendar days of the first mailing, such person shall be permitted forty-five (45) calendar days from the first re-mailing of the Notice to submit his/her Opt-Out Statement.

10.3.3 The Settlement Administrator shall stamp on the original of any Opt-Out Statement that it receives the date it was received, and shall serve copies of each Opt-Out Statement on Class Counsel and Defendant's Counsel by email no later than two (2) business days after receipt thereof.  The Settlement Administrator shall, within two (2) business days after the end of the Opt-Out Period, send a final list of all Opt-Out Statements to Class

Counsel and Defendant's Counsel by email.  The Settlement Administrator shall retain the stamped originals of all Opt-Out Statements and originals of all envelopes accompanying Opt-Out Statements in its files until such time as the Settlement Administrator is relieved of its duties and responsibilities under this Agreement.

10.3.4 The share of any Opt-Out, as calculated pursuant to Section 5.4, shall remain in Fund A for distribution to those who did not timely opt out of the Settlement.

10.4     **Objections and Written Comments.**

10.4.1 Rule 23 Class Members and Collective Action Plaintiffs who wish to present objections to or written comments about the Settlement at the Fairness Hearing must first do so in a written, signed statement.  To be considered, such objections must be mailed to the Class Action Clerk, United States District Court for the Northern District of California, 1301 Clay Street, Oakland, CA 94612, or filed in person at any location of the United States District Court for the Northern District of California no later than forty-five (45) days after Notice is first mailed.  The postmark date or filing date of the objection shall be the exclusive means for determining that an objection is timely.  The statement must contain the name, address, and telephone number of the Class Member or Collective Action Plaintiff and must clearly identify the case name and number (*del Toro Lopez v. Uber Technologies, Inc.*, Case Number 17 Civ. 36255) to be valid.  Class Members and Collective Action Plaintiffs who fail to make objections in the manner specified herein shall be deemed to have waived any objections and shall be foreclosed from making any objection (whether by appeal or otherwise) to the Agreement. You may also appear at the Final Approval Hearing, either in person or through your own attorney.  If you appear through your own attorney, you are responsible for paying that attorney.

10.4.2 An objector who wishes to appear at the Fairness Hearing must file with the Class Action Clerk at the address listed in Section 10.4.1, a "Notice of Intention to Appear at the Fairness Hearing in *del Toro Lopez v. Uber Technologies, Inc.*, Case Number 15 Civ. 36255"  ("Notice of Intention to Appear") no later than the deadline for the objection set forth in Section 10.4.1  This Notice must include the objector's name, address, telephone number, and signature.  The Notice of Intention to Appear must include copies of any papers, exhibits, or other evidence that the objecting Class Member or Collective Action Plaintiff (or his/her counsel) shall present to the Court in connection with the Fairness Hearing.  Any Class Member or Collective Action Plaintiff who does not provide a Notice of Intention to Appear in complete accordance with the deadlines and other specifications set forth in the Notice, and who has not filed an Objection in complete accordance with the deadlines and

other specifications set forth in this paragraph and the Notice, shall be barred from speaking or otherwise presenting any views at any Fairness Hearing unless the Court, in the exercise of its discretion, excuses compliance with this requirement upon a showing of good cause.

10.4.3  An objector may withdraw his/her objections at any time.

10.4.4  Any lawyer representing a Class Member or Collective Action Plaintiff for the purpose of making objections must also file a Notice of Appearance with the Court by the deadline for the objection set forth in Section 10.4.1.

10.4.5  Any individual who has requested exclusion by submitting a valid Opt-Out Statement may not submit objections to the Settlement.

10.4.6  Plaintiffs and/or Uber may file with the Court written responses to any objections at least seven (7) calendar days before the Fairness Hearing.

10.4.7  **Waiver of Right to Appeal.**  Provided that the judgment against Uber is consistent with the terms and conditions of this Agreement, then Named Plaintiffs, Collective Action Plaintiffs, and Class Members who did not timely submit an objection to the Settlement and their counsel, as well as Uber and its counsel, hereby waive any and all rights to appeal from the judgment against Uber, including all rights to any post-judgment proceeding and appellate proceeding, such as a motion to vacate judgment, a motion for new trial, a motion under Federal Rule of Civil Procedure 60, and any extraordinary writ, and the judgment therefore shall become final and non-appealable at the time it is entered.  The waiver does not include any waiver of the right to oppose any appeal, appellate proceedings, or post-judgment proceedings.  Notwithstanding the foregoing, Named Plaintiffs and their counsel do not waive their right to appeal any order regarding attorneys' fees or costs.

10.5  **No Solicitation of Objection or Request to Opt Out.**  The Parties agree that the decision to opt out should be left to the individual Class Members.  If contacted by a Class Member, Class Counsel may provide any advice or assistance to any Class Member who requests them to do so.  If Defendant's Counsel is contacted by Class Members regarding the Settlement, counsel shall refer the call or communication to Class Counsel.  In addition, at no time shall Plaintiffs, Uber, or their respective counsel seek to solicit or otherwise encourage Class Members or any other persons to submit written objections to the settlement or encourage Class Members to appeal the Court's final approval order and entry of judgment, or to opt out of the Settlement.

**11.   PRELIMINARY AND FINAL APPROVAL**

11.1   **Preliminary Approval by the Court.**  Within twenty-eight (28) calendar days of the execution of this Agreement, Plaintiffs shall submit to the Court a Motion for Preliminary Approval of the Settlement ("Preliminary Approval Motion").  The Preliminary Approval Motion shall seek the setting of dates for opt-outs, objections, and a Fairness Hearing and shall present the [Proposed] Order Granting Preliminary Approval attached hereto as Exhibit D.

11.2   **Final Order and Judgment from the Court.**  Plaintiffs shall seek to obtain from the Court an Order Granting Final Approval.  The motion shall, among other things, seek:  (a) final certification of the Rule 23 Class for purposes of settlement; (b) final approval of settlement of the Collective Action Plaintiffs' EPA claims; (c) final approval of settlement of the Rule 23 Class Members' claims as fair, adequate, reasonable, and binding on all Class Members who have not opted out; and (d) an entry of judgment in accordance with this Agreement.

11.3   **Fairness Hearing.**  The Fairness Hearing shall be held at the Court's convenience, but not earlier than ninety (90) calendar days after CAFA notices are served.

**12.   RELEASE**

12.1   **Rule 23 Class Members, including Named Plaintiffs.**

Upon the Effective Date, and except as to such rights or claims as may be created by this Agreement, each member of the Rule 23 Class, who does not timely opt out pursuant to this Agreement, on his/her behalf and on behalf of his/her respective current, former and future heirs, spouses, executors, administrators, agents, and attorneys, fully releases and discharges all Released Parties from all claims asserted in the Complaint under applicable state, local, and federal law or that are based on the same facts and circumstances as the claims brought in the Complaint.

The rights and claims released ("Released Claims") include:  (i) claims for unequal pay, and (ii) claims for disparate treatment and pattern and practice discrimination based on gender, race and national origin with respect to all forms of compensation (including but not limited to salary, bonus, and stock or equity awards), raises, job assignments, job code placement, demotions, denial of promotion, delayed promotion, performance ratings, ratings used for purposes of compensation rewards (including bonus and stock awards), and other terms and conditions of employment; and (iii) claims for disparate impact discrimination based on gender, race and national origin with respect to all forms of compensation (including but not limited to salary, bonus, and stock or equity awards), raises, job assignments, job code placement, demotions, denial of

promotion, delayed promotion, performance ratings, ratings used for purposes of compensation rewards (including bonus and stock awards), and other terms and conditions of employment; and (iv) claims for gender, race and national origin harassment.

The Released Claims arise under the following laws and their implementing regulations and include all forms of damages (including but not limited to economic, emotional distress, punitive and exemplary damages, and damages to reputation):  (i) Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, *et seq.*, (ii) Section 1981 of the Civil Rights Act; (iii) for those who work or worked in California:  the California Fair Employment and Housing Act, Cal. Gov't Code §12940, *et seq.*, the California Equal Pay Act, Cal. Lab. Code §1197.5, the California Fair Pay Act, Cal. Lab. Code §§1197.5 and 1194.5 (on and after January 1, 2016), the California's Business & Professions Code §17200, *et seq.,* the Labor Code Private Attorneys General Act (PAGA), Cal. Lab. Code §§2698-2699, and Cal. Lab. Code §§201, 202, 203, 204, and 558.1; and (iv) for those who work or worked in the District of Columbia or in states outside of California, the state and local laws of similar import in their respective jurisdictions, including, but not limited to, Arizona Rev. Stat. Ann. §23-341, Colorado Rev. Stat. Ann. §8-5-101, *et seq.*; Illinois Equal Pay Act of 2003, 820 Ill. Comp. Stat. 112/1, *et seq.*; Kentucky Equal Pay Law, Ky. Rev. Stat. Ann. §337.423; Massachusetts Gen. Laws Ann. 149 §105A; Michigan Comp. Laws Ann.  §408.423 and §750.556; Missouri. Rev. Stat. §290.400; New Jersey Equal Pay Act, N.J. Rev. Stat. §34:11-56.1, *et seq.*; Equal Pay Provision of the New York State Labor Law, N.Y. Labor Law §194; Ohio Minimum Fair Wage Standards Act, Ohio Rev. Code Ann. §4111.17(A); Oregon Equal Pay Statute, Or. Rev. Stat. §652.220; Pennsylvania Equal Pay Law, 43 Pa. Cons. Stat. §336.3; and Washington Rev. Code §49.12.175.  The Released Claims are limited to the facts and circumstances pled in the Complaint and do not include claims for, among other things, disability discrimination, retaliation, or wrongful discharge.

Only as to the claims released herein, each member of the Rule 23 Class waives all rights and benefits afforded by Section 1542 of the Civil Code of the State of California, and does so understanding the significance of that waiver.  Section 1542 provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Those Rule 23 Class Members who did not opt into the EPA collective action by cashing their settlement check do not release their potential federal EPA claims, 29 U.S.C. §206(d).

12.2 **Collective Action Plaintiffs, including Named Plaintiffs.** Upon the Effective Date, and except as to such rights or claims as may be created by this Agreement, each Collective Action Plaintiff, on behalf of her respective current, former and future heirs, spouses, executors, administrators, agents, and attorneys, fully releases and discharges all Released Parties from all gender-based discrimination claims involving alleged unequal, disparate, or unfair compensation under the Equal Pay Act, 29 U.S.C. §206(d), that were brought in the Complaint or that are based on the same facts and circumstances as the claims brought in the Complaint. Collective Action Plaintiffs who cash their settlement checks shall be deemed to have accepted this Release. Only as to the claims released herein, each Collective Action Plaintiff waives all rights and benefits afforded by Section 1542 of the Civil Code of the State of California (quoted in Section 12.1), and does so understanding the significance of that waiver.

12.3 **Events After Final Approval.** Nothing in this Agreement shall be construed to bar any claims of the Named Plaintiffs, Collective Action Plaintiffs, or the Rule 23 Class Members based on or arising out of events occurring after the date of the Order Granting Final Approval by the Court of the Agreement.

**13. UBER'S RIGHT TO WITHDRAW OR MODIFY AGREEMENT**

13.1 If five percent (5%) or more of the Class Members validly elect not to participate in the Settlement, Uber shall have the absolute right, in its sole discretion and notwithstanding any other provisions of this Agreement, but subject to all the provisions and time limits of this Section, either (i) to withdraw in writing from and rescind this Agreement in which case all actions taken in its furtherance shall be null and void for all purposes and may not be used or introduced in further litigation except to determine whether Uber is entitled to withdraw from the Agreement and has validly done so, or (ii) to modify this Agreement through further negotiations with Class Counsel. Uber must exercise this right within ten (10) calendar days after the Settlement Administrator sends the final list of all Opt-Out Statements to Class Counsel and Defendant's Counsel by email pursuant to Section 10.3.3. If five percent (5%) or more of the Class Members opt out of the monetary relief provisions of the Settlement, and Uber exercises its right to void the Settlement, Uber shall pay the Settlement Administrator's reasonable fees and expenses incurred as of the date that Uber exercises its right to void the Settlement.

13.2 If any of the Named Plaintiffs or Class Representatives submit a timely and complete request for exclusion, Uber shall have the absolute right, in its sole discretion and notwithstanding any other provisions of this Agreement, but subject to all the provisions and time limits of this Section, to withdraw in writing from this Agreement, or to modify this Agreement through further negotiations with Class Counsel. If Uber does withdraw in conformity with the provisions and time limits of this Section, the Agreement will be null and void for all purposes and

may not be used or introduced in further litigation except to determine whether Uber is entitled to withdraw from the Agreement and has validly done so.  Uber shall have ten (10) calendar days after the expiration of all Class Members' deadlines pursuant to the provisions described in the Notice of Class Action Settlement to withdraw from (or modify through negotiation) this Agreement on the basis that a Named Plaintiff or Class Representative has submitted a timely and complete request for exclusion.

**14.    INTERPRETATION AND ENFORCEMENT OF AGREEMENT**

14.1    **Entire Agreement.**  This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

14.2    **Binding Effect.**  Upon execution of this Agreement by the Parties and their counsel, this Agreement shall be binding upon the Parties unless the Court fails to approve the Agreement as set forth herein.

14.3    **Notices to Counsel.**  All notices to counsel required or desired to be given under this Agreement shall be in writing and by overnight mail and email to lead counsel for the respective Parties.  Specifically, such notices shall be mailed to Jahan C. Sagafi of Outten & Golden LLP and Nancy L. Abell of Paul Hastings LLP for Uber, their respective addresses set forth below (or to such other address as any such party of counsel may designate in a notice):

Jahan C. Sagafi
OUTTEN & GOLDEN LLP
One Embarcadero Center, 38th Floor
San Francisco, CA 94111
jsagafi@outtengolden.com

Nancy L. Abell
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
nancyabell@paulhastings.com

14.4    **Arm's-Length Transaction; Materiality of Terms.**  The Parties have negotiated all the terms and conditions of this Agreement at arm's length.  All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement.

14.5    **Construction.**  The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties.  Each Party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any Party by virtue of draftsmanship.

14.6    **Severability.**  Following the Effective Date, if any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful, or unenforceable, the remaining portions of this Agreement shall remain in full force and effect, subject to the limitations set forth above.

14.7    **Governing Law.**  This Agreement shall in all respects be interpreted, enforced, and governed by and under the laws of the State of California, without regard to its choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

14.8    **Continuing Jurisdiction.**  The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby for three (3) years following the Effective Date.

14.9    **Waivers, etc. to Be in Writing.**  No waiver, modification, or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by, or on behalf of all Parties and then only to the extent set forth in such written waiver, modification, or amendment, subject to any required Court approval.  Any failure by any Party to insist upon the strict performance by the other Party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such Party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

14.10   **Counterparts.**  The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if Plaintiffs and Uber had signed the same instrument.  The failure of one or more Plaintiffs to sign this Agreement does not affect its enforceability, except as otherwise set forth herein.

14.11   **Facsimile/Electronic Signatures.**  Any Party may execute this Agreement by causing her or its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other Party.  Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of

this Agreement and shall be binding upon the Party whose counsel transmits the signature page by facsimile or email.

## 15.    DUTIES OF THE PARTIES FOLLOWING COURT APPROVAL

15.1    In connection with the Final Approval by the Court of this Agreement, Class Counsel, and Counsel for Defendant shall submit a proposed final order and judgment:

(a)  Granting Final Approval to the Agreement, adjudging the terms thereof to be fair, reasonable, and adequate, and directing consummation of its terms and provisions;

(b)  Granting final certification of the Rule 23 Settlement Class;

(c)  Granting final certification for settlement purposes of the conditionally certified EPA Collective Action;

(d)  Dismissing the Civil Action with prejudice and permanently barring all members of the Settlement Class including the Class Representatives from prosecuting against any Released Parties any of the Released Claims; and

(e)  All materials, including data, provided by the Parties, their counsel and/or their experts, to the other Party, its counsel and/or its experts, shall be returned to the other Party's counsel or destroyed, within one-hundred eighty (180) calendar days after the Effective Date, with the exception that the Parties may retain copies of their and their own experts' work product; copies of all filed documents (whether or not filed under seal or submitted to the court without being officially filed); and any materials necessary to oversee compliance with this Agreement.

//

//

1

DATED: March 26, 2018

By: _____

JAHAN C. SAGAFI
OUTTEN & GOLDEN LLP

*Attorneys for Plaintiffs and Proposed Class and
Collective Members*

2

3

4

5

DATED: March 26, 2018

By: _____

Roxana del Toro Lopez

ROXANA DEL TORO LOPEZ
*Named Plaintiff and Class Representative*

6

7

8

DATED: March 26, 2018

By: _____

Ana Medina

ANA MEDINA
*Named Plaintiff and Class Representative*

9

10

11

12

DATED: March 26, 2018

By: _____

NANCY L. ABELL
PAUL HASTINGS LLP

*Attorneys for Defendant
Uber Technologies, Inc.*

13

14

15

16

17

DATED: March 26, 2018

By: _____

TONY WEST
*Senior Vice President, Chief Legal Officer and
Corporate Secretary
Uber Technologies, Inc., Defendant*

18

19

20

21

22

23

24

25

26

27

28

-33-

COLLECTIVE, CLASS ACTION AND PAGA
SETTLEMENT AGREEMENT

# Exhibit A

<u>Del Toro Lopez v. Uber Technologies, Inc., Case No. 17-cv-06255-YGR</u>
**United States District Court for the Northern District of California**

# If you worked at Uber as a Software Engineer, you could get a payment from this class action settlement.

**A federal court authorized this notice.  This is not a solicitation from a lawyer.**

- The settlement provides $10,000,000 to compensate Class Members.  This amount will be used for both Fund A (automatically paid out to all Class Members) and Fund B (paid out only to Class Members who submit a claim form and qualify for an award from Fund B).

- The Settlement affects the rights of all female, Latino/Latina/Hispanic, African American/Black, Native American, Alaskan Native, and/or multiracial individuals (who are in part one of the foregoing races) who work or worked for Uber in the United States as a Software Engineer 1 or 2, Senior Software Engineer 1 or 2, or Staff Software Engineer ("Covered Software Engineering Positions") at any time between July 31, 2013 and [insert Preliminary Approval date].
  - **If you are not a female, Latino/Latina/Hispanic, African American/Black, Native American, Alaskan Native, and/or multiracial individual (who is in part one of the foregoing races), you are required to notify *del Toro Lopez v. Uber Technologies, Inc.* Settlement Administrator, XXXX [including email address and website] promptly following receipt of this Notice.**

- Your legal rights are affected whether you act or don't act.  Read this notice carefully.

| Your legal rights and options in this Settlement: | |
|---|---|
| **Do nothing** | If you do nothing, you will receive a check for an amount estimated to be approximately $___, as your share of "Fund A" (explained below in § 6). |
| **Submit a claim form** | You also have the option to submit a Claim Form to receive a share of the money in "Fund B" (in addition to your money from Fund A).  The Claim Form allows you to describe incidents of harassment, hostile work environment and discrimination based on your gender, race or national origin, while you were employed by Uber on or after July 31, 2013, as well as their impact on you. |
| **Exclude yourself** | You may exclude yourself or "opt out" if you do not wish to participate in the settlement.  If you choose this option, you get no payment and will not release any claims against Uber. |

| Comment (including Object) | Write to the Court about what you think about the settlement. |
|---|---|
| Go to the hearing | If you would like, you may ask to speak in Court about the fairness of the settlement.  You do not need to do this to receive a payment. |

- These rights and options—**and the deadlines to exercise them**—are explained in this notice.

- The Court still has to decide whether to finally approve the settlement.  Payments will be made only if the Court approves the settlement and after appeals, if any, are resolved.  Please be patient.

- This is not a lawsuit against you.  Your participation in this lawsuit and acceptance of money from the settlement will not affect your employment status in any way.

## What This Notice Contains

BASIC INFORMATION ........................................................................................................... 4
  1.  Why did I get this notice package? ........................................................... 4
  2.  What is this lawsuit about? ......................................................................... 4
  3.  Why is this a class action? ......................................................................... 4
  4.  Why is there a settlement? ......................................................................... 4

WHO IS IN THE SETTLEMENT ........................................................................................... 5
  5.  How do I know if I am part of the settlement? ........................................ 5

THE SETTLEMENT BENEFITS—WHAT YOU GET ......................................................... 5
  6.  What does the settlement provide? ........................................................... 5
  7.  What can I get from the settlement? ......................................................... 7

HOW YOU GET A PAYMENT—SUBMITTING A CLAIM FORM ..................................... 7
  8.  How can I get a payment? ......................................................................... 7
  9.  When would I get my payment? ............................................................... 8
  10.  What am I giving up to get a payment or stay in the Class? .................... 8

EXCLUDING YOURSELF FROM THE SETTLEMENT .................................................... 10
  11.  How do I get out of the settlement? ....................................................... 10
  12.  If I exclude myself, can I get money from this settlement? ................... 10

YOUR PRIVACY ................................................................................................................. 10
  13.  Will my manager know whether or how I responded to this Notice? ... 10

THE LAWYERS REPRESENTING YOU .......................................................................... 11
  14.  Do I have a lawyer in this case? ............................................................. 11
  15.  How will Class Counsel and the Named Plaintiffs be paid? ................. 11

COMMENTING ON (INCLUDING OBJECTING TO) THE SETTLEMENT ......................... 11
  16.  How do I tell the Court that I like or don't like the settlement? ............ 11
  17.  What's the difference between objecting and excluding? ...................... 12

THE COURT'S FAIRNESS HEARING ............................................................................. 12
  18.  When and where will the Court decide whether to approve the settlement? .......... 12
  19.  Do I have to come to the hearing? ......................................................... 12
  20.  May I speak at the hearing? ................................................................... 12

IF YOU DO NOTHING ........................................................................................................ 13
  21.  What happens if I do nothing at all? ...................................................... 13

GETTING MORE INFORMATION ..................................................................................... 13
  22.  Are there more details about the settlement? ......................................... 13

# **Basic Information**

## 1. **Why did I get this notice package?**

The purpose of this Notice is to let you know that there is a class and collective action lawsuit pending in the United States District Court, Northern District of California, entitled *del Toro Lopez v. Uber Technologies, Inc.*, Case No. 17-cv-06255-YGR (the "Lawsuit").  You have received this Notice because Uber's records show that you are a female, Latino/Latina/Hispanic, African American/Black, Native American, Alaskan Native, and/or multiracial individual (who is in part one of the foregoing races) who work or worked for Uber in a Covered Software Engineering Position.

The Court authorized that you be sent this notice because you have a right to know about a proposed settlement of the Lawsuit, and about your options, before the Court decides whether to grant final approval of the settlement.  If the Court approves it and after any objections and appeals are resolved, a third-party administrator appointed by the Court will make the payments that the settlement allows.  You will be informed of the progress of the settlement.

This package explains the lawsuit, the settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.  If you wish to receive money from, comment upon (including object to), or exclude yourself from the settlement, you must do so following the procedures described below.

## 2. **What is this lawsuit about?**

In the lawsuit, Plaintiffs claimed that Uber's policies and practices regarding compensation and promotion violated federal and California state laws by unlawfully discriminating against female, Latino/Latina/Hispanic, African American/Black, Native American, Alaskan Native, and/or multiracial individuals (who are in part one of the foregoing races) who work or worked for Uber in a Covered Software Engineering Position, and that there was harassment or a hostile work environment for those employees.  The lawsuit asked the Court to require Uber to provide damages, penalties, and other compensation to those employees (or former employees).  The lawsuit also sought to compel Uber to change its policies and procedures so that such conduct does not happen in the future.

Uber denies that it did anything wrong and contends that, among other things, that it has complied at all times with applicable federal and California law.

## 3. **Why is this a class action?**

In a class action, one or more people, called Class Representatives (in this case, Roxana del Toro Lopez and Ana Medina) sue on behalf of people who have similar claims.  All these people with similar claims are Class Members.  One court resolves the issues for all Class Members, except for those who exclude themselves from the Class.  The Honorable Yvonne Gonzalez Rogers, United States District Judge, is presiding over this class action.

## 4. **Why is there a settlement?**

The Court did not decide in favor of either party.  Instead, both sides agreed to a settlement, which, if approved, brings the litigation to an end.  That way, Plaintiffs and Uber

avoid the cost, delay, and uncertainty of moving forward in litigation to trial and possible appeals, and the Class Members will get compensation.  The Class Representatives and the attorneys for both sides think that the settlement is fair, reasonable, adequate and in the best interests of the members of the class and all parties.

## Who is in the Settlement

To see if you are eligible to get money from this settlement, you first have to determine if you are a Settlement Class Member.

### 5.      How do I know if I am part of the settlement?

Judge Gonzalez Rogers determined that everyone who fits this description is a Settlement Class Member: any female, Latino/Latina/Hispanic, African American/Black, Native American, Alaskan Native, and/or multiracial individual (who is in part one of the foregoing races) who worked in a Covered Software Engineering Position and who was employed by Uber in the United States at any time between July 31, 2013 and [insert Preliminary Approval date].

If you are still not sure whether you are included, you can ask for free help.  You can call the Claims Administrator at [insert Claims Administrator telephone number].

## The Settlement Benefits—What You Get

### 6.      What does the settlement provide?

Uber has agreed to pay $10,000,000 to cover the claims of Class Members, and for a three-year period to implement, continue and enhance substantial policy initiatives moving forward.  Each Class Member who follows the proper procedure to receive a payment will receive a share of the $10,000,000 amount, as described below.

Uncashed checks, if any, will be distributed in equal shares to Girls Who Code, the Mexican American Legal Defense and Educational Fund ("MALDEF") and the NAACP Legal Defense and Educational Fund.

The monetary relief provided by the settlement is divided into two funds, Fund A and Fund B.

Fund A will be paid out to all Class Members automatically.  You do not need to do anything (such as submit a Claim Form) to receive money from Fund A.  **Your estimated share of the Fund A portion of the Settlement is $XX.**  Each Class Member's share of Fund A depends on (a) job title(s), (b) weeks worked in each job title, (c) whether you were employed full-time or part-time, (d) whether you were employed in California or elsewhere in the United States, and (e) whether you have previously signed a release of any or all of the covered claims. Fund A covers lost compensation and ordinary emotional distress damages (no physical manifestations) resulting from discrimination and unequal pay.

Fund B will be paid out only to Class Members who submit a valid Claim Form demonstrating that they were subjected—based on their gender, race, and/or ethnicity—(i) to any

harassment in the workplace or a work environment that was hostile, or (ii) to discrimination that had an emotional, psychological, financial, professional, physical, and/or medical impact on them, in either case while employed by Uber on or after July 31, 2013.  (Do not include an incident of discrimination if it resulted *only* in less compensation to you than others.  Damages for lost pay and ordinary emotional distress without physical manifestations are covered by Fund A.)

This Claim Form is optional; if you do not submit it, you will not receive any money from Fund B.  Submitting the Claim Form does not guarantee that you will get money from Fund B.  The individual payments from Fund B will depend on an objective evaluation by the Settlement Administrator, with input jointly from counsel for the parties, of the validity and strength of the facts presented by each Class Member in each Claim Form.  The Fund B payments will be capped, and any money remaining in Fund B will be reallocated to Fund A.  Submitting a Claim Form will not affect the money you receive from Fund A; in other words, Class Members who receive money from Fund B will also receive their regular share from Fund A.

In addition to the monetary relief, for a three-year period Uber has agreed to implement or continue and enhance several policy initiatives, including the following:

- **Monitoring.**  Uber will continue to monitor its progress towards its diversity objectives (including but not limited to those in the Covington recommendations) and will report its progress at least quarterly to its executive leadership team and members of its Board of Directors.  Highlights of these reports will be shared with employees quarterly.  In addition, Uber will publish its diversity representation to employees at least twice annually.

- **Training.**  Uber will require all new hires and current employees to complete diversity and inclusion training.

- **Professional validation of HR practices.**  Uber will retain an expert in industrial organizational psychology ("Independent Consultant") to consult with Uber in reviewing and modifying (i) minimum standards for job applicants, (ii) preferred qualifications for job applicants, (iii) core selection inquiries, (iv) leveling guides, (v) standards for setting starting compensation, (vi) performance criteria, and (vii) promotion processes for Software Engineers 1 and 2, Senior Software Engineers 1 and 2, and Staff Software Engineers job titles.

- **Evaluations.**  Uber will review and modify as appropriate the calibration, performance review, promotion, and bonus process by, among other things, applying the assessment forms and instructions created by the Independent Consultant, as well as ensuring that calibration group leaders are appropriately trained and that all managers who participate have completed on-the-job training on bias and discrimination.

- **Bonus decisions.**  Uber will consider significant leadership contributions to its employee resources groups and diversity and inclusion programs in awarding annual cash bonuses.

- **Analysis of compensation.**  Uber will monitor compensation and promotions for adverse impact based on gender and race or Hispanic status for any group that comprises at least 2% of the work force.

- **Mentoring.**  Uber will offer to every interested Class Member a mentor who has been trained in his or her role, and will invite feedback from the mentees on the engagement and effectiveness of their mentors.

- **New hire check-ins.**  Uber will provide all Software Engineer 1 new hires with a check-in approximately three months after their date of hire.  At that time, Uber will outline in writing any technical and non-technical skill or competency gaps detected as of that date, the resources Uber shall make available to address them, the steps the employee should take to address them (including self-study), and a date for a follow-up assessment of progress.

- **Parental leave.**  Uber will maintain and make available to all employees written policies on maternity, paternity, and parental leave; accommodation for breastfeeding and the location of lactation rooms; flexible work hours; and the procedure for requesting a reduced schedule with reduced pay.

Uber is required to provide written reports to your lawyers (called Class Counsel) setting forth its progress in implementing these changes twice a year for the next two years and once at the end of the third year.  If Class Counsel believes that Uber is not fulfilling its responsibility under the settlement, any dispute will be submitted to a third-party neutral, called a Special Master.  You are encouraged to share your experiences with Class Counsel during the three-year monitoring period, to help them in ensuring that the goals of the Settlement are achieved.

## 7.     What can I get from the settlement?

If you are a Class Member and if the settlement is granted final approval, then you will be mailed a check for your share of the settlement.  Under the current schedule, you should receive your check around [insert approximate date].

# How You Get a Payment

## 8.     How can I get a payment?

You do not need to submit anything to get your share of the settlement funds from Fund A.

To receive a share of the settlement funds from Fund B, you need to complete and properly submit the enclosed Claim Form describing any (i) harassment in the workplace or a work environment that was hostile, or (ii) discrimination that had an emotional, psychological, financial, professional, physical, and/or medical impact on you, in either case based on your gender, race or national origin while employed by Uber on or after July 31, 2013.  (Do not include an incident of discrimination if it resulted *only* in less compensation to you than others.  Damages for lost pay and ordinary emotional distress without physical manifestations are covered by Fund A.)

Harassment and hostile work environment are defined on page [ ] of the Claim Form. The Claim Form will be scored according to objective criteria, and depending on the score your form receives, you may receive an additional payment.  Returning a signed Claim Form is not a guarantee that you will receive money from Fund B.  Regardless, you will still receive money from Fund A.

You can submit a Claim Form by mail, email, or online as follows:

[Settlement Administrator contact information, including address, email address, and website].

Claim Forms must be received by the Settlement Administrator or postmarked by [date].

## 9.      When would I get my payment?

The Court will hold a hearing on [insert fairness hearing date], to decide whether to approve the settlement.  If Judge Gonzalez Rogers approves the settlement, and there are no appeals, we estimate that checks will be mailed around [insert approximate date].  However, because it is always possible for there to be unexpected delays or appeals, it is possible that the payments will be delayed by a year or more, or that an appeals court will determine that the payments cannot be made.

We will provide regular updates of the status of the Settlement at www._____.com.  If your contact information changes, please submit your new contact information to the Settlement Administrator or Class Counsel via that website.

## 10.     What am I giving up to get a payment?

According to our records, you are or were a female, Latino/Latina/Hispanic, African American/Black, Native American, Alaskan Native, and/or multiracial (who is in part one of the foregoing races) Uber employee who worked in a Covered Software Engineering Position in the United States on or after July 31, 2013.  Unless you exclude yourself, you will remain as part of the Class and receive a payment, which means that you cannot sue, continue to sue, or be part of any other lawsuit against Uber over the federal and state-law gender, race and national origin discrimination, harassment and hostile environment, fair pay / unequal pay, California Labor Code and California Business and Professions Code issues in this case (except that if you do not cash your check, you will not release any federal Equal Pay Act claims).  Unless you exclude yourself, it also means that all of the Court's orders will apply to you and legally bind you.  In other words, you agree to the "Release of Claims" below, which describes the legal claims that you give up if you get settlement benefits.

Release of Claims: You, on behalf of yourself and on behalf of your current, former and future heirs, spouses, executors, administrators, agents, and attorneys, fully release and discharge all Released Parties from the class claims actually pled in the operative Complaint in *del Toro Lopez v. Uber*, i.e., (i) claims for unequal pay; (ii) claims for disparate treatment and pattern and practice discrimination based on gender, race and national origin with respect to all forms of compensation (including but not limited to salary, bonus, and stock or equity awards), raises, job assignments, job code placement, demotions, denial of promotion, delayed promotion, performance ratings, ratings used for purposes of compensation rewards (including bonus and stock awards), and other terms and conditions of employment; (iii) claims for disparate impact discrimination based on

gender, race and national origin with respect to all forms of compensation (including but not limited to salary, bonus, and stock or equity awards), raises, job assignments, job code placement, demotions, denial of promotion, delayed promotion, performance ratings, ratings used for purposes of compensation rewards (including bonus and stock awards), and other terms and conditions of employment; and (iv) claims for gender, race and national origin harassment and hostile work environment, as well as all claims under federal, state and local law that are based on the same facts and circumstances as the claims brought in the Complaint.

"Released Parties" means (i) Uber Technologies, Inc.; (ii) its current and former subsidiaries and affiliated entities of the entities; and (iii) the respective predecessors and successors, as well as all of their incumbent and former officers, directors, owners, members, managers, shareholders, investors, agents, insurers, attorneys, employees, fiduciaries, successors, assigns, and representatives, in their individual and/or representative capacities of each entity referenced in (i) and (ii).

The claims you release include but are not limited to claims under the following laws and their implementing regulations and include all forms of damages (including but not limited to economic, emotional distress, punitive and exemplary damages, and damages to reputation):  (i) Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, et seq., (ii) Section 1981 of the Civil Rights Act; (iii) for those who work or worked in California:  the California Fair Employment and Housing Act, Cal. Gov't Code §12940, et seq., the California Equal Pay Act, Cal. Lab. Code §1197.5, the California Fair Pay Act, Cal. Lab. Code §§1197.5 and 1194.5 (on and after January 1, 2016), the California's Business & Professions Code §17200, et seq., the Labor Code Private Attorneys General Act (PAGA), Cal. Lab. Code §§2698-2699, and Cal. Lab. Code §§201, 202, 203, 204, and 558.1; and (iv) for those who work or worked in the District of Columbia or in states outside of California, the state and local laws of similar import in their respective jurisdictions, including, but not limited to, Arizona Rev. Stat. Ann. §23-341, Colorado Rev. Stat. Ann. §8-5-101, et seq.; Illinois Equal Pay Act of 2003, 820 Ill. Comp. Stat. 112/1, et seq.; Kentucky Equal Pay Law, Ky. Rev. Stat. Ann. §337.423; Massachusetts Gen. Laws Ann. 149 §105A; Michigan Comp. Laws Ann.  §408.423 and §750.556; Missouri. Rev. Stat. §290.400; New Jersey Equal Pay Act, N.J. Rev. Stat. §34:11-56.1, et seq.; Equal Pay Provision of the New York State Labor Law, N.Y. Labor Law §194; Ohio Minimum Fair Wage Standards Act, Ohio Rev. Code Ann. §4111.17(A); Oregon Equal Pay Statute, Or. Rev. Stat. §652.220; Pennsylvania Equal Pay Law, 43 Pa. Cons. Stat. §336.3; and Washington Rev. Code §49.12.175.  The Released Claims are limited to the facts and circumstances pled in the Complaint and do not include claims for, among other things, disability discrimination, retaliation, or wrongful discharge.

Only as to the claims released herein, you waive all rights and benefits afforded by Section 1542 of the Civil Code of the State of California, and do so understanding the significance of that waiver.  Section 1542 provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Per the requirements of the FLSA, of which the federal EPA is part, the release of federal EPA claims shall apply only to those Class Members who opt in or are deemed to have already opted in under this Settlement.  Cashing a check to receive money from the Settlement constitutes opting in.

## Excluding Yourself from the Settlement

If you do not want a payment from this settlement, and you want to keep the right to sue Uber, on your own, about the legal issues in this case, then you may need to take steps to get out.  If you have a pending lawsuit, speak to your lawyer in that lawsuit immediately, because you may have to exclude yourself from this Class to continue your own lawsuit.  This is called excluding yourself from—or opting out of—the settlement Class.

### 11.    How do I get out of the settlement?

To exclude yourself from (opt out of) the settlement and not release any claims, you must send a letter saying that you want to be excluded from *del Toro Lopez v. Uber Technologies, Inc.* and that you understand that you will not receive money from it.  You must include your (1) name, (2) address, (3) telephone number, and (4) signature.  Your exclusion (or opt-out) request must be received or postmarked by [insert date].  Exclusions (opt-outs) should be sent to:

> *del Toro Lopez v. Uber Technologies, Inc.* Settlement Administrator
> XXXX [including email address and website]

You cannot exclude yourself (opt out) by phone.  If you ask to be excluded, you will not get any settlement payment, and you cannot object to the settlement.  You will not be legally bound by anything that happens in this lawsuit.  You may be able to sue (or continue to sue) Uber in the future.

### 12.    If I exclude myself, can I get money from this settlement?

No.  If you exclude yourself, you will not receive money.  But you may sue, continue to sue, or be part of a different lawsuit against Uber on your own.

## Your privacy

### 13.    Will my manager know whether or how I responded to this Notice?

All administration of the Settlement (including review of Claim Forms, handling of opt-out requests and objections, and processing of settlement checks) is being handled by an independent, experienced, Court-appointed Settlement Administrator called JND Legal Administration.  The Settlement Administrator will report to your lawyers (called Class Counsel) and to Uber's outside lawyers (who are not employed by Uber, but are representing them) regarding which Claim Forms, exclusion requests, and comments (including objections) were submitted.

Uber has agreed that no information about these submissions (or lack thereof) will be shared within the company unless there is a need to know in order to implement the settlement.

For example, this information may be viewed by a small number of people in Human Resources who need to process the information for tax purposes, and Uber's outside lawyers may request personnel file information or other records to verify details provided in Claim Forms.

## The Lawyers Representing You

### 14.     Do I have a lawyer in this case?

The Court appointed the following attorneys to represent you and the other Class Members:  Adam Klein, Jahan C. Sagafi, Rachel Bien, Rachel Dempsey, and Iris Mattes of Outten & Golden, LLP.

Together, these lawyers are called Class Counsel or Plaintiffs' Counsel.  You will not be charged for these lawyers' work in securing the settlement benefits for you and the other Class Members.  If you want to be represented by your own lawyer, you may hire one at your own expense.

### 15.     How will Class Counsel and the Class Representatives be paid?

Class Counsel will ask the Court for attorneys' fees of up to 30 percent of the $10,000,000 fund and reimbursement of out-of-pocket costs of up to $170,000, consistent with the terms of the Settlement Agreement.  The attorneys' fees and costs, as awarded by the Court, shall be paid from the $10,000,000 fund created by the settlement.  In addition, Class Counsel will apply to the Court for a service award of up to $50,000 for Class Representative Roxana del Toro Lopez and up to $30,000 for Class Representative Ana Medina, who made this case possible by stepping forward as named Plaintiffs, provided evidence, and guided strategy in this case.  These service awards are being requested in recognition of the time, effort, and risk incurred by the two Class Representatives in securing the benefits of this Settlement for you and the other Class Members.  In addition, these two Class Representatives are agreeing to release more legal claims than you and the other Class Members are releasing.

## Commenting on (including objecting to) the settlement

You can tell the Court what you think about the settlement.

### 16.     How do I tell the Court that I like or don't like the settlement?

If you're a Class Member and you decide to participate in the settlement, you can comment on (including objecting to) the settlement.  You can give reasons why you think the Court should or should not approve it.

The Court cannot order a larger (or smaller, or otherwise different) settlement; it can only approve or deny the settlement.  If the Court denies approval, there will be no settlement at this time, no settlement payments will be sent out, and the lawsuit will continue.  If that is what you want to happen, you should object, and explain your reasoning for the Court's benefit.

You may comment on and object to the proposed settlement in writing.  You may also appear at the Final Approval Hearing, either in person or through your own attorney.  If you

appear through your own attorney, you are responsible for paying that attorney.  All written comments and objections and supporting papers must (a) clearly identify the case name and number (*del Toro Lopez v. Uber Technologies, Inc.*, Case Number 17 Civ. 36255), (b) be submitted to the Court either by mailing them to the Class Action Clerk, United States District Court for the Northern District of California, 1301 Clay Street, Oakland, CA 94612, or by filing them in person at any location of the United States District Court for the Northern District of California, and (c) be filed or postmarked on or before [insert deadline].

The Court will only require substantial compliance with the requirements for submitting an objection.

## 17.      What's the difference between objecting and excluding?

Objecting is simply telling the Court that you do not like something about the settlement. You can object only if you stay in the Class.  Excluding yourself is telling the Court that you do not want to be part of the Class.  If you exclude yourself, you have no basis to object because you are out of the Class, so the case no longer affects you.

# The Court's Fairness Hearing

The Court will hold a fairness hearing to decide whether to approve the settlement.  You may attend and you may ask to speak, but you do not have to.

## 18.      When and where will the Court decide whether to approve the settlement?

The Court will hold a fairness hearing at [insert time and date], at the United States District Court for the Northern District of California, 1301 Clay Street, Oakland, CA 94612, before the Honorable Gonzalez Rogers, United States District Judge.  At this hearing, the Court will consider whether the settlement is fair, reasonable, and adequate.  If there are objections, the Court will consider them.  Judge Gonzalez Rogers will listen to people who wish to speak at the hearing, if any.  The Court may also decide how much to pay Class Counsel and the Class Representatives.  After the hearing, the Court will decide whether to approve the settlement.  We do not know how long these decisions will take.  The fairness hearing may be postponed without further notice to the Class.  If you plan to attend the hearing, you should check www._____.com or the Court's PACER site at https://ecf.cand.uscourts.gov to confirm that the date has not been changed.

## 19.      Do I have to come to the hearing?

No.  Class Counsel represents you and will answer any questions Judge Gonzalez Rogers may have.  But you are welcome to come at your own expense.  If you send a comment (including an objection), you do not have to come to Court to talk about it.  As long as you submitted it on time, the Court will consider it.  You may also pay your own lawyer to attend, but it's not necessary.

## 20.      May I speak at the hearing?

You may ask the Court for permission to speak at the fairness hearing.  To do so, you must send a letter to the Class Action Clerk at the address listed in section 16, saying that it is

your "Notice of Intention to Appear at the Fairness Hearing in *del Toro Lopez v. Uber Technologies, Inc.*, Case Number 15 Civ. 36255." You must include your name, address, telephone number, and signature. Your Notice of Intention to Appear must be postmarked or emailed no later than [insert deadline]. This requirement may be excused upon a showing of good cause.

You cannot speak at the hearing if you excluded yourself, because the case no longer affects you.

# If You Do Nothing

**21.     What happens if I do nothing at all?**

According to our records, you are or were a female, Latino/Latina/Hispanic, African American/Black, Native American, Alaskan Native, and/or multiracial (who is in part one of the foregoing races) Uber employee who worked in a Covered Software Engineer Position at any time between July 31, 2013 and [insert Preliminary Approval date]. If you do nothing, you will release your claims as described above in section 10 and will receive money from Fund A. If you submit a Claim Form, you will release your claims as described above in section 10, will receive money from Fund A, and may receive money from Fund B.

You are not required to take any action or not take any action. It is your choice.

# Getting More Information

**22.     Are there more details about the settlement?**

This Notice is intended to be a summary of the terms of the Settlement. The Settlement Agreement, First Amended Complaint, and this Notice are all available at www._____.com.

You may also obtain this information by contacting the Settlement Administrator at [insert phone number], class counsel at Outten & Golden LLP at (415) 638-8800, by accessing the Court docket in this case through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California at 1301 Clay Street, Oakland, CA 94612, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

**PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS.**

By order of the United States District Court for the Northern District of California.

Dated:  [DATE]

# Exhibit B

## *del Toro Lopez v. Uber* Class Action Settlement

## Claim Form

## Section A:  Instructions

1. **The purpose of this Claim Form.**  You should submit this Claim Form if you experienced, and seek an award for, the effects of gender, race or national origin (i) harassment or a hostile work environment, or (ii) discrimination in compensation, raises, job assignments, job code placement, evaluations, ratings, promotions, demotions, or other terms and conditions of employment (excluding lost compensation, which is accounted for by Fund A).  You must have experienced the harm while employed by Uber between July 31, 2013 and [date of preliminary approval order].  The Settlement Administrator will review your Claim Form, in conjunction with the lawyers for both parties, and give it a numeric score based on objective criteria, to determine how much money from Fund B you should receive, if any.

2. **How this form will be used.**  The money from Fund B that you receive (if any) will be determined based on a combination of your answers to these questions, your work history at Uber and Uber's records.  Submitting this Claim Form does not guarantee that you will receive money from Fund B.

3. **This is confidential.**  All information contained in this Claim Form will be kept confidential.  It will be viewed only by three entities: (a) the Court-appointed Settlement Administrator, (b) your lawyers ("Class Counsel," Outten & Golden LLP), and (c) Uber's outside lawyers (Paul Hastings LLP).  Uber's outside lawyers will not share this Claim Form or the information in it with anyone at Uber.  Uber's outside lawyers may request information from Uber, such as a personnel file or other records, to validate information in this Claim Form.  The goal of all three entities in reviewing Claim Forms is to ensure that every Claim Form is given an appropriate score, and the money from Fund B is paid out fairly.

4. **Details are important.**  Please include all details that can help explain why your Claim Form merits an award of money from Fund B.

5. **How to complete this form.**  You can complete this form online (at [website]), in hard copy, or by filling out a PDF.  Because of the details requested, you may want to use additional pages.  If you do so, please put your name, Uber ID number or Social Security number, and the question number(s) on each additional page you submit.

6. **Time period.**  This Claim Form focuses on your employment at Uber from July 2013 to the present.

7. **How this form works.**  This form has five sections.  Section A (this section) is the Instructions.  Section B asks about your personal information and work history at Uber.  Section C allows you to provide information about relevant incidents of harassment and discrimination at Uber.  Section D allows you to provide information about the impact that those incidents had on you.  Section E is where you sign and date the form.

8. **How & when to submit this form.**  To be eligible to receive money from Fund B, your completed Claim Form must be received or postmarked by **[date],** to:

    **[Claims Administrator]**

**[address]**
**[email, fax, and website]**

9. **Questions?**  If you want information about the Settlement or assistance with this Claim Form, please contact Class Counsel at ubersettlement@outtengolden.com or 415-638-8800.  Do not call the Court, the Clerk of Court, or Uber.

## <u>Section B:  Personal Information</u>

| Contact & Identification Information | |
|---|---|
| 1.   Name | |
| 2.   Date of Birth (mm/dd/yyyy) | |
| 3.   Uber ID number or last four digits of Social Security Number | |
| 4.   Gender | □ Man    □ Woman   □ Trans Man   □ Trans Woman □ Other (please specify:                    ) |
| 5.   Race / Ethnicity (check all that apply) | □ American Indian or Alaska Native □ Black or African American □ Hispanic or Latino/a □ White □ Multi-racial (please specify:                     ) □ Other (please specify:                     ) |

| Contact Information | |
|---|---|
| 6.   Mailing Address | |
| 7.   Home Phone Number | |
| 8.   Cell Phone Number | |
| 9.   E-Mail Address | |
| 10. Best time of day/week to contact you and preferred mode(s) of contact | |

**Positions at Uber**

11. Please list your position(s) at Uber and the dates you held the position(s).

| Your Job Title | Dates |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |

## <u>Section C:  Questions About Harassment and Discrimination</u>

1. **Background instructions.**  This section of the Claim Form allows you to provide information about the harassment and discrimination you experienced in a Covered Software Engineer Position at Uber between July 31, 2013 and [date of preliminary approval order].  Please provide detailed information about specific incidents and behaviors here.  (The following section allows you to provide information about the impact that those incidents and behaviors had on you personally, so don't include information about impact here.)

2. **The purpose of this section.**  The purpose of this section is to determine whether, during your employment in a Covered Software Engineer Position at Uber between July 31, 2013 and [date of preliminary approval order], you were subjected – based on your gender, race, or ethnicity (i) to any harassment in the workplace or a work environment that was hostile, or (ii) to discrimination that had an emotional, psychological, financial, professional, physical, and/or medical impact on you.  (Incidents of discrimination that resulted *only* in less compensation (and no other effects) should not be included on this Claim Form, because they are covered by Fund A.)

3. **What types of incidents/behaviors to include in this section.**  You should include all instances of harassment and a hostile work environment based on gender, race, or ethnicity that impacted you and for which you seek a monetary award in this case.  Harassment and/or a hostile work environment can include, but is not necessarily limited to, the following:

   • Written or spoken <u>comments</u> (including jokes, epithets, stereotypes, teasing) about your or someone else's gender, race, or ethnicity that are offensive to you
   • Any demeaning, intimidating, threatening, or hurtful <u>comments</u> or <u>behavior</u> (including undesired sexual advances, unwanted sexual attention, sexual coercion, pressure for sexual favors, lack of appropriate recognition, sexist or racist remarks, and threats to an individual or group (whether directed at a particular individual or not) based on gender, race or national origin, or bullying) that shows hostility toward you or someone else because of gender, race or ethnicity
   • The display of <u>images</u> (including online images, graffiti, drawings, symbols of violence, hatred or disrespect (such as comparing an individual to an ape), etc.) based on gender, race, or ethnicity that are offensive to you
   • Unwanted <u>touching, caressing, assault,</u> physical violence or the threat of physical violence, or other <u>physical harassment</u> based on gender, race, or ethnicity
   • Harassment based on <u>non-conformance with social or cultural expectations</u> of how men and women usually act (including gender-stereotyped assumptions about family responsibilities)
   • Harassment based on, or because of, a person's sexual orientation, gender identity, transgender status or intention to transition gender status; pregnancy, childbirth or related medical conditions; lactation; or race-linked traits such a facial features, hair or skin tone; or ancestors' place of origin, ethnic or cultural characteristics (such as diet or attire), or linguistic characteristics such as an accent.
   • This is <u>not an exhaustive list</u> of the things that constitute harassment.

4. **How this section works.**  In this section, please describe each instance of harassment, collection of similar related instances, or similar behaviors.  If a similar type of incident or behavior occurred repeatedly, you may describe the experience as one event and provide the first date, last date and frequency at which it occurred.

5. **Additional pages for this section.**  This section provides four pages on which you can describe up to four incidents, collection of related incidents, or similar behaviors.  You may provide more than four.  If

you would like to describe more, please copy the fourth page, cross out the number "4," and write the appropriate number (e.g., 5, 6, 7, etc.) on the page.

6. **The mechanics of completing this Claim Form.** Please note that you can complete this form online at [website], or in hard copy, or by filling out a PDF. Because the questions in this section ask for details, and because the answer spaces are short, you are welcome to type out your answers on blank paper, and simply write "see attached pages" in your answer to the question. If you do so, please put your name, Uber ID number or Social Security number, and the question number(s) on each additional page you submit.

7. **Assistance.** If you would like assistance filling out this form, please contact your lawyers, Class counsel, at ubersettlement@outtengolden.com or 415-638-8800. Do not call the Court, the Clerk of Court, or Uber.

**Item #1.  Incident, collection of related incidents, or behavior regarding harassment or discrimination.**

**a. Describe the incident(s)/behavior.**  Please specifically describe the substance of the offensive harassment or discrimination in as much detail as you can, including who said or did what to whom.

**b. Who.**  Please provide details about the people responsible, including their name, gender, race, ethnicity, and job title (if known).

**c. Witnesses.**  Please provide details about who was present, including their name, gender, race, ethnicity, and job title (if known).

**d. When.**  Please provide date(s), time(s), or if it occurred repeatedly and you do not recall each date, state the first date, last date and frequency.

**e. Where.**  Please provide details about where this occurred.

**f. Response.**  What did you say or do in response, if anything?  If you complained to someone at Uber or made a complaint to a governmental agency about the issue, please include details of that complaint.

**Item #2.  Incident, collection of related incidents, or behavior regarding harassment or discrimination.**

**a. Describe the incident(s)/behavior.**  Please specifically describe the substance of the offensive harassment or discrimination in as much detail as you can, including who said or did what to whom.

**b. Who.**  Please provide details about the people responsible, including their name, gender, race, ethnicity, and job title (if known).

**c. Witnesses.**  Please provide details about who was present, including their name, gender, race, ethnicity, and job title (if known).

**d. When.**  Please provide date(s), time(s), or if it occurred repeatedly and you do not recall each date, state the first date, last date and frequency.

**e. Where.**  Please provide details about where this occurred.

**f. Response.**  What did you say or do in response, if anything?  If you complained to someone at Uber or made a complaint to a governmental agency about the issue, please include details of that complaint.

**Item #3.  Incident, collection of related incidents, or behavior regarding harassment or discrimination.**

**a. Describe the incident(s)/behavior.**  Please specifically describe the substance of the offensive harassment or discrimination in as much detail as you can, including who said or did what to whom.

**b. Who.**  Please provide details about the people responsible, including their name, gender, race, ethnicity, and job title (if known).

**c. Witnesses.**  Please provide details about who was present, including their name, gender, race, ethnicity, and job title (if known).

**d. When.**  Please provide date(s), time(s), or if it occurred repeatedly and you do not recall each date, state the first date, last date and frequency.

**e. Where.**  Please provide details about where this occurred.

**f. Response.**  What did you say or do in response, if anything?  If you complained to someone at Uber or made a complaint to a governmental agency about the issue, please include details of that complaint.

**Item #4.  Incident, collection of related incidents, or behavior regarding harassment or discrimination.**

**a. Describe the incident(s)/behavior.**  Please specifically describe the substance of the offensive harassment or discrimination in as much detail as you can, including who said or did what to whom.

**b. Who.**  Please provide details about the people responsible, including their name, gender, race, ethnicity, and job title (if known).

**c. Witnesses.**  Please provide details about who was present, including their name, gender, race, ethnicity, and job title (if known).

**d. When.**  Please provide date(s), time(s), or if it occurred repeatedly and you do not recall each date, state the first date, last date and frequency.

**e. Where.**  Please provide details about where this occurred.

**f. Response.**  What did you say or do in response, if anything?  If you complained to someone at Uber or made a complaint to a governmental agency about the issue, please include details of that complaint.

# <u>Section D:  The Impact of the Harassment or Discrimination on You</u>

**Impact**

**Describe the impact of the incident(s)/behavior(s) from Section C.**  Please specifically describe the impact that the incident(s)/behavior(s) described in Section C had on you personally since July 31, 2013. This includes all types of impact (including, for example, emotional, psychological, financial, professional, physical, and medical impact, etc.).  If you suffered physical or psychological effects (e.g., stomach problems, sadness, weight loss or gain, anxiety, hair loss, sleeping problems, depression, headaches, grinding teeth, loss of self-esteem, humiliation, unusual stress, etc.), please describe them.  If you received medical treatment (e.g., doctor visits, medication, etc.), please describe it.  Please provide supporting documentation if you have any (e.g., doctor's notes or bills).

# <u>Section E:  Signature and Date</u>

You must sign and date this Claim Form for your claim to be valid.


I, (print your name) _____, declare, under penalty of perjury, that the information I have provided on this form and any supplemental pages submitted with this form is true and correct to the best of my knowledge, and, if called upon to testify under oath, I would testify that the information I have provided is true.  I understand that intentionally submitting false information on this form is a violation of the law.


_____            _____, 2018
         Your signature                                                    Date


Your Claim Form must be received by the Settlement Administrator or postmarked by [DATE].
A self-addressed envelope has been enclosed for returning the Claim Form.

Please submit this Claim Form to:

CLAIMS ADMINISTRATOR
[address]
[email address]
[fax number]
[website]

# Exhibit C

Settlement Administrator
[insert address]

## Notice of class action settlement to certain Uber software engineers

[window]

**According to our records,**
**you are eligible for a settlement payment.  This payment may**
**be increased if you submit a Claim Form (enclosed blue form)**
**by [insert deadline].**


**Details are in the legal notice (enclosed white form).**

# Exhibit D

1   Jahan C. Sagafi (SB# 224887)
    Rachel W. Dempsey (SB# 310424)
2   Laura Iris Mattes (SB# 310594)
    OUTTEN & GOLDEN LLP
3   One Embarcadero Center, 38th Floor
    San Francisco, CA 94111
4   Telephone: (415) 638-8800
    Facsimile: (415) 638-8810
5   E-mail: jsagafi@outtengolden.com
    E-mail: rdempsey@outtengolden.com
6   E-mail: imattes@outtengolden.com

7   Adam T. Klein (*pro hac vice* forthcoming)
    Rachel M. Bien (SB# 315886)
8   OUTTEN & GOLDEN LLP
    685 Third Avenue, 25th Floor
9   New York, New York 10017
    Telephone: (212) 245-1000
10  Facsimile: (646) 509-2060
    E-mail: atk@outtengolden.com
11  E-mail: rmb@outtengolden.com

12  *Attorneys for Plaintiffs and Proposed Class and*
    *Collective Members*

13

14                    UNITED STATES DISTRICT COURT

15                  NORTHERN DISTRICT OF CALIFORNIA

                            OAKLAND DIVISION
16

17  ROXANA DEL TORO LOPEZ and          Case No. 4:17-cv-06255 (YGR)
    ANA MEDINA, on behalf of
18  themselves, and all others similarly  **[PROPOSED] ORDER GRANTING**
    situated,                             **PRELIMINARY APPROVAL OF**
19                                        **PROPOSED CLASS ACTION**
                                          **SETTLEMENT**
20              Plaintiffs,

21        v.

22  UBER TECHNOLOGIES, INC.,

23              Defendant.

24

25

26

27

28

On April 10, 2018, a hearing was held on the motion of Plaintiffs Roxana del Toro Lopez and Ana Medina ("Plaintiffs") for an order to: (1) conditionally certify the settlement classes; (2) preliminarily approve the parties' proposed class action settlement (the "Settlement"); (3) appoint Plaintiffs as the Class Representatives, their counsel as Class Counsel, and JND Legal Administration as Settlement Administrator; (4) set the deadlines for filing claims, written exclusions, or objections to the Settlement; (5) approve the forms of notice to the class of the settlement and the Claim Form; and (6) schedule a hearing on the final approval of the Settlement for _____, 2018  (the "Preliminary Approval Motion").  Jahan C. Sagafi and Rachel Dempsey appeared for Plaintiffs.  Nancy Abell and Jullie Lal appeared for Defendant Uber Technologies, Inc. ("Uber"):

Having considered the papers on the motion, the arguments of counsel, and the law, the Court now enters this Preliminary Approval Order and FINDS, CONCLUDES, and ORDERS as follows:

## I.   NATURE OF ACTION

Plaintiffs allege that Uber engaged in (i) gender, race and national origin discrimination in compensation, raises, job assignments, job code placement, evaluations and ratings, promotions, demotions and other terms and conditions of employment; (ii) unequal pay; (iii) failure to timely pay all wages due; (iv) unfair competition; and (v) gender, race and national origin harassment and hostile work environment, all in violation of federal and California state laws.

Uber disputes and denies all of Plaintiffs' claims.  Uber contends that it has fully complied with all applicable laws at issue in this matter.

## II.   CONDITIONAL CERTIFICATION OF RULE 23 SETTLEMENT CLASSES AND EPA COLLECTIVE

### A.   Rule 23 Settlement Classes and EPA Collective

For settlement purposes only, the Parties have proposed conditional certification the following classes:

(1) all women and people of color in the Software Engineer 1 or 2, Senior Software Engineer 1 or 2, or Staff Software Engineer job titles (the "Covered Software Engineer Positions") who work or worked for Uber in the United States between July 31, 2013 and entry of the preliminary approval order ("PAO") (the "Nationwide Rule 23 Class");

(2) all women and people of color in the Covered Software Engineer Positions who work or worked for Uber in California between July 31, 2013 and entry of the PAO (the "California Rule 23 Class");

(3) all women who work or worked for Uber in a Covered Software Engineer Position in the United States between July 31, 2014 and entry of the PAO who opt in (the "Federal EPA Collective"); and

(4) all women and people of color who work or worked for Uber in a Covered Software Engineer Position in California between June 22, 2016 and entry of the PAO (the "PAGA Representative Group").

**B.**     **<u>Conditional California And Nationwide Rule 23 Certification</u>**

The Court hereby finds and concludes that for purposes of the Settlement only, the Nationwide Class and California Class satisfy all of the requirements for certification under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure.

1.      The Nationwide Class and the California Class are sufficiently numerous that joinder is impracticable.

2.      The members of the Nationwide Class share common issues of fact and law regarding whether Uber's policies and practices discriminate against Class Members, whether they violate Title VII and Section 1981, whether Uber's performance evaluation, compensation, promotion, and job assignment systems are discriminatory, whether harassment and a hostile work environment existed, and what remedies are warranted.  The members of the California Class share common issues of fact and law regarding whether Uber's policies and practices discriminate against Class Members, whether they violate the California EPA, the California Labor Code, the UCL, and FEHA, whether Uber's performance evaluation, compensation, promotion, and job assignment systems are discriminatory, whether harassment and a hostile work environment existed, and what remedies are warranted.  .

3. The Class Representatives' claims are typical of those of the Classes they propose to represent, because they arise out of the same policies and practices and course of conduct complained of by all Class Members.

4. Each Class Representative is an adequate representative of the Classes she proposes to represent, because her interests are co-extensive with those of the Class Members, and she has retained experienced counsel to represent her and the Class Members.

5. Questions of law or fact common to the Classes predominate over individualized issues, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

6. Because certification of the Classes is proposed in the context of a settlement, the Court need not inquire whether the case, if tried as a class action, would present intractable management problems.

Accordingly, the Court hereby certifies the Nationwide Class and the California Class under Rule 23(a) and (b)(3).

**C.  Conditional Designation of Federal EPA Collective Action under 29 U.S.C. § 216(b)**

For settlement purposes only, the Parties have proposed certification of the action as a collective action under section 16(b) of the FLSA, 29 U.S.C. § 216(b), for the EPA claims. The Court hereby finds and concludes that the EPA Class fulfills the requirements for a collective action under section 16(b).

1. Under section 16(b), an action may be maintained by an employee or employees on behalf of others who are "similarly situated."

2. Here, the Class Members are similarly situated for purposes of a collective action under section 16(b) in that they are female engineers in the Covered Software Engineer Positions at Uber and have been affected by policies and practices that have the purpose and effect of denying them employment opportunities because of their gender.

Accordingly, certification under section 16(b) is appropriate for those Class Members who

-3-

are female engineers in the Covered Software Engineer Positions between July 31, 2014 and date of preliminary approval who opt in.

## III.   APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL

### A.   Class Representatives

The Court finds and concludes that Class Representatives have claims typical of the Members of the Classes they propose to represent, and they are adequate representatives of the Classes they seek to represent.  The Court hereby appoints Plaintiffs Roxana del Toro Lopez and Ana Medina to serve as Class Representatives.

### B.   Class Counsel

The Court finds and concludes that Outten & Golden LLP have extensive experience and expertise in prosecuting discrimination, class and collective actions.  The Court appoints Outten & Golden LLP as Class Counsel.

## IV.   PRELIMINARY APPROVAL OF SETTLEMENT

The Court has reviewed the terms of the Settlement, including the plan of allocation, the division of funds into Fund A and Fund B, and the release of claims.  The Court has also read and considered the declaration of Jahan C. Sagafi in support of preliminary approval.  Based on review of those papers and the Court's familiarity with this case, the Court finds and concludes that the Settlement is the result of arms-length negotiations between the Parties conducted after Class Counsel had adequately investigated Plaintiffs' claims and become familiar with their strengths and weaknesses.  The assistance of an experienced mediator in the settlement process supports the finding that the Settlement is non-collusive.  Based on all of these factors, the Court concludes that the proposed Settlement meets the criteria for preliminary settlement approval. The Settlement has no obvious defects and falls within the range of possible approval as fair adequate, and reasonable, such that notice to the Class Members is appropriate.  Accordingly, the Settlement is hereby preliminarily approved.

## V.   APPROVAL OF THE NOTICE PLAN

The Parties have also submitted for this Court's approval a proposed class notice (Exhibit

A to the Settlement Agreement).  After carefully reviewing these documents, the Court finds and concludes as follows:

### A.   Best Notice Practicable

The Class Notice is the best notice practicable under the circumstances and allows Class Members a full and fair opportunity to consider the Settlement.

The Class Notice, based on the model forms supplied by the Federal Judicial Center, fairly, plainly, accurately, and reasonably informs Class Members of appropriate information about: (1) the nature of this action, the definition of the Class, the identity of Class Counsel, and the essential terms of the Settlement, including the plan of allocation; (2) Plaintiffs' forthcoming application for the Class Representatives' Service Awards and the Class Counsel Attorneys' Fees and Costs Award; (3) how Class Members' settlement shares will be calculated; (4) this Court's procedures for final approval of the Settlement, and about Class Members' right to appear through counsel if they desire; (5) how to submit a claim form, comment on or opt out of the Settlement, if a Class Member wishes to do so, and (6) how to obtain additional information regarding this action and the Settlement.

The proposed plan for distributing the Class Notice likewise is a reasonable method calculated to reach all individuals who would be bound by the Settlement.  Under this plan, the Settlement Administrator will distribute the Class Notice to all Class Members by first-class mail and e-mail to their last known mailing and e-mail addresses.  There is no additional method of distribution that is cost-effective and would be reasonably likely to notify Class Members who may not receive notice pursuant to the proposed distribution plan.  In addition, the Settlement Administrator will send reminder notices by mail and email to those who have failed to opt out or submit all required or optional forms by the time the response deadline approaches.

### B.   CAFA Notice of Proposed Settlement

Within ten days after Plaintiffs' Preliminary Approval Motion was filed, notice of the Settlement was mailed to the Attorney General of the United States of America and the appropriate state official in California and all of the other states in which a Class Member is

-5-

[PROPOSED] ORDER GRANTING
PRELIMINARY APPROVAL TO
CLASS ACTION SETTLEMENT
Case No. 17-cv-6255 (YGR)

known by Uber to reside. The notice contains the documents required by 28 U.S.C. § 1715(b)(1)-(8).  On this basis, the notice of the Settlement is approved and the Court finds that Uber has discharged its obligations under CAFA to provide notice to the appropriate federal and state officials.

### C.   PAGA Notice of Proposed Settlement

On the date Plaintiffs' Preliminary Approval Motion was filed, notice of the Settlement was provided to the California Labor and Workforce Development Agency, as required by Cal. Lab. Code § 2699(*l*)(2).

### D.   Approval

Accordingly, the Court finds and concludes that the proposed plan for distributing the Class Notice will provide the best notice practicable, satisfies the notice requirements of Rule 23(e), and satisfies all other legal and due process requirements.  Accordingly, the Court hereby orders as follows:

1.   The Class Notice, Claim Form, Notice Envelope, and Reminder Postcard are approved.

2.   The manner of distributing the Class Notice to the Class Members is approved.

3.   Promptly following the entry of this order, the Settlement Administrator will prepare final versions of the Class Notice, incorporating into them the relevant dates and deadlines set forth in this order.

4.   Within fifteen (15) calendar days following entry of this order, Uber will provide the Settlement Administrator with a database in a format reasonably acceptable to the Settlement Administrator ("Settlement Class List"), that lists, for each Class Member, the Class Member's full name (maiden and married names, where applicable), last known home address, email (if known), telephone numbers(s), employee identification number, social security number, and number of work weeks worked during each relevant period in each job code including whether those work weeks were full-time versus part-time weeks.

5.   Within twenty (20) calendar days after receipt of the Class Data List, the

Settlement Administrator will send the Notice and Claim Form to all Class Members, by first-class mail to their last known address, and by email to their last known email address(es).

6.      The Settlement Administrator will perform two skip-traces on returned mail and re-mail the Notice and Claim Form to an updated address (if any) as soon as possible upon return of the undeliverable Notice.

7.      Plaintiffs will file with their motion for final approval a declaration from the Settlement Administrator of due diligence and proof of mailing with regard to the mailing of the Notice, and will file prior to the hearing on the motion a supplemental declaration from the Settlement Administrator as applicable.

8.      The Settlement Administrator will take all other actions in furtherance of settlement administration as are specified in the Settlement.

## VI.     PROCEDURES FOR FINAL APPROVAL OF THE SETTLEMENT

### A.      Final Approval Hearing

The Court hereby schedules a hearing to determine whether to grant final approval of the Settlement (the "Final Approval Hearing") for _____, 2018, at 2:00 p.m.  The date of the hearing may be changed without further notice to the Class.  However, Plaintiffs are responsible for promptly updating the case website with information about any such change.

### B.      Deadline to Submit Claim Forms

All Class Members who wish to submit Claim Forms must do so within sixty (60) calendar days from the date of the mailing.  For mailed submissions, any item mailed by the deadline, as evidenced by a postmark, shall be deemed to be timely.  Submissions may be filed by mail, email, or online website submission.

### C.      Deadline to Opt Out of the Settlement

#### 1.      Form of Opt-Out Request

Any Class Member may opt out of participating in the Settlement by submitting a signed letter to the Settlement Administrator stating that he or she wishes to be excluded from the Settlement.  The letter must include the Class Member's name, address, telephone number, and

-7-

1  signature.

2               **2.**      **Deadline for Submitting Opt-Out Request**

3         A completed opt-out request will be deemed timely submitted to the Settlement

4  Administrator if it is mailed to the Settlement Administrator by first-class mail and postmarked

5  by not later than forty-five (45) days after the Settlement Administrator first mails the Class

6  Notice to Class Members.  Only those Class Members who submit their opt-out request within the

7  time and by the manner set forth in this Order will be excluded from the Settlement.  Pursuant to

8  Federal Rule of Civil Procedure 23(b)(3) and (c)(2), the Settlement will have no binding effect on

9  any Class Member who properly opts out of the Settlement in the manner required by this Order.

10         **D.**      **Uber's Right to Rescind Agreement**

11         If five percent (5%) or more of the eligible Class Members validly opt out pursuant to the

12  process set forth herein, Uber will have the right either (i) to withdraw in writing from and

13  rescind this Agreement in which case all actions taken in its furtherance shall be null and void for

14  all purposes and may not be used or introduced in further litigation except to determine whether

15  Uber is entitled to withdraw from the Agreement and has validly done so, or (ii) to modify this

16  Agreement through further negotiations with Class Counsel.  Uber must exercise this right within

17  ten (10) calendar days after the Settlement Administrator sends the final list of all Opt-Out

18  Statements to Class Counsel and Defendant's Counsel by email.  If Uber exercises this option, it

19  will be solely responsible for the Settlement Administrator's costs incurred up to that date.

20         **E.**      **Deadline for Filing Comments on or Objections to Settlement**

21         Any Class Member who wishes to comment on or object to the fairness, reasonableness,

22  or adequacy of the Settlement must do so in writing.  Class Members who have timely

23  commented on or objected to the Settlement in writing may also appear at the Final Approval

24  Hearing, in person or through counsel, but only if they (a) have given written notice of their intent

25  to appear at the hearing as provided in the Class Notice, or (b) can show good cause why they

26  could not provide such notice.  To be considered, any comment on or objection to the final

27  approval of the Settlement must (a) clearly identify the case name and number (*Del Toro Lopez v.*

28

*Uber Technologies, Inc.*, Case Number 17 Civ. 6255), (b) be submitted to the Court either by mailing the comment or objection to the Class Action Clerk, United States District Court for the Northern District of California, 1301 Clay Street, Oakland, CA 94612, or by filing them in person at any location of the United States District Court for the Northern District of California, and (c) be filed or postmarked within forty-five (45) days after the date of the Notice mailing.  Any Class Member who does not timely submit such a written comment or objection will not be permitted to raise such comment or objection or appear at the Final Approval Hearing, except for good cause shown, and any Class Member who fails to object in the manner prescribed by this order will be deemed to have waived, and will be foreclosed from raising, any such comment or objection, except for good cause shown.  The Court will only require substantial compliance with the requirements for submitting an objection.

### F. Deadline for Mailing and Cashing Settlement Share Checks

Every Class Member who does not opt out of the Settlement will be eligible to receive his or her share of Fund A.  In addition, each Class Member who submits a Claim Form may also be eligible to receive his or her share of Fund B.  No later than ten (10) calendar days after the date on which the Court grants final approval of the settlement, Uber will issue to the Claims Administrator the Gross Fund Payment.  The Claims Administrator will distribute the funds from the Gross Fund, including mailing settlement checks to Qualified Claimants, providing the PAGA penalty payment to the Labor and Workforce Development Agency, making attorneys' fees and cost payments, and making Class Representatives Service Awards payments.  Qualified Claimants will have one hundred eighty (180) calendar days from the date of issuance written on the check to cash their Settlement Share checks, after which time the checks will expire.  Should there remain any residual from the Gross Fund Value after all payments are made under this Settlement, for example, if any settlement checks remain uncashed more than 180 calendar days after mailing, the Claims Administrator shall pay the funds represented by such un-redeemed checks in equal parts to Girls Who Code, the Mexican American Legal Defense and Educational Fund ("MALDEF") and the NAACP Legal Defense and Educational Fund.

[PROPOSED] ORDER GRANTING
PRELIMINARY APPROVAL TO
CLASS ACTION SETTLEMENT
Case No. 17-cv-6255 (YGR)

### G.    Deadline for Submitting Motion Seeking Final Approval

Not later than thirty-five (35) days before the Final Approval Hearing, Plaintiffs will file a motion for final approval of the Settlement.

### H.    Deadline for Motion for Approval of Class Representatives Payment

Not later than fourteen (14) days before the expiration of the 45-day opt-out and objection period, Class Counsel may file a motion for approval of Service Awards for the Class Representatives.

### I.    Deadline for Motion for Class Counsel Attorneys' Fees and Costs Award

Not later than fourteen (14) days before the expiration of the 45-day opt-out and objection period, Class Counsel may file a motion for approval of their Class Counsel Attorneys' Fees and Costs Payment.

## VII.    PLAINTIFFS' AND CLASS MEMBERS' RELEASE

If, at the Final Approval Hearing, this Court grants final approval to the Settlement, Plaintiffs and every Class Member who does not opt out will, pursuant to the Settlement, be adjudicated to have granted the release of "Released Claims" as set forth in Section 12.1 of the Settlement and the Class Notice.  Each Class Member, by cashing his or her Settlement Check, releases all Released Claims under as set forth in the Settlement.

## VIII.    APPOINTMENT OF SETTLEMENT ADMINISTRATOR

JND Legal Administration is hereby appointed Settlement Administrator to carry out the duties set forth in this Preliminary Approval Order and the Settlement.

## IX.    SCHEDULING ORDER

The following schedule sets for the sequence for the relevant dates and deadlines based on the preliminary approval of the Settlement on _____, 2018.

| Event | Date |
|---|---|
| Uber to provide class list data to Administrator | |
| Notice disseminated by Settlement Administrator | |
| Reminder notices | |
| Fee and Service Award motions due | |
| Deadline for Class Members to submit requests for exclusion and/or objections | |
| Deadline for Class Members to submit Claim Forms | |
| Settlement Administrator submits final report to Parties | |
| Final Approval motion due | |
| Uber decides whether to rescind the Settlement | |
| Final approval, Service Award fee reply briefs | |
| Final Approval Hearing | |
| Effective Date (assuming no appeals) | |
| Funding of Settlement | |
| Checks mailed to Class Members | |
| Approximate deadlines for Class Counsel to report to the Court regarding implementation of the Settlement (to be formally set at the Final Approval Hearing) | |

IT IS SO ORDERED.

Dated: _____

_____
The Honorable Yvonne Gonzalez Rogers
United States District Judge

# Exhibit E

Jahan C. Sagafi (SBN 224887)
Rachel W. Dempsey (SBN 310424)
Laura Iris Mattes (SBN 310594)
OUTTEN & GOLDEN LLP
One Embarcadero Center, 38th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
E-mail: jsagafi@outtengolden.com
E-mail: rdempsey@outtengolden.com
E-mail: imattes@outtengolden.com

Adam T. Klein (*pro hac vice* forthcoming)
Rachel M. Bien (SBN 315886)
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060
E-mail: atk@outtengolden.com
E-mail: rmb@outtengolden.com

*Attorneys for Plaintiffs and Proposed Class*
*and Collective Members*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ROXANA DEL TORO LOPEZ and ANA MEDINA, on behalf of themselves, and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> UBER TECHNOLOGIES, INC. <br><br> Defendant. | Case No. 4:17-cv-06255 YGR <br><br> **FIRST AMENDED CLASS, COLLECTIVE ACTION AND PAGA COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiffs Roxana del Toro Lopez and Ana Medina, on behalf of themselves and all others similarly situated, allege as follows:

## SUMMARY OF CLAIMS

1.     This is a class and collective action brought by Plaintiffs against Uber Technologies, Inc. ("Uber") alleging violations of the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d); Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*; 42 U.S.C. § 1981 ("Section 1981"); the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12940; the California Private Attorneys General Act ("PAGA"), Cal. Lab. Code, § 2698 *et seq.*; Cal Lab. Code §§ 201, 202, 203, 204 and 558.1; the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*; and the California Equal Pay Act ("California EPA"), Cal. Lab. Code § 1197.5, on behalf of themselves and all similarly-situated employees nationwide.

2.     Uber is a global provider of on-demand transportation and food delivery services.  In 2017, Uber generated approximately $37 billion in revenue.[1]  Uber is a major employer with approximately 9,000 U.S. employees, many of whom are engineers.

3.     As a result of Uber's policies, patterns, and practices, female engineers and engineers of color employed as Software Engineers 1 and 2, Senior Software Engineers 1 and 2, and Staff Software Engineers receive less compensation and are promoted less frequently than their white and Asian[2] male counterparts.  Herein, "of color" is defined as Latino/Latina/Hispanic, African American/Black, Native American, Alaskan Native, and/or multiracial individuals (who are in part one of the foregoing races).

4.     In addition to bringing this action on their own behalf, Plaintiffs also bring this action on behalf of classes of similarly situated current and former female engineers and engineers of color employed by Uber in the United States and California, in order to end Uber's discriminatory policies and make the classes whole.

---

[1] *See* "Uber lost $4.5 billion in 2017, but its revenue jumped," http://www.latimes.com/business/technology/la-fi-uber-earnings-20180214-story.html (last visited February 28, 2018).

[2] For the purposes of this Complaint, "Asian" includes Asian nationals as well as Asian Americans.

FIRST AMENDED COMPLAINT
Case No. 4:17-cv-06255 YGR

**JURISDICTION AND VENUE**

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as Plaintiffs assert federal claims under the EPA, Title VII, and Section 1981.

6.      This Court has jurisdiction over the California EPA, UCL, and FEHA claims and claims under Cal Lab. Code §§ 201, 202, 203, 204 and 558.1 because this is a class action in which: (a) there are 100 or more members in the proposed class; (b) at least some members of the proposed class have a different citizenship from Defendant; and (c) the claims of the proposed class members exceed $5,000,000 in the aggregate.

7.      In addition, this Court has supplemental jurisdiction over the California EPA, UCL, FEHA, and PAGA claims and claims under Cal Lab. Code §§ 201, 202, 203, 204 and 558.1 because they arise from a common nucleus of operative facts with the federal claims and are so related to the federal claims as to form part of the same case or controversy under Article III of the United States Constitution.

8.      This Court has personal jurisdiction over Uber.  There is general jurisdiction over Uber, as Uber's corporate headquarters are located in this District in San Francisco, California, Uber conducts substantial business throughout this District and in the State of California, and Uber employs thousands of workers in the State.

9.      Declaratory and injunctive relief is sought and authorized by 28 U.S.C. §§ 2201 and 2202.

10.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b)-(c), because Uber maintains offices in this District, conducts business in this District, a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this District, and records relevant to those events and omissions are maintained and administered here.

11.      Venue is also proper in this judicial district under 42 U.S.C. § 2000e–5(f)(3) because the employment practices alleged in this complaint were committed in this District and Uber administers the employment records relevant to such practices here.

12.      Intradistrict Assignment.  Per N.D. Cal. Civil L.R. 3-2(c) and 3-5(b), assignment to

the San Francisco or Oakland Division is appropriate because a substantial part of the events or omissions that give rise to the claims asserted herein occurred in San Francisco County, where Uber is based and where Plaintiffs worked for Uber.

13.     Plaintiff del Toro Lopez filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on November 20, 2017.  Pursuant to the EEOC's work-sharing agreement with the California Department of Fair Employment and Housing ("DFEH"), del Toro Lopez's charge is considered dually filed with the DFEH.

## THE PARTIES

### Plaintiffs

14.     Plaintiff Roxana del Toro Lopez is a female Latina engineer who was employed by Uber as a Software Engineer 1 from May 2015 to March 2017, and as a Software Engineer 2 from March 2017 to August 2017 in San Francisco, California.

15.     Plaintiff Ana Medina is a female Latina engineer who has been employed by Uber as a Software Engineer 1 from March 2016 to the present in San Francisco, California.

### Defendant

16.     Defendant Uber is a corporation formed under the laws of the State of Delaware with its corporate headquarters in the city of San Francisco, California.

17.     Upon information and belief, Uber's California headquarters maintain control, oversight, and direction over the operation of its facilities, including its employment practices.

18.     During all relevant times, Uber was Plaintiffs' employer within the meaning of all applicable statutes.

19.     At all times pertinent hereto, Uber has employed more than five hundred people.

## FACTUAL ALLEGATIONS

20.     Uber maintains uniform employment, compensation, performance review, and promotion policies throughout the United States.

21.     Upon information and belief, Uber cultivates and promotes a common corporate culture.  Its offices throughout California and the United States use a common organizational

FIRST AMENDED COMPLAINT
Case No. 4:17-cv-06255 YGR

structure, organizing employees by common job titles.

22.     Software engineers at Uber transfer regularly between projects and teams, and are assigned to projects and teams based on need rather than geography.

**Performance Evaluations**

23.     Uber has used a companywide "stack ranking" system for evaluating employee performance, which has required supervisors to rank employees from worst to best.

24.     This process is an invalid performance measurement system, as it sets arbitrary cutoffs among performers with similar performance.  The stack ranking process has forced a distribution of performance ratings outcomes regardless of whether there are meaningful performance differences between individual employees within a particular peer group.

25.     An employee's rank is not based on valid and reliable performance measures.  The criteria used are not valid or reliable, and they do not properly measure performance.  Uber has implemented this performance measurement system in a way that has disadvantaged female employees and employees of color.

26.     Supervisors have been instructed to use these unreliable qualitative assessments of employees' performance, known as "perf," in assigning the employees in their review group a recommended ranking from worst to best.  A lower score makes it difficult for an employee to advance professionally.

27.     This forced ranking process has taken place biannually, and performance review scores have been used for compensation and promotion decisions.

28.     In this system, female employees and employees of color have been systematically undervalued compared to their white and Asian male peers because female employees and employees of color received, on average, lower rankings despite equal or better performance.

29.     Performance management systems that include unreliable and invalid criteria create inaccurate and biased outcomes.  Upon information and belief, Uber's stack ranking system has had an adverse impact upon female employees and employees of color.

**Compensation**

30.     Uber has used common, unvalidated, unreliable, and discriminatory procedures for evaluating employee performance that systematically undervalued female employees and employees of color relative to their similarly situated white and Asian male peers.

31.     Upon information and belief, Uber has paid female engineers and engineers of color less compensation (including but not limited to salary, bonus, other cash compensation, equity [e.g., stock, options, etc.], benefits, and other wages and/or other compensation) than it paid to their white and Asian male counterparts.

32.     On information and belief, Uber has set initial compensation for female engineers and engineers of color based on their past compensation.  To the extent it is the only variable responsible for a gap in compensation based on gender, race, and/or ethnicity, it is discriminatory. In particular, this practice has disadvantaged women, who are generally paid 18% less than men in the same occupation in the marketplace.  It has also disadvantaged people of color, who are generally paid significantly less than white workers in the same occupation in the marketplace.

33.     In addition, inequity in compensation based on gender, race, and ethnicity compounds over time because periodic compensation decisions, such as salary increases, are affected by current salary and salary band.

34.     Uber employees' cash compensation includes two components: salary and bonus. Annually, employees are eligible for a merit increase to their base salary and a bonus.  Whether, and how much, an employee receives in any of these categories is determined by his or her performance rating, job title, and manager input.  Because female employees and employees of color have been systematically disadvantaged by the stack ranking performance evaluation process, their outcomes in terms of raises and bonuses have suffered compared to their white and Asian male peers.

35.     Additionally, Uber employees receive compensation in the form of equity, including but not limited to grants of Restricted Stock Units, Incentive Stock Options, and/or Non-Qualified Stock Options.  Upon information and belief, Uber has awarded equity compensation

FIRST AMENDED COMPLAINT
Case No. 4:17-cv-06255 YGR

1    disproportionately to white and Asian men over women and people of color.

2        36.    Furthermore, Uber employees receive compensation in the form of benefits, such as

3    health care (e.g., medical, dental, vision) benefits, free or discounted Uber rides, retirement benefits

4    (e.g., 401(k) plans), and more.  Upon information and belief, Uber has awarded benefits

5    disproportionately to white and Asian men over women and people of color.

6        37.    Uber's uniform employment practices have had a disparate impact against female

7    employees and employees of color, in terms of compensation.

8    **Promotions**

9        38.    Uber also employs common, unvalidated, unreliable, and discriminatory procedures

10   for selecting employees for promotion.  Because promotions are tied to the performance review

11   process, female employees and employees of color have been adversely impacted in promotions as

12   well.  Promotions have not been determined by objective, valid, and/or reliable performance

13   measures.  Additionally, because promotions often cause increases in compensation, Uber's

14   promotion practices have caused and compounded compensation inequities that harm and have

15   harmed Plaintiffs and class and collective members.

16       39.    Upon information and belief, female employees and employees of color were

17   promoted at a slower rate than white and Asian male employees.

18   **Hostile Work Environment**

19       40.    During much of the relevant period, Uber was a hostile work environment for female

20   engineers and engineers of color.  Its "unchecked, hyper-alpha culture" during this period was well-

21   documented in the media and online.[3]  For example, in a detailed blog post on February 19, 2017,

22   former Uber engineer Susan Fowler described inappropriate sexual advances by her manager

23   against her and other female employees and the failure of Uber's HR department to address their

24

25

26   ---
     [3] *See* "Uber's Kalanick Faces Crisis Over 'Baller' Culture,"
27   https://www.usatoday.com/story/tech/news/2017/02/24/uber-travis-kalanick-/98328660/ (last
     visited January 14, 2018).

28

---

                                                    FIRST AMENDED COMPLAINT
                                                    Case No. 4:17-cv-06255 YGR

repeated complaints.[4]

41.     This hostile work environment was fostered, encouraged, and condoned by the highest levels of management, including former CEO Travis Kalanick and the members of his so-called "A-Team."  The A-Team was a group of higher-level executives sometimes called the "boys' club at the top" of Uber.[5]

**Uber Paid Plaintiffs and Other Aggrieved Employees Less Than Their Male and/or White or Asian Counterparts and Deprived Them of Opportunities to Advance**

42.     Plaintiffs were treated differently than their white and Asian male colleagues.  For example, del Toro Lopez was initially brought on as an independent contractor as opposed to a full-time employee.  This contractor status meant that she received less compensation than full-time Uber employees and was impeded from effectively onboarding to her team because she had limited access to company tools and training sessions.  On information and belief, white and Asian male software engineers were not subject to similar treatment.

43.     In addition, Plaintiffs' managers assigned them tasks and duties that were less meaningful, challenging, and important than those of similarly situated white and Asian male colleagues.  Management also failed to provide them with adequately concrete professional goals or guideposts.  On information and belief, their white and Asian male counterparts were not subject to this treatment.

44.     Despite their strong work effort and performance, Plaintiffs were promoted more slowly than their white and Asian male colleagues.

## COLLECTIVE ACTION ALLEGATIONS

45.     Uber has engaged in systemic gender discrimination in pay against its female employees.  Uber has caused, contributed to, and perpetuated gender-based pay disparities through common policies, practices, and procedures, including but not limited to common compensation

---

[4] *See* https://www.susanjfowler.com/blog/2017/2/19/reflecting-on-one-very-strange-year-at-uber (last visited June 15, 2017).
[5] "A Top Uber Executive Departs, Fraying the Company's 'A-Team,'" https://www.nytimes.com/2017/06/12/technology/uber-travis-kalanick-emil-michael.html (last visited January 15, 2018).

FIRST AMENDED COMPLAINT
Case No. 4:17-cv-06255 YGR

and performance management policies, and centralized decision-making with respect to pay.

46. Plaintiffs seek to be appointed as representatives of the collective.

47. Plaintiffs bring collective EPA claims pursuant to 29 U.S.C. § 216(b) seeking liability-phase injunctive and declaratory relief, monetary damages and other make-whole relief on behalf of a collective of all female engineers in the Software Engineers 1 and 2, Senior Software Engineers 1 and 2, and Staff Software Engineers job titles who were paid less than male employees doing the same or similar work.

48. Plaintiffs and the collective are similarly situated in that they are female engineers at Uber and have been affected by policies and practices that have the purpose and effect of denying them employment opportunities because of their gender. These policies and practices result in unequal pay based on sex by failing to compensate members of the collective at a level commensurate with male employees who perform substantially equal work and/or hold equivalent levels, job titles, and positions.

49. Plaintiffs and the collective have been paid less than male colleagues in the same establishment for work requiring equal skill, effort, and responsibility and performed under similar working conditions. This unequal pay is not justified by seniority, a merit system, a system that measures earnings by quality or quantity of production, or any factor other than sex.

50. There are many similarly situated collective members who would benefit from the issuance of a court-supervised notice and the opportunity to join the present lawsuit. Notice should be sent to the collective pursuant to 29 U.S.C. § 216(b).

51. Questions of law and fact common to Plaintiffs and the collective include, but are not limited to, the following:

    a. Whether members of the collective were subjected to an unlawful common policy that resulted in unequal pay for equal work;

    b. Whether Uber unlawfully failed and continues to fail to compensate members of the collective at a level commensurate with similarly situated male employees;

    c. Whether Uber's policy, practice, or procedure of failing to compensate members of

the collective at levels commensurate with comparable male employees violates

applicable provisions of the EPA; and

d.    Whether Uber's failure to compensate members of the collective at a level

commensurate with comparable male employees was willful within the meaning of

the EPA.

52.    Counts for violation of the EPA may be brought and maintained as an "opt-in"

collective action pursuant to 29 U.S.C. § 216(b) for all claims asserted by the Plaintiffs, because

their claims are similar to the claims of the collective they seek to represent.

53.    Uber is aware or should have been aware that federal law requires it to pay its female

employees at a rate commensurate to that of male employees performing substantially similar work.

**CLASS ACTION ALLEGATIONS**

54.    Plaintiffs bring this class action pursuant to Federal Rule of Civil Procedure 23 on

behalf of a California class of all female engineers and engineers of color in the Software Engineers

1 and 2, Senior Software Engineers 1 and 2, and Staff Software Engineers job titles who were

employed by Uber in California at any time from July 19, 2016 through the resolution of this action

for claims under PAGA, for the period from July 31, 2016 through the resolution of this action for

claims under FEHA, for the period from July 31, 2014 through the resolution of this action for

claims under the California EPA and Cal. Lab. Code §§ 201, 202, 203, 204 and 558.1, and for the

period from July 31, 2013 through resolution of this action for claims under the UCL ("California

Class").

55.    Plaintiffs also bring this class action pursuant to Federal Rule of Civil Procedure 23

on behalf of a nationwide class of all female engineers and engineers of color in the Software

Engineers 1 and 2, Senior Software Engineers 1 and 2, and Staff Software Engineers job titles who

were employed by Uber in the United States at any time from October 5, 2016 through the

resolution of this action for claims under Title VII, and for the period from July 31, 2013 through

resolution of this action for claims under Section 1981 ("Nationwide Class").

56.    Plaintiffs are members of both the California and Nationwide Classes they seek to

1  represent.

2    57.    The members of each class identified herein are so numerous that joinder of all

3  members is impracticable.  Uber has employed approximately 385 female engineers and engineers

4  of color during the relevant time period.

5    58.    There are questions of law and fact common to each class, and these questions

6  predominate over any questions affecting only individual members.  Common questions include:

7    a.    whether Uber's policies and practices discriminate against female engineers and

8         engineers of color;

9    b.    whether Uber's policies and practices violate Title VII, Section 1981, the California

10        EPA, the California Labor Code, PAGA, the UCL, and FEHA;

11   c.    whether Uber's performance evaluation system discriminates against female

12        engineers and engineers of color;

13   d.    whether Uber's compensation system discriminates against female engineers and

14        engineers of color;

15   e.    whether Uber's promotion system discriminates against female engineers and

16        engineers of color;

17   f.    whether Uber's system for assigning jobs on hire discriminates against female

18        engineers and engineers of color;

19   g.    whether Uber's management created and cultivated a hostile work environment

20        throughout the company; and

21   h.    whether equitable remedies, injunctive relief, compensatory damages, and punitive

22        damages for the classes are warranted.

23   59.    Plaintiffs' claims are typical of the claims of the classes they seek to represent.

24   60.    Plaintiffs will fairly and adequately represent and protect the interests of the classes

25  they seek to represent.

26   61.    Plaintiffs have retained counsel competent and experienced in complex class actions

27  and employment discrimination litigation.

28

FIRST AMENDED COMPLAINT
Case No. 4:17-cv-06255 YGR

62.     Class certification is appropriate as to the California and Nationwide Classes pursuant to Federal Rule of Civil Procedure 23(b)(2) because Uber has acted and/or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiffs and the Class they seek to represent.  The California and Nationwide Class members are entitled to injunctive relief to end Uber's common, uniform, unfair, and discriminatory policies and practices.

63.     Class certification is also appropriate pursuant to Federal Rule of Civil Procedure 23(b)(3) because common questions of fact and law predominate over any questions affecting only individual members of the classes, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  The California and Nationwide Class members have been damaged and are entitled to recovery as a result of Uber's common, unfair, and discriminatory policies and practices.  Uber has computerized payroll data and personnel data that will make calculation of damages for specific class members relatively simple.  The propriety and amount of punitive damages are based on Uber's common conduct, making these issues common to the classes.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
**Equal Pay Act (The Fair Labor Standards Act of 1938,
as amended by The Equal Pay Act, 29 U.S.C. §§ 206, *et seq*.)
(On Behalf of Plaintiffs and the Proposed Collective)**

64.     Plaintiffs re-allege and incorporate the preceding paragraphs as alleged above.

65.     Uber has discriminated against Plaintiffs and the collective in violation of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 206, *et seq*., as amended by the Equal Pay Act of 1963 ("EPA").  Uber has paid Plaintiffs and the collective less than similarly-situated male colleagues performing equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.

66.     The differential in pay between male and female employees was not due to seniority, merit, quantity, or quality of production, but was due to gender.  Uber did not act in good faith, and

caused, attempted to cause, contributed to, or caused the continuation of, the wage rate discrimination based on sex in violation of the EPA. Moreover, the foregoing conduct constitutes a willful violation of the EPA within the meaning of 29 U.S.C. § 255(a). Because Uber has willfully violated the EPA, a three-year statute of limitations applies to such violations, pursuant to 29 U.S.C. § 255(a).

67.     As a direct result of Uber's discriminatory policies and/or practices as described above, female employees have suffered damages including, but not limited to, lost past and future income, compensation, and benefits.

68.     Plaintiffs request relief as hereinafter described.

## SECOND CLAIM FOR RELIEF
### California Equal Pay Act
### (Cal. Labor Code §§1197.5 *et seq*., 1194.5)
### (On Behalf of Plaintiffs and the California Class)

69.     Plaintiffs re-allege and incorporate the preceding paragraphs as alleged above.

70.     Uber has discriminated and continues to discriminate against female employees and employees of color in violation of California Labor Code § 1197.5 *et seq.* by paying them at wage rates less than the wage rates paid to its white and Asian male engineers for substantially equal or similar work, when viewed as a composite of skill, effort, and responsibility, and performed under similar working conditions.

71.     Uber's failure to pay female employees and employees of color equal wages for performing substantially equal or similar work is not justified by any lawful reason.

72.     Uber has willfully violated California Labor Code § 1197.5 by intentionally, knowingly, and/or deliberately paying female employees and employees of color less than white and Asian male engineers for substantially equal or similar work.

73.     As a result of Uber's ongoing conduct, violation of California Labor Code § 1197.5, and/or willful discrimination, female employees and employees of color have suffered and will continue to suffer harm, including but not limited to lost earnings, lost benefits, and other financial loss, as well as non-economic damages.

74.     Plaintiffs request relief as hereinafter described.

**THIRD CLAIM FOR RELIEF**
**Discrimination**
**(Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*,**
**as amended by the Lilly Ledbetter Fair Pay Act of 2009)**
**(On Behalf of Plaintiffs and the Nationwide Class)**

75.     Plaintiffs re-allege and incorporate the preceding paragraphs as alleged above.

76.     Uber has engaged in an intentional, company-wide, and systematic policy, pattern, and/or practice of discrimination against its female employees and employees of color.  Uber has intentionally discriminated against female employees and employees of color in violation of Title VII by, among other things:

    a.  Utilizing a biased performance rating system;

    b.  Utilizing a biased compensation system;

    c.  Utilizing a biased promotion system; and

    d.  Failing to take reasonable and adequate steps to prevent and correct the use of unreliable, unvalidated, and/or illegitimate criteria to determine the terms and conditions of employment.

77.     These company-wide policies are intended to and do have the effect of:

    a.  Denying female employees and employees of color business opportunities because of their race, ethnicity, and/or gender;

    b.  Compensating them less because of their race, ethnicity, and/or gender;

    c.  Failing to promote them because of their race, ethnicity, and/or gender;

    d.  Evaluating their performance more negatively because of their race, ethnicity, and/or gender; and

    e.  Providing them with inferior terms and conditions of employment as a result of discriminatory performance measures that systematically disadvantaged them because of their race, ethnicity, and/or gender.

78.     Uber's reliance on illegitimate and unvalidated systems and criteria to evaluate employee performance, set compensation, select individuals for promotion, and determine other

FIRST AMENDED COMPLAINT
Case No. 4:17-cv-06255 YGR

terms and conditions of employment, also have an adverse impact on female employees and

employees of color in violation of Title VII and are not, and cannot be, justified by business

necessity.  Even if such system and/or policies could be justified by business necessity, less

discriminatory alternatives exist and would equally serve any alleged necessity.

79.     The discriminatory acts that constitute Uber's pattern and/or practice of

discrimination have occurred both within and outside the liability period in this case.

80.     As a direct result of Uber's discriminatory policies and/or practices as described

above, female employees and employees of color have suffered damages including, but not limited

to, lost past and future income, compensation, and benefits.

81.     The foregoing conduct constitutes illegal, unjustified disparate treatment and

disparate impact on female employees and employees of color in violation of 42 U.S.C. § 2000e *et

seq*.

82.     Plaintiffs request relief as hereinafter described.

**FOURTH CLAIM FOR RELIEF**
**Hostile Work Environment**
**(Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.,**
**as amended by the Lilly Ledbetter Fair Pay Act of 2009)**
**(On Behalf of Plaintiffs and the Nationwide Class)**

83.     Plaintiffs reallege and incorporate by reference all other paragraphs as alleged above.

84.     Uber subjected Plaintiffs and other female engineers and engineers of color to

harassing and discriminatory behavior based upon their race, ethnicity, or gender as alleged herein

and/or substantially assisted, encouraged, condoned and failed to remedy the continued harassment,

creating a hostile work environment.

85.     Class members suffered severe and/or pervasive harassment.  The behavior was

unwanted, without consent, objected to, and offensive.  The unlawful conduct was engaged in

and/or ratified by the officers, directors, supervisors and/or managing agents of Uber, who were

acting at all relevant times within the scope and course of their employment.

86.     The unlawful conduct alleged above, directly and proximately caused female

engineers and engineers of color to suffer, and continue to suffer, general damages including but

not limited to shock, embarrassment, humiliation, emotional distress, stress, depression, anxiety,

fear, uncertainty, loss of confidence, and other damages to be proven at trial.

87.     Uber committed the acts herein alleged maliciously, fraudulently, and oppressively

in conscious disregard for class members' rights.

88.     Plaintiffs request relief as hereinafter described.

**FIFTH CLAIM FOR RELIEF**
**Discrimination (California Fair Employment and**
**Housing Act, Cal. Gov't Code § 12940(a))**
**(On Behalf of Plaintiffs and the California Class)**

89.     Plaintiffs re-allege and incorporate the preceding paragraphs as alleged above.

90.     Uber has engaged in an intentional, company-wide, and systematic policy, pattern,

and/or practice of discrimination against its female employees and employees of color.  Uber has

intentionally discriminated against female employees and employees of color in violation of the

FEHA by, among other things:

    a.  Utilizing a biased performance rating system;

    b.  Utilizing a biased compensation system;

    c.  Utilizing a biased promotion system; and

    d.  Failing to take reasonable and adequate steps to prevent and correct the use of

       unreliable, unvalidated, and/or illegitimate criteria to determine the terms and

       conditions of employment.

91.     These company-wide policies are intended to and do have the effect of:

    a.  Denying female employees and employees of color business opportunities because

       of their race, ethnicity, and/or gender;

    b.  Compensating them less because of their race, ethnicity, and/or gender;

    c.  Failing to promote them because of their race, ethnicity, and/or gender;

    d.  Evaluating their performance more negatively because of their race, ethnicity, and/or

       gender; and

    e.  Providing them with inferior terms and conditions of employment as a result of

discriminatory performance measures that systematically disadvantaged them because of their race, ethnicity, and/or gender.

92.     Uber's reliance on illegitimate and unvalidated systems and criteria to evaluate employee performance, set compensation, and select individuals for promotion, and determine other terms and conditions of employment, also have an adverse impact on female engineers and engineers of color in violation of FEHA and are not, and cannot be, justified by business necessity. Even if such systems and/or policies could be justified by business necessity, less discriminatory alternatives exist and would equally serve any alleged necessity.

93.     The discriminatory acts that constitute Uber's pattern and/or practice of discrimination have occurred both within and outside the liability period in this case.

94.     Uber has set and/or maintained these discriminatory policies, patterns, and/or practices during the liability period within the state of California.

95.     As a direct result of Uber's discriminatory policies and/or practices as described above, Plaintiffs and the California Class have suffered damages including, but not limited to, lost past and future income, compensation, and benefits.  The foregoing conduct constitutes illegal, intentional discrimination and unlawful disparate impact on female engineers and engineers of color in violation of California Government Code § 12940(a).

96.     Plaintiffs request relief as hereinafter described.

**SIXTH CLAIM FOR RELIEF**
**Hostile Work Environment**
**(California Fair Employment and Housing Act, Cal. Gov't Code § 12940(j))**
**(On Behalf of Plaintiffs and the California Class)**

97.     Plaintiffs reallege and incorporate by reference all other paragraphs as alleged above.

98.     Uber subjected Plaintiffs and other female engineers and engineers of color to harassing and discriminatory behavior based upon their race, ethnicity, or gender as alleged herein and/or substantially assisted, encouraged, condoned and failed to remedy the continued harassment, creating a hostile work environment.

99.     California Class members suffered severe and/or pervasive harassment.  The

FIRST AMENDED COMPLAINT
Case No. 4:17-cv-06255 YGR

behavior was unwanted, without consent, objected to, and offensive.  The unlawful conduct was engaged in and/or ratified by the officers, directors, supervisors and/or managing agents of Uber, who were acting at all relevant times within the scope and course of their employment.

100.    The unlawful conduct alleged above, directly and proximately caused female engineers and engineers of color to suffer, and continue to suffer, general damages including but not limited to shock, embarrassment, humiliation, emotional distress, stress, depression, anxiety, fear, uncertainty, loss of confidence, and other damages to be proven at trial.

101.    Uber committed the acts herein alleged maliciously, fraudulently, and oppressively in conscious disregard for California Class members' rights.

102.    Plaintiffs request relief as hereinafter described.

**SEVENTH CLAIM FOR RELIEF**
**Race and/or Ethnicity Discrimination**
**(42 U.S.C § 1981)**
**(On Behalf of Plaintiffs and the Nationwide Class)**

103.    Plaintiffs reallege and incorporate by reference all other paragraphs as alleged above.

104.    Uber intentionally discriminated against engineers of color on the basis of race and/or ethnicity by rescinding or denying them contracts to work or deterring them from work opportunities by, among other things:

    a.  Utilizing a biased performance rating system;

    b.  Utilizing a biased compensation system;

    c.  Utilizing a biased promotion system; and

    d.  Failing to take reasonable and adequate steps to prevent and correct the use of unreliable, unvalidated, and/or illegitimate criteria to determine the terms and conditions of employment.

105.    Uber's intentional discrimination against engineers of color interfered with their right to make and enforce work contracts.

106.    Uber's policy and practice of denying work opportunities based on race and/or ethnicity harmed engineers of color and constitutes unlawful race and ethnicity discrimination in

the making and enforcing of contracts in violation of 42 U.S.C. § 1981.

107.     Defendant's conduct has caused, and continues to cause, Plaintiffs and the members of the Nationwide Class substantial losses in earnings and other work benefits.

108.     Plaintiffs request relief as hereinafter described.

### EIGHTH CLAIM FOR RELIEF
#### Wage Violations
#### (California Labor Code §§ 201, 202, 203, 558.1)
#### (On Behalf of Plaintiffs and the California Class)

109.     Plaintiffs reallege and incorporate by reference all other paragraphs as alleged above.

110.     California Labor Code sections 201, 202, 204, and 558.1 require Defendant to pay its employees all wages due within the time specified by law.  California Labor Code section 203 provides that if an employer willfully fails to timely pay such wages, the employer must continue to pay the subject employees' wages until the back wages are paid in full or an action is commenced, up to a maximum of thirty days of wages.

111.     As a consequence of Defendant's willful conduct in not timely paying full compensation for Plaintiffs and California Class members, Plaintiffs seek to recover all penalties allowed under California law together with interest thereon and attorneys' fees and costs.

### NINTH CLAIM FOR RELIEF
#### PAGA
#### (California Private Attorneys General Act of 2004,
#### Cal Lab. Code §§ 2698-2699.5)
#### (On Behalf of Plaintiffs and All Aggrieved Employees)

112.     Plaintiffs reallege and incorporate by reference all other paragraphs as alleged above.

113.     Under PAGA, an aggrieved employee, on behalf of herself and other current or former employees as well as the general public, may bring a representative action as a private attorney general to recover penalties for an employer's violations of the California Labor Code and IWC Wage Orders.  These civil penalties are in addition to any other relief available under the California Labor Code, and must be allocated 75% to California's Labor and Workforce Development Agency ("LWDA") and 25% to the aggrieved employee, pursuant to California Labor Code § 2699.

FIRST AMENDED COMPLAINT
Case No. 4:17-cv-06255 YGR

114.     Plaintiffs allege, on behalf of themselves and all aggrieved employees, as well as the general public, that Defendant has violated the Equal Pay Act, section 1197.5 of the California Labor Code, which is actionable through PAGA.

115.     In particular, as a result of Uber's common policies and practices, Uber has discriminated against Plaintiffs and aggrieved employees by paying them less than similarly-situated white and Asian male coworkers and failing to promote them at the same or similar rate as their white and Asian male coworkers.

116.     The differential in pay between female engineers and engineers of color and male and white or Asian engineers was not due to seniority, merit, the quantity or quality of production, or a bona fide factor other than sex and/or race or ethnicity, such as education, training, or experience, but was due to gender and/or race or ethnicity.  In the alternative, to the extent that Uber relied upon one or more of these factors, said factor(s) were not reasonably applied and did/do not account for the entire wage differential.

117.     Uber caused, attempted to cause, contributed to, or caused the continuation of wage rate discrimination based on sex and/or race or ethnicity.  The foregoing conduct constitutes a willful violation of the Equal Pay Act, Cal. Lab. Code §1197.5, *et seq*.

118.     As a result of Uber's willful, knowing, and intentional discrimination, Plaintiffs have suffered and will continue to suffer harm, including but not limited to lost earnings, lost benefits, and other financial loss, as well as non-economic damages.

119.     This violation entitles Plaintiffs, as private attorneys general, to recover the applicable civil penalties on their own behalf, on behalf of all aggrieved employees, and on behalf of the general public.

California Labor Code § 2699(a), which is part of PAGA, provides in pertinent part: Notwithstanding any other provision of law, any provision of this code that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency or any of its departments, divisions, commissions, boards, agencies, or employees, for a violation of this code, may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of themselves or herself and other current or former employees pursuant to the procedures specified in § 2699.3.

California Labor Code § 2699(f), which is part of PAGA, provides in pertinent part:
For all provisions of this code except those for which a civil penalty is specifically provided, there is established a civil penalty for a violation of these provisions, as follows: . . . (2) If, at the time of the alleged violation, the person employs one or more employees, the civil penalty is one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation.

120.    Plaintiffs are entitled to civil penalties, to be paid by Defendant and allocated as PAGA requires, pursuant to California Labor Code § 2699(a) for Defendant's violations of the California Labor Code for which violations a civil penalty is already specifically provided by law.

121.    Plaintiffs are also entitled to civil penalties, to be paid by Defendant and allocated as PAGA requires, pursuant to California Labor Code § 2699(f) for Defendant's violations of the California Labor Code for which violations a civil penalty is not already specifically provided.

122.    On July 19, 2017, Plaintiff del Toro Lopez provided written notice by certified mail to the LWDA of the legal claims and theories of this case.  Plaintiff simultaneously provided a copy of that notice by certified mail to Defendant.  The LWDA did not provide notice "within 65 calendar days of the postmark date of" Plaintiff's notice, so Plaintiffs are entitled to assert this claim.  Cal. Labor Code § 2699.3(a)(2).

123.    Under PAGA, Plaintiffs and the California Class are entitled to recover the maximum civil penalties permitted by law for the violations of the California Labor Code that are alleged in this Complaint.

### TENTH CLAIM FOR RELIEF
#### Unlawful and Unfair Business Practices
#### (Cal. Bus. And Prof. Code § 17200)
#### (On Behalf of Plaintiffs and the California Class)

124.    Plaintiffs reallege and incorporate by reference all other paragraphs as alleged above.

125.    Uber's policies and/or practices of paying female engineers and engineers of color less than white and Asian male engineers for substantially similar work and of discriminating against female engineers and engineers of color in compensation and the terms, conditions, and privileges of employment on the basis of their sex and race/ethnicity constitute business practices because Uber's acts and omissions as alleged herein have been done repeatedly over a significant period of time, and in a systematic manner, to the detriment of Plaintiffs and members of the class.

126.   Uber's acts and omissions, as alleged herein, violate the EPA, the California EPA, Title VII, Section 1981, the California Labor Code, PAGA, and FEHA, and therefore constitute unlawful business practices prohibited by Business & Professions Code § 17200 *et seq*.

127.   Uber's acts and omissions, as alleged herein, constitute unfair business practices prohibited by Business & Professions Code § 17200 *et seq*.  Uber's business practices of paying female engineers and engineers of color less than white and Asian male engineers for substantially similar work, of assigning and keeping female engineers and engineers of color in lower levels and less highly compensated job ladders than similarly-qualified white and Asian male engineers, and of failing to promote female engineers and engineers of color caused harm to Plaintiffs and members of the class that outweighs any reason Uber may have for doing so.  Uber's business practices as alleged herein are also immoral, unethical, oppressive, unscrupulous, and offensive to the established public policies of ensuring women and people of color are paid equally to white and Asian male individuals for performing substantially similar work.  As a result of its unlawful and/or unfair business practices, Uber has reaped and continues to reap unfair and illegal profits at the expense of Plaintiffs and the class.  Accordingly, Uber should be disgorged of its illegal profits, and Plaintiffs and the class are entitled to restitution with interest of such ill-gotten profits in an amount according to proof at the time of trial.

128.   Uber's unlawful and/or unfair business practices entitle Plaintiffs and aggrieved employees to preliminary and permanent injunctive relief and other equitable relief available under law.

129.   Plaintiffs request relief as hereinafter described.

## ALLEGATIONS REGARDING RELIEF

130.   Plaintiffs and the class and collective members they seek to represent have no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and the injunctive relief they seek in this action is the only means of securing complete and adequate relief.  Plaintiffs and the class and collective members they seek to represent are now suffering, and will continue to suffer, irreparable injury from Uber's discriminatory acts and omissions.

131.    Uber's actions have caused and continue to cause female engineers and engineers of color substantial losses in employment opportunities, earnings, and other employment benefits.

132.    In addition, female engineers and engineers of color suffered and continue to suffer emotional distress, humiliation, embarrassment, and anguish, all to their damage in an amount according to proof.

133.    Uber performed the acts herein alleged with malice, oppression, or fraud.  Plaintiffs and the class and collective members they seek to represent are thus entitled to recover punitive damages in an amount according to proof.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and the collective pray for relief as follows:

(a)    Certification of the case as a class action on behalf of the proposed Classes;

(b)    Designation of Plaintiffs del Toro Lopez and Medina as representatives of the Classes;

(c)    Designation of Plaintiffs' counsel of record as Class Counsel for the Classes;

(d)    Designation of Plaintiffs as representatives of the PAGA action;

(e)    Certification this action as a collective action under the EPA on behalf of Plaintiffs and the collective; designation of Plaintiffs as the representatives of the collective; prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the collective, which (1) apprises them of the pendency of this action and (2) permits them to assert timely EPA claims in this action by filing individual Consent to Join forms pursuant to 29 U.S.C. § 216(b); and tolling of the statute of limitations on the claims of all members of the collective from the date the original Complaint was filed until the collective members are provided with reasonable notice of the pendency of this action and a fair opportunity to exercise their right to opt in as Collective Action Plaintiffs;

(f)    A declaratory judgment that the practices complained of herein are unlawful;

(g)    A preliminary and permanent injunction against Uber and its partners, officers,

FIRST AMENDED COMPLAINT
Case No. 4:17-cv-06255 YGR

agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in policies, patterns, and/or practices that discriminate against Plaintiffs and class and collective members because of their gender and/or race or ethnicity;

(h) An order that Uber institute and carry out policies, practices, and programs that provide equal employment opportunities for all employees regardless of gender, race, or ethnicity, and that it eradicate the effects of their past and present unlawful employment practices;

(i) An order requiring Uber to develop and institute accurate and validated standards for evaluating performance, determining pay, and making promotion decisions;

(j) An order appointing a monitor to ensure that Uber complies with the injunction provisions of any decree that the Court orders;

(k) An order retaining jurisdiction over this action to ensure that Uber complies with such a decree;

(l) An order restoring Plaintiffs and class and collective members to their rightful positions at Uber (i.e., reinstatement), or in lieu of reinstatements, an order for front pay benefits;

(m) Back pay (including interest and benefits) for Plaintiffs and class and collective members;

(n) All damages sustained as a result of Uber's conduct, including damages for emotional distress, humiliation, embarrassment, and anguish, according to proof;

(o) Liquidated damages;

(p) Exemplary and punitive damages in an amount commensurate with Uber's ability to pay and to deter future conduct;

(q) All civil penalties recoverable under PAGA;

(r) Restitution of all monies due to Plaintiffs and class members, as well as disgorgement of Uber's profits from its unlawful and/or unfair business practices;

(s)   Costs and expenses incurred herein, including reasonable attorneys' fees to the extent allowable by law;

(t)   Service awards for Plaintiffs in recognition of the time and risk incurred in asserting these claims on behalf of the class and collective, and the value they have created by doing so;

(u)   Pre-judgment and post-judgment interest, as provided by law; and

(v)   Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and 29 U.S.C. § 216(b), Plaintiffs demand a trial by jury in this action.

Respectfully submitted,

Dated: March 26, 2018          By:   _/s/ Jahan C. Sagafi_
                                      Jahan C. Sagafi

Jahan C. Sagafi (Cal. Bar No. 224887)
Rachel W. Dempsey (SBN 310424)
Laura Iris Mattes (SBN 310594)
OUTTEN & GOLDEN LLP
One Embarcadero Center, 38th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
E-mail: jsagafi@outtengolden.com
E-mail: rdempsey@outtengolden.com
E-mail: imattes@outtengolden.com

FIRST AMENDED COMPLAINT
Case No. 4:17-cv-06255 YGR

Adam T. Klein (*pro hac vice* forthcoming)
Rachel M. Bien (SBN 315886)
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060
E-mail: atk@outtengolden.com
E-mail: rmb@outtengolden.com

*Attorneys for Plaintiffs and Proposed Class
and Collective Members*

FIRST AMENDED COMPLAINT
Case No. 4:17-cv-06255 YGR