Jahan C. Sagafi (SB# 224887)
Rachel W. Dempsey (SB# 310424)
Laura Iris Mattes (SB# 310594)
OUTTEN & GOLDEN LLP
One California Street, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
E-mail: jsagafi@outtengolden.com
E-mail: rdempsey@outtengolden.com
E-mail: imattes@outtengolden.com

Rachel M. Bien (SB# 315886)
OUTTEN & GOLDEN LLP
601 S Figueroa St., Suite 4050
Los Angeles, CA 90017
Telephone: (323) 673-9900
Facsimile: (646) 509-2058
E-mail: rmb@outtengolden.com

Adam T. Klein (admitted *pro hac vice*)
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060
E-mail: atk@outtengolden.com

*Counsel for Plaintiffs and Settlement Class Members*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| ROXANA DEL TORO LOPEZ and ANA MEDINA, on behalf of themselves, and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UBER TECHNOLOGIES, INC.,<br><br>Defendant. | Case No. 4:17-cv-06255-YGR<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT; MEMORANDUM IN SUPPORT OF MOTION**<br><br>Judge:   Yvonne Gonzalez Rogers<br>Hearing Date:   November 6, 2018<br>Hearing Time:  2:00 pm<br>Courtroom:   Courtroom 1, 4th Floor |

**NOTICE OF MOTION AND MOTION**

To the Clerk of Court and all interested parties:

PLEASE TAKE NOTICE THAT on November 6, 2018, at 2:00 p.m., or as soon thereafter as counsel may be heard, in Courtroom 1 on the 4th Floor of this Court's Oakland Courthouse, located at 1301 Clay Street, Oakland, California, Plaintiffs Roxana del Toro Lopez and Ana Medina, individually and on behalf of all others similarly situated ("Plaintiffs") will, and hereby do, move this Court for an order: (1) granting, pursuant to Federal Rule of Civil Procedure 23(e), final approval of the Parties' proposed class action settlement (the "Settlement"), and entry of judgment in accordance with the Settlement; and (2) granting, pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3), and the Fair Labor Standards Act, 29 U.S.C. § 216(b), final class certification and collective action designation of the Settlement Class conditionally certified in the Preliminary Approval Order (ECF No. 49).  Defendant Uber Technologies, Inc. ("Uber" or "Defendant") does not oppose this motion.

Plaintiffs make this motion on the grounds that the Settlement was reached after arms'-length negotiations by Class Counsel and Uber, is fair and reasonable, and has drawn a favorable response from the Class.

The motion is based on this notice of motion and motion; the memorandum in support of the motion; the accompanying Declaration of Jahan C. Sagafi; the Court's Order Granting Preliminary Approval to Proposed Class Action Settlement (ECF No. 49); the Court's record of this action; all matters of which the Court may take notice; and any oral and documentary evidence presented at the hearing on the motion.

Dated:  August 20, 2018

Respectfully submitted,

By: /s/ *Jahan C. Sagafi*
    Jahan C. Sagafi

Jahan C. Sagafi (SB# 224887)
Rachel W. Dempsey (SB# 310424)
Laura Iris Mattes (SB# 310594)
OUTTEN & GOLDEN LLP
One California Street, 12th Floor

| | |
|---|---|
| 1 | San Francisco, CA 94111 |
| | Telephone: (415) 638-8800 |
| 2 | Facsimile: (415) 638-8810 |
| | E-mail: jsagafi@outtengolden.com |
| 3 | E-mail: rdempsey@outtengolden.com |
| | E-mail: imattes@outtengolden.com |
| 4 | |
| | Rachel M. Bien (SB# 315886) |
| 5 | OUTTEN & GOLDEN LLP |
| | 601 S Figueroa St., Suite 4050 |
| 6 | Los Angeles, CA 90017 |
| | Telephone: (323) 673-9900 |
| 7 | Facsimile: (646) 509-2058 |
| | E-mail: rmb@outtengolden.com |

San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
E-mail: jsagafi@outtengolden.com
E-mail: rdempsey@outtengolden.com
E-mail: imattes@outtengolden.com

Rachel M. Bien (SB# 315886)
OUTTEN & GOLDEN LLP
601 S Figueroa St., Suite 4050
Los Angeles, CA 90017
Telephone: (323) 673-9900
Facsimile: (646) 509-2058
E-mail: rmb@outtengolden.com

Adam T. Klein (admitted *pro hac vice*)
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060
E-mail: atk@outtengolden.com

*Attorneys for Plaintiffs and Settlement Class Members*

**TABLE OF CONTENTS**

I.  INTRODUCTION ........................................................................................................... 1

II. FACTUAL BACKGROUND ......................................................................................... 2

   A. Class Counsel Carefully Investigated Class Members' Claims, Conducted Significant Informal Discovery, and Engaged in Careful Analysis of Pay, Job Leveling, and Promotions Data Before Agreeing to the Settlement. .................................................. 2

   B. The Settlement Classes. ............................................................................................. 3

   C. The Settlement. .......................................................................................................... 4

   D. Notice Process ............................................................................................................ 6

      1. The Administrator Adhered to the Class Notice Requirements. ......................... 6

      2. CAFA's Notice Requirements Were Satisfied. ..................................................... 7

III. ARGUMENT ................................................................................................................... 8

   A. The Best Practicable Notice of Settlement Has Been Provided to the Class, and No Class Member Has Objected to the Settlement. ........................................................ 8

   B. Final Approval Is Appropriate Under Rule 23 and the FLSA. .................................. 9

   C. The Settlement Is Fair, Reasonable, and Adequate. ................................................. 10

      1. Plaintiffs Faced Substantial Obstacles to Recovery. ........................................... 10

      2. The Risk, Expense, Complexity, and Delay of Further Litigation Support Preliminary Approval. .......................................................................................... 11

      3. Plaintiffs Faced a Real Risk of Losing Rule 23 Certification and EPA Collective Certification. ......................................................................................................... 11

      4. The Settlement Amount Will Fairly and Adequately Compensate Class Members. .............................................................................................................. 11

      5. The Extent of Discovery Supports Settlement. .................................................. 12

      6. Counsel's Experience and Views Support Approval. ........................................ 12

      7. The Parties Participated in Arms'-Length Negotiations Before an Experienced Mediator. ............................................................................................................... 12

      8. The Class Members Have Reacted Positively to the Notice. ............................ 13

IV. CONCLUSION .............................................................................................................. 13

iii                                    NOTICE OF MOTION AND MOTION FOR
                                        FINAL APPROVAL OF SETTLEMENT,
                                        CASE NO. 17-CV-06255-YGR

**TABLE OF AUTHORITIES**

**Cases**                                                                                              **Page(s)**

*Chen-Oster v. Goldman Sachs & Co.*,
  325 F.R.D. 55 (S.D.N.Y. 2018) ........................................................................................... 11

*Chun-Hoon v. McKee Foods Corp.*,
  716 F. Supp. 2d 848 (N.D. Cal. 2010) ............................................................................... 13

*Churchill Village, L.L.C. v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004) ............................................................................................... 8

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) .................................................................................. 1, 2, 3, 11

*Cotter v. Lyft, Inc.*,
  176 F. Supp. 3d 930 (N.D. Cal. 2016) ............................................................................... 10

*Cotter v. Lyft, Inc.*,
  193 F. Supp. 3d 1030 (N.D. Cal. 2016) ............................................................................... 9

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) ............................................................................................................ 8

*Ellis v. Naval Air Rework Facility*,
  87 F.R.D. 15 (N.D. Cal. 1980) .......................................................................................... 12

*Ford v. CEC Entm't Inc.*,
  No. 14 Civ. 677, 2015 WL 11439033 (S.D. Cal. Dec. 14, 2015) ....................................... 8

*Guilbaud v. Sprint Nextel Corp.*,
  No. 13-CV-04357-VC, 2016 WL 7826649 (N.D. Cal. Apr. 15, 2016) ............................. 9

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ............................................................................................ 9

*Hughes v. Microsoft Corp.*,
  No. 93 Civ. 178C, 2001 WL 34089697 (W.D. Wash. Mar. 26, 2001) ........................... 12

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ............................................................................................. 12

*Lynn's Food Stores, Inc. v. U.S.*,
  679 F.2d 1350 (11th Cir. 1982) .......................................................................................... 9

*M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.*,
  671 F. Supp. 819 (D. Mass. 1987) .................................................................................... 10

*Moussouris v. Microsoft Corp.*,
  2018 WL 3328418 (W.D. Wash. June 25, 2018) ............................................................. 11

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ................................................................................. 13, 14

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
   688 F.2d 615 (9th Cir. 1982) ............................................................................................... 12

*Ortiz v. Fibreboard Corp.*,
   527 U.S. 815 (1999) .................................................................................................... 9, 10

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ............................................................................................... 12

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ............................................................................................. 1, 9

**Statutes**

28 U.S.C. § 1715(d) ............................................................................................................... 8

29 U.S.C. § 216(b) ................................................................................................................. i

**Rules**

Fed. R. Civ. P. 23 ........................................................................................................... passim

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Plaintiffs Roxana del Toro Lopez and Ana Medina respectfully request final approval of the Settlement, which provides significant value to the Class Members in exchange for the release of claims asserted herein – namely, that Uber subjected Class Members to unlawful discrimination in pay and promotions, as well as harassment and a hostile work environment, on the basis of their gender, race and national origin.  The Settlement is the result of arms'-length negotiations by experienced counsel under the supervision of one of the nation's preeminent employment class action mediators, after significant investigation of the claims, including interviews of witnesses and detailed analysis of Uber's HR data and internal documents.

The $10,000,000 Settlement is fair, reasonable, and adequate.  The Class has responded extremely favorably to the Settlement.  Of the 487 Class Members to whom notices were mailed (including reminder notices and supplemental outreach by Class Counsel), no one has objected, and only two have opted out.[1]  *See* Declaration of Jennifer Keough of JND Legal Administration ("JND Decl.") ¶¶ 5, 17.  In addition, 56 Class Members submitted optional Claim Forms to receive a portion of Fund B, which is allocated to compensate claims of harassment, hostile work environment, and emotional distress.  JND Decl. ¶ 18; Settlement Agreement § 5.5.  Furthermore, Class Counsel have conducted sufficient discovery to enable them to adequately evaluate the claims and defenses in the action.  Declaration of Jahan C. Sagafi ("Sagafi Decl.") ¶¶ 11-18.  Lastly, the Settlement is reasonable given the risk, expense, complexity, and likely duration of further litigation.  *See Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992).[2]

---

[1] Class Counsel will file a "reply" brief (regardless of whether any opposition is filed to this brief) supplementing these numbers by October 23, 2018, which is after the September 10, 2018 deadline for Class Members to opt out or object.  ECF No. 49.

[2] Pursuant to the Settlement Agreement and the Court's Preliminary Approval Order, Class Counsel have moved separately for an award of attorneys' fees and costs, settlement administration costs, and service payments to Plaintiffs (contemporaneously filed).  Uber does not oppose the motion.

In connection with the request for final settlement approval and consistent with the Preliminary Approval Order, Plaintiffs also request that the Court confirm as final: (1) the certification of the Class; (2) the designation of the case as a collective action under the FLSA; and (3) the appointment of Plaintiffs as the Class Representatives and of Plaintiffs' Counsel as Class Counsel.  *See* ECF No. 49.

## II.   FACTUAL BACKGROUND

### A.   Class Counsel Carefully Investigated Class Members' Claims, Conducted Significant Informal Discovery, and Engaged in Careful Analysis of Pay, Job Leveling, and Promotions Data Before Agreeing to the Settlement.

Beginning several months before filing the action on October 27, 2017,[3] Class Counsel conducted an in-depth investigation of Plaintiffs' claims.  Sagafi Decl. ¶¶ 4-10.  The investigation included an exchange of data and other information with Uber, interviews with Class Members and other witnesses, and extensive legal research regarding the jurisdictional, liability, certification, damages, and injunctive relief issues.  *Id*.

In the months leading up to mediation, the parties exchanged classwide discovery, including: (1) Uber's policies and procedures regarding compensation, leveling, performance reviews, and promotions; (2) Uber's practices regarding hiring of female engineers and engineers of color; (3) Uber's process for handling complaints of harassment and discrimination, and harassment complaints received by Uber from Class Members during the Title VII and FEHA limitations period; (4) Uber's disciplinary process for employees accused of harassment and discrimination; and (5) diversity, fair pay, training, investigations, and other personnel process initiatives and enhancements implemented by Uber in 2017 and the first quarter of 2018 under new executive leadership.  *Id*. ¶¶ 13-14.  Uber produced and Plaintiffs reviewed thousands of pages of documents.  *Id*.  Plaintiffs also contacted many Class Members and potential witnesses and interviewed all who responded, to gather evidence to support the merits of their claims and class certification.  *Id*. ¶ 9.

In addition, Uber produced data for every employee in the Class Positions (i.e., both Class Members and comparators) and predecessor job codes, including information on race, gender,

---

[3] A related complaint was also filed in San Francisco Superior Court on October 24, 2017 (Case No. GCG-17-52663).

education, seniority, pay, job level, job code, performance reviews, and promotion timeline, among other data points. *Id*. ¶ 14. Plaintiffs retained an expert consultant, EconOne, to analyze the data. *Id*. ¶ 15. Plaintiffs conferred with Uber and its expert directly and through EconOne, to understand the data and to probe Uber's analysis of the data. *Id*. The Parties also exchanged several iterations of data analyses in the weeks leading up to mediation, to both ensure that Plaintiffs understood the data and that the parties could intelligently debate the meaning of the data. *Id*.

On January 25, 2018, the Parties attended mediation with a private mediator, David A. Rotman. *Id*. ¶ 16. Mr. Rotman is a highly respected mediator with a wealth of experience mediating complex employment class actions. *Id*. Before the mediation, the parties exchanged detailed mediation statements supported by rigorous data analyses, along with multiple supplements responding to each other's arguments. *Id*. ¶ 17. After a full day of negotiation, the parties agreed to a settlement in principle, including monetary terms and the contours of injunctive relief. *Id*. ¶ 18. The parties reduced the agreement to writing in the form of the Settlement Agreement over the next two months. *Id*.

On April 19, 2018, this Court granted preliminary approval of the settlement, conditionally certified a Rule 23 class and a 216(b) collective, and appointed Outten & Golden LLP as Class Counsel. Preliminary Approval Order ("PA Order"), ECF No. 49.

### B.      The Settlement Classes.

The settlement classes are defined as follows, pursuant to this Court's preliminary approval order:

> (1) all women (of any race or national origin) and all Latino/Latina/Hispanic, African American/Black, Native American, Alaskan Native, and/or multiracial individuals (who are in part one of the foregoing races) who work or worked in a Software Engineer 1 or 2, Senior Software Engineer 1 or 2, or Staff Software Engineer job title (the "Covered Software Engineer Positions") for Uber in the United States between July 31, 2013 and April 19, 2018 (the "Nationwide Rule 23 Class");
>
> (2) all women (of any race or national origin) and all Latino/Latina/Hispanic, African American/Black, Native American, Alaskan Native, and/or multiracial individuals (who are in part one of the foregoing races) who work or worked in the Covered Software Engineer Positions who work or worked for Uber in California between July 31, 2013 and April 19, 2018 (the "California Rule 23 Class");

(3) all women who work or worked for Uber in the Covered Software Engineer Positions in the United States between July 31, 2014 and April 19, 2018 who opt in (the "Federal EPA Collective"); and

(4) all women (of any race or national origin) and all Latino/Latina/Hispanic, African American/Black, Native American, Alaskan Native, and/or multiracial individuals (who are in part one of the foregoing races) who work or worked for Uber in Covered Software Engineer Positions in California between June 22, 2016 and April 19, 2018 (the "PAGA Representative Group").

*Id*. at 2. Notice was provided to the 487 individuals Uber identified as being in the Settlement Class. JND Decl. ¶¶ 10-15.

### C. The Settlement.

The $10,000,000 Settlement Amount will cover: (a) Class Member payments; (b) a $50,000 PAGA allocation, 75% of which will be paid to the California Labor and Workforce Development Agency (the "LWDA"), and 25% of which will be paid to the PAGA Representative Group; (c) Class Representative Service Awards of $50,000 for Plaintiff del Toro Lopez and $30,000 for Plaintiff Medina; (d) Class Counsel's fees of 25% of the Settlement Amount and actual costs up to $170,000; and (e) settlement administration costs, expected to be approximately $110,000. Settlement Agreement, § 5.2.

The plan of allocation devotes the bulk of the settlement amount to Fund A (to be paid out formulaically based on weeks worked, position, time period, geography, and whether the Class Member has previously signed a release of claims), $50,000 to the PAGA allocation, and $1,900,000 set aside for Fund B (to be paid out based on Claim Forms submitted by Class Members to capture non-monetary harms such as harassment and emotional distress).

Fund A. Fund A functions in the way that common funds typically function in employment class action settlements, in that it will be paid out automatically to all Class Members who do not opt out (with no need to submit a Claim Form), in proportion to the weeks they worked in each covered job code (e.g., Software Engineer I, Senior Software Engineer II) during the Covered Time Periods, adjusted for the strength of each Class Member's claim, as follows: (a) 1 point for workweeks during the earliest one year of the liability period (to reflect the weaker claims with four-year statutes of limitations), 2 points for workweeks outside of California during the three-year limitations period,

and 2.5 points for workweeks in California during the three-year limitations period (to reflect the California EPA's stronger liability standard relative to other claims), and (b) job code multipliers ranging from 1.0 to 1.8 for the five job codes at issue (to reflect the higher total compensation for higher job levels). Settlement Agreement, §§ 5.3-5.5. Individual Fund A awards range from $28.09 (in the case of someone who worked 0.3 covered weeks) to $38,929.62, averaging $10,743.34. JND Decl. ¶ 9.

PAGA. In addition to the Fund A benefits, Class Members who worked in California are also automatically eligible to receive monetary benefits from the $12,500 in PAGA penalties allocated to the Class based on the number of weeks they worked in California during the PAGA period. *Id*. Individual PAGA penalties range from $1.24 (in the case of someone who worked 1 covered week) to $55.91, averaging $34.44. *Id*.

Fund B. Fund B will be paid out to Class Members who filed valid Claim Forms, based on the strength of their claims. Fifty-five Class Members filed claim forms before the deadline of July 9, 2018, and one Class Member submitted a claim form after that date. *Id*. ¶ 18.[4] Class Counsel contacted every single one of the 56 claimants and communicated with the vast majority of them, to ensure that they understood the importance of providing sufficient information about incidents of discrimination, harassment, and/or hostile work environment and connecting their experiences to their race, national origin, or gender. Sagafi Decl. ¶ 28. Class counsel's aim was to ensure that each Claim Form sufficiently set forth the basis for an award. Class Counsel believed that these extra precautions would be helpful in light of the sensitive nature of the discrimination and harassment claims at issue, as well as the importance of tying the Claim Form narratives to actionable harm covered by the settlement. Once the documentation was complete, the Settlement Administrator, in consultation with counsel for both parties, scored each Claim Form based on objective criteria, in light of its experience administering class action settlements and counsel's instructions regarding the

---

[4] Because there was only one late Claim Form, and because the Class Member provided good cause for the delay (the person was out of the country) and submitted the Claim Form before the scoring process was completed, the parties request that the Court permit consideration of the late Claim Form in awarding money from Fund B.

law. JND Decl. ¶ 19. To ensure fair results and consistency across claimants, the Settlement Administrator awarded points in each of five categories, using the following scoring process:

- 0-30 points: The nature of the reported harassment, including the way in which the harassment occurred (e.g., verbal, physical, sexual, etc.); the frequency and duration of harassment; the severity of the harassment; and the location of the harassment (e.g., at work, at a work event, etc.).
- 0-10 points: The offender, including whether the offender was a co-worker, supervisor, or manager, and whether the offender abused a position of trust and authority.
- 0-10 points: Witnesses and documentation, including whether there were witnesses, and whether they were named; whether the witnesses were in a position of authority at Uber; whether the incident or incidents were reported (e.g., to a manager or HR); whether there was contemporaneous or subsequent documentation; how HR responded, if at all; and whether the Class Member formally filed documents with a government agency.
- 0-30 points: The nature of the impact, including whether the Class Member received treatment from a doctor or therapist; whether the Class Member had medical symptoms and what kind; whether the Class Member's experience had continuing effects on his or her future employment.
- 0-20 points: Whether the Class Member had any special circumstances warranting additional points, including, but not limited to, the nature and continuity of any harassment, and the nature and impact on the Class Member and others of the Class Member's response to discrimination or harassment.

JND Decl. ¶ 20; Exs. B-F (Notice of Fund B Awards). The Fund B awards range from $0 to $100,000, averaging $33,928.57, with a median of $33,000. JND Decl. ¶ 23.

The release is limited to only those claims actually asserted in the action or factually related to the allegations made in the action. Settlement Agreement § 12. It does not include any other claims, such as claims for retaliation, wrongful termination, or disability discrimination, all of which are explicitly carved out of the Settlement Agreement. *Id*. § 12.1.

### D.   Notice Process

#### 1.   The Administrator Adhered to the Class Notice Requirements.

The parties have followed the Court-approved notice plan, as set forth in the Settlement and Preliminary Approval Order. Sagafi Decl. ¶ 28; JND Decl. ¶¶ 10-15; PA Order § V.

On or about May 5, 2018, Uber provided the settlement administrator, JND Legal Administration ("JND"), with an electronic file for each Class Member listing the Class Member's name, last-known mailing addresses, phone numbers, email addresses, and relevant employment

1  information.  JND Decl. ¶ 4.  On May 24, 2018, JND sent the Class Notice and Claim Form to the
2  members of the Settlement Class.  *Id*. ¶¶ 10-15.

3        The individualized Claim Forms listed the estimated Fund A award amounts for each Class
4  Member (not including PAGA amounts).  *Id*. ¶ 12, Ex. C.  This information put Class Members in the
5  best possible position to evaluate their options as to whether to opt out or object.  The Notice
6  explained the process for objecting to the Settlement and excluding oneself from the Settlement,
7  along with contact information for Class Counsel and the Settlement Administrator.  *Id.*

8        The Settlement Administrator followed best practices to ensure that the Notice reached as
9  many Class Members as feasible.  The Settlement Administrator disseminated the Notice to all Class
10 Members by personal e-mail (if available) and by first class mail, for a total of 487 mailed Notices
11 and 957 emailed Notices (due to many Class members having multiple email addresses).  JND Decl.
12 ¶¶ 12-13.  Of those, 103 mailed Notices and 133 emailed Notices were returned as undeliverable.  *Id*.
13 ¶ 15.  Of the mailed Notices returned as undeliverable, the Settlement Administrator performed
14 address searches and located updated address information for 76 Class Members.  *Id*.  The Settlement
15 Administrator re-mailed Notices to those individuals, and, of those Notices, only two were returned
16 as undeliverable.  *Id*.  The Settlement Administrator also maintained a toll-free telephone number and
17 a website to provide Class Members with additional information and allowed them to submit their
18 forms online.  *Id*. ¶ 11.  To date, the case website has received 725 unique visitors and 2,652
19 pageviews.  *Id*.  In addition, the settlement was widely publicized, with articles posted online by
20 mainstream outlets (e.g., Reuters, CBS News, CNN, the San Francisco Chronicle, USA Today,
21 Fortune, Slate) as well as technology-focused outlets (e.g., CNET, Recode, Engadget, Fast Company,
22 Tech Funnel) and more focused websites (e.g., the Society of Women Engineers).  Sagafi Decl. ¶ 27.

23       Class Counsel also responded to all Class Member inquiries about the Settlement.  *Id*. ¶ 28.

24       As of August 20, 2018, two Class Members have opted out of the Settlement, and no Class
25 Member has objected.  JND Decl. ¶¶ 16-17.

26       **2.**      <u>**CAFA's Notice Requirements Were Satisfied.**</u>

27       From April 3 to 17, 2018, Uber satisfied its obligation to serve the appropriate settlement
28 notice documents on the relevant federal and state attorneys general.  ECF Nos. 38 and 47.  The

Parties have not received any comments from any state or federal officials.  Sagafi Decl. ¶ 29.  The Final Approval hearing, set for November 6, 2018, is being held more than 90 days after the issuance of the CAFA notice, such that the final approval order may be entered in accordance with CAFA's notice requirements if the Court finds that all other requirements are met.  28 U.S.C. § 1715(d).

### III. ARGUMENT

#### A. The Best Practicable Notice of Settlement Has Been Provided to the Class, and No Class Member Has Objected to the Settlement.

The notice here was the "best notice that is practicable under the circumstances," Fed. R. Civ. P. 23(c)(2)(B), and was provided "in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).  Notice is satisfactory "if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal citation and quotation marks omitted).  Notice mailed to each class member "who can be identified through reasonable effort" constitutes reasonable notice. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974).  For any class certified under Rule 23(b)(3), the notice must inform class members "that the court will exclude from the class any member who requests exclusion," stating "the time and manner for requesting exclusion." Fed. R. Civ. P. 23(c)(2)(B)(v)-(vi).

As described above, the mailing and emailing of Notices to Class Members and the administration of the notice process ensured that the best notice practicable was sent to Class Members, as due process requires.  The parties and JND have complied with the notice procedures set forth in the Settlement Agreement, which the Court endorsed in its Preliminary Approval Order. *See* PA Order § V.C.  Because Class Members have been given a full and fair opportunity to consider the terms of the proposed Settlement Agreement and to make an informed decision on whether to participate, the Court should find that notice given was adequate for purposes of establishing due process. *See Ford v. CEC Entm't Inc.,* No. 14 Civ. 677, 2015 WL 11439033, at *3 (S.D. Cal. Dec. 14, 2015) (finding notice standards satisfied when claims administrator provided notice in accordance with the procedures previously approved by the court in its preliminary approval order).

B.      **Final Approval Is Appropriate Under Rule 23 and the FLSA.**

The touchstone for the final approval inquiry is whether the settlement is "fair, adequate and reasonable," recognizing that "it is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Staton*, 327 F.3d at 952 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (internal quotation marks omitted)). "Assessing a settlement proposal requires [a] court to balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; . . . and the reaction of the class members to the proposed settlement." *Hanlon,* 150 F.3d at 1026; *accord Guilbaud v. Sprint Nextel Corp.*, No. 13-CV-04357-VC, 2016 WL 7826649, at *2 (N.D. Cal. Apr. 15, 2016). Additionally, a settlement is considered fair and reasonable if it occurred as a result of arms'-length negotiations before an experienced mediator. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 852 (1999).

Similarly, under the FLSA, a settlement that results in waiver of FLSA claims should be approved where it is entered as part of a "stipulated judgment [approved by the court] after scrutinizing the settlement for fairness." *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353 (11th Cir. 1982).

Because further developments between preliminary and final approval, as well as the comments of objectors, may reveal unfairness in the settlement, even a "rigorous inquiry" at the preliminary approval stage does not "convert final review to a mere formality." *Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1036 (N.D. Cal. 2016) (Chhabria, J.). Here, the most significant development – the Supreme Court's *Epic Systems* decision, allowing companies to require employees to sign, as a condition of employment, contracts prohibiting future legal action in court and any collective or class resolution of claims – confirms that the Settlement is an excellent outcome for Class Members. A rigorous review of the Settlement confirms that it merits final approval.

### C. The Settlement Is Fair, Reasonable, and Adequate.

The Settlement is fair, reasonable, and adequate, because the *Hanlon* factors support approval. *See Ortiz*, 527 U.S. at 852 (holding that arms-length negotiations conducted by competent counsel after appropriate discovery are *prima-facie* evidence that the settlement is fair and reasonable); *M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Mass. 1987) ("Where, as here, a proposed class settlement has been reached after meaningful discovery, after arm's length negotiation, conducted by capable counsel, it is presumptively fair.").

#### 1. Plaintiffs Faced Substantial Obstacles to Recovery.

The Parties have balanced "plaintiffs' expected recovery . . . against the value of the settlement offer," taking into account "the relative strengths and weaknesses of the plaintiffs' case." *Cotter v. Lyft, Inc.*, 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016) (Chhabria, J.) (internal quotations and citations omitted). While Plaintiffs believe that they can prevail on all issues, to recover full damages, they would have to surmount all of the following hurdles – loss on any one would eliminate or significantly reduce the recovery: (1) Uber's motion to compel arbitration, which would eliminate all claims except the California PAGA claim, (2) Rule 23 class certification and FLSA conditional certification and decertification, (3) liability at trial, (4) proof of damages, and (5) appeal. With respect to these issues, Uber argues that: (1) Class Members are bound by arbitration agreements that prohibit them from proceeding on a class or collective basis; (2) Class Members work in diverse circumstances, on different teams, for different managers, in different locations and perform a myriad of duties so that are not substantially similar; (3) any disparity between the compensation and promotions rate of Class Members and comparators is not statistically significant, and Class Members had varying and individualized experiences of hostile work environment, harassment and emotional distress; (4) Class members would have difficulty proving damages for various reasons including failure to mitigate; and (5) even if Plaintiffs were to prevail on all of these issues, the Ninth Circuit or Supreme Court could have reversed any victory.

In light of these obstacles, the $10,000,000 settlement amount is fair, reasonable, and adequate.  ECF No. 33 at 17-18 (describing Plaintiffs' hurdles in this case).

### 2. The Risk, Expense, Complexity, and Delay of Further Litigation Support Preliminary Approval.

Settlement now saves Class Members from the significant risk of no recovery, the cost of individual litigation or arbitration, and the delay inherent in further litigation and possible appeals. As detailed above, employment discrimination class action litigation is highly complex, both procedurally and substantively. Settling Class Members' claims saves the parties from conducting substantial additional discovery, including taking depositions and written discovery, and engaging in expert discovery and pre-trial motion practice. For these reasons, the law strongly favors settlements, particularly where complex class action litigation is concerned. *See Class Plaintiffs*, 955 F.2d at 1276; *see, e.g.*, *Chen-Oster v. Goldman Sachs & Co.*, 325 F.R.D. 55 (S.D.N.Y. 2018) (gender discrimination class action still pending after eight years of litigation, with class certification recently decided).

### 3. Plaintiffs Faced a Real Risk of Losing Rule 23 Certification and EPA Collective Certification.

In addition to the risk of being compelled to individual arbitration, Plaintiffs risked adverse decisions as to Rule 23 class certification and EPA collective certification. Employment discrimination class actions are challenging, as evidenced by two recent denials of certification under Rule 23 and the California equivalent. *See, e.g.*, *Moussouris v. Microsoft Corp.*, 2018 WL 3328418, (W.D. Wash. June 25, 2018) (class certification denied in case alleging gender discrimination in performance evaluations, compensation, and promotions against female technical employees, three years after case filing); Sagafi Decl. ¶ 61, Ex. 4 (*Huang v. Twitter, Inc*. CGC-15-544813 (San Francisco Super. Ct. July 3, 2018) (class certification denied in case alleging gender discrimination in promotions against female software engineers)).

### 4. The Settlement Amount Will Fairly and Adequately Compensate Class Members.

The settlement amount, as with any settlement, represents a compromise between receiving full damages and penalties on the one hand, and total defeat (including possible imposition of defense costs) on the other. "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *Officers for Justice v. Civil Serv. Comm'n of City &*

*Cty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982). Given the risks and complexity of litigation, and the cost savings obtained through settlement, the compromise amount here is fair and adequate.

### 5. The Extent of Discovery Supports Settlement.

Adequate discovery is required to justify any class settlement. Plaintiffs have engaged in extensive fact-gathering, informal and formal discovery, and detailed discussions of the legal and factual issues before reaching the Settlement. Sagafi Decl. ¶¶ 4-17. *Cf. In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (emphasizing that the touchstone of the analysis is whether "the parties have sufficient information to make an informed decision about settlement," including formal and informal discovery); PA Order § IV (finding that Class Counsel "adequately investigated Plaintiffs' claims and became familiar with their strengths and weaknesses.").

### 6. Counsel's Experience and Views Support Approval.

The judgment of experienced counsel regarding the settlement is entitled to great weight. *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981). Reliance on such recommendations is premised on the fact that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (quotations omitted).

Here, Class Counsel endorse the Settlement as fair, adequate, and reasonable. Class Counsel are some of the most experienced attorneys in the nation in representing workers in employment class actions, with extensive experience in prosecuting and litigating employment discrimination class actions like this one. Sagafi Decl. ¶¶ 31-45. The fact that qualified and well-informed counsel endorse the Settlement as being fair, reasonable, and adequate favors this Court's approval of the Settlement.

### 7. The Parties Participated in Arms'-Length Negotiations Before an Experienced Mediator.

As set forth above, a settlement is presumed fair if it was negotiated at arm's length by experienced, competent counsel equipped with enough information to act intelligently. *See Hughes v. Microsoft Corp.*, No. 93 Civ. 178C, 2001 WL 34089697, at *7 (W.D. Wash. Mar. 26, 2001) ("A

12   NOTICE OF MOTION AND MOTION FOR
FINAL APPROVAL OF SETTLEMENT,
CASE NO. 17-CV-06255-YGR

presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced capable counsel after meaningful discovery.").

The Settlement is presumptively fair because it is "the result of arms-length negotiations between the Parties" with the "assistance of an experienced mediator." ECF No. 49, § IV. The mediator here, David A. Rotman, is one of the preeminent employment class action mediators in the country.

### 8. The Class Members Have Reacted Positively to the Notice.

The reaction of the Class, which has been uniformly positive, supports the conclusion that the Settlement is fair and reasonable. No Class Member has objected, and only two have opted out. JND Decl. ¶¶ 16-17; Settlement Agreement ¶ 13 (If 24 or more had opted out, Uber would have had the option to rescind the settlement.). The Settlement Administrator and Class Counsel have made extra efforts to reach Class Members to ensure they received the Notice Packet and were aware of the claim form submission deadline, including emailing Class Members and calling them individually. In addition, 20 days before the Claim Form deadline, the Settlement Administrator sent a reminder postcard to the 469 Class Members who had not yet filed a Claim Form. The absence of objections and low number of exclusions favors final approval. *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (Walker, J.) (granting final approval where 16 of 329 class members (i.e., 4.9%) opted out, and explaining that this low number of exclusions supports a presumption that the class favors the settlement); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.").

In these, and all other respects, the Settlement is fair, reasonable, and adequate, and is appropriate for final approval.

### IV. CONCLUSION

The Court's Preliminary Approval Order provisionally certified the Settlement Class pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure. PA Order § II.B. The Court ruled that, for purposes of settlement, the Class meets the Rule 23 requirements. *Id*. The

Court also appointed the named Plaintiffs as Class Representatives and Plaintiffs' counsel as Class Counsel. *Id*. § III. The settlement has drawn a favorable response from the Class. For these reasons, and the reasons set forth in Plaintiffs' preliminary approval motion and this motion, Class Counsel respectfully submit that final certification and collective action designation for purposes of settlement are appropriate, including appointment of the Class Representatives and Class Counsel.

Dated: August 20, 2018

Respectfully submitted,

By: /s/ *Jahan C. Sagafi*
     Jahan C. Sagafi

Jahan C. Sagafi (SB# 224887)
Rachel W. Dempsey (SB# 310424)
Laura Iris Mattes (SB# 310594)
OUTTEN & GOLDEN LLP
One California Street, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
E-mail: jsagafi@outtengolden.com
E-mail: rdempsey@outtengolden.com
E-mail: imattes@outtengolden.com

Rachel M. Bien (SB# 315886)
OUTTEN & GOLDEN LLP
601 S Figueroa St., Suite 4050
Los Angeles, CA 90017
Telephone: (323) 673-9900
Facsimile: (646) 509-2058
E-mail: rmb@outtengolden.com

Adam T. Klein (admitted *pro hac vice*)
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060
E-mail: atk@outtengolden.com

*Attorneys for Plaintiffs and Settlement Class Members*