Jahan C. Sagafi (SB# 224887)
Rachel W. Dempsey (SB# 310424)
Laura Iris Mattes (SB# 310594)
OUTTEN & GOLDEN LLP
One California Street, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
E-mail: jsagafi@outtengolden.com
E-mail: rdempsey@outtengolden.com
E-mail: imattes@outtengolden.com

Rachel M. Bien (SB# 315886)
OUTTEN & GOLDEN LLP
601 S Figueroa St., Suite 4050
Los Angeles, CA 90017
Telephone: (323) 673-9900
Facsimile: (646) 509-2058
E-mail: rmb@outtengolden.com

Adam T. Klein (admitted *pro hac vice*)
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060
E-mail: atk@outtengolden.com

*Counsel for Plaintiffs and Settlement Class Members*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| ROXANA DEL TORO LOPEZ and ANA MEDINA, on behalf of themselves, and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UBER TECHNOLOGIES, INC.,<br><br>Defendant. | Case No. 4:17-cv-06255-YGR<br><br>**NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS; MEMORANDUM IN SUPPORT OF MOTION**<br><br>Judge:   Yvonne Gonzalez Rogers<br>Hearing Date:   November 6, 2018<br>Hearing Time:  2:00 pm<br>Courtroom:    Courtroom 1, 4th Floor |

## NOTICE OF MOTION AND MOTION

To the Clerk of Court and all interested parties:

PLEASE TAKE NOTICE THAT on November 6, 2018, at 2:00 p.m., or as soon thereafter as counsel may be heard, in Courtroom 1 on the 4th Floor of this Court's Oakland Courthouse, located at 1301 Clay Street, Oakland, California, Plaintiffs Roxana del Toro Lopez and Ana Medina, individually and on behalf of all others similarly situated ("Plaintiffs") will, and hereby do, move this Court for an award of $2,500,000 in attorneys' fees, reimbursement of actual costs up to $170,000 (currently $152,739), settlement administration expenses of up to $110,000, and service payments of $50,000 for Plaintiff Roxana del Toro Lopez and $30,000 for Plaintiff Ana Medina. Defendant Uber Technologies, Inc. ("Uber") does not oppose this motion.

As more fully discussed in the following memorandum in support of the motion, this motion is made on the grounds that the requested fee is reasonable under the Ninth Circuit's application of the common fund doctrine, as it represents 25% of the settlement fund and is therefore conservatively in line with applicable Ninth Circuit authority and with fees awarded in similar cases in this District.  In addition, the requested fee is appropriate under the lodestar cross-check method. Furthermore, the requested litigation and settlement administration expenses were all necessarily and reasonably incurred, and the requested service awards are reasonable and appropriate in recognition of the two Plaintiffs' time invested in making the litigation possible, their contribution to its investigation and prosecution, and the risk to which they are now exposed due to their public assertion of their and others' rights in this litigation.

The motion is based on this notice of motion and motion; the memorandum in support of the motion; the contemporaneously-filed Notice of Motion and Motion for Final Approval of Settlement ("Final Approval Motion") and accompanying Declaration of Jahan C. Sagafi ("Sagafi Decl."); the Declaration of Jennifer Keough of JND Legal Administration ("JND Decl."); the Declaration of Roxana del Toro Lopez ("del Toro Lopez Decl."); the Declaration of Ana Medina ("Medina Decl."); the Court's record of this action; all matters of which the Court may take notice; and any oral and documentary evidence presented at the hearing on the motion.

NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, COSTS & SERVICE AWARDS,
CASE NO. 17-CV-06255-YGR

Dated:  August 20, 2018

Respectfully submitted,

By: /s/ *Jahan C. Sagafi*
      Jahan C. Sagafi

Jahan C. Sagafi (SB# 224887)
Rachel W. Dempsey (SB# 310424)
Laura Iris Mattes (SB# 310594)
OUTTEN & GOLDEN LLP
One California Street, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
E-mail: jsagafi@outtengolden.com
E-mail: rdempsey@outtengolden.com
E-mail: imattes@outtengolden.com

Rachel M. Bien (SB# 315886)
OUTTEN & GOLDEN LLP
601 S Figueroa St., Suite 4050
Los Angeles, CA 90017
Telephone: (323) 673-9900
Facsimile: (646) 509-2058
E-mail: rmb@outtengolden.com

Adam T. Klein (admitted *pro hac vice*)
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060
E-mail: atk@outtengolden.com

*Attorneys for Plaintiffs and Settlement Class*
*Members*

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL BACKGROUND .............................................................................. 2

        A.      The Settlement Conveys Substantial Benefits to the 483 Class Members..................... 2

        B.      Class Counsel Have Devoted Substantial Time And Resources to the Litigation.......... 3

        C.      The Named Plaintiffs Contributed Significantly and Assumed Risk. ........................... 4

        D.      Class Members Have Reacted Positively to All Aspects of the Settlement. ................. 4

III.    ARGUMENT ..................................................................................................... 5

        A.      The Attorneys' Fee Request of 25% of the Common Fund Is Conservative and
                Appropriate. ..................................................................................................... 5

                1.      Attorneys' Fees Are Merited under the Equitable Common Fund Doctrine. .... 5

                2.      The Fee Award Should Be Calculated as a Percentage of the Common Fund.. 6

                3.      Twenty-Five Percent of the Common Fund Is "Presumptively Reasonable" for
                        Attorneys' Fee Awards. ...................................................................... 7

                4.      The Requested Fee Award Is Reasonable. ................................................ 7

                        i.      Class Counsel Have Achieved an Excellent Result for the Class. ......... 8

                        ii.     The Class and Class Counsel Faced Substantial Litigation Risk. .......... 9

                        iii.    Class Counsel Are Experienced in Complex Class Action Litigation. 11

                        iv.     Class Counsel Worked on a Contingency Basis and Carried Substantial
                                Risk of Nonpayment. ............................................................... 11

                5.      The Lodestar Cross-Check Confirms the Reasonableness of the Fee Request.11

        B.      Class Counsel Are Entitled to Recover Their Out-of-Pocket Expenses, Which Are
                Reasonable and Have Benefitted the Class............................................................ 14

        C.      The Settlement Administrator Expects Its Costs to Be Within the Original Estimate. 15

        D.      The Class Representative Service Payments Are Reasonable. ................................... 15

IV.     CONCLUSION .................................................................................................. 18

# TABLE OF AUTHORITIES

**Cases**                                                                                           **Page(s)**

*Blum v. Stenson*,
   465 U.S. 886 (1984) ......................................................................................... 6, 11

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) ........................................................................................... 5, 6

*Calibuso v. Bank of Am. Corp.*,
   299 F.R.D. 359 (E.D.N.Y. 2014) ............................................................................ 8

*Camden I Condo. Ass'n, Inc. v. Dunkle*,
   946 F.2d 768 (11th Cir. 1991) ................................................................................. 6

*Ching v. Siemens Indus., Inc.*,
   No. 11-cv-4838-MEJ, 2014 WL 2926210 (N.D. Cal. June 27, 2014) .................... 8, 11

*Class Plaintiffs v. Jaffe & Schlesinger, P.A.*,
   19 F.3d 1306 (9th Cir. 1994) .................................................................................. 5

*Cook v. Niedert*,
   142 F.3d 1004 (7th Cir. 1998) ............................................................................... 15

*Craft v. Cty. of San Bernardino*,
   624 F. Supp. 2d 1113 (C.D. Cal. 2008) .................................................................. 7, 9

*Curtis-Bauer v. Morgan Stanley & Co.*,
   No. 06-cv-3903-TEH, 2008 WL 4667090 (N.D. Cal. Oct. 22, 2008) ..................... 8, 9

*Elliott v. Rolling Frito-Lay Sales, LP*,
   No. 11 Civ. 01730, 2014 WL 2761316 (C.D. Cal. June 12, 2014) ......................... 6

*Epic Sys. Corp. v. Lewis*,
   138 S. Ct. 1612 (2018) .......................................................................................... 9, 10

*Gutierrez v. Wells Fargo Bank, N.A.*,
   No. 07-cv-05923-WHA, 2015 WL 2438274 (N.D. Cal. May 21, 2015) .................. 12

*Hainey v. Parrott*,
   No. 02 Civ. 733, 2007 WL 3308027 (S.D. Ohio Nov. 6, 2007) ............................. 16

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ............................................................................... 6, 12

*In re Activision Sec. Litig.*,
   723 F. Supp. 1373 (N.D. Cal. 1989) ...................................................................... 1, 7

*In re Apple iPhone/iPod Warranty Litig.*,
   40 F. Supp. 3d 1176 (N.D. Cal. 2014) ................................................................... 12

*In re Bluetooth Headset Prod. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ................................................................................. 7

NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, COSTS & SERVICE AWARDS,
CASE NO. 17-CV-06255-YGR

*In re Dun & Bradstreet Credit Servs. Customer Litig.*,
    130 F.R.D. 366 (S.D. Ohio 1990) ........................................................................... 16

*In re High-Tech Employee Antitrust Litig.*,
    No. 11-cv-02509-LHK, 2015 WL 5158730 (N.D. Cal. Sept. 2, 2015) ............................ 7

*In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig., No. 14-md-2541-CW*,
    2017 WL 6040065 (N.D. Cal. Dec. 6, 2017) ............................................................ 12

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ........................................................... 7, 8, 11

*In re Optical Disk Drive Prods., Antitrust Litig.*,
    No. 10-md-2143-RS, 2016 WL 7364803 (N.D. Cal. Dec. 19, 2016) ............................ 14

*In re United Energy Corp. Solar Power Modules Tax Shelter Inv. Sec. Litig.*,
    Nos. 87 Civ. 3962, 86 Civ. 3538, 1989 WL 73211 (C.D. Cal. Mar. 9, 1989) ................ 14

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994) ................................................................................. 11

*Kerr v. Screen Extras Guild, Inc.*,
    526 F.2d 67 (9th Cir. 1975) .................................................................................. 12

*Pan v. Qualcomm Inc.*,
    No. 16 Civ. 01885, 2017 WL 3252212 (S.D. Cal. July 31, 2017) ................................... 8

*Paul, Johnson, Alston & Hunt v. Graulty*,
    886 F.2d 268 (9th Cir. 1989) .................................................................................. 6

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*,
    478 U.S. 546 (1986) ............................................................................................ 11

*Roberts v. Texaco, Inc.*,
    979 F. Supp. 185 (S.D.N.Y. 1997) .......................................................................... 16

*Silberblatt v. Morgan Stanley*,
    524 F. Supp. 2d 425 (S.D.N.Y. 2007) ...................................................................... 16

*Six (6) Mexican Workers v. Arizona Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990) ............................................................................. 6, 7

*State of Fla. v. Dunne*,
    915 F.2d 542 (9th Cir. 1990) .................................................................................. 6

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ........................................................................ 5, 15, 16

*Steiner v. Am. Broad. Co.*,
    248 F. App'x 780 (9th Cir. 2007) ........................................................................... 12

*Sutton v. Bernard*,
    504 F.3d 688 (7th Cir. 2007) .................................................................................. 6

NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, COSTS & SERVICE AWARDS,
CASE NO. 17-CV-06255-YGR

*Swedish Hosp. Corp. v. Shalala,*
　1 F.3d 1261 (D.C. Cir. 1993) ................................................................................ 6

*Trujillo v. City of Ontario,*
　No. 04 Civ. 1015, 2009 WL 2632723 (C.D. Cal. Aug. 24, 2009) .................................. 15

*Van Vranken v. Atl. Richfield Co.,*
　901 F. Supp. 294 (N.D. Cal. 1995) .................................................................. 15, 16

*Vandervort v. Balboa Capital Corp.,*
　8 F. Supp. 3d 1200 (C.D. Cal. 2014) ...................................................................... 7

*Vedachalam v. Tata Consultancy Servs., Ltd.,*
　No. 06-cv-963-CW, 2013 WL 3941319 (N.D. Cal. July 18, 2013) ................................ 7

*Vedachalam v. Tata Consultancy Servs., Ltd.,*
　No. 06-cv-0963-CW, 2013 WL 3929129 (N.D. Cal. July 18, 2013) .............................. 15

*Vincent v. Hughes Air W., Inc.,*
　557 F.2d 759 (9th Cir. 1977) ................................................................................ 5

*Vizcaino v. Microsoft Corp.,*
　290 F.3d 1043 (9th Cir. 2002) ..................................................................... passim

*Wade v. Kroger Co.,*
　No. 01 Civ. 699, 2008 WL 4999171 (W.D. Ky. Nov. 20, 2008) .................................. 16

*Wren v. RGIS Inventory Specialists,*
　No. 06-cv-5778-JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ................................ 9

*Wright v. Stern,*
　553 F. Supp. 2d 337 (S.D.N.Y. 2008) ................................................................... 16

**Rules**

Fed. R. Civ. P. 23(e) ............................................................................................ 5

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.     INTRODUCTION**

3

Plaintiffs Roxana del Toro Lopez and Ana Medina secured this $10,000,000 settlement on

4

behalf of themselves and 481 other Class Members.[1]  In addition, Uber has agreed to significant

5

programmatic relief and ongoing monitoring for a period of three years after the date of final

6

approval.[2]  In conjunction with Plaintiffs' Motion for Final Approval of the Settlement, court-

7

appointed Class Counsel, Outten & Golden LLP, respectfully move the Court for: (1) an award of

8

attorneys' fees of 25% of the settlement fund ($2,500,000), (2) reimbursement of up to $170,000 in

9

out-of-pocket expenses (currently $152,739) that Class Counsel incurred in successfully

10

prosecuting the claims in this action, (3) settlement administration expenses, expected to be

11

approximately $110,000, and (4) service awards to named Plaintiffs Roxana del Toro Lopez and

12

Ana Medina in the amount of $50,000 and $30,000, respectively.  Defendant Uber Technologies,

13

Inc. ("Uber") does not oppose this motion.

14

A fee of 25% is consistent with the benchmark for common fund awards in the Ninth

15

Circuit, and is on the low end of fees actually awarded in this district for settlements of this size.

16

*See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *In re Activision Sec. Litig.*,

17

723 F. Supp. 1373, 1378 (N.D. Cal. 1989) (Patel, J.).  Class Counsel have obtained an excellent

18

monetary result as well as a commitment by Uber to reform company policies for the betterment of

19

the Class Members and similarly situated employees going forward.  To date, of the 485 Class

20

Members to whom notices were mailed, no one has objected to any aspect of the settlement, and

21

only two Class Members have opted out.  *See* JND Decl. ¶¶ 16-17.

22

23

---

[1] Plaintiffs' April 4, 2018 filing estimated a total of 482 class members.  ECF No. 37 at 2.  Uber

24

subsequently identified a total of 487 people satisfying the class definition.  The notice was mailed
and emailed to all 487 individuals.  JND Decl. ¶ 12-13.  Two of these individuals informed the

25

Settlement Administrator that they did not fall within the Class definition, so they were removed
from the Class.  *Id.* ¶ 5.  In addition, four class members have opted out, but two of those

26

subsequently opted back in.  *Id.* ¶ 17.  As of August 17, 2018, two opt-outs remain.  *Id.*  Thus, the
current class size is 483 individuals (including the named Plaintiffs).

27

[2] The Monitor's fees, as well as the employer's share of payroll taxes, will be borne by Uber
separately, and not paid out of the common fund.  Sagafi Decl. ¶ 22, Ex. 1 ("Settlement Agreement")

28

§§ 4.5, 5.7.

NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, COSTS & SERVICE AWARDS,
CASE NO. 17-CV-06255-YGR

Class Counsel's request for reimbursement of actual litigation expenses of up to $170,000 is also proper.  The $152,739 in costs incurred to date were reasonably incurred in connection with the prosecution of the action and the execution of the settlement.  Sagafi Decl. ¶¶ 55-56 and Ex.3.

Finally, in recognition of the time and effort that the two named Plaintiffs expended for the benefit of the Class, the results they made possible for the Class, and the risks they accepted by leading and participating in the litigation, Plaintiffs request a service payment of $50,000 for Roxana del Toro Lopez and $30,000 for Ana Medina.  These amounts are also reasonable, as explained below.

## II.    FACTUAL BACKGROUND

Class Counsel have zealously prosecuted these claims, including through active investigation and significant informal discovery, resulting in a settlement that will benefit hundreds of Class Members and countless future Uber employees.  More detail regarding Class Counsel's efforts are discussed in the Final Approval Motion, filed contemporaneously with this motion.

### A.    The Settlement Conveys Substantial Benefits to the 483 Class Members.

The Settlement provides significant value to Class Members, including both monetary and non-monetary relief.  Each Class Member will automatically receive a share of Fund A[3] and each eligible Class Member will automatically receive a share of the PAGA allocation.  Settlement Agreement §§ 5.3-5.4.

In addition, all Class Members had the option to submit a Claim Form to receive an award from Fund B, which provides additional compensation for hostile work environment and harassment, as well as other forms of discrimination that resulted in medical or psychological treatment.  *Id*. § 5.5.1.  (Twenty days before the Claim Form deadline, the Settlement Administrator

---

[3] At the end of the notice period, JND recalculated awards to account for (i) the two individuals identified as Class Members who did not meet the class definition, (ii) the exclusion of the two valid opt-outs, (iii) five successful challenges by Class Members to the employment data, (iv) the addition of the small portion of funds that were set aside in case adjustments had been needed based on Class Member data challenges, and (v) the addition of the difference between the maximum amount of attorneys' fees permitted by the Settlement Agreement (i.e., 30%), and the amount of attorneys' fees Class Counsel is seeking (i.e., 25%).  JND Decl. ¶ 7.  As a result of these adjustments, Class Member awards from Fund A will be approximately 15% higher than the amount set forth in Class Members' notice forms.  *Id*. ¶ 8.

mailed postcard reminders to every Class Member who had not submitted a Claim Form, reminding them of their entitlement to do so.  JND Decl. ¶ 14.)  Fund B awards were calculated according to a scoring system developed by the Settlement Administrator, with input and feedback from Class Counsel and Uber's counsel.  *Id.* ¶ 19.  Scores were based on several factors, including the nature of the incidents reported, the number and frequency of the incidents reported, the impact of the incidents on the Class Member, whether the Class Member complained of the incidents to someone either at or outside Uber, and the quantum of detail and evidence submitted with the claim.  *Id.* ¶ 20.  The weight accorded to each of these factors and the size of the corresponding award are tied to the strength of the claim or claims being released.  *Id.* ¶ 22.  Fifty-six Class Members submitted Claim Forms,[4] which have been scored and valued at amounts ranging from $0 to $100,000, with an average award of $33,928.57 and a median award of $30,000.00.  *Id.* ¶ 23.

Of equal or even greater importance, Uber also agreed to substantial programmatic relief as part of the settlement.  Uber has agreed to develop minimum standards for each class position and implement a validated promotion assessment process.  Settlement Agreement § 3.3.1.  It has also agreed to provide mentorship and skill development for Class Members (*id.* §§ 3.6-3.7), to consider work done to advance diversity and inclusion in cash bonus calculations (*id.* § 3.4.8), and to monitor compensation for adverse impact based upon race, national origin, and gender at the end of each performance cycle (*id.* § 3.4.9).  Uber has also agreed to a three-year monitoring period, during which Class Counsel and Uber's outside counsel will meet regularly to assess Uber's progress in implementing the agreed-upon reforms.  *Id.* § 3.9.  This programmatic relief is difficult to value, but is likely to provide at least as much financial benefit to the Class as the monetary relief.

**B.**    **Class Counsel Have Devoted Substantial Time And Resources to the Litigation.**

The requested fee constitutes a multiplier of approximately 3.02 of Class Counsel's lodestar, which will decrease as the case progresses through finality.  Sagafi Decl. ¶ 49.  As of August 17, 2018, Class Counsel had devoted over 1,800 hours to the prosecution of this action, with a lodestar

---

[4] This includes one late claim form and two claim forms that were intentionally left blank.  The reply brief will include an updated Final Approval Order.

NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, COSTS & SERVICE AWARDS,
CASE NO. 17-CV-06255-YGR

1  value of approximately $827,000.  *Id.* ¶ 47.  Class Counsel have also incurred over $152,739 in out-

2  of-pocket costs.  *Id.* ¶ 55.  By the time this Motion is heard, these figures will have increased due to

3  additional work performed by Class Counsel for Class Members' benefit.  *Id.* ¶ 48.[5]  Class Counsel

4  took this matter on a pure contingency basis, expending effort and costs without any guarantee of

5  recovery.  In prosecuting Plaintiffs' and the Class Members' claims, Class Counsel gave up the

6  opportunity to perform other work.  *Id.* ¶ 53.

7         **C.**     **The Named Plaintiffs Contributed Significantly and Assumed Risk.**

8        Both Ms. del Toro Lopez and Ms. Medina were integral to the litigation.  They participated

9  in countless discussions with Class Counsel in person, by phone, and electronically to help Class

10  Counsel understand Uber's policies and practices, make good decisions about the proposed

11  collective and class boundaries, identify documents and information to seek in discovery, and

12  determine legal strategy.  Sagafi Decl. ¶ 30; del Toro Lopez Decl. ¶¶ 4, 10; Medina Decl. ¶¶ 4, 10.

13  They also attended and participated in the mediation in person, which lasted late into the night.

14  del Toro Lopez Decl. ¶ 10(e); Medina Decl. ¶ 10(e).  Both Plaintiffs faced potential retaliation and

15  other negative consequences based on being publicly associated with the case.  del Toro Lopez

16  Decl. ¶¶ 11-13; Medina Decl. ¶¶ 14-15.  Google searches of "Roxana del Toro Lopez" and "Ana

17  Medina" reveal, on the first page of results, that they sued their employer in a class action.  Sagafi

18  Decl. ¶ 30.

19         **D.**     **Class Members Have Reacted Positively to All Aspects of the Settlement.**

20        Of the 485 Class Members (and two individuals who were later identified as not belonging

21  to the Class) to whom notices were sent (including 487 initial mailings and 957 emails, plus 76 re-

22  mailings and 469 reminder postcards), 56 Class Members submitted Claim Forms, two have opted

23  out, and none have objected to any aspect of the Settlement.  JND Decl. ¶¶ 12-17.  Class Members'

24  strong positive reaction to the Settlement further supports this Motion.

25

26

---

27  [5] Plaintiffs will supplement this submission with a "reply" brief at least 14 days before the Final
Approval Hearing, regardless of whether any opposition is filed, to provide the Court with the most

28  up-to-date figures and analysis feasible.

NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, COSTS & SERVICE AWARDS,
CASE NO. 17-CV-06255-YGR

## III.   ARGUMENT

### A.   The Attorneys' Fee Request of 25% of the Common Fund Is Conservative and Appropriate.

"[A] private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977); *see also Class Plaintiffs v. Jaffe & Schlesinger, P.A.*, 19 F.3d 1306, 1308 (9th Cir. 1994). "Attorneys' fees provisions included in proposed class action settlement agreements are, like every other aspect of such agreements, subject to the determination whether the settlement is fundamentally fair, adequate and reasonable." *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003) (quoting Fed. R. Civ. P. 23(e)) (internal quotation marks omitted).

For the reasons described below, Class Counsel's request for the conventional 25% benchmark fee award, or $2,500,000, is appropriate and in fact at the low end of typical awards for class action settlements of this size.

#### 1.   Attorneys' Fees Are Merited under the Equitable Common Fund Doctrine.

Attorneys' fees are commonly awarded in both federal and state courts in recognition of the principle that when counsel's efforts result in the creation of a common fund that benefits plaintiffs and unnamed class members, counsel have an equitable right to be compensated from that fund as a whole for their successful efforts in creating it. *See, e.g., Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (observing that the United States Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund . . . is entitled to a reasonable attorney's fee from the fund as a whole"). The common fund doctrine rests on the understanding that attorneys should normally be paid by their clients. *Id*. Where the attorneys' unnamed class member clients have no express retainer agreement, those who benefit from the fund without contributing to it would be unjustly enriched if attorneys' fees were not paid out of the common fund. *Id.*

Here, Class Counsel have helped generate a $10,000,000 fund for the Class Members, none of whom has paid any fees or costs. Equity requires them to pay a reasonable fee, based on what

NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, COSTS & SERVICE AWARDS,
CASE NO. 17-CV-06255-YGR

the market would traditionally require, no less than if they had hired private counsel to litigate their cases individually. *Id*. at 479-81.

## 2. The Fee Award Should Be Calculated as a Percentage of the Common Fund.

In common fund cases such as this one, "where the settlement or award creates a large fund for distribution to the class," courts may award attorneys' fees as either a percentage of the fund or pursuant to the lodestar method. *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1029 (9th Cir. 1998). Typically, the fairest and most efficient way to calculate a reasonable fee when contingency fee litigation has produced a common fund is to award class counsel a percentage of the total fund. *See, e.g.*, *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984); *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (common fund fee is generally "calculated as a percentage of the recovery"); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989) (endorsing percentage of the fund approach); *State of Fla. v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990) (recognizing a "recent ground swell of support for mandating a percentage-of-the-fund approach in common fund cases"); *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 773 (11th Cir. 1991) ("[E]very Supreme Court case addressing the computation of a common fund fee award has determined such fees on a percentage of the fund basis.").

The percentage-of-the-fund method is generally preferred for several reasons. The percentage method comports with the legal marketplace, where plaintiffs' counsel's success is frequently measured in terms of the results they have achieved. *See Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269 (D.C. Cir. 1993) (in common fund cases, "the monetary amount of the victory is often the true measure of [counsel's] success"). By assessing the amount of the fee in terms of the amount of the benefit conferred on the class, the percentage method "more accurately reflects the economics of litigation practice" which, "given the uncertainties and hazards of litigation, must necessarily be result-oriented." *Id.* (internal quotations and citation omitted); *see also Elliott v. Rolling Frito-Lay Sales, LP*, No. 11 Civ. 01730, 2014 WL 2761316, at *9 (C.D. Cal. June 12, 2014) (highlighting significant benefits of percentage approach and its consistency with contingency fee calculations in the private market); *Sutton v. Bernard*, 504 F.3d 688, 694 (7th Cir.

2007) (district court erred in failing to factor into its assessment of attorneys' fees "the value that the market would have placed on [c]ounsel's legal services had its fee been arranged at the outset").

Moreover, the percentage approach aligns the incentives of the class members and their counsel, so that time is spent efficiently and the class's recovery – rather than lodestar – is maximized. *In re Activision Sec. Litig.*, 723 F. Supp. at 1375-76; *cf. Vizcaino*, 290 F.3d at 1050 n.5 ("[I]t is widely recognized that the lodestar method creates incentives for counsel to expend more hours than may be necessary on litigating a case so as to recover a reasonable fee, since the lodestar method does not reward early settlement.").

### 3.    Twenty-Five Percent of the Common Fund Is "Presumptively Reasonable" for Attorneys' Fee Awards.

The Ninth Circuit "benchmark" for attorneys' fee awards is 25% of the common fund. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). In the Ninth Circuit, this "benchmark" is considered "presumptively reasonable." *In re High-Tech Employee Antitrust Litig.*, No. 11-cv-02509-LHK, 2015 WL 5158730, at *6 (N.D. Cal. Sept. 2, 2015). In practice, "in most common fund cases, the award exceeds [the 25%] benchmark." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008) (Conti, J.); *see also In re Activision Sec. Litig.*, 723 F. Supp. at 1377 (surveying cases and stating, "[t]his court's review of recent reported cases discloses that nearly all common fund awards range around 30%"); *Vedachalam v. Tata Consultancy Servs., Ltd.*, No. 06-cv-963-CW, 2013 WL 3941319, at *2 (N.D. Cal. July 18, 2013) (collecting cases awarding 30% or more and describing a 35% fee as "well within the usual range of percentages awarded"); *Craft v. Cty. of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (noting that "25% is substantially below the average class fund fee nationally") (citing cases).

### 4.    The Requested Fee Award Is Reasonable.

The following factors are relevant to whether an award is reasonable, including: "(1) the results achieved; (2) the risk of litigation; (3) the skill required and quality of work; and (4) the contingent nature of the fee and the financial burden carried by the plaintiffs." *Vandervort v.*

1   *Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1209 (C.D. Cal. 2014) (citing *Vizcaino*, 290 F.3d at

2   1048–50); *Six (6) Mexican Workers*, 904 F.2d at 1311.

3        These factors support Class Counsel's request in this case, where the financial burden of

4   investigating, developing, and prosecuting the case and the risk and complexity of adequately

5   proving nationwide policies and practices that functioned in concert to violate Class Members'

6   rights were substantial.  *See* Sagafi Decl. ¶¶ 46-60.

7        **i.**    **<u>Class Counsel Have Achieved an Excellent Result for the Class.</u>**

8        Most courts consider the overall result and benefit to the class to be the "most critical" factor

9   in granting a fee award.  *See Ching v. Siemens Indus., Inc*., No. 11-cv-4838-MEJ, 2014 WL 2926210,

10  at *7 (N.D. Cal. June 27, 2014) (citing *In re Omnivision*, 559 F. Supp. 2d at 1046).  The monetary

11  result here is very strong, and the programmatic relief makes the overall outcome all the more

12  substantial.  The $10,000,000 common fund represents a significant recovery per person (on average,

13  approximately $20,704 per Class Member, taking into account the two opt-outs).  This compares

14  favorably to per-person recoveries in other significant class discrimination settlements.  *See, e.g.*,

15  *Amochaev v. Smith Barney*, No. 05-cv-1298-PJH, ECF No. 172 at 3 (N.D. Cal. May 1, 2008)

16  ($13,200 per class member for female financial advisors); *Pan v. Qualcomm Inc.*, No. 16 Civ. 01885,

17  2017 WL 3252212, at *3 (S.D. Cal. July 31, 2017) ($6,000 per class member for female employees in

18  Science, Technology, Engineering, and Math ("STEM") positions); *Wellens v. Daiichi Sankyo*, No.

19  13-cv-0581-WHO-DMRx, ECF No. 167 at 16 (N.D. Cal. August 28, 2015) ($5,900 gross per class

20  member for female pharmaceutical sales representatives); *Calibuso v. Bank of Am. Corp.*, 299 F.R.D.

21  359, 368 (E.D.N.Y. 2014) ($7,800 per class member for female financial advisors); *Curtis-Bauer v.*

22  *Morgan Stanley & Co*., No. 06-cv-3903-TEH, 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008)

23  ($12,000 per class member for female financial advisors).

24       Awards from Fund A, which compensates class members for the effects of discrimination in

25  pay and promotions, range from $28.08 (in the case of someone who worked 0.3 covered weeks) to

26  $38,929.62, averaging $10,745.34.  JND Decl. ¶ 9(a).  Fund B provides additional relief to Class

27  Members for claims involving harassment, hostile work environment, or effects of other types of

28

NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, COSTS & SERVICE AWARDS,
CASE NO. 17-CV-06255-YGR

race, gender or national origin discrimination that resulted in medical or psychological treatment. Settlement Agreement § 5.5.  Awards under Fund B range from $0 to $100,000, averaging $33,928.57.  JND Decl. ¶ 23.  Accordingly, a Class Member who submitted a Claim Form receives an average total award of $14,704.97, although awards are as low as $28.08 and as high as $106,720.53.  *Id.*

On top of this substantial monetary relief, Uber has undertaken significant programmatic relief and has agreed to submit to three years of monitoring.  Settlement Agreement § 3.  This structural benefit further supports the award of fees.  *See Vizcaino*, 290 F.3d at 1049 ("[i]ncidental or nonmonetary benefits conferred by the litigation" support awarding fees); *Wren v. RGIS Inventory Specialists*, No. 06-cv-5778-JCS, 2011 WL 1230826, at *9 (N.D. Cal. Apr. 1, 2011), *supplemented by* 2011 WL 1838562 (N.D. Cal. May 13, 2011) (in FLSA class action, changes to defendant's corporate policies supported final approval and approval of attorneys' fees); *Craft*, 624 F. Supp. 2d at 1126-27 (in class action, policy changes supported approval of attorneys' fees).  The settlement also furthers important public policy objectives by incentivizing corporate compliance with the law and by demonstrating the viability of private enforcement.

### ii. The Class and Class Counsel Faced Substantial Litigation Risk.

Uber has made clear that it would vigorously defend against this action, including by moving to compel arbitration.  *See* ECF Nos. 15, 16.  The risk that its motion would be granted is substantial given the Supreme Court's recent decision in *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612 (2018).[6]  Forced arbitration of these claims would have dramatically devalued them.  First, it is likely that few Class Members would have initiated individual arbitrations given the economic costs, psychological costs, and time required by individual assertion of legal claims.  Second, studies show that plaintiffs in arbitration win far less often than plaintiffs in federal or state court,

---

[6] On May 15, 2018, Uber announced that it would "no longer require mandatory arbitration for individual claims of sexual assault or sexual harassment by Uber riders, drivers or employees."  *See* Tony West, "Turning the Lights On," https://www.uber.com/newsroom/turning-the-lights-on/ (last visited August 20, 2018).  However, the policy does not appear to apply to any other type of discrimination claim, including those at issue in this lawsuit.

and when they do win, they recover far less money.[7]  Third, arbitrators have limited power to order companies to engage in sweeping structural relief like the kind Uber has agreed to here.  In sum, a prohibition on litigation in court, combined with a prohibition on the use of Rule 23 and its analogues, amounts to a powerful deterrent to enforcement of federal and state antidiscrimination laws.

With respect to Plaintiffs' PAGA claims, which are not subject to arbitration, Plaintiffs would have faced the substantial challenge of proving manageability of the claims, establishing liability, recovering penalties and upholding any award on appeal.  Moreover, the maximum potential PAGA penalties recoverable in this action are only $2.1 million – significantly lower than the Settlement Amount – and 75% of that amount would have been payable to the LWDA.  Sagafi Decl. ¶ 23.  In other words, the Settlement allows Class Members to recover well over 100% of the amount they could have recovered under the best-case scenario in court.

Even in individual arbitrations, each Class Member would have had to prove liability and damages.  Uber would have argued that there was no statistically significant pay disparity because of differences in Class Members' work circumstances, and it would have vigorously disputed allegations of harassment or hostile work environment.

Lastly, Uber had two significant practical defenses.  If the events were far in the past, Uber would argue that the statute of limitations barred the action.  Conversely, if the events were more recent, Uber could argue that the reforms initiated during the time of the Holder Report in summer 2017 (including termination of 20 employees and much-publicized pay raises for underpaid women and people of color[8]), coupled with the resignation of CEO Travis Kalanick and others accused of wrongdoing, sharply limited its liability.

---

[7] *See* Katherine V.W. Stone & Alexander J.S. Colvin, "The Arbitration Epidemic," Econ. Policy Inst. (Dec. 7, 2015), https://www.epi.org/publication/the-arbitration-epidemic/ (observing that "in a simple aggregate comparison, mandatory arbitration is massively less favorable to employees than are the courts.").  Although the employee win rate has dipped in federal courts in recent years (from 36% in 2011 to 30% in 2015), so has the employee win rate in forced arbitration (from 21% to 19%).  *Id.*  A 2011 study found that plaintiffs receive substantially lower damages when they do prevail in arbitration ($23,548 (arbitration) vs. $328,008 (state court) vs. $143,497 (federal court)).  *Id.*
[8] *See, e.g.*, Abrar Al-Heeti, *Uber Closes Pay Gap by Paying Everyone Equally.  Imagine That*, CNET (July 19, 2017 4:27 PM), https://www.cnet.com/roadshow/news/uber-reportedly-closes-gender-pay-

In short, the Class Members faced many substantial obstacles to recovery, and Class Counsel were not assured of any fee.

### iii.   Class Counsel Are Experienced in Complex Class Action Litigation.

Class Counsel specialize in complex class action litigation and have substantial experience litigating discrimination cases.  Sagafi Decl. ¶¶ 31-45.  Beginning months before filing the state and federal complaints, Class Counsel conducted a thorough investigation, obtained and reviewed relevant documents, performed a detailed damages analysis with the assistance of an expert, participated in mediation, and successfully negotiated a favorable settlement on behalf of the Class Members.  *Id*. ¶¶ 4-18.  Class Counsel's skill and effort further support the requested fees.

### iv.   Class Counsel Worked on a Contingency Basis and Carried Substantial Risk of Nonpayment.

Class Counsel took this case on a contingent fee basis and therefore had to forego other financial opportunities to litigate it.  *See* Sagafi Decl. ¶ 53.  "Courts have long recognized that the public interest is served by rewarding attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing at all for their work."  *Ching*, 2014 WL 2926210, at *8 (citing *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994)); *Vizcaino*, 290 F.3d at 1050; *In re Omnivision*, 559 F. Supp. 2d at 1047.  Given the results achieved, the complexity of the claims, the contingent nature of the fee, and the financial burden for Class Counsel, 25% is a reasonable percentage.

### 5.   The Lodestar Cross-Check Confirms the Reasonableness of the Fee Request.

Courts often employ a lodestar cross-check to confirm the reasonableness of a percentage-based fee.  *See Vizcaino*, 290 F.3d at 1050 (lodestar method "provides a check on the reasonableness of the percentage award").  The lodestar is calculated by multiplying the reasonable hours expended by a reasonable hourly rate.  *Pennsylvania v. Delaware Valley Citizens' Council for*

gap/?ftag=COS-05-10aaa0b&linkId=39959435 ("Uber is serious about changing. . . .  It's going to pay employees evenly, whether they're men or women – as well as white and minority employees.").

NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS & SERVICE AWARDS, CASE NO. 17-CV-06255-YGR

*Clean Air*, 478 U.S. 546, 565 (1986).  The court may then apply a multiplier to the lodestar to arrive

at a reasonable fee.  *Blum*, 465 U.S. at 888.  The appropriate multiplier is determined in light of

certain factors, including:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the requisite legal skill necessary; (4) the preclusion of other employment due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount at controversy and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc*., 526 F.2d 67, 70 (9th Cir. 1975); *see also Hanlon*, 150 F.3d at

1029 (a lodestar figure "may be adjusted upward or downward to account for several factors

including the quality of the representation, the benefit obtained for the class, the complexity and

novelty of the issues presented, and the risk of nonpayment").  Courts in the Ninth Circuit

frequently approve fee awards with multipliers several times the lodestar.  *See Steiner v. Am. Broad.

Co*., 248 F. App'x 780, 783 (9th Cir. 2007) (citation omitted) ("Although this [6.85x] multiplier is

higher than those in many common fund cases . . . it still falls well within the range of multipliers

that courts have allowed.").

Here, Class Counsel's lodestar is currently $826,842, so the requested 25% fee equates to a

multiplier of 3.02.  Sagafi Decl. ¶¶ 47-47, 54 and Ex. 2.  The lodestar will continue to grow as the

case moves through the settlement approval process and, if the settlement is approved, into the

three-year monitoring period.  *Id*. ¶ 48.  Accordingly, the multiplier will decrease over time.

Multipliers of 3.5 or higher are frequently awarded.  *See, e.g*., *Vizcaino*, 290 F.3d at 1050 (3.65x

was "within the range of multipliers applied in common fund cases"); *Steiner,* 248 F. App'x at 783

(6.85x was "well within the range" of permissible multipliers);  *In re Nat'l Collegiate Athletic Ass'n

Athletic Grant-in-Aid Cap Antitrust Litig*., No. 14-md-2541-CW, 2017 WL 6040065, at *1 (N.D.

Cal. Dec. 6, 2017) (3.66x was reasonable); *Buckingham v. Bank of Am., N.A*., No. 15-cv-6344-RS,

ECF No. 103 at 9 (N.D. Cal. July 11, 2017) (5.31x was reasonable in case involving $6.6 million

settlement; "[s]imilar multipliers have been approved in this District"); *Gutierrez v. Wells Fargo

Bank, N.A*., No. 07-cv-05923-WHA, 2015 WL 2438274, at *7 (N.D. Cal. May 21, 2015) (approving

1  "multiplier of 5.5" based on results achieved, quality of work, and delayed payment); *In re Apple*

2  *iPhone/iPod Warranty Litig.*, 40 F. Supp. 3d 1176, 1181 (N.D. Cal. 2014) (Seeborg, J.)

3  ("[P]laintiffs are correct that the resulting [3.62x] multiplier necessary to reach a $15.9 [million]

4  award would not be out of bounds, given the success they achieved in this action and the other

5  relevant factors.").

6          Furthermore, consideration of the *Kerr* factors demonstrates that the requested fee is

7  warranted in this case.  Factors (1)-(3), (6), (8)-(9), and (12) support the requested fee for the same

8  reasons that 25% of the common fund is a reasonable fee.  *See supra* at 5, 7-11.

9          As to the fourth *Kerr* factor, prosecution of this case precluded Class Counsel from

10 accepting other fee-generating matters, with this litigation consuming significant percentages of

11 Class Counsel's attorney and staff time.  Sagafi Decl. ¶ 53.

12         The customary fee (factor five) also supports the requested fee.  Individual retainer

13 agreements commonly provide for a 33 1/3% fee, increasing to 40% when trial work is required.

14 The fee is consistent with applicable Ninth Circuit authority and with the fees awarded in similar

15 cases in this District.  *See supra* at 7.  Class Counsel's hourly rates are also reasonable.  The rates

16 are commensurate with those prevailing in the San Francisco market for attorneys with comparable

17 skill and experience litigating complex discrimination class and collective actions.  Sagafi Decl.

18 ¶¶ 51-52.

19         The amount of time spent for the results achieved (factor eight) strongly supports the

20 requested fee.  It is difficult to imagine a case of this complexity resolving in fewer than the 13

21 months required from start to finish here.  Class Counsel "achieved a timely result for class

22 members in need of immediate relief."  *Vizcaino*, 290 F.3d at 1050 n.5.

23         The undesirability of the case (factor ten) also supports the fee request.  The risks

24 summarized above – the arbitration agreements, the difficulty of comparing one employee to

25 another for statistical analysis purposes, the statute of limitations defense, and the summer 2017

26 reforms – demonstrate that achieving a positive result required navigating diverse hurdles.  Many

27

28

NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, COSTS & SERVICE AWARDS,
CASE NO. 17-CV-06255-YGR

other attorneys experienced in employment litigation might have refused to represent these Class Members.

Finally, the nature and length of Class Counsel's professional relationship with the named Plaintiffs (factor eleven) also weighs in favor of the fee request.  The named Plaintiffs selected Class Counsel to litigate these claims, and Class Counsel have maintained a close and productive relationship with them throughout the litigation.  Sagafi Decl. ¶ 30.

Based on each of the *Kerr* factors discussed above, the requested fee is eminently reasonable.

**B.     Class Counsel Are Entitled to Recover Their Out-of-Pocket Expenses, Which Are Reasonable and Have Benefitted the Class.**

Class Counsel seek reimbursement of actual litigation expenses up to $170,000.[9] "Attorneys who create a common fund for the benefit of a class are entitled to be reimbursed for their out-of-pocket expenses incurred in creating the fund so long as the submitted expenses are reasonable, necessary, and directly related to the prosecution of the action."  *In re Optical Disk Drive Prods., Antitrust Litig.*, No. 10-md-2143-RS, 2016 WL 7364803, at *10-11 (N.D. Cal. Dec. 19, 2016).

To date, Class Counsel have incurred $152,739 in litigation costs and expenses and will incur additional costs through the conclusion of this matter.  Sagafi Decl. ¶¶ 55-56 and Ex. 3. These costs include filing fees, payment to the mediator, payment to experts, telephone conference calls, mailing expenses, travel, and other reasonable litigation-related costs.  *Id*.  A significant portion of these costs ($116,045.05) are attributable to expert costs.  These costs are substantially less than those incurred in several other employment discrimination class actions.  *See, e.g.*, *Calibuso v. Bank of America Corp*., No. 10 Civ. 1413, ECF No. 202 (E.D.N.Y. Dec. 27, 2013) ($1,162,018); *Amochaev v. Citigroup Global Mkts., Inc*, No, 05-cv-1298-PJH, ECF No. 193 (N.D. Cal. Aug. 13, 2008) ($900,000); *Gonzalez v. Abercrombie & Fitch*, No. 03-cv-02817-SI, ECF No. 138 (N.D. Cal. April 14, 2015) ($540,000).  All of these costs were necessary in connection with

---

[9] Class Counsel will provide a precise figure in their reply brief.

NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, COSTS & SERVICE AWARDS,
CASE NO. 17-CV-06255-YGR

the prosecution of this litigation and were incurred for the benefit of the Class.  Sagafi Decl. ¶ 55.

To date, no Class Member has objected to the request for costs.  JND Decl. ¶ 16.  They are

reimbursable.  *See In re United Energy Corp. Solar Power Modules Tax Shelter Inv. Sec. Litig.*,

Nos. 87 Civ. 3962, 86 Civ. 3538, 1989 WL 73211, at *6 (C.D. Cal. Mar. 9, 1989).

**C.       The Settlement Administrator Expects Its Costs to Be Within the Original Estimate.**

Further, the Settlement allows reimbursement to the Settlement Administrator for the fees

and costs incurred in administration of the settlement, estimated to be $110,000.  Settlement

Agreement § 5.2.4.  The Settlement Administrator has encountered no significant surprises and

expects its fees and costs to be within the original $110,000 estimate.

**D.       The Class Representative Service Payments Are Reasonable.**

 "[N]amed plaintiffs . . . are eligible for reasonable incentive payments" as part of a class

action settlement.  *Staton*, 327 F.3d at 977.  Service or incentive payments are appropriate in a class

action because they provide an incentive to bring important cases that have a broad impact

benefiting a class of individuals, not just the plaintiff.  *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th

Cir. 1998).  These payments also recognize the plaintiffs' time, effort, and inconvenience, as well as

the risks they are exposed to in asserting their and others' rights in a particularly public manner.  In

the modern age, public filings by plaintiffs in social justice litigation are easily found by potential

employers, lenders, landlords, and others, allowing silent denials of employment, credit, housing, or

other opportunities.[10]  By bringing the litigation on behalf of others in addition to themselves, class

representatives in employment class actions provide a valuable service to their fellow workers at

their company and other companies.  More broadly, they promote the public policy goals set forth

by the legislatures that enacted the underlying substantive statutes at issue.

For these reasons, courts in this District and throughout the Ninth Circuit routinely approve

the award of service payments to class representatives for their assistance to the class.  *See, e.g.,*

*Vedachalam v. Tata Consultancy Servs., Ltd.*, No. 06-cv-0963-CW, 2013 WL 3929129, at *2 (N.D.

---

[10] As stated above, Google searches of each of the named Plaintiffs' full names reveals that they sued their employer.

1   Cal. July 18, 2013) ($35,000 and $25,000); *Trujillo v. City of Ontario*, No. 04 Civ. 1015, 2009 WL

2   2632723, at *5 (C.D. Cal. Aug. 24, 2009) ($30,000 to each of six class representatives); *Van*

3   *Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (Williams, J.) (service award

4   of $50,000 to named plaintiff).  In employment discrimination class actions, the awards tend to be

5   higher, because additional individual claims (e.g., retaliation, wrongful termination) are often

6   asserted by the class representatives but not by the class members.  *See, e.g.*, *Amochaev*, ECF No.

7   195 at 2 (service awards of $50,000 and $35,000 to class representatives); *Roberts v. Texaco, Inc.*,

8   979 F. Supp. 185, 203-4 (S.D.N.Y. 1997) ($85,000 and $50,000).[11]

9        When evaluating the reasonableness of a service award, courts may consider factors such as

10   "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class

11   has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in

12   pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation."  *Staton*, 327 F.3d at

13   977; *see also Van Vranken*, 901 F. Supp. at 299; *Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d

14   425, 435 (S.D.N.Y. 2007) ("A class representative . . . whose future employability has been

15   impaired may be worthy of receiving an additional payment, lest others be dissuaded.").

16        Here, the named Plaintiffs made important contributions to the prosecution and fair

17   resolution of this action on behalf of Class Members.  Ms. del Toro Lopez and Ms. Medina each

18   spent over 100 hours fulfilling their role as Class Representatives.  del Toro Lopez Decl. ¶ 10;

19   Medina Decl. ¶ 10.  Their work included carefully reviewing drafts of pleadings and other

20   documents, identifying potential witnesses, participating in interviews with Class Counsel and

21   providing feedback and insight on matters of case strategy, attending and participating in the

22   mediation, helping craft the programmatic relief, and reviewing the settlement agreement and

---

[11] There is significant additional support for the requested service awards of $30,000 and $50,000.
*See also In re Tricor Direct Purchaser Antitrust Litig.*, No. 05 Civ. 340, ECF No. 543 at 11 (D. Del.
April 23, 2009) ($50,000 each to three class representatives); *Wade v. Kroger Co.*, No. 01 Civ. 699,
2008 WL 4999171, at *13 (W.D. Ky. Nov. 20, 2008) ($30,000 each to multiple class
representatives); *Wright v. Stern*, 553 F. Supp. 2d 337, 342, 345 (S.D.N.Y. 2008) ($50,000 each to
11 class representatives ); *Hainey v. Parrott*, No. 02 Civ. 733, 2007 WL 3308027, at *6 (S.D. Ohio
Nov. 6, 2007) ($50,000 each to four class representatives); *In re Dun & Bradstreet Credit Servs.
Customer Litig.*, 130 F.R.D. 366, 374, 376-77 (S.D. Ohio 1990) ($35,000 to $55,000 each to five
class representatives).

NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, COSTS & SERVICE AWARDS,
CASE NO. 17-CV-06255-YGR

1   consulting with Class Counsel on the settlement terms.  *Id*.  Ms. del Toro Lopez also participated in

2   an EEOC interview, as well as an interview about the case for Spanish-language television station

3   Telemundo.  del Toro Lopez Decl. ¶ 10(g)-(h).  Ms. Medina interrupted her mental health treatment

4   and flew from Illinois to San Francisco to be present at the mediation, causing a substantial setback

5   in her recovery.  Medina Decl. ¶¶ 11-12.

6        Moreover, both named Plaintiffs undertook this litigation at considerable personal and

7   professional risk to themselves.  They were current employees of Uber at the time the litigation

8   commenced, and risked retaliation and increased scrutiny as a result of their participation.  del Toro

9   Lopez Decl. ¶ 12; Medina Decl. ¶ 14.  Ms. Medina remained at the company for several months

10   longer than she otherwise would have because she felt a responsibility to help make the company a

11   better place for women and people of color.  Medina Decl. ¶ 15.  Ms. del Toro Lopez left Uber in

12   part because the litigation strained her relationships with co-workers and led her to fear retaliation.

13   del Toro Lopez Decl. ¶ 12.  Both named Plaintiffs also risked that members of the public who

14   disagreed with their views that women and people of color deserve equal opportunity in the

15   workplace might threaten them.  This is no hypothetical.  In fact, an internet "troll" recently

16   threatened other female software engineers who filed discrimination cases against Uber and Google,

17   and reached out to Ms. Medina as well.[12]  *See* Sagafi Decl. ¶ 19; del Toro Lopez Decl. ¶ 13; Medina

18   Decl. ¶ 16-17.

19        Furthermore, both Ms. Medina and Ms. del Toro Lopez are signing general releases, which

20   are broader than those applicable to the other Class Members, in that the general releases preclude

21   claims for retaliation, disability discrimination, constructive discharge, and more.  The released

22   constructive discharge claims include the substantial value of stock options that the named

23   Plaintiffs forfeited upon leaving Uber.  del Toro Lopez Decl. ¶¶ 15-16; Medina Decl. ¶ 18.

24

---

25   [12] Ethan Baron, "Google lawsuit plaintiff gets restraining order against former Google contractor after "rape" tweet," *The Mercury News*, (Jan. 6, 2018 12:00pm)

26   https://www.mercurynews.com/2018/01/06/google-lawsuit-plaintiffgets-restraining-order-against-former-google-contractor-after-rape-tweet/ (last visited August 20, 2018); Ida Mojadad, "Alleged

27   Serial Harasser Outed on Twitter," *SF Weekly*, (Jan. 2, 2018 3:39pm)
http://www.sfweekly.com/news/alleged-serial-harasser-outed-on-twitter/ (last visited August 20,

28   2018).  Plaintiffs believe that there is no connection between the troll and Uber.

1   No Class Member has objected to the requested service awards.  JND Decl. ¶ 16.

2   **IV.   <u>CONCLUSION</u>**

3   For the foregoing reasons, Class Counsel respectfully request that the Court issue an order

4   approving: (1) $2,500,000 in attorneys' fees, (2) actual costs up to $170,000, (3) settlement

5   administration expenses, expected to be $110,000, and (4) service payments of $30,000 for Ana

6   Medina and $50,000 for Roxana del Toro Lopez.

7

8

9   Dated:  August 20, 2018                          Respectfully submitted,

10                                                   By: /s/ *Jahan C. Sagafi*

11                                                       Jahan C. Sagafi

12                                                   Jahan C. Sagafi (SB# 224887)
13                                                   Rachel W. Dempsey (SB# 310424)
                                                     Laura Iris Mattes (SB# 310594)
14                                                   OUTTEN & GOLDEN LLP
                                                     One California Street, 12th Floor
15                                                   San Francisco, CA 94111
                                                     Telephone: (415) 638-8800
16                                                   Facsimile: (415) 638-8810
                                                     E-mail: jsagafi@outtengolden.com
17                                                   E-mail: rdempsey@outtengolden.com
                                                     E-mail: imattes@outtengolden.com
18
                                                     Rachel M. Bien (SB# 315886)
19                                                   OUTTEN & GOLDEN LLP
                                                     601 S Figueroa St., Suite 4050
20                                                   Los Angeles, CA 90017
                                                     Telephone: (323) 673-9900
21                                                   Facsimile: (646) 509-2058
                                                     E-mail: atk@outtengolden.com
22                                                   E-mail: rmb@outtengolden.com

23                                                   Adam T. Klein (admitted *pro hac vice*)
                                                     OUTTEN & GOLDEN LLP
24                                                   685 Third Avenue, 25th Floor
                                                     New York, New York 10017
25                                                   Telephone: (212) 245-1000
                                                     Facsimile: (646) 509-2060
26                                                   E-mail: atk@outtengolden.com

27

28

NOTICE OF MOTION AND MOTION FOR
                                                     ATTORNEYS' FEES, COSTS & SERVICE AWARDS,
                                                     CASE NO. 17-CV-06255-YGR

1

*Attorneys for Plaintiffs and Settlement Class Members*

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28