Jahan C. Sagafi (SB# 224887)
Rachel W. Dempsey (SB# 310424)
Laura Iris Mattes (SB# 310594)
OUTTEN & GOLDEN LLP
One California Street, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
E-mail: jsagafi@outtengolden.com
E-mail: rdempsey@outtengolden.com
E-mail: imattes@outtengolden.com

Rachel M. Bien (SB# 315886)
OUTTEN & GOLDEN LLP
601 S Figueroa St., Suite 4050
Los Angeles, CA 90017
Telephone: (323) 673-9900
Facsimile: (646) 509-2058
E-mail: rmb@outtengolden.com

Adam T. Klein (admitted *pro hac vice*)
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060
E-mail: atk@outtengolden.com

*Counsel for Plaintiffs and Settlement Class Members*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| ROXANA DEL TORO LOPEZ and ANA MEDINA, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UBER TECHNOLOGIES, INC.,<br><br>Defendant. | Case Number: 17-cv-06255-YGR<br><br>[PROPOSED] ORDER GRANTING FINAL APPROVAL OF SETTLEMENT AND FINAL JUDGMENT<br><br>**\*as modified by the Court\*** |

On November 6, 2018, a hearing was held on the unopposed motion of Plaintiffs Roxana del Toro Lopez and Ana Medina ("Plaintiffs") for final approval of the class settlement (Dkt. No. 59); and on the separate motion of Plaintiffs and their counsel for awards of the Class Representative Service Payments and the Class Counsel Attorneys' Fees and Costs Payment (Dkt. No. 60). Jahan C. Sagafi and Iris Mattes appeared for Plaintiffs. Nancy Abell appeared for Defendant Uber Technologies, Inc. ("Uber").

The Parties have submitted their Stipulation of Class Settlement and Release (Dkt. No. 61-1 (the "Settlement")), attached hereto as Exhibit 1, which this Court preliminarily approved in its April 19, 2018 order (Dkt. No. 49 (the "Preliminary Approval Order")). In accordance with the Preliminary Approval Order, Class Members have been given notice of the terms of the Settlement and the opportunity to submit a claim form, comment on the settlement, and/or opt out of its provisions. In addition, pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA"), Uber has given the Attorney General of the United States and the appropriate state officials in the states in which the Class Members reside timely notice of the Settlement.

Having received and considered the Settlement, the supporting papers filed by the Parties, and the evidence and argument received by the Court at the final approval hearing on November 6, 2018, by means of this order (the "Final Approval Order") the Court GRANTS final approval of the Settlement, and HEREBY ORDERS and MAKES DETERMINATIONS as follows:

**Definitions**

1.      Except as otherwise specified herein, the Court for purposes of this Final Approval Order adopts all defined terms set forth in the Settlement.

**Jurisdiction**

2.      This Court has jurisdiction over the subject matter of this litigation and all related matters and all state and federal claims raised in this action and released in the Settlement, and personal jurisdiction over Uber and all Class Members (except for those who timely filed opt-out requests). Specifically, this Court has federal question jurisdiction over this action pursuant to

28 U.S.C. § 1331 and section 16(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).

3. This Court also has supplemental jurisdiction over all state-law claims asserted by Plaintiffs because the state-law claims derive from a common nucleus of operative fact and form part of the same case or controversy as those claims over which the Court has primary jurisdiction. *See* 28 U.S.C. § 1367 (providing for supplemental jurisdiction over related state-law claims that "form part of the same case or controversy"); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (holding that federal courts have supplemental jurisdiction over state law claims that arise from the same "common nucleus of operative fact" such that the parties "would ordinarily be expected to try them all in one judicial proceeding").

4. This Court also has jurisdiction to approve the Settlement's release of claims by Class Members over which the Court has jurisdiction, even if the Court would not independently have jurisdiction over those released claims. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 748 (9th Cir. 2006) ("[A] federal court may release not only claims alleged in the complaint, but also state claims arising from the same nucleus of operative facts over which the court would not have jurisdictional competence.") (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1287–88 (9th Cir. 1992)).

**Dissemination of Notice to Class Members**

5. Pursuant to the Preliminary Approval Order, the notice documents were sent to each Class Member by email and by first-class mail. The notice was clear and organized, following the model forms provided by the Federal Judicial Center at www.fjc.gov. The notice materials informed Class Members of the terms of the Settlement, how their settlement share of Fund A would be calculated, how to submit a Claim Form, the conditions of eligibility for a settlement share of Fund B, their right to comment on (including object to) the Settlement or opt out of the Settlement to pursue their claims individually, and their right to appear in person or by counsel at the final approval hearing and be heard regarding approval of the Settlement. Adequate periods of time were provided by each of these procedures.

6.     The Court finds and determines that this notice procedure afforded adequate protections to Class Members and provides the basis for the Court to make an informed decision regarding approval of the Settlement based on the responses of Class Members.  Notice was accomplished in the manner prescribed by the Settlement.  The Court finds and determines that the notice provided in this case was the best notice practicable, which satisfied the requirements of law and due process.

### Notice to Attorneys General Pursuant to CAFA

7.     Pursuant to CAFA, within ten days after the filing of the motion seeking preliminary approval of the Settlement, Uber served upon the Attorney General of the United States and the appropriate state officials of the states in which the Class Members reside a notice of the Settlement consisting of: a copy of the complaint in this action; a notice of the scheduled judicial hearing in this action; copies of the Settlement; and the proposed Notice.  The Notice of Settlement also invited comment on the Settlement.  This Final Approval Order is being entered at least 90 days after the later of the dates on which the appropriate federal and state officials were served with the notice of proposed settlement.

8.     The Court finds and determines that Uber's notice of Settlement was timely, adequate, and compliant with the statutory requirements of CAFA.  Accordingly, 28 U.S.C. §1715(e) has no application to the Settlement.

### Certification Under Fed. R. Civ. P. 23 and the FLSA

9.     For the reasons stated in the Preliminary Approval Order, this Court finds and determines that the proposed Settlement Class, as defined in Section 1 of the Settlement and in Section II.A of its Preliminary Approval Order, meets all of the legal requirements for class certification under Federal Rule of Civil Procedure 23 ("Rule 23") (a) and (b)(3), and it is hereby ordered that the Settlement Class is finally approved and certified as a Class for purposes of settlement of this action.

10.     This Court finds and determines that the action meets all of the legal requirements for certification as a collective action under section 16(b) of the FLSA, 29 U.S.C. § 216(b), for

the three-year period preceding the filing of Plaintiffs' complaint, and it is hereby ordered that the action is certified as a collective action for purposes of settlement of this action.

**Fairness**

11.     Pursuant to Rule 23(e), the Court further finds and determines that the terms of the Settlement are fair, reasonable, and adequate to the Class and to each Class Member and that the Class Members who have not opted out will be bound by the Settlement, that the Settlement is ordered finally approved, and that all terms and provisions of the Settlement should be and hereby are ordered to be consummated.  The Court specifically finds that the Settlement is rationally related to the strength of Plaintiffs' claims given the risk, expense, complexity, and duration of further litigation.  This Court also finds that the Settlement is the result of arms'-length negotiations between experienced counsel representing the interests of the Class Members and Uber, under the supervision of an experienced and independent third-party mediator, after thorough factual and legal investigation.  *Staton v. Boeing Co.*, 327 F.3d 938, 960 (9th Cir. 2003); *Class Plaintiffs*, 955 F.2d at 1291.

12.     The Court finds and determines that the payments to be made to the Class Members as provided for in the Settlement, Section 5, are fair and reasonable.  The proposed plan of allocation bases each Class Member's recovery on (a) the number of weeks during the Covered Period the Class Member worked, (b) the Class Member's position, (c) whether the Class Member worked in California, (d) when the Class Member was employed with Uber, (e) whether the Class Member worked full-time or part-time, (f) whether the Class Member previously signed a release of claims, and (g) whether the Class Member submitted a Claim Form and the contents of the Claim Form.  The plan of allocation is rational.  The Court hereby gives final approval to the payments and orders those amounts be paid to the claimants out of the Net Fund value in accordance with the terms of the Settlement.

**Class Member Response**

13.     The Court further finds that the response of the Class Members to the Settlement supports settlement approval.  Of the 485 Class Members, only two opted out of the Settlement.

No Class Members objected to the Settlement.

**Appointment of Class Representatives and Class Representative Service Awards**

14.     The Court confirms as final the appointment of Roxana del Toro Lopez and Ana Medina as Class Representatives of the Rule 23 Class and the nationwide FLSA Class under section 16(b).  The Court finds and determines that the award of $50,000 to Ms. del Toro Lopez and $30,000 to Ms. Medina for their services as Class Representatives, in addition to their Individual Settlement Payments, is fair and reasonable.

15.     Plaintiffs have satisfied the criteria as set forth in *Staton*, 327 F.3d 938.  Under *Staton*, service awards should be evaluated using "relevant factors, includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation." *Id.* at 977 (internal quotation marks omitted) (alterations in original).  Here, the Class Representatives' initiation of this suit caused them personal exposure and potential adverse consequences with future employers.

16.     Ms. del Toro Lopez and Ms. Medina were substantially involved throughout the litigation, educating Class Counsel regarding Class Members' job duties and Uber's policies and procedures.  The Court hereby approves the Class Representative Service Awards as set forth herein, to be made to Class Representatives out of the Qualified Settlement Fund in accordance with the terms of the Settlement.

**Appointment of Class Counsel; Attorneys' Fees and Costs**

17.     The Court hereby finds that the requested payment of $2,500,000 in attorneys' fees and $152,958 in litigation costs and expenses, for a total payment of $2,652,958 to Class Counsel, is fair and reasonable and orders that payment be made to Class Counsel out of the Gross Fund Value in accordance with the terms of the Settlement.  *See*, *e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002); *In re Wash. Pub. Power Supply Sec. Litig.*, 19 F.3d 1291, 1297 (9th Cir. 1994).  First, in granting the award, the Court recognizes that the fee is 25% of the total fund, which is consistent with the Ninth Circuit's 25% "benchmark" for class

action settlements, *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011), and the norm in this district in cases involving comparable common funds. *See e.g. Hopwood v. Nuance Commc'ns, Inc.*, No. 4:13-cv-02132-YGR, 2015 WL 12941896, at *2 (N.D. Cal. Oct. 28, 2015) (finding 25% of common fund of $6,500,000 to be fair and reasonable); *Pimental v. Google Inc.*, No. 11-cv-02585-YGR, 2013 WL 12177158, at *3 (N.D. Cal. June 26, 2013) (finding 25% of common fund of $6,000,000 to be fair and reasonable). Second, while it is difficult to monetize the value of the injunctive relief, "[t]he fact that [class] counsel obtained injunctive relief in addition to monetary relief for their clients is . . . a relevant circumstance to consider in determining what percentage of the fund is reasonable as fees." *Staton*, 327 F.3d at 946. Third, the Settlement contemplates that during the injunctive period, Class Counsel will continue to engage for three years without payment to monitor the programmatic relief that Uber has undertaken. These efforts are to be completed in addition to the hours noted.

Fourth, under a lodestar cross-check, the lodestar multiplier of 2.9x supports the fee award. *See id.* at 968. Class Counsel attest to performing substantial work on behalf of the Class Members, totaling $856,314 in lodestar. Except as set forth below, the Court finds the hours worked by Class Counsel to have been reasonably incurred for the benefit of the Class Members. Class Counsel's hourly rates, ranging from $250 to $850 for attorneys, are reasonable in light of the market for legal services of this type and quality. In addition, Class Counsel attested at the final approval hearing that the matter was leanly staffed, with the bulk of the work performed by two associates and one partner. Moreover, the Court finds the fact that only one law firm was involved in representing the Class Members mitigates against the risk of duplicative work. The Court hereby confirms as final the appointment of Adam T. Klein, Jahan C. Sagafi, Rachel Bien, Rachel Williams Dempsey, and Iris Mattes of Outten & Golden LLP as Class Counsel for the Rule 23 and FLSA Classes. Class Counsel has capably and effectively represented the Class Members' interests.

Notwithstanding the foregoing, and as stated on the record at the final approval hearing, the Court finds that certain factors have contributed to an inflated lodestar figure. For example,

Class Counsel charged excessively high hourly rates for work performed by its contract and staff attorneys, ranging from $280 to $425, in contrast to the $25 to $75 that these individuals are actually paid, excluding benefits. Moreover, having reviewed the billing timesheets submitted to the Court at the final approval hearing, the Court finds Class Counsel's charges for administrative tasks at attorney and paralegal rates, as opposed to nonchargeable administrative overhead, to be inappropriate. Such charges include, *inter alia*, booking travel to the mediation, processing reimbursement requests for mediation-related travel, transcribing voicemails, and formatting motions. In addition, while there may have been internal reasons for having four attorneys attend the mediation, charging the Class Members for the attendance of all four attorneys is not appropriate. The Court also finds that Class Counsel should not be compensated for time spent on media-related activity, especially since there is no indication in the billing timesheets or elsewhere that any such activity was "directly and intimately related to the successful representation of [the Class Members]" or "contribute[d], directly and substantially, to the attainment of [the] litigation goals." *L.H. v. Schwarzenegger*, 645 F. Supp. 2d 888, 900 (E.D. Cal. 2009) (internal quotation marks omitted).

In light of the above, the Court would typically reduce the award accordingly, and Class Counsel are so admonished. However, the Court finds that the amount of any reduction is offset by the work Class Counsel will be performing over the next three years without payment to monitor the programmatic relief that Uber has undertaken. Accordingly, the Court approves the requested award.

### Settlement Administrator Report

18. Upon completion of administration of the Settlement, the Settlement Administrator, JND Legal Administration, will provide written certification of such completion to the Court and counsel for the Parties.

### Compliance Hearing re: Post-Distribution Accounting

19. The Court hereby SETS a compliance hearing for **Friday, January 18, 2019** on the Court's **9:01 a.m.** calendar in the Federal Building, 1301 Clay Street, Oakland, California in

Courtroom 1. No later than five (5) business days prior to the date of the hearing, the parties shall file a Post-Distribution Accounting in compliance with this District's Procedural Guidance for Class Action Settlements, *see*

*https://www.cand.uscourts.gov/ClassActionSettlementGuidance*.

If compliance is complete, the parties need not appear, and the compliance hearing will be taken off calendar.

**Release**

20.     By operation of the entry of this Final Approval Order and pursuant to the Settlement, all Qualified Claimants are permanently barred from prosecuting against Uber any Claim as set forth in Section 12 of the Settlement. The Court has reviewed the release in Section 12 of the Settlement and finds it to be fair, reasonable, and enforceable under Rule 23, the FLSA, and all other applicable law.

**Contingency on Finality**

21.     If, for any reason, the Settlement ultimately does not become Final (as defined in the Settlement, Section 1.10), this Final Approval Order will be vacated; the Parties will return to their respective positions in this action as those positions existed immediately before the parties executed the Settlement; and nothing stated in the Settlement or any other papers filed with this Court in connection with the Settlement will be deemed an admission of any kind by any of the Parties or used as evidence against, or over the objection of, any of the Parties for any purpose in this action or in any other action.

**Final Judgment and Dismissal**

22.     By means of this Final Approval Order, this Court hereby enters final judgment in this action, as defined in Federal Rule of Civil Procedure 58(a)(1).

23.     Without affecting the finality of the Court's judgment in any way, the Court retains jurisdiction over this matter, for a period of three (3) years, for purposes of resolving issues relating to interpretation, administration, implementation, effectuation, and enforcement of the Settlement. Nothing in this Final Approval Order will preclude any action to enforce the

Parties' obligations under the Settlement or under this order, including the requirement that Uber

make the settlement payments in accordance with the terms of the Settlement.

24.     The Parties are hereby ordered to comply with the terms of the Settlement.

25.     This action is dismissed with prejudice, each side to bear its own costs and

attorneys' fees except as provided by the Settlement and the Court's orders.

Dated: November 14, 2018

The Honorable Yvonne Gonzalez Rogers
United States District Judge

EXHIBIT 1

DocuSign Envelope ID: 6BD21872-946E-4B6E-AA39-5C9D81901748

1  Jahan C. Sagafi (SB# 224887)
2  Rachel W. Dempsey (SB# 310424)
   Laura Iris Mattes (SB# 310594)
3  OUTTEN & GOLDEN LLP
   One Embarcadero Center
4  Thirty-Eighth Floor
5  San Francisco, California  94111
   Telephone:  (415) 638-8800
6  Facsimile:  (415) 638-8810
7  jsagafi@outtengolden.com
   rdempsey@outtengolden.com
8  imattes@outtengolden.com
9  Adam T. Klein (admitted *pro hac vice*)
   Rachel M. Bien (SB# 315886))
10 OUTTEN & GOLDEN LLP
11 685 Third Avenue
   Twenty-Fifth Floor
12 New York, New York  10017
   Telephone:  (212) 245-1000
13 Facsimile:  (646) 509-2060
14 atk@outtengolden.com
   rmb@outtengolden.com
15
16 *Attorneys for Plaintiffs and Proposed Class and*
   *Collective Members*
17

Nancy L. Abell (SB# 088785)
PAUL HASTINGS LLP
515 South Flower Street
Twenty-Fifth Floor
Los Angeles, California  90071-2228
Telephone:  (213) 683-6000
Facsimile:  (213) 627-0705
nancyabell@paulhastings.com


Paul W. Cane, Jr. (SB# 100458)
Jullie Z. Lal (SB# 279067)
PAUL HASTINGS LLP
101 California Street
Forty-Eighth Floor
San Francisco, California  94111
Telephone:  (415) 856-7000
Facsimile:  (415) 856-7100
paulcane@paulhastings.com
jullielal@paulhastings.com

*Attorneys for Defendant*
*UBER TECHNOLOGIES, INC.*

18                  UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF CALIFORNIA
19                        OAKLAND DIVISION

| | |
|---|---|
| 20  ROXANA DEL TORO LOPEZ and ANA MEDINA, on behalf of themselves, and all others similarly situated, | Case No. 4:17-cv-06255-YGR |
| 22                    Plaintiffs, | **FIRST AMENDED COLLECTIVE, CLASS ACTION AND PAGA REPRESENTATIVE ACTION SETTLEMENT AGREEMENT** |
| 23       vs. | |
| 24  UBER TECHNOLOGIES, INC., | |
| 25                    Defendant. | Room:    1, 4th Floor |
| 26 | Judge:    Hon. Yvonne Gonzalez Rogers |
| 27 | Trial Date:           None Set |
| | Date Action Filed:  October 27, 2017 |

28

Subject to approval by the United States District Court for the Northern District of California, this Collective, Class Action and PAGA Representative Action Settlement Agreement sets forth the full and final terms by which Defendant Uber Technologies, Inc. ("Uber") and the Named Plaintiffs and Class Representatives, Roxana del Toro Lopez and Ana Medina, on behalf of themselves, the State of California, and the Rule 23 Class and the Collective Action Plaintiffs as defined below, have settled and resolved all claims that have been raised in the Litigation.

## **RECITALS**

WHEREAS, an amended collective, class and representative action Complaint ("Complaint") was filed on March 22, 2018, alleging (i) gender, race and national origin discrimination in compensation, raises, job assignments, job code placement, evaluations and ratings, promotions, demotions and other terms and conditions of employment; (ii) unequal pay; (iii) failure to timely pay all wages due; (iv) unfair competition; and (v) gender, race and national origin harassment;

WHEREAS, Uber, under new executive-level leadership, implemented many new diversity and inclusion initiatives in 2017, implemented a new pay structure, made compensation adjustments, and implemented other new employment practices that are consistent with the objectives of this Agreement;

WHEREAS, Uber denies and continues to deny all of the allegations made and has denied and continues to deny that it is liable or owes damages to anyone with respect to the alleged facts or causes of action asserted. Nonetheless, without admitting or conceding any liability or damages, the Parties have agreed to settle the lawsuit on the terms and conditions set forth herein to avoid the burden and expense of continuing litigation;

WHEREAS, the Parties engaged in a substantial pre-litigation and post-litigation exchange of documents, data and analyses, had joint meetings with experts, and had a series of meetings to explore their respective factual positions and arguments;

WHEREAS, the Parties engaged in settlement negotiations in January 2018 before David Rotman, Esq., of Rotman Mediation Services, an experienced mediator who is skilled in the resolution of complex class actions, including discrimination and fair pay class and collection action lawsuits;

WHEREAS, the Parties and their counsel recognize that, in the absence of an approved settlement, they would face a long litigation course, including extensive, costly and time consuming discovery, a motion for class certification under Federal Rule of Civil Procedure 23, a motion for certification and if certified, decertification, of the collective action, motions for summary judgment, and trial and appellate proceedings that would consume time and resources and present each of them with ongoing litigation risks and uncertainties;

WHEREAS, the Parties wish to avoid these risks and uncertainties, as well as the consumption of time and resources, through settlement pursuant to the terms and conditions set forth herein;

WHEREAS, based upon their analysis and evaluation of a number of factors, and recognizing the substantial risks of continued litigation, including the possibility that the litigation, if not settled now, might result in no recovery or a recovery that is less favorable to the Plaintiffs, counsel for Plaintiffs is satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of Plaintiffs, Rule 23 Class Members, and the Collective Action Plaintiffs;

WHEREAS, the class representatives believe that the settlement set forth herein serves the best interests of Class Members based on all the facts and circumstances, including the risk of significant delay and the uncertainty of class certification, as it provides prompt relief for class Members;

WHEREAS, it is the desire of the Parties to fully, finally, and forever settle, compromise, and discharge all disputes and claims arising from or related to the litigation which exist between them and between the named Plaintiffs, the Rule 23 Class Members, the Collective Action Plaintiffs, and the released parties;

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth herein, as well as the good and valuable consideration provided for herein, the Parties agree to a full and complete settlement of the litigation on the following terms and conditions:

## 1. DEFINITIONS

The following terms shall have the meanings defined in this Section, wherever used in this Agreement, and in all of its exhibits:

1.1 **Agreement.** "Agreement" means this settlement agreement and all exhibits attached to it.

1.2 **CAFA Notice.** "CAFA Notice" means the notice required pursuant to 28 U.S.C. § 1715(b).

1.3 **California Class.** "California Class" means all women (of any race or national origin) and all Latino/Latina/Hispanic, African American/Black, Native American, Alaskan Native, and/or multiracial individuals (who are in part one of the foregoing races) who are or were employed in a Covered Position in the State of California by Uber Technologies, Inc., at any time from July 31, 2013 through the date of the Order Granting Preliminary Approval.

1.4 **Class Counsel.** "Class Counsel" means the law firm of Outten & Golden LLP.

1.5 **Collective Action Plaintiffs.** "Collective Action Plaintiffs" means all women who are or were employed in a Covered Position in any of the 50 United States by Uber Technologies, Inc., at any time from July 31, 2014 through the date of the Order Granting Preliminary Approval who do not opt out of the monetary relief provisions of the Settlement and who affirmatively cash a settlement check that bears the legend: "I have received and read the Class Notice in *del Toro Lopez, et al. v. Uber Technologies, Inc.* By negotiating this check and accepting payment, I (i) consent to join in this lawsuit and the Equal Pay Act collective action, (ii) elect to participate in the Settlement, and (iii) agree that I have waived and released the Released Parties from all Released Claims as defined in the Settlement Agreement and in the Notice in this lawsuit. This Release shall become effective on the Effective Date."

1.6 **Court.** "Court" means the Court having jurisdiction over this Litigation, at any stage (presently the United States District Court for the Northern District of California).

1.7 **Covered Position.** A "Covered Position" means Software Engineer I (10397), Software Engineer II (10407), Senior Software Engineer (10415), Senior Software Engineer II (20132) and Staff Software Engineer (10426) or their predecessor job codes. "Covered Position" does not include individuals currently or formerly employed as interns, temporary workers, independent contractors or contract workers by Uber or by any contractor of Uber.

1.8 **Defendant or Uber.** "Defendant" or "Uber" means Uber Technologies, Inc.

1.9 **Defendant's Counsel.** "Defendant's Counsel" means the law firm of Paul Hastings LLP.

1.10 **Effective Date.** "Effective Date" means the date on which the Court has entered the Order Granting Final Approval, provided that no timely objection has been made or that all timely objections have been resolved or withdrawn, thus triggering the appeal waiver in Section 10.4.7. If an objection to the Settlement is timely filed and has not been resolved or withdrawn by the date on which the Court has entered the Order Granting Final Approval, the Effective Date shall be the date on which the deadline for taking an appeal has passed, or, if there is an appeal of the Court's Order Granting Final Approval, the day after all appeals are fully and finally resolved in favor of final approval of the Agreement.

1.11 **EPA.** "EPA" means the Equal Pay Act of 1963, as amended, 29 U.S.C. 206(d).

1.12 **Fairness Hearing.** "Fairness Hearing" means the hearing during which the Court shall finally approve the Agreement and make such other rulings as are contemplated by this Agreement or as modified by any subsequent mutual agreement of the Parties in writing and approved by the Court.

1.13 **Fund B Calculation Notice.** "Fund B Calculation Notice" means the individualized notice sent by the Settlement Administrator to each Class Member who timely submits a Claim Form, informing them of (a) the dollar value of their shares of the Fund A and Fund B and (b) the deadline by which they can opt out or object to the Settlement.

1.14 **Gross Fund.** The "Gross Fund" means the common settlement fund account in the sum of Ten Million Dollars ($10,000,000) that is established by the Settlement Administrator and shall be used to pay all settlement payments to the Rule 23 Class and the Collective Action Plaintiffs; all Service Award(s); the LWDA Payment; Class Counsel's attorneys' fees (including fees for monitoring the settlement), costs, and expenses; and the fees and expenses of the settlement administrator. It shall not be used to pay the employer's share of payroll taxes, which shall be paid by Uber separate and apart from (*i.e.*, in addition to) the Gross Fund. There shall be no reversion of any monies from the Gross Fund to Uber. Uber shall not be responsible for any additional payment not expressly set forth in this Agreement.

1.15 **Litigation.** "Litigation" means the First Amended Complaint filed in the United States District Court for the Northern District of California Case No. 4:17-cv-06255-YGR, on behalf of Named Plaintiffs, and the allegations and claims made therein.

1.16 **Named Plaintiffs and Class Representatives.** "Named Plaintiffs" and "Class Representatives" means Roxana del Toro Lopez and Ana Medina.

1.17 **Nationwide Class.** "Nationwide Class" means all women (of any race or national origin) and all Latino/Latina/Hispanic, African American/Black, Native American, Alaskan Native, and/or multiracial individuals (who are in part one of the foregoing races) who are or were employed in a Covered Position by Uber Technologies, Inc., in the United States at any time from July 31, 2013 through the date of the Order Granting Preliminary Approval.

1.18 **Net Fund.** The "Net Fund" is defined as the Gross Fund minus court-approved Class Counsel's attorneys' fees (including fees for monitoring the settlement), costs, and expenses (*see* Sections 5.2.5 – 5.2.6); class representative Service Awards (*see* Section 5.2.3); the fees and expenses of the Settlement Administrator (*see* Section 5.2.4); and the PAGA Payments (*see* Sections 5.2.1 – 5.2.2). The Net Fund shall be divided into Fund A and Fund B.

    1.18.1 Fund A shall be distributed to Class Members without the need for the submission of a Claim Form, based on the plan of allocation set forth in Section 5.4.

1.18.2 Fund B shall be distributed to Class Members who timely file Claim Forms, pursuant to, and are deemed by the Settlement Administrator to be eligible for an award under, Section 5.5. Any remainder not claimed and awarded from Fund B shall be redistributed to Fund A. No amount shall revert to Uber.

1.19 **Notice.** "Notice" means the Notice of Collective, Class Action and PAGA Representative Action Settlement, substantially in the form attached hereto as Exhibit A, and as approved by the Court.

1.20 **Order Granting Final Approval.** "Order Granting Final Approval" means the final order entered by the Court after the Fairness Hearing.

1.21 **Order Granting Preliminary Approval.** "Order Granting Preliminary Approval" means the Order entered by the Court preliminarily approving, *inter alia*, the terms and conditions of this Agreement, the manner and timing of providing Notice, and the time period for, and the manner of, opt-outs and objections.

1.22 **PAGA.** The California Private Attorneys General Act ("PAGA"), Cal. Lab. Code §§2698-2699.

1.23 **PAGA Penalty.** "PAGA Penalty" refers to the Fifty Thousand Dollar ($50,000) civil penalty, allocated and distributed as provided by Sections 5.2.1 and 5.2.2.

1.24 **Parties.** "Parties" means the Plaintiffs and Defendant Uber Technologies, Inc.

1.25 **Plaintiffs.** "Plaintiffs" means, collectively, "Named Plaintiffs," "Rule 23 Class Members," and "Collective Action Plaintiffs."

1.26 **Qualified Settlement Fund.** The Gross Fund shall be paid to a "Qualified Settlement Fund" established by the Settlement Administrator within ten (10) calendar days of the date on which the Court grants final approval of the settlement.

1.27 **Released Parties.** "Released Parties" means Uber Technologies, Inc. and all of its incumbent and former officers, directors, owners, members, managers, shareholders, investors, agents, insurers, attorneys, employees, fiduciaries, assigns, and representatives, in their individual and/or representative capacities.

1.28 **Rule 23 Class.** "Rule 23 Class" means, collectively, the "Nationwide Class" and the "California Class."

1.29 **Rule 23 Class Members.** "Rule 23 Class Member" or "Class Member" means all individuals in the Rule 23 Class, as approved by the Court, who did not opt out of the monetary relief provisions of the Settlement.

1.30 **Service Award(s).** "Service Award" means the additional amounts paid to the Named Plaintiffs listed in Section 7.1, subject to Court approval, for their service in this Litigation.

1.31 **Settlement Administrator.** The "Settlement Administrator" means the entity selected by Class Counsel subject to Uber's approval. JND Legal Administration has been selected as the Settlement Administrator.

## 2. GENERAL TERMS

2.1 It is the desire of the Parties to fully, finally, and forever settle, compromise, and discharge all disputes and claims arising from or related to the Litigation which exist between them, and between the Released Parties and the Rule 23 Class Action, Collective Action and PAGA Representative Plaintiffs.

2.2 It is the intention of the Parties that this Agreement shall constitute a full and complete settlement and release of all Released Claims against all Released Parties and a dismissal of all pending actions covered by the Released Claims.

2.3 Uber denies all claims as to liability, wrongdoing, damages, penalties, interest, fees, injunctive relief and all other forms of relief, as well as the class and collective allegations asserted in the Litigation. Uber has agreed to resolve the Litigation via this Agreement, but to the extent this Agreement is deemed void or the Effective Date does not occur, Uber does not waive, but rather expressly reserves, all rights to challenge any and all claims and allegations asserted by the Class Representatives in the Litigation upon all procedural and substantive grounds, including without limitation the ability to challenge class or collective action treatment on any grounds and to assert any and all other potential defenses or privileges. The Class Representatives and Class Counsel agree that Uber retains and reserves these rights, and they agree not to take a position to the contrary. Specifically, and the Class Representatives and Class Counsel agree that, if the Litigation were to proceed, they shall not argue or present any argument that Uber should be barred from contesting class action certification pursuant to Federal Rule of Civil Procedure 23 on any grounds relating to this Agreement, pursuing decertification of the conditionally certified Equal Pay Act collective action, or asserting any and all other potential defenses and privileges. The Class Representatives and Class Counsel hereby waive any such argument, including any argument based on this settlement or this Agreement or any exhibit and attachment hereto, or any act performed or document executed pursuant to or in furtherance of this settlement or this Agreement. This Agreement shall not be deemed an admission by, or a basis for estoppel against, Uber that class action treatment pursuant to Federal Rule of Civil Procedure 23 or conditional certification of the Equal Pay Act collective action pursuant to 29 U.S.C. §216(b) is proper or cannot be contested on any grounds. Additionally, neither the Agreement nor the settlement, nor any act performed or document executed

pursuant to, or in furtherance of, the Agreement or the settlement: (a) is or may be deemed to be or may be used as an admission or evidence of the validity of any Released Claim, or of any wrongdoing or liability of the Released Parties, or any of them; or (b) is or may be deemed to be or may be used as an admission or evidence of any fault or omission of the Released Parties, or any of them, in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal.

2.4    Class Members shall release the class claims pled in the First Amended Complaint in *del Toro Lopez v. Uber*, a copy of which is appended as Exhibit E.  The release shall not cover claims for disability discrimination, retaliation or wrongful termination.

2.5    Neither this Agreement nor anything in it, nor any part of the negotiations that occurred in connection with the creation of this Settlement, shall constitute evidence with respect to any issue or dispute in any lawsuit, legal proceeding, or administrative proceeding, except for legal proceedings concerning the enforcement or interpretation of this Agreement.

2.6    The Parties agree to cooperate fully with each other, and shall aim to effectuate and implement all terms and conditions of this Agreement and to obtain the Court's approval of this Agreement and all of its terms.  Each of the Parties, upon the request of any other, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

## 3.    BUSINESS PRACTICES PROGRAMMATIC RELIEF AND REPORTING

Uber shall implement the business practices described in subsections 3.1 through 3.7 of this Section for its operations in the 50 United States and the District of Columbia.

3.1    **Duration of Changes in Business Practices.**  The actions in this Section shall be implemented with respect to the Covered Positions, commencing immediately upon the Effective Date, and shall remain binding on the Parties and their agents and successors for a three- (3-) year period following the Effective Date, unless a different timeframe is provided for a particular component of the changes in business practices described herein.

3.2    **Diversity Objectives and Reporting.**

    3.2.1    Uber shall continue to monitor progress toward its diversity objectives (including but not limited to diversity objectives set forth in the recommendations prepared by Eric H. Holder, Jr., Partner, Covington & Burling LLP, which can be viewed at https://drive.google.com/file/d/0B1s08BdVqCgrUVM4UHBpTGROLXM/v

iew and which shall be posted publicly on the Settlement Administrator's website for this settlement) and shall report progress at least quarterly to its executive leadership team and members of its Board of Directors. Highlights shall be shared with Uber employees quarterly by the Chief People Officer.

3.2.2 Uber shall continue to publicize its diversity representation to its work force at least twice annually.

3.2.3 Every member of Uber's executive leadership team shall participate in a semi-annual business review with Uber's CEO, which includes the organization's diversity representation, pipeline, diversity growth progress, and actions taken to increase the representation of women and under-represented minority groups.

3.2.4 Uber shall require all new hires and current employees to complete diversity and inclusion training.

3.3 **Independent Consultant to Work with Uber on Validated Classification and Selection Practices for Class Positions.**

3.3.1 Uber shall retain APT Metrics or a similar expert who specializes in industrial organizational psychology (the "Independent Consultant") to consult with Uber in reviewing and modifying, if appropriate, the following for the Engineer I and II, Senior Engineer I and II, and Staff Engineer positions. The Independent Consultant shall work directly with the Engineering and People representatives who have been designated by Uber and are responsible for this work internally:

(1) Minimum standards for applicants for each job code;

(2) Preferred qualifications for applicants for each job code (recognizing that additional preferred qualifications may be added for specific openings);

(3) Core selection inquiries and documentation forms;

(4) Leveling guides and guidance for leveling new hires in the proper job code;

(5) A process and standards for setting a new hire's starting compensation within the job code's pay range established by Uber after its consideration of market surveys and market supply and demand;

DocuSign Envelope ID: 6BD21872-946E-4B6E-AA39-5C9D81901748

(6) A new-hire compensation offer work-up form to document new hire compensation decisions;

(7) Performance/contribution assessment standards/criteria, including the inclusion of an EEO compliance measurement in the performance/contribution assessment for managers of people and members of the Human Resources organization; and

(8) A validated promotion assessment process.

### 3.4 Evaluations, Promotions, and Compensation Rewards for Class Positions.

3.4.1 At the beginning of a PERF cycle, Uber shall notify employees of the PERF steps, timeline, performance/contribution assessment standards/criteria, and deliverables each employee is entitled to receive.

3.4.2 Uber shall use PERF assessment forms and instructions that have been created with input by the Independent Consultant.

3.4.3 Employees shall have an opportunity to submit written input in an online tool on their performance and qualifications, by a specified date in each PERF cycle. An employee's submission of this information is not a prerequisite for rewards or promotion.

3.4.4 Uber's Human Resources team shall organize calibration groups that facilitate comparison of individuals who are performing similar work in the same Vice President organization (or a combination of such organizations if Uber deems it appropriate).

3.4.5 Uber shall make its best efforts to have each calibration group led by an individual who has received training on leading calibration groups. The leader shall read or have sub-group leaders read the timely submissions of every employee in the calibration group. The training, which may be online, shall include the leader's role in ensuring a review of every employee's performance/contributions and competencies, in looking for bias and discrimination in the review process, and in ensuring that responsibility (favorable and unfavorable) is properly attributed. If Uber uses a separate promotion assessment process, the process leaders shall receive analogous training.

3.4.6 Managers who participate in the calibration, PERF and promotion assessment processes must first complete training on the job-related PERF practices, preparation required by them, and implicit bias, which can be online or in person, before participating in the calibration or other assessment process.

-10- FIRST AM. COLLECTIVE, CLASS ACTION AND PAGA SETTLEMENT AGREEMENT

3.4.7 Uber shall require managers to complete specified preparation on each employee they manage before participating in a calibration or assessment meeting, including a review of timely employee submissions about their own performance as provided in Section 3.4.3, and to conduct any follow-up prescribed by the calibration team leader before finalizing the employee's written performance/contribution and promotion assessment.

3.4.8 Uber shall consider significant leadership contributions to its employee resource groups and diversity and inclusion programs in awarding annual cash bonuses.

3.4.9 Uber shall monitor the base salary, all bonuses and promotions for adverse impact based upon race/Hispanic status (for any group that comprises at least 2% of the work force) and gender at the conclusion of each PERF cycle. Any promotions that were made off cycle shall be included in the analysis for the subsequent cycle.

3.5 **Flexible Work Arrangements, Maternity and Parental Leave, and Other Policies.**

3.5.1 Uber shall maintain and make available to all employees written policies on maternity, paternity, and parental leave; accommodation for breastfeeding and the location of lactation rooms; flexible work hours; and the procedure for requesting a reduced schedule with reduced pay.

3.5.2 Uber shall appoint a Flexible Work Liaison in Human Resources to receive and work with employees and their managers on requests for flexible work schedules, reduced hours for reduced pay, and maternity/parental leaves.

3.5.3 The employee's manager shall make the ultimate decision whether to approve a flexible work schedule or reduced hours for reduced pay as well as the duration of the schedule based on agreed criteria (with the caveat that employees on flexible work schedules or reduced hours must be available as needed to fulfill business requirements that arise), and shall document and communicate to the employee and the Flexible Work Liaison the decision reached and reasons for denying a request, if the request is not granted.

3.6 **Access to Management and Executive Leadership.**

3.6.1 Uber shall offer a mentor to every Class Member. All mentors shall be trained on their roles, Uber's expectations and techniques for success. Uber shall invite feedback from mentees on the engagement and effectiveness of their mentors and shall use that feedback to guide further training, mentor feedback and mentee assignments.

3.6.2 All executive leadership team members shall meet at least annually with the following employee resource groups: LadyEng, LosUbers, and UberHue (or their successors).

3.7 **Support to Address Skill Gaps.** All Software Engineer I new hires shall receive a check-in approximately three months after their date of hire. At that time, Uber shall outline in writing any technical and non-technical skill or competency gaps detected as of that date, the resources Uber shall make available to address them, the steps the employee should take to address them (including self-study), and a date for a follow-up assessment of progress.

3.8 **Structure Changes.** If Uber changes the Covered Positions (*e.g.*, consolidates or divides them into different job codes), the provisions of Section 3 shall apply to the successor job codes during the term of this Agreement.

3.9 **Monitoring and Reporting.** Uber shall provide written reports to Class Counsel setting forth its progress in implementing its commitments under Section 3 of this Agreement ("Compliance Reports") and shall meet with Class Counsel to discuss such progress in accordance with the following schedule following the Effective Date:

3.9.1 For the first two years following the Effective Date, such reporting and meetings shall occur twice yearly, as close as feasible to the 6-month anniversaries of the Effective Date.

3.9.2 At the end of the third, final year following the Effective Date, Uber shall provide a final written report and the parties shall meet for a final time, as close as feasible to the three-year anniversary of the Effective Date.

**4. COMPLIANCE DISPUTE RESOLUTION PROCEDURE FOR BUSINESS PRACTICE CHANGES**

4.1 **Special Master.** No later than thirty (30) calendar days after the Effective Date, the Parties shall jointly request that the Court appoint, pursuant to Federal Rule of Civil Procedure 53, a Special Master. The Parties have selected Fred Alvarez, Esq., as the Special Master. In the event that the appointee becomes unavailable, the Parties shall meet and confer on a replacement and jointly request that the Court appoint a replacement.

4.2 **Good Faith Review.** No later than thirty (30) calendar days after service of Uber's Compliance Reports (*see* Section 3.9), or, if at any time during the course of this programmatic relief, Class Counsel identifies other grounds that they believe constitute non-compliance with the terms of this Agreement, Defendant's Counsel and Class Counsel shall confer on whether Uber has complied with the obligations under the terms of this Agreement. If the Parties disagree, then Class

Counsel shall, within fourteen (14) calendar days, submit to the Special Master a statement of position contending that Uber failed to comply with the obligations under the terms of this Agreement. Uber may, within fourteen (14) calendar days of receiving that statement of position, submit a response/opposition to the Special Master.

4.3 **Review by Special Master.** Upon receiving the Parties' submissions, the Special Master may request additional written submissions, or require the Parties to appear for a hearing, if appropriate. In any event, within thirty (30) calendar days of receiving the Parties' submission(s), the Special Master shall issue a written decision regarding whether Uber has met its obligations or is non-compliant with the Agreement in any respect. If Uber has not met its obligations or is non-compliant with the Agreement, it shall have thirty (30) calendar days following receipt of the Special Master's decision to meet the obligations or otherwise cure any non-compliance. If Uber fails to cure within this time period, Plaintiffs or their representatives may seek to enforce compliance through the Court.

4.4 **Objections to Special Master's Decision.** Should either Party disagree with the Special Master's ruling, such Party may file an objection before the assigned district court judge pursuant to Federal Rule of Civil Procedure 53 after first conferring in good faith with the other Party in an effort to resolve the dispute.

4.5 **Special Master Fees.** Uber shall pay the Special Master's fees and expenses, if any, separate and apart from the Settlement Fund.

5. **MONETARY RELIEF**

5.1 **Gross Fund Payment.** No later than ten (10) calendar days after the date on which the Court grants final approval of the settlement, Uber shall wire Ten Million Dollars ($10,000,000) to the Settlement Administrator for the Gross Fund.

5.2 **Gross Fund.** The Gross Fund shall be deposited into a common fund and allocated as follows, as of the Effective Date:

5.2.1 Thirty-Seven Thousand Five Hundred Dollars ($37,500) for the PAGA Penalty payment to the California Labor and Workforce Development Agency ("LWDA") (*i.e.*, 75% of the total PAGA Penalty);

5.2.2 Twelve Thousand Five Hundred Dollars ($12,500) (*i.e.*, 25% of the total PAGA Penalty), for distribution in accordance with Section 5.3 among the California Class Members for pay periods worked in California from June 22, 2016 through the date of Order Granting Preliminary Approval;

5.2.3 Service Awards as awarded by the Court, in an aggregate amount not to exceed Eighty Thousand Dollars ($80,000) as described in Section 7.1 and

DocuSign Envelope ID: 6BD21872-946E-4B6E-AA39-5C9D81901748

as approved by the Court. Should the Court award less, the remainder shall be added in proportionate shares to Funds A and B;

5.2.4 The fees and costs of the Settlement Administrator, estimated to be One Hundred Ten Thousand Dollars ($110,000), including but not limited to the cost of Notice and processing of Claim Forms;

5.2.5 Class Counsel's costs as awarded by the Court, not to exceed One-Hundred Seventy Thousand Dollars ($170,000). Should the Court award less, the remainder shall be added in proportionate shares to Funds A and B;

5.2.6 Class Counsel's attorneys' fees as awarded by the Court, not to exceed Three Million Dollars ($3,000,000), which includes but is not limited to their continuing obligations under this Agreement. Should the Court award less, the remainder shall be added in proportionate shares to Funds A and B;

5.2.7 One Million Nine Hundred Thousand Dollars ($1,900,000) to Fund B, defined in Section 1.18.2, which shall be distributed to Class Members who timely file Claim Forms, based on the plan of allocation set forth in Section 5.5. Any remainder not claimed and awarded from Fund B shall be redistributed to Fund A. No amount shall revert to Uber; and

5.2.8 The Gross Fund minus the amounts set forth in Sections 5.2.1 through 5.2.7 to Fund A, defined in Section 1.18.1, which shall be distributed to Class Members without the need for the submission of a Claim Form, based on the plan of allocation set forth in Section 5.4.

5.3 **Allocation of the PAGA Penalty Payment to California Class Members Who Worked During Pay Periods from June 22, 2016 through Date of Order Granting Preliminary Approval ("PAGA Period").**

The total sum of Twelve Thousand Five Hundred Dollars ($12,500) shall be divided among California Class Members for pay periods worked in California during the PAGA Period for their claims for penalties under PAGA (liability commences on June 22, 2016). Each California Class Member's share shall be calculated by (i) dividing the number of pay periods the Class Member worked during the PAGA Period by the total number of pay periods worked by all California Class Members during the PAGA Period, and then (ii) multiplying the member's fractional percentage by $12,500.

5.4 **Allocation of Individual Monetary Awards from Fund A.**

5.4.1 **Category 1: All Work Weeks Nationwide – July 31, 2013 through July 30, 2014.** For each work week they were paid for work from July 31, 2013 through July 30, 2014, all Rule 23 Class Members shall receive **one point**, adjusted by the appropriate Job Title Multiplier, as set forth in Table 1.

These points account for the following claims: claims under California Business and Professions Code Section 17200 *et seq.* and Section 1981 of the 1866 Civil Rights Act for the period from July 31, 2013 through July 30, 2014.

However, if any Class Member had previously signed a release encompassing claims covered by Section 5.4.1, the Class Member shall receive zero points under Section 5.4.1.

**Table 1: Job Title Multipliers**

| Job Code Group | Job Title Multiplier |
|---|---|
| 10397 (Software Engineer I) | 1.0 |
| 10407 (Software Engineer II) | 1.2 |
| 10415 (Senior Software Engineer) | 1.4 |
| 20132 (Senior Software Engineer II) | 1.6 |
| 10426 (Staff Software Engineer) | 1.8 |

5.4.2 **Category 2: All Work Weeks in California from July 31, 2014 through Date of Order Granting Preliminary Approval.**

For each work week they were paid for work in California from July 31, 2014 through the date of Order Granting Preliminary Approval, the Rule 23 Class Members and the Collective Action Plaintiffs shall receive the **two and a half (2.5) points**, adjusted by the appropriate Job Title Multiplier, as set forth in Table 1. These points account for the following claims: claims under the Equal Pay Act of 1963, as amended, 29 U.S.C. 206(d) (liability period commences on July 31, 2014), Title VII of the Civil Rights Act of 1964 (liability period commences on October 5, 2016), and Section 1981 of the 1866 Civil Rights Act, and their claims under the California Fair Employment and Housing Act, Cal. Gov't Code §12940, *et seq.* (liability period commences on July 31, 2016), the California Equal Pay Act, Cal. Lab. Code §1197.5 (liability commences on July 31, 2014), the California Fair Pay Act, Cal. Lab. Code §1197.5 (liability commences on January 1, 2016), the California Business & Professions Code §17200, *et seq.* (liability commences on July 31, 2014)*,* and the California Labor Code §§201, 202, 203, 204, and 558.1 (liability commences on July 31, 2014).

-15-

However, if the Class Member had previously signed a release encompassing claims covered by Section 5.4.2, the Class Member shall receive fifty (50) percent of the points otherwise due for the time period covered by the release.

5.4.3 **Category 3: All Work Weeks Outside of California from July 31, 2014 through Date of Order Granting Preliminary Approval.**

For each work week they were paid for work in the United States but *outside of* the State of California from July 31, 2014 through the date of Order Granting Preliminary Approval, the Nationwide Class Members and the Collective Action Plaintiffs (Excluding those in California) shall receive **two (2) points**, adjusted by the appropriate Job Title Multiplier, as set forth in Table 1. These points account for the following claims: claims under the Equal Pay Act of 1963, as amended, 29 U.S.C. 206(d) (liability period commences on July 31, 2014), Title VII of the Civil Rights Act of 1964 (liability period commences on October 5, 2016), Section 1981 of the 1866 Civil Rights Act, and the other state and local claims they are releasing under this Agreement.

However, if the Class Member had previously signed a release encompassing claims covered by Section 5.4.3, the Class Member shall receive fifty (50) percent of the points otherwise due for the time period covered by the release.

5.4.4 **Part-time Employees.** The points of any Rule 23 Class Member and Collective Action Plaintiff who works or has worked on a part-time basis shall be pro-rated consistent with the individual's base salary proration for each work week for each point calculation in Sections 5.4.1 through 5.4.3.

5.4.5 **Calculating the Value of Each Collective Action Plaintiff's and Class Member's Award from Fund A.**

**Step 1:** The Settlement Administrator shall sum each individual's total points from Sections 5.3.1 through 5.3.3, to the extent any section is applicable to the individual, applying the relevant multipliers.

**Step 2:** The Settlement Administrator shall calculate each individual's percentage of the Settlement Awards Fund by dividing the individual's total points as determined in Step 1 by the total points in Fund A of all Collective Action Plaintiffs and Class Members who did not file Opt-Out Statements.

**Step 3:** The Settlement Administrator shall then multiply the individual's percentage as determined in Step 2 by the amount of Fund A to determine each individual's award.

5.4.6 **Uber to Provide Information.** No later than fifteen (15) calendar days after the date of the Order Granting Preliminary Approval, Uber shall provide the Settlement Administrator with the information required by the Settlement Administrator to issue the Notice and finalize the initial calculations required for Fund A, including the dates worked in each Covered Position through that Preliminary Approval date for all Collective Action Plaintiffs and Class Members.

5.5 **Allocation of Individual Monetary Awards from Fund B for Effects of Harassment and Discrimination (Beyond Compensation Loss).**

5.5.1 Rule 23 Class Members who experienced and seek an award for (a) gender, race or national origin harassment or hostile work environment, regardless of whether or not they sought medical or psychological treatment, and/or (b) gender, race or national origin discrimination in compensation, raises, job assignments, job code placement, evaluations, ratings, promotions, demotions, or other terms and conditions of employment that caused them to seek medical or psychological treatment, in either case while employed by Uber on or after July 31, 2013, may submit a Claim Form to the Settlement Administrator for an award from Fund B no later than the deadline set forth in the Notice and Claim Form.

5.5.2 The Settlement Administrator shall evaluate Claim Forms for Fund B based on objective criteria, in light of the claims being released and the factual showing made in each Claim Form. Class Counsel and Defendant's Counsel (which is outside counsel, Paul Hastings LLP, as defined in Section 1.9) together shall assist the Settlement Administrator in its evaluations. Each question in the Claim Form will be worth a designated number of points, with a total of 100 possible points available per Claim Form. The dollar value per point will be equal to the value of Fund B divided by the aggregate total of all points awarded by the Settlement Administrator, except that the maximum possible value per point shall be $1,000, such that the maximum possible value per Claim Form shall be One Hundred Thousand Dollars ($100,000), unless the Parties agree that there are special circumstances warranting an upward adjustment. Any such upward adjustment will be disclosed to the Court in the Motion for Order Granting Final Approval.

5.5.3 The Settlement Administrator shall complete the evaluation no later than thirty-five (35) calendar days from the Claim Form submission deadline.

5.5.4 The Settlement Administrator shall make the final determination on the dollar awards from Fund B for each Rule 23 Class Member, subject to approval of the Court at the Final Approval Hearing.

5.5.5 Any amount remaining unallocated from Fund B shall be allocated to Fund A.

5.6 **Distribution of Monetary Awards.** The Settlement Administrator shall distribute the individual monetary awards accordingly on the time schedule described herein and pursuant to the orders of the Court.

5.7 **Payroll Taxes.** Separate and apart from the Gross Fund, the Settlement Administrator shall calculate and Uber shall pay to the Settlement Administrator the employer's share of any statutory FICA, FUTA, and other payroll taxes arising from any payments to Collective Action Plaintiffs and Class Members for wages. The Settlement Administrator shall be responsible for remitting those taxes to the appropriate state and federal taxing authorities, filing the required tax returns and issuing the required IRS forms to the Class Members and Collective Action Plaintiffs.

5.8 **Control of the Gross Fund.** The Gross Fund shall be controlled by the Settlement Administrator subject to the terms of this Agreement and any orders of the Court. Interest earned on the Gross Fund, if any, shall derive from interest earned on uncashed checks, if any, and may be retained by the Settlement Administrator to cover the cost of administering the resolution of those uncashed checks.

5.9 **Common Fund.** The Gross Fund shall constitute a "common fund." Upon opening this account, Uber shall execute an election statement provided by the Settlement Administrator which shall be affixed to the initial tax return of the Gross Fund in order to establish the start date of the Gross Fund. The Gross Fund shall be created, managed and disbursed by the Settlement Administrator under the supervision of Class Counsel and Defendant's Counsel. The Settlement Administrator shall be the only entity authorized to make withdrawals or payments from the Gross Fund.

5.10 **Return of Gross Fund.** The Settlement Administrator shall have the obligation to return to Uber the entire Gross Fund (excluding the costs incurred by the Settlement Administrator) within seven (7) calendar days in the event that this Agreement is rendered null and void.

## 6. ATTORNEYS' FEES AND COSTS

6.1 At least twenty-one (21) calendar days before the objection deadline, Class Counsel shall petition the Court for an award of attorneys' fees in a sum not to exceed Three Million Dollars ($3,000,000) and costs not to exceed One Hundred Seventy Thousand Dollars ($170,000) that shall fully compensate Class Counsel for the attorneys' fees and litigation costs incurred at any time in connection with the Action, including any applicable multiplier. Should the Court award a lesser

amount of fees or costs, the difference between this amount and the amount awarded for fees and costs shall be added in proportionate shares to Funds A and B.

6.2 Uber agrees that Plaintiffs are entitled to an award of reasonable attorneys' fees and costs in the Action. The Parties agree that the full amount of the attorneys' fees and costs awarded in this action shall be paid from the Gross Fund.

6.3 The outcome of any proceeding related to Class Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's Final Approval ruling.

6.4 Payment of Class Counsel's attorneys' fees and costs approved by the Court shall be made from the Gross Fund within fifteen (15) calendar days after the Effective Date.

## 7. SERVICE AWARDS

7.1 At least twenty-one (21) calendar days before the objection deadline, Plaintiffs shall apply to the Court to receive the following Service Awards: Up to Fifty Thousand Dollars ($50,000) for Plaintiff Roxana del Toro Lopez and up to Thirty Thousand Dollars ($30,000) for Plaintiff Ana Medina in recognition of their services to the Class and in exchange for signing a general release of all claims in a form acceptable to Uber. Should the Court award a lesser amount of Service Awards, the difference between these amounts and the amounts awarded for Service Awards shall be added in proportionate shares to Funds A and B.

7.2 Uber shall not oppose and agrees to pay the Court-approved Service Awards up to the above-listed amounts. The Service Awards and the requirements for obtaining such payments are separate and apart from, and in addition to, the Named Plaintiffs' recovery from the Net Fund.

7.3 The outcome of the Court's ruling on the application for Service Awards shall not terminate this Agreement or otherwise affect the Court's Final Approval ruling.

7.4 Payment of Service Awards approved by the Court shall be made from the Gross Fund within fifteen (15) calendar days after the Effective Date.

## 8. DISTRIBUTION OF INDIVIDUAL MONETARY AWARDS

8.1 **Settlement Checks.** The Settlement Administrator shall mail all individual monetary awards no later than thirty (30) calendar days after it receives the Gross Fund Payment set forth in Section 5.1. The face of each check shall clearly state that it must be cashed within one hundred eighty (180) calendar days.

8.2 **Reminder Postcards.** The Settlement Administrator shall, thirty (30) calendar days prior to the check expiration date, send a reminder postcard to those Named Plaintiffs, Collective Action Plaintiffs, and Class Members who have not yet cashed their settlement award checks and shall provide Class Counsel and Defense Counsel with copies of those postcards. The Settlement Administrator shall also attempt to contact those Named Plaintiffs, Collective Action Plaintiffs, and Class Members via telephone (and may also use email if the Settlement Administrator has an email address for the individual).

8.3 **Returned Settlement Award Checks.** The Settlement Administrator shall perform an address trace for any undeliverable checks, and re-send the checks if a different address is found, within three (3) business days of receipt of any undeliverable check.

8.4 **Uncashed Checks and Unused Funds.** If any Named Plaintiff, Collective Action Plaintiff, or Class Member fails to cash his/her award check within one hundred eighty (180) calendar days, the funds shall be distributed in equal shares to the following organizations approved by the Court (and any appellate court, if applicable) as valid *cy pres* beneficiaries: Girls Who Code, the Mexican American Legal Defense and Educational Fund ("MALDEF") and the NAACP Legal Defense and Educational Fund. Funds distributed to MALDEF and the NAACP LDF must be used only for efforts to challenge discrimination in employment. If the Court (or any appellate court, if applicable) determines that any *cy pres* recipient is inappropriate, the funds shall be distributed in equal shares to the remaining *cy pres* recipient(s), and if none remains, then those funds should escheat to the state of the Class Member's residence.

8.5 **Final Report by Settlement Administrator.** No later than ten (10) calendar days after the check void date, the Settlement Administrator shall provide Class Counsel and Defendant's Counsel with a declaration providing a final report on the disbursements of all funds.

8.6 **Taxability of Settlement Payments.**

8.6.1 For tax purposes:

(1) Payments to California Class Members for PAGA penalties pursuant to Section 5.3 shall be treated as 1099 non-wage income.

(2) 50% of payments to Collective Action Plaintiffs and Rule 23 Class Members pursuant to Section 5.4 shall be treated as W-2 wage payments and 50% of such payments shall be treated as 1099 non-wage income as compensatory or liquidated damages/non-wage damages and interest.

(3)    Payments to Rule 23 Class Members pursuant to Section 5.5 shall be designated by the Settlement Administrator as 1099 emotional distress damages or other non-wage income, except that any payments for lost compensation from Fund B shall be designated as W-2 wage payments.

8.6.2   Payments treated as W-2 wages pursuant to Sections 5.4 and 5.5 shall be made net of all applicable employment taxes, including, without limitation, federal, state, and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and social security number on an IRS Form W-2. Payments treated as compensatory or liquidated damages/non-wage damages and interest pursuant to Section 5.3 and 5.4 shall be made without withholding and shall be reported to the IRS and the payee, to the extent required by law, under the payee's name and social security number on an IRS Form 1099, as shall penalties for the California Class only. Any Service Awards made pursuant to Section 7.1 shall be made without withholding and reported to the IRS under the payee's name and social security number on an IRS Form 1099.

8.6.3   In the event that it is subsequently determined by a tax authority that any Plaintiff, Collective Action Plaintiff, or Rule 23 Class Member owes any additional taxes with respect to any money distributed under this Agreement, it is expressly agreed that the determination of any tax liability is between the payment recipient and the tax authorities, and that Uber shall not be responsible for the payment of such taxes, including any interest and penalties.

## 9.    FORM OF NOTICE AND CLAIM FORM

9.1    All Collective Action Plaintiffs and Rule 23 Class Members shall receive a Notice substantially in the form evidenced by Exhibit A and a Claim Form substantially in the form evidenced by Exhibit B, each attached hereto. The Notice shall be tailored for each individual and have pre-printed information regarding that individual's name, contact information, and information pertinent to the estimated allocation under Fund A for the Named Plaintiff, Collective Action Plaintiff, and/or Class Member. The Notice and Claim Form shall be enclosed in an envelope substantially in the form evidenced by Exhibit C, attached hereto.

## 10.   ADMINISTRATION OF SETTLEMENT

10.1  **Settlement Administrator's Duties.**

10.1.1 The Settlement Administrator shall (1) mail the Notice to the Collective Action Plaintiffs and Class Members after performing any address checks

required by Section 10.2.4; (2) respond to questions from Collective Action Plaintiffs and Class Members; (3) distribute individual monetary awards to Collective Action Plaintiffs and Class Members; (4) maintain a toll-free number for communicating with Collective Action Plaintiffs and Class Members; (5) no later than fifteen (15) calendar days after the Effective Date, distribute Service Awards to Named Plaintiffs; (6) no later than fifteen (15) calendar days after the Effective Date, distribute amounts approved by the Court as Attorneys' Fees and Incurred Costs to Class Counsel; (7) no later than fifteen (15) calendar days after the Effective Date, place in escrow all other amounts transmitted by Uber; (8) no later than fifteen (15) calendar days after the Effective Date, forward payment to the LWDA; (9) determine the employer's share of taxes owed and remit them to the taxing authorities, file required state and federal tax returns, and take all other actions required by Sections 5.3 through 5.10; (10) distribute funds to the *cy pres* recipients; and (11) perform any other duties necessary to carry out its responsibilities described in this Agreement.

10.1.2 The Parties agree to cooperate with the Settlement Administrator and assist it in any way possible in administering the terms of this Agreement. The Parties agree to cooperate in the settlement administration process and work with the Settlement Administrator in making all reasonable efforts to control and minimize the costs and expenses incurred in the administration of the Settlement.

10.1.3 At least five (5) business days prior to the Final Approval Hearing, the Settlement Administrator shall provide Class Counsel and Defendant's Counsel with a statement detailing its costs of administration, which Class Counsel shall file with the Court.

10.2 **Notice and Claim Form Procedures.**

10.2.1 No later than fifteen (15) calendar days after the date of entry of the order granting Preliminary Approval, Uber shall provide to the Settlement Administrator a list of all Collective Action Plaintiffs and Rule 23 Class Members, including full name (maiden and married names, where applicable), last known home address, email (if known), telephone numbers(s), employee identification number, social security number, and number of work weeks worked during each relevant period in each job code including whether those work weeks were full-time versus part-time weeks, in a format reasonably acceptable to the Settlement Administrator ("Settlement Class List"). The Settlement Administrator shall maintain this list in the strictest confidence and shall not disclose it to anyone except Class Counsel, who may receive the employee identification number and number of work weeks worked during each relevant period in each job code,

including whether those work weeks were full-time versus part-time weeks, for use only for purposes of administering this Settlement.

10.2.2 No later than twenty (20) calendar days after Uber provides the Settlement Class List, the Settlement Administrator shall mail the Notice and Claim Form in substantively the form attached hereto as Exhibits A and B, respectively, and as approved by the Court, to the Collective Action Plaintiffs and Rule 23 Class Members, by United States first class mail, postage prepaid, and will transmit a copy by email to those Collective Action Plaintiffs and Rule 23 Class Members who have provided a personal email address to Uber. The Parties intend to provide actual notice to each Collective Action Plaintiff and Rule 23 Class Member, to the extent practicable.

10.2.3 The Settlement Administrator shall also create a secure website to enable Rule 23 Class Members to review the Notice and submit a Claim Form for Fund B online.

10.2.4 In order to provide the best notice practicable, the Settlement Administrator shall run the list of Collective Action Plaintiffs and Rule 23 Class Members through the United States Postal Service's National Change of Address database before mailing the Notice.

10.2.5 In the event that Notices are returned to the Settlement Administrator by the United States Postal Service because the address of the recipient is no longer valid, *i.e.*, the envelope is marked "Return to Sender," the Settlement Administrator shall perform a standard skip trace up to two (2) times in an effort to attempt to ascertain the current address of the particular individual in question and, if such an address is ascertained, the Settlement Administrator shall re-send the Notice by First Class U.S. Mail to the new address within three (3) business days of receiving the newly ascertained address.

10.2.6 With respect to envelopes marked "Return to Sender," the Settlement Administrator may also call any identified last-known telephone numbers (and telephone numbers updated through public and proprietary databases) of Collective Action Plaintiffs and/or Rule 23 Class Members to obtain current addresses, and may request from Defendant's Counsel updated contact information for those currently employed by Uber. Defendant's Counsel shall provide updated contact information for those currently employed by Uber in response to requests from the Settlement Administrator.

10.2.7 Class Members shall have forty-five (45) calendar days from the date of mailing to submit their Claim Forms for Fund B ("Claims Period"). Rule 23

Class Members and Collective Action Plaintiffs are not required to file a Claim Form to receive their shares from Fund A.

10.2.8 The Settlement Administrator shall also send out a reminder email and reminder postcard twenty-five (25) calendar days after the initial mailing of the Notice to those who have not submitted a Claim Form for Fund B or opted out of the settlement.

10.2.9 During the forty-five (45) calendar-day Notice Period, the Settlement Administrator shall provide the Parties with weekly summaries as to the status of Notice mailings, including the number of Notices that were re-mailed, the number of successful and unsuccessful mailings, the number of Claim Forms submitted, and the number of individuals who have opted out and/or objected.

10.2.10 The Settlement Administrator shall provide to the Parties, at least ten (10) calendar days prior to the close of the Notice Period, a list of persons potentially eligible to be Collective Action Plaintiffs and Class Members to whom notices were returned as undeliverable and for whom efforts to obtain an alternative address failed.

10.2.11 Class Counsel shall provide the Court, at least five (5) calendar days prior to the Final Approval Hearing, a declaration by the Settlement Administrator of due diligence and proof of mailing with regard to the mailing of the Notice.

10.3 **Opt-Outs.**

10.3.1 Individuals in the Rule 23 Class may request exclusion from the monetary relief provisions of the Settlement by "opting out" as follows:

   (1) Class Members who do not submit a Claim Form for Fund B must opt out of the Settlement no later than forty-five (45) calendar days after Notice is first mailed.

   (2) Class Members who submit a Claim Form for Fund B must opt out of the Settlement no later than twenty-one (21) calendar days after the Fund B Calculation Notice is first mailed by the Settlement Administrator.

10.3.2 Any individual who chooses to opt out pursuant to Section 10.3.1(1) or (2) must mail a written, signed statement to the Settlement Administrator saying that s/he wishes to be excluded from the *del Toro Lopez v. Uber Technologies, Inc.* Settlement and that s/he understands that s/he will not receive money from it ("Opt-Out Statement"). The Opt-Out Statement must contain the (1) name, (2) address, (3) telephone number, and (4) signature of

the individual to be valid. To be effective, such Opt-Out Statement must be sent via mail and postmarked by a date certain to be specified on the Notice. The postmark date of the mailing envelope shall be the exclusive means used to determine whether a request for exclusion (opt-out) has been timely submitted. The Opt-Out Statement must be personally signed in ink by the Rule 23 Class Member who seeks to opt out. No request to opt out may be made on behalf of a group of Class Members.

10.3.3 The Settlement Administrator shall stamp on the original of any Opt-Out Statement that it receives the date it was received, and shall serve copies of each Opt-Out Statement on Class Counsel and Defendant's Counsel by email no later than two (2) business days after receipt thereof. The Settlement Administrator shall, within two (2) business days after the end of each Opt-Out Period, send a final list of all Opt-Out Statements to Class Counsel and Defendant's Counsel by email. The Settlement Administrator shall retain the stamped originals of all Opt-Out Statements and originals of all envelopes accompanying Opt-Out Statements in its files until such time as the Settlement Administrator is relieved of its duties and responsibilities under this Agreement.

10.3.4 The share of any Opt-Out, as calculated pursuant to Section 5.4, shall remain in Fund A for distribution to those who did not timely opt out of the Settlement.

10.4 **Objections and Written Comments.**

10.4.1 Rule 23 Class Members and Collective Action Plaintiffs who wish to present objections to or written comments about the Settlement at the Fairness Hearing must first do so in a written, signed statement. To be considered, such objections must be mailed to the Class Action Clerk, United States District Court for the Northern District of California, 1301 Clay Street, Oakland, CA 94612, or filed in person at any location of the United States District Court for the Northern District of California no later than twenty-one (21) days after the Fund B Calculation Notice is first mailed by the Settlement Administrator.

10.4.2 The postmark date or filing date of the objection shall be the exclusive means for determining that an objection is timely. The statement must contain the name, address, telephone number, and signature of the Class Member or Collective Action Plaintiff and must clearly identify the case name and number (*del Toro Lopez v. Uber Technologies, Inc.*, Case Number 17 Civ. 36255) to be valid. Class Members and Collective Action Plaintiffs who fail to make objections in the manner and by the deadline specified in Section 10.4.1 shall be deemed to have waived any objections and shall be

-25-

foreclosed from making any objection (whether by appeal or otherwise) to the Agreement.

10.4.3 A Class Member or Collective Action Plaintiff who objects or comments on the Settlement may also appear at the Final Approval Hearing, either in person or through his/her own attorney, but first must file with the Class Action Clerk at the address listed in Section 10.4.1, a "Notice of Intention to Appear at the Fairness Hearing in *del Toro Lopez v. Uber Technologies, Inc.*, Case Number 15 Civ. 36255" ("Notice of Intention to Appear") no later than the deadline for the objection set forth in Section 10.4.1. This Notice must include the objector's name, address, telephone number, and signature. The Notice of Intention to Appear must include copies of any papers, exhibits, or other evidence that the objecting Class Member or Collective Action Plaintiff (or his/her counsel) shall present to the Court in connection with the Fairness Hearing. Any Class Member or Collective Action Plaintiff who does not provide a Notice of Intention to Appear in complete accordance with the deadline and other specifications set forth in the Notice, and who has not filed an Objection in complete accordance with the deadlines and other specifications set forth in this paragraph and the Notice, shall be barred from speaking or otherwise presenting any views at any Fairness Hearing unless the Court, in the exercise of its discretion, excuses compliance with this requirement upon a showing of good cause.

10.4.4 An objector may withdraw his/her objections at any time.

10.4.5 Any lawyer representing a Class Member or Collective Action Plaintiff for the purpose of making objections must also file a Notice of Appearance with the Court by the deadline for the objection set forth in Section 10.4.1.

10.4.6 Any individual who has requested exclusion by submitting a valid Opt-Out Statement may not submit objections to the Settlement.

10.4.7 Plaintiffs and/or Uber may file with the Court written responses to any objections at least seven (7) calendar days before the Fairness Hearing.

10.4.8 **Waiver of Right to Appeal.** Provided that the judgment against Uber is consistent with the terms and conditions of this Agreement, then Named Plaintiffs, Collective Action Plaintiffs, and Class Members who did not timely submit an objection to the Settlement and their counsel, as well as Uber and its counsel, hereby waive any and all rights to appeal from the judgment against Uber, including all rights to any post-judgment proceeding and appellate proceeding, such as a motion to vacate judgment, a motion for new trial, a motion under Federal Rule of Civil Procedure 60, and any extraordinary writ, and the judgment therefore shall become final and non-appealable at the time it is entered. The waiver does not include any waiver

of the right to oppose any appeal, appellate proceedings, or post-judgment proceedings. Notwithstanding the foregoing, Named Plaintiffs and their counsel do not waive their right to appeal any order regarding attorneys' fees or costs.

10.5 **No Solicitation of Objection or Request to Opt Out.** The Parties agree that the decision to opt out should be left to the individual Class Members. If contacted by a Class Member, Class Counsel may provide any advice or assistance to any Class Member who requests them to do so. If Defendant's Counsel is contacted by Class Members regarding the Settlement, counsel shall refer the call or communication to Class Counsel. In addition, at no time shall Plaintiffs, Uber, or their respective counsel seek to solicit or otherwise encourage Class Members or any other persons to submit written objections to the settlement or encourage Class Members to appeal the Court's final approval order and entry of judgment, or to opt out of the Settlement.

## 11. PRELIMINARY AND FINAL APPROVAL

11.1 **Preliminary Approval by the Court.** Within twenty-eight (28) calendar days of the execution of this Agreement, Plaintiffs shall submit to the Court a Motion for Preliminary Approval of the Settlement ("Preliminary Approval Motion"). The Preliminary Approval Motion shall seek the setting of dates for opt-outs, objections, and a Fairness Hearing and shall present the [Proposed] Order Granting Preliminary Approval attached hereto as Exhibit D.

11.2 **Final Order and Judgment from the Court.** Plaintiffs shall seek to obtain from the Court an Order Granting Final Approval. The motion shall, among other things, seek: (a) final certification of the Rule 23 Class for purposes of settlement; (b) final approval of settlement of the Collective Action Plaintiffs' EPA claims; (c) final approval of settlement of the Rule 23 Class Members' claims as fair, adequate, reasonable, and binding on all Class Members who have not opted out; and (d) an entry of judgment in accordance with this Agreement.

11.3 **Fairness Hearing.** The Fairness Hearing shall be held at the Court's convenience, but not earlier than ninety (90) calendar days after CAFA notices are served.

## 12. RELEASE

12.1 **Rule 23 Class Members, including Named Plaintiffs.**

Upon the Effective Date, and except as to such rights or claims as may be created by this Agreement, each member of the Rule 23 Class, who does not timely opt out pursuant to this Agreement, on his/her behalf and on behalf of his/her respective current, former and future heirs, spouses, executors, administrators,

agents, and attorneys, fully releases and discharges all Released Parties from all claims asserted in the Complaint under applicable state, local, and federal law or that are based on the same facts and circumstances as the claims brought in the Complaint.

The rights and claims released ("Released Claims") include: (i) claims for unequal pay, and (ii) claims for disparate treatment and pattern and practice discrimination based on gender, race and national origin with respect to all forms of compensation (including but not limited to salary, bonus, and stock or equity awards), raises, job assignments, job code placement, demotions, denial of promotion, delayed promotion, performance ratings, ratings used for purposes of compensation rewards (including bonus and stock awards), and other terms and conditions of employment; and (iii) claims for disparate impact discrimination based on gender, race and national origin with respect to all forms of compensation (including but not limited to salary, bonus, and stock or equity awards), raises, job assignments, job code placement, demotions, denial of promotion, delayed promotion, performance ratings, ratings used for purposes of compensation rewards (including bonus and stock awards), and other terms and conditions of employment; and (iv) claims for gender, race and national origin harassment.

The Released Claims arise under the following laws and their implementing regulations and include all forms of damages (including but not limited to economic, emotional distress, punitive and exemplary damages, and damages to reputation): (i) Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, *et seq.*, (ii) Section 1981 of the Civil Rights Act; (iii) for those who work or worked in California: the California Fair Employment and Housing Act, Cal. Gov't Code §12940, *et seq.*, the California Equal Pay Act, Cal. Lab. Code §1197.5, the California Fair Pay Act, Cal. Lab. Code §§1197.5 and 1194.5 (on and after January 1, 2016), the California's Business & Professions Code §17200, *et seq.,* the Labor Code Private Attorneys General Act (PAGA), Cal. Lab. Code §§2698-2699, and Cal. Lab. Code §§201, 202, 203, 204, and 558.1; and (iv) for those who work or worked in the District of Columbia or in states outside of California, the state and local laws of similar import in their respective jurisdictions, including, but not limited to, Arizona Rev. Stat. Ann. §23-341, Colorado Rev. Stat. Ann. §8-5-101, *et seq.*; Illinois Equal Pay Act of 2003, 820 Ill. Comp. Stat. 112/1, *et seq.*; Kentucky Equal Pay Law, Ky. Rev. Stat. Ann. §337.423; Massachusetts Gen. Laws Ann. 149 §105A; Michigan Comp. Laws Ann. §408.423 and §750.556; Missouri. Rev. Stat. §290.400; New Jersey Equal Pay Act, N.J. Rev. Stat. §34:11-56.1, *et seq.*; Equal Pay Provision of the New York State Labor Law, N.Y. Labor Law §194; Ohio Minimum Fair Wage Standards Act, Ohio Rev. Code Ann. §4111.17(A); Oregon Equal Pay Statute, Or. Rev. Stat. §652.220; Pennsylvania Equal Pay Law, 43 Pa. Cons. Stat. §336.3; and Washington Rev. Code §49.12.175. The Released Claims are limited to the facts and circumstances pled

in the Complaint and do not include claims for, among other things, disability discrimination, retaliation, or wrongful discharge.

Only as to the claims released herein, each member of the Rule 23 Class waives all rights and benefits afforded by Section 1542 of the Civil Code of the State of California, and does so understanding the significance of that waiver. Section 1542 provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Those Rule 23 Class Members who did not opt into the EPA collective action by cashing their settlement check do not release their potential federal EPA claims, 29 U.S.C. §206(d).

12.2 **Collective Action Plaintiffs, including Named Plaintiffs.** Upon the Effective Date, and except as to such rights or claims as may be created by this Agreement, each Collective Action Plaintiff, on behalf of her respective current, former and future heirs, spouses, executors, administrators, agents, and attorneys, fully releases and discharges all Released Parties from all gender-based discrimination claims involving alleged unequal, disparate, or unfair compensation under the Equal Pay Act, 29 U.S.C. §206(d), that were brought in the Complaint or that are based on the same facts and circumstances as the claims brought in the Complaint. Collective Action Plaintiffs who cash their settlement checks shall be deemed to have accepted this Release. Only as to the claims released herein, each Collective Action Plaintiff waives all rights and benefits afforded by Section 1542 of the Civil Code of the State of California (quoted in Section 12.1), and does so understanding the significance of that waiver.

12.3 **Events After Final Approval.** Nothing in this Agreement shall be construed to bar any claims of the Named Plaintiffs, Collective Action Plaintiffs, or the Rule 23 Class Members based on or arising out of events occurring after the date of the Order Granting Final Approval by the Court of the Agreement.

## 13.    UBER'S RIGHT TO WITHDRAW OR MODIFY AGREEMENT

13.1 If five percent (5%) or more of the Class Members validly elect not to participate in the Settlement, Uber shall have the absolute right, in its sole discretion and notwithstanding any other provisions of this Agreement, but subject to all the provisions and time limits of this Section, either (i) to withdraw in writing from and rescind this Agreement in which case all actions taken in its furtherance shall be null and void for all purposes and may not be used or introduced in further litigation except to determine whether Uber is entitled to withdraw from the

DocuSign Envelope ID: 6BD21872-946E-4B6E-AA39-5C9D81901748

Agreement and has validly done so, or (ii) to modify this Agreement through further negotiations with Class Counsel. Uber must exercise this right within ten (10) calendar days after the Settlement Administrator sends the final list of all Opt-Out Statements to Class Counsel and Defendant's Counsel by email pursuant to Section 10.3.3. If five percent (5%) or more of the Class Members opt out of the monetary relief provisions of the Settlement, and Uber exercises its right to void the Settlement, Uber shall pay the Settlement Administrator's reasonable fees and expenses incurred as of the date that Uber exercises its right to void the Settlement.

13.2 If any of the Named Plaintiffs or Class Representatives submit a timely and complete request for exclusion, Uber shall have the absolute right, in its sole discretion and notwithstanding any other provisions of this Agreement, but subject to all the provisions and time limits of this Section, to withdraw in writing from this Agreement, or to modify this Agreement through further negotiations with Class Counsel. If Uber does withdraw in conformity with the provisions and time limits of this Section, the Agreement will be null and void for all purposes and may not be used or introduced in further litigation except to determine whether Uber is entitled to withdraw from the Agreement and has validly done so. Uber shall have ten (10) calendar days after the expiration of all Class Members' deadlines pursuant to the provisions described in the Notice of Class Action Settlement to withdraw from (or modify through negotiation) this Agreement on the basis that a Named Plaintiff or Class Representative has submitted a timely and complete request for exclusion.

## 14. INTERPRETATION AND ENFORCEMENT OF AGREEMENT

14.1 **Entire Agreement.** This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

14.2 **Binding Effect.** Upon execution of this Agreement by the Parties and their counsel, this Agreement shall be binding upon the Parties unless the Court fails to approve the Agreement as set forth herein.

14.3 **Notices to Counsel.** All notices to counsel required or desired to be given under this Agreement shall be in writing and by overnight mail and email to lead counsel for the respective Parties. Specifically, such notices shall be mailed to Jahan C. Sagafi of Outten & Golden LLP and Nancy L. Abell of Paul Hastings LLP for Uber, their respective addresses set forth below (or to such other address as any such party of counsel may designate in a notice):

Jahan C. Sagafi
OUTTEN & GOLDEN LLP

DocuSign Envelope ID: 6BD21872-946E-4B6E-AA39-5C9D81901748

One Embarcadero Center, 38th Floor
San Francisco, CA 94111
jsagafi@outtengolden.com

Nancy L. Abell
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
nancyabell@paulhastings.com

14.4 **Arm's-Length Transaction; Materiality of Terms.** The Parties have
negotiated all the terms and conditions of this Agreement at arm's length. All
terms and conditions of this Agreement in the exact form set forth in this
Agreement are material to this Agreement and have been relied upon by the
Parties in entering into this Agreement.

14.5 **Construction.** The determination of the terms and conditions of this Agreement
has been by mutual agreement of the Parties. Each Party participated jointly in the
drafting of this Agreement, and therefore the terms and conditions of this
Agreement are not intended to be, and shall not be, construed against any Party by
virtue of draftsmanship.

14.6 **Severability.** Following the Effective Date, if any provision of this Agreement is
held by a court of competent jurisdiction to be void, voidable, unlawful, or
unenforceable, the remaining portions of this Agreement shall remain in full force
and effect, subject to the limitations set forth above.

14.7 **Governing Law.** This Agreement shall in all respects be interpreted, enforced,
and governed by and under the laws of the State of California, without regard to
its choice of law principles, except to the extent that the law of the United States
governs any matter set forth herein, in which case such federal law shall govern.

14.8 **Continuing Jurisdiction.** The Court shall retain jurisdiction over the
interpretation and implementation of this Agreement as well as any and all matters
arising out of, or related to, the interpretation or implementation of this Agreement
and of the settlement contemplated thereby for three (3) years following the
Effective Date.

14.9 **Waivers, etc. to Be in Writing.** No waiver, modification, or amendment of the
terms of this Agreement, whether purportedly made before or after the Court's
approval of this Agreement, shall be valid or binding unless in writing, signed by,
or on behalf of all Parties and then only to the extent set forth in such written
waiver, modification, or amendment, subject to any required Court approval. Any
failure by any Party to insist upon the strict performance by the other Party of any
of the provisions of this Agreement shall not be deemed a waiver of future

performance of the same provisions or of any of the other provisions of this Agreement, and such Party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

14.10 **Counterparts.** The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if Plaintiffs and Uber had signed the same instrument. The failure of one or more Plaintiffs to sign this Agreement does not affect its enforceability, except as otherwise set forth herein.

14.11 **Facsimile/Electronic Signatures.** Any Party may execute this Agreement by causing her or its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other Party. Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the Party whose counsel transmits the signature page by facsimile or email.

## 15. DUTIES OF THE PARTIES FOLLOWING COURT APPROVAL

15.1 In connection with the Final Approval by the Court of this Agreement, Class Counsel, and Counsel for Defendant shall submit a proposed final order and judgment:

(a) Granting Final Approval to the Agreement, adjudging the terms thereof to be fair, reasonable, and adequate, and directing consummation of its terms and provisions;

(b) Granting final certification of the Rule 23 Settlement Class;

(c) Granting final certification for settlement purposes of the conditionally certified EPA Collective Action;

(d) Dismissing the Civil Action with prejudice and permanently barring all members of the Settlement Class including the Class Representatives from prosecuting against any Released Parties any of the Released Claims; and

(e) All materials, including data, provided by the Parties, their counsel and/or their experts, to the other Party, its counsel and/or its experts, shall be returned to the other Party's counsel or destroyed, within one-hundred eighty (180) calendar days after the Effective Date, with the exception that the Parties may retain copies of their and their own experts' work product; copies of all filed documents (whether or not filed under seal or submitted to the court without being officially filed); and any materials necessary to oversee compliance with this Agreement.

1   DATED: April 13, 2018     By:_____

2                          JAHAN C. SAGAFI

                                OUTTEN & GOLDEN LLP

3                           *Attorneys for Plaintiffs and Proposed Class and*

                           *Collective Members*

4

5

                           By:_____

6   DATED: April 13, 2018

                              ROXANA DEL TORO LOPEZ

7                           *Named Plaintiff and Class Representative*

8

                           By:_____

9   DATED: April 13, 2018

                              ANA MEDINA

10                           *Named Plaintiff and Class Representative*

11

12

                           By:_____

13  DATED: April ___, 2018

                              NANCY L. ABELL

14                              PAUL HASTINGS LLP

                           *Attorneys for Defendant*

15                           *Uber Technologies, Inc.*

16

17

                           By:_____

18  DATED: April ___, 2018

                              TONY WEST

19                           *Senior Vice President, Chief Legal Officer and*

                           *Corporate Secretary*

20                           *Uber Technologies, Inc., Defendant*

21

22

23

24

25

26

27

28

1   DATED: April __, 2018                 By:_____
2                                              JAHAN C. SAGAFI
                                              OUTTEN & GOLDEN LLP
3                                         *Attorneys for Plaintiffs and Proposed Class and*
                                          *Collective Members*
4

5

6   DATED: April __, 2018                 By:_____
                                              ROXANA DEL TORO LOPEZ
7                                         *Named Plaintiff and Class Representative*

8

9   DATED: April __, 2018                 By:_____
                                              ANA MEDINA
10                                        *Named Plaintiff and Class Representative*

11

12
    DATED: April 14, 2018                 By:_____
13                                            NANCY L. ABELL
                                              PAUL HASTINGS LLP
14                                        *Attorneys for Defendant*
15                                        *Uber Technologies, Inc.*

16

17
    DATED: April 14, 2018                 _____
18                                            TONY WEST
19                                        *Senior Vice President, Chief Legal Officer and*
                                          *Corporate Secretary*
20                                        *Uber Technologies, Inc., Defendant*

21

22

23

24

25

26

27

28

    Case No. 4:17-cv-06255-YGR          -33-      FIRST AM. COLLECTIVE, CLASS ACTION
                                                   AND PAGA SETTLEMENT AGREEMENT